No. 22-01409

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Alejandro Menocal, *et al.,*

*Plaintiffs-Appellees,*

— v. —

The GEO Group, Inc.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Colorado

---

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

Scott A. Schipma
Dominic E. Draye
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, DC 20037
(202) 331-3100
schipmas@gtlaw.com
drayed@gtlaw.com

*Attorneys for Defendant-Appellant*

# Table of Contents

Introduction ..................................................................................................1

Background ..................................................................................................3

Argument.....................................................................................................5

  I.   Denial of Derivative Sovereign Immunity Is Appealable Under the Collateral Order Doctrine. ..................................................................................5

    A.  The District Court's October 18 Order Conclusively Ruled on the Application of Derivative Sovereign Immunity. ...............................................7

    B.  Immunity from Suit Is Separate from the Merits of Whether GEO Was Unjustly Enriched or Violated the TVPA. ........................................................8

    C.  Immunity from Suit Is Effectively Unreviewable on Appeal. ...................13

Conclusion ................................................................................................18

## Table of Authorities

**Page(s)**

**Cases**

*Abney v. United States*,
   431 U.S. 651 (1977)...................................................................6

*ACT, Inc. v. Worldwide Interactive Network, Inc.*,
   46 F.4th 489 (6th Cir. 2022) ...................................................6, 11, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................6

*Behrens v. Pelletier*,
   516 U.S. 299 (1996)...............................................................1, 8

*Brady v. Roosevelt S.S. Co.*,
   317 U.S. 575 (1943)..................................................................9

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153, 156 (2016)..................................................1, 3, 4, 9, 16

*Chavez v. Singer*,
   698 F.2d 420 (10th Cir. 1983) ...........................................9, 13, 16

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949)...........................................................*passim*

*Cunningham v. General Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir.), *cert. denied*, 139 S.Ct. 417 (2018) ......................1, 5, 11

*Dalrymple v. Grand River Dam Auth.*,
   932 F. Supp. 1311 (N.D. Okla. 1996), *aff'd in part, dismissed in*
   *irrelevant part,* 145 F.3d 1180 (10th Cir. 1998).................................12

*Federal Maritime Commission v. S.C. State Ports Auth.*,
   535 U.S. 743 (2002).................................................................9

*Feres v. United States*,
   340 U.S. 135 (1950)...............................................................11, 12

*Filarsky v. Delia*,
    566 U.S. 377 (2012)......................................................................................10, 18

*Helstoski v. Meanor*,
    442 U.S. 500 (1979).................................................................................................6

*Houston Cmty. Hosp. v. Blue Cross*,
    481 F.3d 265 (5th Cir. 2007) ...............................................................................16

*Houston. Martin v. Halliburton*,
    618 F.3d 476 (5th Cir. 2010) ...............................................................................16

*Hunter v. Bryant*,
    502 U.S. 224 (1991).................................................................................................2

*Lane v. Pena*,
    518 U.S. 187 (1996)...............................................................................................16

*Lauro Lines s.r.l. v. Chasser*,
    490 U.S. 495 (1989).........................................................................................12, 13

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) .....................................................................7, 8, 13

*McMahon v. Presidential Airways, Inc.*,
    502 F.3d 1331 (11th Cir. 2007) .......................................................6, 11, 15, 17

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)......................................................................................6, 14, 18

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)............................................................................................6, 9

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1983).................................................................................................6

*Pullman Constr. Indus., Inc. v. United States*,
    23 F.3d 1166 (7th Cir. 1994) .........................................................12, 15, 16, 17

*Taylor Energy Company, L.L.C. v. Luttrell*,
    3 F.4th 172 (5th Cir. 2021) ....................................................................................5

*United States v. Mitchell*,
  463 U.S. 206 (1983)................................................................1, 8, 14, 17

*Will v. Hallock*,
  546 U.S. 345 (2006)...........................................................................17

*In re World Trade Ctr. Disaster Site Litig.*,
  521 F.3d 169 (2d Cir. 2008) ............................................6, 11, 15, 16

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940)......................................................................*passim*

**Statutes**

8 U.S.C. § 1103 ...................................................................................17

8 U.S.C. § 1226 ...................................................................................17

8 U.S.C. § 1231 ...................................................................................17

8 U.S.C. § 1231(g)(1)...........................................................................10

8 U.S.C. § 1231(g)(2)...........................................................................10

18 U.S.C. § 1589 ...................................................................................5

28 U.S.C. § 1291 ................................................................................2, 5

Federal Tort Claims Act......................................................................15

Trafficking Victims Protection Act, 18 U.S.C. § 1589 *et seq*. ........................*passim*

iv

## Introduction

The GEO Group ("GEO") owns and provides services to the Aurora ICE Processing Center ("AIPC") under contract with the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"). If the government itself operated the AIPC, it would enjoy sovereign immunity from civil lawsuits like this one, unless it chose to waive that immunity by statute. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The doctrine of derivative sovereign immunity ("DSI") recognizes that the United States lacks the personnel, facilities, and expertise to do everything in-house. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940).

When the federal government enlists a contractor to perform its governmental functions and the contractor does what it is authorized and directed to do under the terms of its contract, that contractor enjoys "'derivative sovereign immunity,' *i.e.*, the blanket immunity enjoyed by the sovereign." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). That "blanket" immunity is "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . ." *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996) (quotations and modifications omitted). As a result, courts across the country "treat the *Yearsley* doctrine as derivative sovereign immunity that confers jurisdictional immunity from suit."

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir.), *cert. denied*, 139 S.Ct. 417 (2018).

The assertion of immunity from suit—whether raised by the federal government, a State under the Eleventh Amendment, an official asserting qualified immunity, or a state or federal contractor entitled to DSI—is a collateral issue that is immediately appealable under 28 U.S.C. § 1291. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Applying *Cohen*, the Supreme Court has recognized numerous forms of immunity that qualify for the collateral order doctrine. The circuits are split on whether DSI belongs to this group, and this Court has yet to address the issue.

The "importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), tips the balance in favor of those courts that permit collateral-order review. This Court should join that group. If it does, and moves on to review the merits, GEO will detail how the court below applied a fundamentally erroneous legal standard for determining whether contractors qualify for DSI. For now, however, the sole issue is whether immunity from suit is collateral to the merits of a given contractor's eligibility for DSI, such that this Court should review it at "the earliest possible stage." *Id.* Here, the earliest possible stage is the current, timely appeal from the district court's long-delayed ruling on GEO's motion for summary judgment.

## Background

The underlying lawsuit involves two distinct certified class actions. First, the "Forced Labor Class" alleges that a policy allowing disciplinary sanctions when a detainee refuses to clean his or her living area violates the Trafficking Victims Protection Act, 18 U.S.C. § 1589 *et seq*. ("TVPA"). ECF 49 at 3; ECF 57 at 21. Specifically, Plaintiffs allege that GEO violated the TVPA by asking detainees to clean their living areas where ICE allows a possible sanction for noncompliance of up to 72 hours of segregation. ECF 49 at 3. Second, the "Voluntary Work Program Class" alleges that GEO has been unjustly enriched by providing detainees the minimum allowance of $1.00 per day authorized under the terms of GEO's contract with ICE for work done under an ICE-mandated voluntary work program ("VWP").

In April 2020, Plaintiffs filed a Motion for Summary Judgment on Defendant's Affirmative Defenses seeking, *inter alia*, a ruling that DSI does not apply to GEO's implementation and operation of the policies and programs in question. More specifically, Plaintiffs claimed that, even though ICE mandated, authorized, approved, directed, and supervised GEO's subject actions, DSI could not apply because GEO allegedly retained some "discretion."

GEO filed a Cross-Motion for Summary Judgement, seeking, *inter alia*, a ruling that GEO is immune from Plaintiffs' class claims under derivative sovereign immunity. GEO noted that because its subject actions were all authorized and

directed by ICE, the application of the DSI doctrine, as expressed in *Yearsley*, 309 U.S. at 20–23, and *Campbell-Ewald*, 577 U.S. at 156, to the undisputed facts compelled a finding that GEO was immune from suit on both of the classes' claims.

On October 18, 2022, two-and-one-half years after Plaintiffs and GEO filed their summary judgment motions, and without holding oral argument, the district court entered a 76-page order denying GEO's motion and granting Plaintiffs' motion for summary judgement on GEO's DSI claim. In ruling on the cross motions, the district court employed a grossly erroneous formulation of DSI. First, the district court repeatedly expressed the view that DSI applies only where the federal government explicitly and specifically "required" the contractor's actions. ECF 380 (District Court Opinion ("Op.")) at 27, 28-29, 32, 33. Similarly, the district court found that GEO cannot assert DSI "simply because ICE officials 'reviewed and cleared' its policies." *Id.* at 32. Additionally, the court incorrectly held that DSI "is limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications." *Id.* Finally, the district court concluded that GEO was not entitled to DSI because it acted as an "independent contractor" and not as an agent. *Id.* at 34. Each of these formulations of derivative sovereign immunity is directly at odds with precedent from the Supreme Court and warrant reversal when this Court eventually reaches the merits. *Yearsley,* 309 U.S. at 23; *Campbell-Ewald*,

577 U.S. at 156; *see also Cunningham*, 888 F.3d at 651; *Taylor Energy Company, L.L.C. v. Luttrell*, 3 F.4th 172 (5th Cir. 2021).

The district court compounded its legal error by refusing to consider DSI as to the "personal housekeeping" requirements at AIPC.  It reasoned that the application of DSI to these requirements was "irrelevant" because Plaintiffs did not claim that those tasks constitute forced labor in violation of the TVPA.  Op. at 30 n.16, 44, 69.  In fact, Plaintiffs affirmatively claim that detainees' personal housekeeping tasks (*i.e.*, cleaning their immediate living areas, including "cells") constitute forced labor in violation of the TVPA.  ECF 1 (Compl.) ¶¶ 54, 55, 59 ("whether Defendant's policy of requiring Plaintiffs and the class members to clean the cells on their pods under threat of solitary confinement violated 18 U.S.C. § 1589").  The district court was simply mistaken.

To address these fundamental legal and factual errors regarding DSI, GEO filed the current appeal to this Court under the collateral order doctrine.  The district court then entered an order "staying all proceedings in this case related to the appeal" and vacating "[a]ll trial-related deadlines."  ECF 400.

## Argument

### I.    Denial of Derivative Sovereign Immunity Is Appealable Under the Collateral Order Doctrine.

As a general matter, 28 U.S.C. § 1291 requires a final judgment before appeal. An exception exists for a non-final order that is "a final disposition of a claimed right

which is not an ingredient of the cause of action and does not require consideration with it." *Cohen*, 337 U.S. at 46–47.  Immunity from suit is a textbook example of an issue appropriate for collateral-order review under *Cohen*, and the Supreme Court has recognized many examples of immunity as eligible for immediate appeal.  *See, e.g., Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (qualified immunity); *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1983) (a State's Eleventh Amendment immunity); *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (Speech or Debate Clause immunity); *Abney v. United States*, 431 U.S. 651, 660 (1977) (double jeopardy immunity).  Indeed, even the canonical modern case for the dismissal standard under Rule 12(b)(6) reached the Court as a collateral-order appeal of qualified immunity.  *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

Three Circuits recognize that DSI satisfies *Cohen*'s conditions for collateral-order appeal—the specific issue in this briefing.  *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 496–98 (6th Cir. 2022); *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 192–93 (2d Cir. 2008); *McMahon v. Presidential Airways, Inc.* , 502 F.3d 1331, 1339–40 (11th Cir. 2007).

The reason appellate courts so regularly hear immediate appeals of orders denying immunity-based motions to dismiss is that these cases easily satisfy the three conditions announced in *Cohen*.  Those conditions require that the district court

order: "(1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 664 (10th Cir. 2018) (quotation and modification omitted). The *Cohen* analysis considers the "category" of cases to which a particular appeal belongs and thereby avoids case-specific issues and "'ad hoc balancing to decide issues of appealability.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 315 (1995)).

### A. The District Court's October 18, 2022 Order Conclusively Ruled on the Application of Derivative Sovereign Immunity.

Plaintiffs do not contest the first *Cohen* factor. Mot. 8. The district court's order granting Plaintiffs' motion for summary judgement and denying GEO's cross-motion on the same subject conclusively resolves the application of DSI to foreclose suit. *Los Lobos Renewable*, 885 F.3d at 665 ("An order is 'conclusive' if it is not subject to later review or revision by the district court."). Nothing remains for the district court to do on this issue. Relatedly, although Plaintiffs complain about the pace of proceedings in the lower court, Mot. 1, they do not suggest that an earlier appeal was possible, and they obliquely acknowledge that DSI promises to avoid wasting additional resources, Mot. 19 (noting the looming "merits of the case, class certification, and potentially other matters" before a future appeal on those points).

Because the district court has expressed its definitive view on the applicability of DSI, now is the time to review the errors in that ruling.

### B.    Immunity from Suit Is Separate from the Merits of Whether GEO Was Unjustly Enriched or Violated the TVPA.

As in any immunity case, the merits of this lawsuit are distinct from whether GEO is immune from suit.   The district court's determination that "derivative sovereign immunity . . . is inappropriate as a matter of law," Op. 28, is separate from the merits of whether GEO was unjustly enriched or violated the TVPA.   As this Court explained, "[t]he Supreme Court has indicated that the collateral order doctrine's second condition is more likely to be satisfied 'where purely legal matters are at issue.'"  *Los Lobos Renewable*, 885 F.3d at 665 (quoting *Johnson*, 515 U.S. at 314).   The legal standard governing DSI is a purely legal matter, *see* Part II *infra*, that is "conceptually distinct from the merits of the plaintiffs claim."  *Behrens*, 516 U.S. at 309 n.3.   "The Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue."  *Mitchell*, 472 U.S. at 528–29.   Thus, consideration of "factual allegations" to decide immunity is no barrier to satisfying *Cohen*'s second factor.

DSI is an immunity from suit.  As its name suggests, *derivative* sovereign immunity reflects and is derived from the government's own immunity.  "Sovereign immunity does not merely constitute a defense to monetary liability or even to all

types of liability. Rather, it provides an immunity from suit." *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002). As a result, the Supreme Court and this Court have recognized that immunity is wholly separate from the merits of a substantive claim against the sovereign. *Nixon*, 457 U.S. at 742; *Chavez v. Singer*, 698 F.2d 420, 421 (10th Cir. 1983) (permitting collateral-order review because immunity "should be determined before a trial on the merits").

"'[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States.'" *Campbell-Ewald*, 577 U.S. at 166 (quoting B*rady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943)). That immunity—DSI—is "the blanket immunity enjoyed by the sovereign," which encompasses "immunity from suit." *Id.* at 666, 672. The Court has recognized two conditions for the application of DSI: "[1] what was done was within the constitutional power of Congress . . . there is no liability on the part of the contractor' who [2] simply performed as the Government directed." *Id.* (quoting *Yearsley*, 307 U.S. at 20–21). DSI is therefore most akin to qualified immunity, which applies under relatively easy conditions to shield persons working for the government from suit. Indeed, the Supreme Court has recognized an analogy for individual contractors along the same lines. Thus, a private attorney hired by a fire department to conduct an internal investigation enjoyed "the same immunity" as a

public employee doing the same work. *Filarsky v. Delia*, 566 U.S. 377, 390–91 (2012).

The United States Congress delegated to the Department of Homeland Security, and its agency ICE, the sole authority to arrange for all aspects of the detention of aliens pending the results of their immigration proceedings. 8 U.S.C. § 1231(g)(1). In discharging that duty, ICE *must* consider the use of private contractors to detain aliens prior to constructing its own facilities. 8 U.S.C. § 1231(g)(2). This use of contractors is consistent with a long history of governments contracting with private parties to perform law-enforcement or police power functions. *See Filarsky*, 566 U.S. at 384–89 (tracing history). Plaintiffs have never argued that the government's use of contractors like GEO is improper or unprecedented. Moreover, no waiver of sovereign immunity encompasses GEO's work at the AIPC—and Plaintiffs have never identified one. As a result, "[t]he action of the agent is the act of the government." *Yearsley*, 309 U.S. at 22 (quotation omitted).

The circuits that faithfully apply the collateral order doctrine to DSI begin from the same premise. As the Sixth Circuit explained in reviewing a DSI case under the collateral order doctrine just months ago, "the relevant immunity is one from suit." *ACT*, 46 F.4th at 497; *see also Cunningham*, 888 F.3d at 650 "derivative sovereign immunity . . . confers jurisdictional immunity from suit."). The Eleventh

Circuit applied the same premise to a military contractor's claim of "derivative" immunity in a tort case involving a soldier's service-related injuries, for which the federal government is immune from suit under *Feres v. United States*, 340 U.S. 135 (1950). *McMahon*, 502 F.3d 1331. The Eleventh Circuit explained that the immunity claim was separate from the merits "because whether the suit is service-related (the test for *Feres* immunity in its usual formulation) does not significantly overlap with the merits of the tort suit." *Id.* at 1340. The same logic applies here— whether GEO qualifies for DSI because it acted pursuant to its contract with the federal government depends on the terms of that contract, not whether the challenged policies offend the TVPA or unjustly enrich GEO, for which GEO has numerous merits defenses.

The Second Circuit has followed a similar pattern in recognizing immunities from suit as independent of the underlying claims. In assessing DSI for government contractors assisting with clean-up operations following the terrorist attacks of September 11, 2001, the Second Circuit exercised "collateral order jurisdiction to determine . . . whether that immunity may extend derivatively to non-federal entities working in cooperation with federal agencies under the Stafford Act." *In re World Trade Center*, 521 F.3d at 192–93. The crucial question was whether the federal government itself enjoyed immunity from suit under the relevant statute. *Id.* at 191 (distinguishing *Pullman*).

In response to the distinction between an immunity from suit and a defense on the merits, Plaintiffs simply assume a convenient but inaccurate conclusion. Their Motion refers no fewer than 55 times to GEO's DSI "defense."  Nowhere, however, do they actually present an argument that DSI is a merits defense rather than a form of immunity.  Plaintiffs' mantra-like repetition of "defense" does not transform the relevant doctrine.  Even the district court recognized that it was refusing dismissal based on an immunity doctrine, not a defense.  Op. at 14, 26 n.15 (rejecting Plaintiffs' claim that GEO waived DSI by failing to plead it as an affirmative defense because "I question whether derivative sovereign immunity is an affirmative defense," citing *Cunningham*, 888 F.3d at 650 (holding derivative qualified immunity operates 'as a jurisdictional bar to suit and not as a merits defense to liability'")).  The same is true in other district courts within this Circuit.  *See, e.g., Dalrymple v. Grand River Dam Auth.*, 932 F. Supp. 1311, 1313 (N.D. Okla. 1996), *aff'd in part, dismissed in irrelevant part,* 145 F.3d 1180 (10th Cir. 1998) (describing *Yearsley* immunity as barring claims against government contractors).

Plaintiffs' citation to *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989), only highlights their mistaken assumption that DSI is a merits defense rather than immunity from suit.  Mot. 11.  *Lauro Lines* rejected a collateral-order challenge based on the defendant's argument that a contractual forum-selection clause compelled litigation in Italy.  The Court distinguished this claim from various forms

of immunity for which the collateral order doctrine applies: "an entitlement to avoid suit [*i.e.*, immunity] is different in kind from an entitlement to be sued only in a particular forum." *Lauro Lines*, 490 U.S. at 501. *Lauro Lines* affirmed that immunity is reviewable under the collateral order doctrine. *Id.* at 499 (citing *Helstoski*, *Abney*, and *Nixon*).

Viewed through the lens of a right to avoid standing trial, DSI, like other forms of immunity, satisfies the second *Cohen* factor. As this Court summarized in the context of the government's immunity: "Immunity is important and collateral to the merits of the action." *Chavez*, 698 F.2d at 421. Here, resolving the legal question of whether the government's authorization and direction of a contractor's performance qualifies the contractor for DSI is distinct from the issues of the contractor's liability for alleged unjust enrichment and TVPA violations. It therefore satisfies the second *Cohen* factor.

## C.    Immunity from Suit Is Effectively Unreviewable on Appeal.

Immunity from suit is the archetypical right that cannot be vindicated in an ordinary appeal following trial. In fact, this Court has taken pains to note that *other* types of orders might also qualify. *Los Lobos Renewable*, 885 F.3d at 666 ("an order need not deny an asserted immunity to satisfy *Cohen*'s test"). But immunity is straightforward: "When a district court has denied a defendant's claim of right not to stand trial . . . we have consistently held the court's decision appealable, for such

13

a right cannot be effectively vindicated after the trial has occurred." *Mitchell*, 472 U.S. at 525. The *Mitchell* Court's insight is almost tautological: a defendant's right not to stand trial is lost when that defendant is forced to stand trial. And *Mitchell* arose in the most analogous context to DSI: qualified immunity. Because contractors are like employees who perform the work of the government—often side-by-side—the reasoning in *Mitchell* applies with full force here.

Precedent confirms the straightforward logic in *Mitchell*. Courts around the country recognize the unavailability of adequate appellate relief for an incorrect denial of immunity. Starting with other DSI cases, the Sixth Circuit held that "the immunity denial here is immediately appealable, since the relevant immunity is one from suit." *ACT*, 46 F.4th at 497. It reasoned that "the immunity government contractors enjoy derives from whatever immunity the relevant government would have in the same situation," and no one contested that the government could appeal a denial of its sovereign immunity. *Id.* (quotation omitted). Here, Plaintiffs do not expressly concede that ICE could appeal an identical dismissal if it operated the AIPC facility itself. But nor could they reasonably dispute that proposition. The current circumstance is therefore like *ACT*, and the same reasoning should prevail.

This case also mirrors *World Trade Center*, in which the appealability of a denial of DSI was relatively easy after the Second Circuit sorted through a two-step statutory analysis that first noted the waiver of sovereign immunity in the Federal

Tort Claims Act and then an exception to that rule in the Stafford Act. 521 F.3d at 188–90. So, too, the Eleventh Circuit was untroubled by the analysis on this *Cohen* factor, explaining that "[b]ecause immunity from suit entails a right to be free from the burdens of litigation, an erroneous denial cannot be redressed through review of the final judgment, and therefore must be reviewed on interlocutory appeal." *McMahon*, 502 F.3d at 1339.

Because of its focus on statutory waivers of sovereign immunity, *World Trade Center* also contains a useful response to the central case on the other side of the circuit split: *Pullman Constr. Indus., Inc. v. United States*, 23 F.3d 1166 (7th Cir. 1994). That decision rejected a collateral-order appeal by the United States. In what the Second Circuit called a "sweeping and entertaining analysis," *In re World Trade Center*, 521 F.3d at 191, the Seventh Circuit simply rejected any federal sovereign immunity. It reasoned that because "the United States Code is riddled with statutes authorizing relief against the United States," sovereign immunity is "nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it." *Id.* at 1168. The Fifth Circuit expressly adopted that reasoning, declaring that "these [statutory] waivers, in aggregate, have overwhelmed the United States' forum immunity, such that the only portion of the United States' original immunity from suit that Congress continues to assert is a right not to pay damages." *Houston Cmty. Hosp. v. Blue Cross*, 481 F.3d 265, 280

(5th Cir. 2007).  A later panel of that court noted in a single paragraph that it was bound to follow *Houston*.  *Martin v. Halliburton*, 618 F.3d 476, 485 (5th Cir. 2010).

The *Pullman* theory proves too much.  For one thing, the Supreme Court clarified two years later that "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted).  Additionally, the Court has continued to recognize sovereign immunity and collateral-order appeals in the 28 years since *Pullman*.  *E.g., Campbell-Ewald*, 577 U.S. at 156.  This Circuit likewise recognized the immediate appealability of a claim of absolute immunity, in direct conflict with *Pullman*, though admittedly in a case predating *Pullman*'s "entertaining reading."  *Chavez*, 698 F.2d at 421.  Reversing *Chavez*'s recognition of sovereign immunity would require reconsideration en banc.  The less radical course is to follow the Second Circuit's reasoning and cabin *Pullman* as a descriptive exercise that does not warrant "disregard[ing] the statements of the Supreme Court that sovereign immunity encompasses a right not to be sued."  *In re World Trade Center*, 521 F.3d at 191; *see also Sealed Case No. 99-3091*, 192 F.3d at 999 (similar).

Apart from reliance on *Pullman* and the Fifth Circuit cases that follow it, Plaintiffs argue that an interlocutory appeal must satisfy undefined policy considerations.  Mot. 11–13.  Their primary authority for this requirement (and most of their brief) is *Will v. Hallock*, 546 U.S. 345 (2006).  There, the Supreme Court

stated that cases permitting appeal under the collateral order doctrine "have to be combed for some further characteristic that merits appealability." *Will*, 546 U.S. at 351. To the extent this language creates an additional requirement within the third *Cohen* factor, it is easily satisfied here. Courts have noted, for example, the appropriateness of immediate review "to avoid judicial interference with military discipline and sensitive military judgments." *McMahon*, 502 F.3d at 1339. Or, as *Will* itself observed of *Mitchell*, a denial of qualified immunity "threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service if a full trial were threatened . . . ." *Will*, 546 U.S. at 352.

Here, the parties agree that Congress delegated to ICE authority to detain aliens placed in removal proceedings. 8 U.S.C. §§ 1103, 1226, 1231. The parties also agree that GEO's contracts mandated compliance with the ICE national detention standards, the implementation of which is at the center of Plaintiffs' claims for unjust enrichment and violations of the TVPA. Those ICE detention standards regarding voluntary detainee work programs, discipline, and detainee housekeeping requirements are central to the safe and secure operation of AIPC and similar facilities.[1] The operation of the AIPC and the government's interest in maintaining

---

[1] *See, e.g.,* Performance Based National Detention Standards ("PBNDS") 5.8 II.4 (Voluntary Work Program: "The negative impact of confinement shall be reduced through decreased idleness, improved morale and fewer disciplinary incidents");

safety and security at that and similar ICE facilities exceeds the policy justification behind qualified immunity for an official who illegally records conversations "to gather intelligence needed for national security purposes." *Mitchell*, 472 U.S. at 516. Likewise, the sensitive safety and security considerations associated the operation of the AIPC is more deserving of protection than a fire department's investigation of possible malingering. *Filarsky*, 566 U.S. at 380–81. Thus, even if Plaintiffs were correct that there is an additional *Cohen* factor requiring a defendant to explain the policy merits of its work, GEO easily satisfies that requirement in this case. Plaintiffs do not seriously contest the fact that a government entity or official engaging in the same conduct would be immune.

## Conclusion

This Court should deny Plaintiffs' motion to dismiss this appeal and schedule briefing on whether GEO is entitled to derivative sovereign immunity.

---

PBNDS 3.1 I (Disciplinary System: "This detention standard promotes a safe and orderly living environment for detainees by establishing a fair and equitable disciplinary system, requiring detainees to comply with facility rules and regulations, and imposing disciplinary sanctions to those who do not comply."); PBNDS 5.8 III C (Personal Housekeeping: "all detainees are responsible for personal housekeeping."), *available at* https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf (last accessed Dec. 11, 2022).

Respectfully submitted this 13th day of December, 2022.

By:  */s/ Dominic E. Draye*

Scott A. Schipma
Dominic E. Draye
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, DC 20037

*Counsel for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief in Opposition to Motion to Dismiss complies with 10th Cir. R. 27.3(B)(3) in that the brief is double-spaced, employs a proportionately spaced typeface, and the author's word count software program reports that this Brief consists of 4,332 words.

Dated this 13th day of December, 2022.

By:  */s/ Dominic E. Draye*
       Dominic E. Draye
       GREENBERG TRAURIG, LLP
       2101 L Street, N.W.
       Washington, DC 20037

**CERTIFICATE OF SERVICE**

I, Dominic E. Draye, hereby certify that on December 13, 2022, I served a copy of the foregoing **Brief in Opposition to Motion to Dismiss** upon all counsel of record via CM/ECF e-service and email, as follows:

Robert Andrew Free
R. Andrew Free Law Office
414 Union Street, Suite 900
Nashville, TN 37209
andrew@immigrantcivilrights.com

Alexander Hood
Juno Turner
Towards Justice
PO Box 371680
Pmb 44465
Denver, CO 80237-5680
alex@towardsjustice.org
juno@towardsjustice.org

David Lopez
Outten & Golden
601 Massachusetts Avenue NW
2nd Floor West Suite
Washington, DC 20001
pdl@outtengolden.com

Hans Meyer
Meyer Law Office
901 West 10th Avenue, Suite 2A
Denver, CO 80204
hans@themeyerlawoffice.com

Brandt Milstein
Andrew Hess Turner
Milstein Turner
1490 Lafayette Street, Suite 304
Denver, CO 80218
brandt@milsteinturner.com
andrew@milsteinturner.com

*Attorneys for Appellees*

I further state that on this same date, I sent a copy of the foregoing **Brief in**

**Opposition to Motion to Dismiss** via U.S. Mail to the following:

Clerk of Court
United States District Court for the District of Colorado
901 19th Street, Suite 105A
Denver, CO  80294

December 13, 2022                    */s/ Dominic E. Draye*
Date                                 GREENBERG TRAURIG, LLP
                                     2101 L Street NW
                                     Washington, DC 20037
                                     *Attorneys for Defendant-Appellant*