# United States Court of Appeals

## For the Tenth Circuit

_____

No. 22-01409

Alejandro Menocal, *et. al.*,

*Plaintiffs-Appellees,*

v.

The GEO Group, Inc.
*Defendant-Appellant.*

_____

**PLAINTIFFS-APPELLEES' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 10TH CIR. R. 27.0(c) FOR LACK OF APPELLATE JURISDICTION**

_____

### INTRODUCTION

GEO misrepresents the law regarding the *Yearsley* defense and the narrow collateral order doctrine. It suggests that other courts of appeals have taken collateral order appeals of *Yearsley* arguments, but this has never happened. It asserts the Supreme Court has concluded that *Yearsley* extends the "blanket" immunity of the

sovereign to federal contractors acting within their lawfully delegated authority, but the Court held exactly the opposite. It argues that the label "immunity" is dispositive here, but such labels are irrelevant.

*Some* immunities trigger collateral order doctrine review, but unlike those immunities, *Yearsley* does not implicate any "particular value of a high order . . . in support of the interest in avoiding trial." *Will v. Hallock*, 546 U.S. 345, 352 (2006). Even if it did, *Yearsley* immunity would not be "completely separate from the merits of the action," *id.* at 349, making collateral order review inappropriate.

GEO's misrepresentations are designed to postpone this case, which, prior to this appeal, was on a path to trial. This delay comes eight years after the case was filed, with plaintiffs now spread around the world and the memories of witnesses fading.

The Court should not permit GEO's delay. Consistent with the conclusion of every court of appeals to address the actual issue before this Court and with the official position of the United States, the Court should promptly dismiss this appeal and return this case to the District Court for trial. *See* Ex. A to Mot., *Morales v. Cultural Care*, No. 21-1676 (1st Cir.), Br. for the U.S. as Amicus Curiae, Nov. 23, 2022 ("U.S. Gov't *Morales* Br."). If GEO thought its case for interlocutory review were truly extraordinary, it could have sought a 28 U.S.C. § 1292 appeal, or even

mandamus. GEO will have every opportunity to seek appeal after final judgment in the normal course.

## ARGUMENT

A.     **No Appellate Court Has Concluded That *Yearsley* Provides a Basis for Collateral Order Review, but Three Courts of Appeals and the Federal Government Have Said It Does Not.**

GEO attempts to blur the lines between *Yearsley* and other immunities and argues that several courts of appeals have decided the issue before the Court here. But the cases GEO relies on involve different forms of immunity that implicate distinct concerns justifying immediate appeal: *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), addresses derivative *Feres* immunity, which applies to tort suits by servicemembers and is designed to protect sensitive military judgments from judicial interference, *id.* at 1341; *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008), involves derivative Stafford Act immunity, which protects "discretionary function[s]" of federal agencies providing disaster relief, *id.* at 187 (internal quotation marks omitted); and *ACT, Inc. v. Worldwide Interactive Network*, Inc., 46 F.4th 489 (6th Cir. 2022), involves derivative Eleventh Amendment immunity from suits alleging copyright infringement by states, *id.* at 496.

The distinction between these immunities and the *Yearsley* defense cannot be ignored. As the Supreme Court has cautioned, the "narrow" collateral order doctrine

should "stay that way and never be allowed to swallow the general rule." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). To satisfy the doctrine's "stringent" requirements, *id.*, a category of orders must, among other things, be "effectively unreviewable" after final judgment. It is not enough for it to share some vague or general similarities with other categories that do satisfy these requirements.

The courts that have specifically considered whether the collateral order doctrine applies to the *Yearsley* defense have come out differently than courts considering derivative forms of *Feres*, Stafford Act, and Eleventh Amendment immunity. The Fifth and Ninth Circuits have both held that denials of the *Yearsley* defense are not appealable under the collateral order doctrine. *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1098 (9th Cir. 2022); *Houston Cmty. Hosp. v. Blue Cross Blue Shield of Texas, Inc.*, 481 F.3d 265, 280 (5th Cir. 2007). The Fourth Circuit has suggested it would come out the same way. *See Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 760 (4th Cir. 2019). This is also the position of the United States. *See generally* U.S. Gov't *Morales* Br.; Ex. B to Mot., *Al Shimari v. CACI Premier Tech., Inc.,* No. 19-648 (U.S.), Br. for the U.S. as *Amicus Curiae*, Aug. 26, 2020 ("U.S. Gov't *Al Shimari* Br.").

**B.      *Yearsley* Does Not Extend the "Blanket Immunity" of the Sovereign to Federal Contractors.**

In its attempt to blur the lines between *Yearsley* and other immunities, GEO urges a misunderstanding of the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), which it argues held that *Yearsley* extends the "blanket" immunity of the United States to federal contractors acting within lawfully delegated authority. But *Campbell-Ewald* says exactly the opposite. One of the questions in that case was whether federal contractors could obtain the federal government's "absolute" immunity. The Court held that they could not. *Id.* at 166. It explained that "private persons performing Government work" do not "acquire the Government's embracive immunity." *Id.*; *see id.* ("Do federal contractors share the Government's unqualified immunity from liability and litigation? We hold they do not.").

GEO's misstatements about *Yearsley* matter. As the United States explains, the fact that *Yearsley* does not extend the "embracive" immunity of the federal government to contractors reinforces both why denials of the *Yearsley* defense are reviewable after final judgment and why the defense is so rarely separate from the merits of the action. *See* U.S. Gov't *Morales* Br. at 6-7.

5

**C.     That *Yearsley* Is Often Labeled As "Derivative Sovereign Immunity" Is Irrelevant.**

At bottom, all GEO can marshal in support of its argument that the narrow collateral order doctrine justifies interlocutory appeal is the fact that courts frequently describe the *Yearsley* defense as "derivative sovereign immunity." But the collateral order doctrine does not turn on labels or formalistic distinctions. As the Supreme Court has cautioned, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." *Digital Equip. Corp.*, 511 U.S. at 873. And this Court and courts around the country have concluded that other "immunities" do not trigger collateral order review. *See, e.g.*, *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments*, LLC, 703 F.3d 1147, 1152 (10th Cir. 2013) (private parties may not appeal denials of state-action immunity as a collateral order). As the Eleventh Circuit recently explained in a case involving *Parker* immunity: "Though the Supreme Court has used the shorthand term '*Parker* immunity," . . . [w]e must figure out what *Parker* really represents in order to avoid what Justice Cardozo referred to as the 'tyranny of labels.'" *SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1280 (11th Cir. 2021). Whether called the *Yearsley* defense, derivative sovereign immunity, or something else, this Court should look past the labels and conclude that the doctrine implicates a right to avoid liability, not a right to avoid suit entirely.

**D.      Unlike Other Immunities that Trigger Collateral Order Doctrine Review, *Yearsley* Does Not Implicate Substantial Public Interests That Justify Departure from the Final Judgment Rule.**

As opposed to formal labels, the central consideration in distinguishing between a right to avoid trial and a defense to liability is whether "deferring review until final judgment so imperils [an important] interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009). "[T]he third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digital Equip. Corp.*, 511 U.S. at 878-79.

GEO's attempt to conflate the *Yearsley* defense with other immunities is inconsistent with the narrowness of the collateral order doctrine and ignores critical differences. Most strikingly, GEO repeatedly attempts to conflate *Yearsley* with qualified immunity. Resp. at 9 ("DSI is therefore most akin to qualified immunity."). But courts permit interlocutory appeals of denials of qualified immunity because of characteristics not shared with *Yearsley*.

First, qualified immunity is designed to protect the initiative and discretion of public officials. *See Will*, 546 U.S. at 352 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). *Yearsley*, by contrast, applies where a contractor does *not* act according to

its initiative and discretion but instead acts according to the federal government's specifications. *See* Kate Sablosky Elengold & Jonathan D. Glater, *The Sovereign Shield*, 73 Stan. L. Rev. 969, 1001 (2021) ("[U]nder the agency principles underlying *Yearsley* immunity, courts have looked to see if the contractor is hired as an 'independent contractor,' expected to use its expertise and discretion to decide how best to get the job done, or as something more akin to an agent of the United States, just following orders.").

Second, in the qualified immunity context, collateral order review ensures that state officials can exercise discretion in the face of unclear law without fear of trial. This concern is absent when a defendant invokes *Yearsley*. *See Campbell-Ewald Co.*, 577 U.S. at 167-68 ("Qualified immunity reduces the risk that contractors will shy away from government work. But the doctrine is bounded in a way that Campbell's 'derivative immunity' plea is not. Qualified immunity may be overcome . . . if the defendant knew or should have known that his conduct violated a right 'clearly established' at the time of the episode in suit.").

*Will v. Hallock* further illustrates this point. There, federal customs agents facing a *Bivens* claim requested review of a collateral order refusing to dismiss the plaintiffs' claims under the Federal Tort Claims Act's judgment bar. 546 U.S. 345, 348 (2006). The customs agents asserted an interest in avoiding trial that is similar to the interests GEO asserts here. If trial were to proceed, according to the *Will*

defendants, "the efficiency of Government will be compromised and the officials burdened and distracted, as in the qualified immunity case." *Id.* at 353. The Supreme Court rejected this comparison:

> The nub of qualified immunity is the need to induce officials to show reasonable initiative when the relevant law is not "clearly established," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *cf. Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); a quick resolution of a qualified immunity claim is essential. There is, however, no such public interest at stake simply because the judgment bar is said to be applicable. It is not the preservation of initiative but the avoidance of litigation for its own sake that supports the judgment bar, and if simply abbreviating litigation troublesome to Government employees were important enough for *Cohen* treatment, collateral order appeal would be a matter of right whenever the Government lost a motion to dismiss under the Tort Claims Act, or a federal officer lost one on a *Bivens* action, or a state official was in that position in a case under 42 U.S.C. § 1983, or *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In effect, 28 U.S.C. § 1291 would fade out whenever the Government or an official lost an early round that could have stopped the fight.

*Will*, 546 U.S. at 353-54. GEO's attempt to analogize *Yearsley* immunity to qualified immunity should face the same fate.

*Yearsley* is also unlike the other doctrines GEO invokes. *See* Resp. at 6. It does not implicate separation-of-powers concerns, *see Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (recognizing the "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives"); it does not protect a state sovereign's dignitary interests in avoiding suit, *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 ("The very object and purpose of

9

the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals" (internal quotation marks removed)); nor does it raise the distinct constitutional concerns at issue implicated by the Speech or Debate Clause or what GEO terms "double jeopardy immunity," Resp. at 6.[1]

It is not enough that a particular defense can be labeled as an "immunity." *See supra* § C. Rather, to trigger collateral order review, a party must point to "some particular value of a high order . . . in support of the interest in avoiding trial, *e.g.*, honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, and respecting a State's dignitary interests." *Will*, 546 U.S. at 346 (citations omitted). No such interest exists here.

### E.     Even If *Yearsley* Did Protect a Right That Was Effectively Unreviewable after Final Judgment, It Does Not Raise a Defense that Is Separate from the Merits.

Finally, even if *Yearsley* did protect a right not to stand trial, it would still not trigger collateral order review because it is not "completely separate" from the merits of the action. *Id.* at 349.

---

[1] GEO's attempt to argue that this case implicates matters of "safety and security" at immigration detention centers, Resp. at 17-18, falls particularly flat. After it lost a recent trial challenging GEO's failure to pay the Washington State minimum wage in a work program identical to the one at issue in this case, GEO asked ICE to suspend the work program altogether pending GEO's appeal. *See Nwauzor v. The GEO Grp.,* No. 17 Civ. 5769, ECF No. 521-1 (Nov. 1, 2021).

Unlike appeals of qualified immunity, where the core consideration is whether "the law clearly proscribed the actions the defendant claims he took," *see Mitchell*, 472 U.S. at 528, *Yearsley* calls for courts to decide factual and legal questions that almost always overlap with the core issue of whether the defendant's conduct is legal. As a categorical matter, whether a defendant exceeds the scope of its agency with the government will typically also answer the question of whether the defendant acted illegally. As the United States explained in its *amicus* brief in *Morales Posada*, under *Yearsley* a contractor is "protected from liability only to the extent—and only because—it is acting lawfully." U.S. Gov't Br. at 8 (citing *Campbell-Ewald*, 577 U.S. at 166). For this reason, the Federal Government concludes the *Yearsley* defense is not "completely separate" from the merits of the action. *Id.*

This case is no different. As Plaintiffs will show on the merits and as the District Court explained in its exhaustive review, GEO's claim that "ICE mandated, authorized, approved, directed, and supervised GEO's subject actions," Resp. at 3, is false. The opposite is true; GEO violated ICE prohibitions on forced labor, and ICE left it to GEO to decide how much to pay detainee workers. Those arguments go both to GEO's *Yearsley* defense and to Plaintiffs' merits arguments. GEO's decisions to deviate from ICE's instructions, and the truth or falsity of its factual assertions about ICE's knowledge, will be at the core of the eventual trial in this

case. And the same will be true in the vast majority of *Yearsley* cases—an additional reason the collateral order doctrine does not apply in cases like this one.

## CONCLUSION

The Court should promptly dismiss this appeal.

Respectfully submitted,
Plaintiffs-Appellees,
By their attorneys,


/s/ *David H. Seligman*
David H. Seligman
Alexander N. Hood
Juno Turner
Towards Justice
P.O. Box 371680
Pmb 44465
Denver, CO 80237-5680
720-239-2606
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org

# CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION

This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 2543, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font

Date: December 20, 2022                 s/ David H. Seligman
                                               Attorney for the Plaintiffs-Appellees

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document:

a) all required privacy redactions have been made per 10th Cir. R. 25.5;

b) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

c) the electronic version of this brief was scanned for viruses with www.virustotal.com and is free of viruses.

Date: December 20, 2022                 s/ David H. Seligman
                                               Attorney for the Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to all Defendants-Appellants that have appeared:

Date:   December 20, 2022                   <u>s/ David H. Seligman</u>
                                            Attorney for the Plaintiffs-Appellees