No. 22-1409

**In the United States Court of Appeals
for the Tenth Circuit**

ALEJANDRO MENOCAL, MARCOS BRAMBILA, LOURDES ARGUETA, HUGO
HERNANDEZ, GRIZEL XAHUENTITLA, JESUS GAYTAN, OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, AND DEMETRIO VALERGA,
*Plaintiffs-Appellees,*

v.

THE GEO GROUP, INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court,
for the District of Colorado (Denver) (Hon. John L. Kane)
No. 1:14-cv-02887-JLK-MEH

## PLAINTIFFS-APPELLEES' SUPPLEMENTAL APPENDIX: VOLUME I

JUNO TURNER
DAVID SELIGMAN
ALEXANDER HOOD
RACHEL DEMPSEY
TOWARDS JUSTICE
PO Box 371680
Denver, CO 80237
(720) 248-8426

MICHAEL SCIMONE
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 658-0137

JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street
Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

ROBERT D. FRIEDMAN
GUPTA WESSLER PLLC
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741

*(Additional counsel listed on inside cover)*

March 24, 2023                    *Counsel for Plaintiffs-Appellees*

HANS MEYER
MEYER LAW OFFICE
901 West 10th Ave, Suite 2A
Denver, CO 80204
(303) 831-0817

BRANDT MILSTEIN
ANDREW HESS TURNER
MILSTEIN TURNER
1490 Lafayette Street, Suite 304
Denver, CO 80218
(303) 440-8780

ADAM KOSHKIN
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
(415) 727-2237

# INDEX

| VOLUME I | | | |
|---|---|---|---|
| **ECF No.** | **Date** | **Document** | **Page** |
| – | – | District Court Docket | 1 |
| 5¹-3 | June 1, 2016 | Enforcement and Removal Operations National Detainee Handbook: Detention Management Division | 40 |
| 261-3 | April 29, 2020 | Declaration of Tae D. Johnson | 61 |
| 261-7 | April 29, 2020 | Declaration of Shannon Ely | 69 |
| 261-12 | April 29, 2020 | Excerpts from Deposition of Dawn Ceja | 76 |
| 261-18 | April 29, 2020 | ICE Facility Voluntary Work Program Pay Rates between 2011 and 2014 | 104 |
| 287-9 | June 26, 2020 | Excerpts of Deposition of Amber Martin | 105 |
| 287-17 | June 26, 2020 | Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California | 115 |
| 299-1 | July 31, 2020 | Excerpts from Deposition of David Venturella | 133 |

| 299-2 | July 31, 2020 | Excerpts of Deposition of Hugo A. Hernandez-Ceren | 159 |

| VOLUME II | | | |
| ECF No. | Date | Document | Page |
| --- | --- | --- | --- |
| 336-2 | October 26, 2020 | Excerpts from Deposition of Alejandro Menocal | 1 |
| 336-4 | October 26, 2020 | Excerpts from Deposition of Hugo A. Hernandez-Ceren | 38 |
| 336-8 | October 26, 2020 | Excerpts from Deposition of Dagoberto Vizguerra | 78 |
| 336-10 | October 26, 2020 | Excerpts from Deposition of Jesus Yepez Gaytan | 88 |
| 336-13 | October 26, 2020 | Excerpts from Deposition of Alejandro Hernandez Torres | 118 |
| 336-14 | October 26, 2020 | Excerpts from Deposition of Grisel Xahuentitla | 147 |
| 336-21 | October 26, 2020 | Psychiatric Report of Plaintiffs' Expert Dr. Stuart Grassian, M.D. | 160 |

| VOLUME III (SEALED) | | | |
| ECF No. | Date | Document | Page |
| --- | --- | --- | --- |
| 262-2 | April 29, 2020 | Excerpts from 2011 Contract Between GEO and ICE | 1 |

| 262-4 | April 29, 2020 | Excerpts from 2006 Contract Between GEO and ICE | 61 |
|---|---|---|---|
| 262-5 | April 29, 2020 | Excerpts from 2003 Contract Between GEO and ICE | 105 |
| 262-6 | April 29, 2020 | 2004 Detainee Work Plan | 131 |
| 262-7 | April 29, 2020 | 2014 Detainee Work Plan | 138 |
| 310-1 | August 17, 2020 | ICE National Detainee Handbook | 143 |
| 311-1 | August 17, 2020 | Excerpts from 2011 Contract Between GEO and ICE | 179 |

APPEAL,MJ CIV PP,NDISPO,STAYDI,STAYED

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:14-cv-02887-JLK-MEH

Menocal et al v. The GEO Group, Inc.

Assigned to: Judge John L. Kane

Referred to: Magistrate Judge Michael E. Hegarty

Case in other court:  USCA, 17-01125

                    USCA, 17-00701

                    Tenth Circuit, 22-01409

Cause: 05:704 Labor Litigation

Date Filed: 10/22/2014

Jury Demand: Defendant

Nature of Suit: 790 Other Labor Litigation

Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 10/22/2014 | 1 | COMPLAINT *CLASS ACTION COMPLAINT FOR UNPAID WAGES AND FORCED LABOR* against The GEO Group, Inc. (Filing fee $ 400,Receipt Number 1082-4105561)Attorney Brandt Powers Milstein added to party Olga Alexaklina(pty:pla), Attorney Brandt Powers Milstein added to party Lourdes Argueta(pty:pla), Attorney Brandt Powers Milstein added to party Marcos Brambila(pty:pla), Attorney Brandt Powers Milstein added to party Jesus Gaytan(pty:pla), Attorney Brandt Powers Milstein added to party Hugo Hernandez(pty:pla), Attorney Brandt Powers Milstein added to party Alejandro Menocal(pty:pla), Attorney Brandt Powers Milstein added to party Demetrio Valerga(pty:pla), Attorney Brandt Powers Milstein added to party Dagoberto Vizguerra(pty:pla), Attorney Brandt Powers Milstein added to party Grisel Xahuentitla(pty:pla), filed by Jesus Gaytan, Grisel Xahuentitla, Olga Alexaklina, Demetrio Valerga, Marcos Brambila, Dagoberto Vizguerra, Hugo Hernandez, Alejandro Menocal, Lourdes Argueta. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Milstein, Brandt) (Entered: 10/22/2014) |
| 10/23/2014 | 2 | Case assigned to Magistrate Judge Craig B. Shaffer. Text Only Entry. (jofox ) (Entered: 10/23/2014) |
| 10/23/2014 | 3 | SUMMONS issued by Clerk. Magistrate Judge Consent Form issued pursuant to Magistrate Judge Pilot Project to Assign Civil Cases to Full Time Magistrate Judges. (Attachments: # 1 Magistrate Judge Consent Form) (jofox ) (Entered: 10/23/2014) |
| 10/23/2014 | 4 | NOTICE of Entry of Appearance *as Counsel for Plaintiffs* by Robert Andrew Free on behalf of All Plaintiffs Attorney Robert Andrew Free added to party Olga Alexaklina(pty:pla), Attorney Robert Andrew Free added to party Lourdes Argueta(pty:pla), Attorney Robert Andrew Free added to party Marcos Brambila(pty:pla), Attorney Robert Andrew Free added to party Jesus Gaytan(pty:pla), Attorney Robert Andrew Free added to party Hugo Hernandez(pty:pla), Attorney Robert Andrew Free added to party Alejandro Menocal(pty:pla), Attorney Robert Andrew Free added to party Demetrio Valerga(pty:pla), Attorney Robert Andrew Free added to party Dagoberto Vizguerra(pty:pla), Attorney Robert Andrew Free added to party Grisel Xahuentitla(pty:pla) (Free, Robert) (Entered: 10/23/2014) |

**1 Supp. App. 1**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 7

| 10/28/2014 | 5 | SUMMONS Returned Executed by All Plaintiffs. GEO Group, Inc., The served on 10/24/2014, answer due 11/14/2014. (Milstein, Brandt) (Entered: 10/28/2014) |
|---|---|---|
| 10/31/2014 | 6 | NOTICE of Entry of Appearance by David R. DeMuro on behalf of GEO Group, Inc., TheAttorney David R. DeMuro added to party GEO Group, Inc., The(pty:dft) (DeMuro, David) (Entered: 10/31/2014) |
| 10/31/2014 | 7 | MINUTE ORDER setting a Scheduling Conference on 12/19/2014 at 11:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. ORDERED that parties shall adhere to the deadlines and instructions as set forth in Preparation for Rule 16(b) Scheduling Conference, located on the court's website under "Judicial Officers." Text Only Entry by Magistrate Judge Craig B. Shaffer on 10/31/14. (cbssec) (Entered: 10/31/2014) |
| 10/31/2014 | 8 | NOTICE of Entry of Appearance by Shelby Anne Felton on behalf of GEO Group, Inc., TheAttorney Shelby Anne Felton added to party GEO Group, Inc., The(pty:dft) (Felton, Shelby) (Entered: 10/31/2014) |
| 11/14/2014 | 9 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/14/2014) |
| 11/14/2014 | 10 | CASE REASSIGNED pursuant to 9 Consent to Jurisdiction of Magistrate Judge. Consent not achieved. This case is reassigned to Judge John L. Kane. All future pleadings should be designated as 14-cv-02887-JLK-CBS. (Text Only Entry) (nmarb, ) (Entered: 11/14/2014) |
| 11/14/2014 | 11 | MOTION to Dismiss by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A and B, # 2 Exhibit C and D)(Felton, Shelby) (Entered: 11/14/2014) |
| 11/17/2014 | 12 | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION to Dismiss by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/17/2014) |
| 11/17/2014 | 13 | MINUTE ORDER GRANTING Plaintiffs' Motion to Extend Deadline to Respond to Motion to Dismiss (Doc. 12), which is unopposed. ORDERED that the due date for Plaintiffs' response is extended fourteen days to and including December 19, 2014 by Judge John L. Kane on 11/17/14. Text Only Entry(jhawk, ) (Entered: 11/17/2014) |
| 11/21/2014 | 14 | MINUTE ORDER vacating the 12/19/14 Scheduling Conference in light of this case being reassigned per doc. # 10 . Text Only Entry by Magistrate Judge Craig B. Shaffer on 11/21/14. (cbssec) (Entered: 11/21/2014) |
| 12/19/2014 | 15 | RESPONSE to 11 MOTION to Dismiss filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Milstein, Brandt) (Entered: 12/19/2014) |
| 12/22/2014 | 16 | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION to Dismiss by Defendant GEO Group, Inc., The. (Felton, Shelby) (Entered: 12/22/2014) |
| 12/23/2014 | 17 | ORDER granting 16 Motion for Extension of Time to File Reply. Defendant has up to and including January 16, 2015, to file its reply in support of the Motion to Dismiss, by Judge John L. Kane on 12/23/14. Text Only Entry(jlksec) (Entered: 12/23/2014) |
| 01/16/2015 | 18 | REPLY to Response to 11 MOTION to Dismiss filed by Defendant GEO Group, Inc., |

**1 Supp. App. 2**

| | | The. (Attachments: # 1 Exhibit E, # 2 Exhibit F)(Felton, Shelby) (Entered: 01/16/2015) |
|---|---|---|
| 01/23/2015 | 19 | Unopposed MOTION for Leave to *File Sur-reply to* 18 Reply to Response to Motion by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 01/23/2015) |
| 01/27/2015 | 20 | ORDER granting 19 Motion for Leave. Plaintiffs shall file a sur-reply regarding Defendant's McNamara-O'Hara Service Contract Act and Government Contractor defense arguments no later than February 17, 2015, by Judge John L. Kane on 01/27/2015. (athom, ) (Entered: 01/27/2015) |
| 02/17/2015 | 21 | SURREPLY re 11 MOTION to Dismiss filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit) (Milstein, Brandt) (Entered: 02/17/2015) |
| 03/20/2015 | 22 | NOTICE of Change of Address/Contact Information by Alexander Neville Hood (Hood, Alexander) (Entered: 03/20/2015) |
| 07/06/2015 | 23 | Memorandum Opinion and ORDER. Plaintiffs' CMWO claims are dismissed, and Defendant's motion is denied with respect to Plaintiffs' TVPA and unjust enrichment claims. Entered by Judge John L. Kane on 07/06/15.(jhawk, ) (Entered: 07/07/2015) |
| 07/10/2015 | 24 | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for a Scheduling Conference at 11:00 a.m. on Tuesday, August 11, 2015, in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver. The parties shall prepare and file a Stipulated Scheduling and Discovery Order on or before Tuesday, August 4, 2015. See instructions for proper formatting of this order in Judge Kane's Pretrial and Trial Procedures Memorandum, available on the court's website at http://www.cod.uscourts.gov/Home.aspx (Select Judge Kane under "Judicial Officers," "Senior Article III Judges"). A form of order is also available on the website, and the parties' proposed Scheduling Order should follow the example provided, which is different from those used by magistrate and other judges of this court. Judge Kane requests that an editable version of the Stipulated Scheduling Order be emailed to chambers as well, at Kane_Chambers@cod.uscourts.gov.Counsel and pro se litigants shall read and strictly adhere to all instructions in the Judges Pretrial and Trial Procedures Memorandum. Particular attention is called to Part III, regarding motions for summary judgment. Entered by Judge John L. Kane on 07/10/15. Text Only Entry (jhawk, ) (Entered: 07/10/2015) |
| 07/15/2015 | 25 | NOTICE of Entry of Appearance by Charles A. Deacon on behalf of GEO Group, Inc., TheAttorney Charles A. Deacon added to party GEO Group, Inc., The(pty:dft) (Deacon, Charles) (Entered: 07/15/2015) |
| 07/20/2015 | 26 | ANSWER to 1 Complaint,,,, by GEO Group, Inc., The.(Felton, Shelby) (Entered: 07/20/2015) |
| 07/24/2015 | 27 | NOTICE of Entry of Appearance by Mark Thomas Emery on behalf of GEO Group, Inc., TheAttorney Mark Thomas Emery added to party GEO Group, Inc., The(pty:dft) (Emery, Mark) (Entered: 07/24/2015) |
| 08/04/2015 | 28 | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 08/04/2015) |
| 08/04/2015 | 29 | MOTION for Reconsideration re 23 Order on Motion to Dismiss by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 08/04/2015) |

**1 Supp. App. 3**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 9

| | | |
|---|---|---|
| 08/11/2015 | 30 | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 8/11/2015. Scheduling Order NOT approved and signed. Court Reporter: Kara Spitler. (babia) (Entered: 08/11/2015) |
| 08/24/2015 | 31 | MOTION to Strike 29 MOTION for Reconsideration re 23 Order on Motion to Dismiss by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 08/24/2015) |
| 08/24/2015 | 32 | MOTION to Stay *PLAINTIFFS' RESPONSE DEADLINE TO DEFENDANT'S MOTION FOR RECONSIDERATION [DOC. 29] PENDING A DECISION ON PLAINTIFFS' MOTION TO STRIKE [DOC. 31]* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga. (Hood, Alexander) (Entered: 08/24/2015) |
| 08/26/2015 | 33 | ORDER on Motion for Reconsideration. Defendant's Motion for Reconsideration 29 is DENIED, and Plaintiffs' Motion to Strike the Motion for Reconsideration 31 and Motion to Stay Plaintiffs' Response Deadline 32 are DENIED AS MOOT. Entered by Judge John L. Kane on 08/26/15.(jhawk, ) (Entered: 08/26/2015) |
| 08/31/2015 | 34 | STIPULATION for Extension of Time *for Discovery Responses* by Defendant GEO Group, Inc., The. (Felton, Shelby) (Entered: 08/31/2015) |
| 09/03/2015 | 35 | MINUTE ORDER. The parties are ORDERED to confer and jointly submit a proposed briefing schedule for the Plaintiffs' motion for class certification, as well as a proposed schedule for any discovery on class certification issues to be conducted in connection with that motion, on or before September 11, 2015. The Court will address the balance of the schedule in this case after resolution of Plaintiffs' class certification motion. Entered by Judge John L. Kane on 09/03/15. Text Only Entry (jhawk, ) (Entered: 09/04/2015) |
| 09/10/2015 | 36 | Joint STATUS REPORT by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 09/10/2015) |
| 09/11/2015 | 37 | MINUTE ORDER. Pursuant to the parties' Joint Status Report 36 , it is ORDERED that the parties shall have up to and including December 15, 2015 to complete discovery regarding class certification issues. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before January 11, 2016, Defendant's response will be filed on or before February 11, 2016, and Plaintiffs' reply will be filed on or before February 25, 2016. Entered by Judge John L. Kane on 09/11/15. Text Only Entry (jhawk, ) (Entered: 09/11/2015) |
| 09/22/2015 | 38 | MOTION for Order to *Certifying an Interlocutory Appeal and*, MOTION to Stay *Litigation Pending Appeal* by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 09/22/2015) |
| 10/13/2015 | 39 | RESPONSE to 38 MOTION for Order to *Certifying an Interlocutory Appeal and* MOTION to Stay *Litigation Pending Appeal* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Free, Robert) (Entered: 10/13/2015) |
| 10/21/2015 | 40 | BRIEF in Support of 38 MOTION for Order to *Certifying an Interlocutory Appeal and* MOTION to Stay *Litigation Pending Appeal* filed by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 10/21/2015) |
| 11/13/2015 | 41 | Unopposed MOTION for Extension of Time to *Complete Class Discovery and Class Certification Briefing* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, |

I Supp. App. 4

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 10

| | | |
|---|---|---|
| | | Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/13/2015) |
| 11/16/2015 | 42 | MINUTE ORDER. Plaintiffs' Unopposed Motion for Extension of Time 41 is GRANTED. It is ORDERED that the parties shall have up to and including January 26, 2016, to complete discovery regarding class certification issues. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before February 26, 2016; Defendant's response will be filed on or before March 21, 2016; and Plaintiffs' reply will be filed on or before April 7, 2016. Entered by Judge John L. Kane on 11/16/15. Text Only Entry(jhawk, ) (Entered: 11/16/2015) |
| 02/01/2016 | 43 | NOTICE of Change of Address/Contact Information by Shelby Anne Felton (Felton, Shelby) (Entered: 02/01/2016) |
| 02/05/2016 | 44 | Stipulated MOTION for Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Felton, Shelby) (Entered: 02/05/2016) |
| 02/08/2016 | 45 | Stipulated Protective Order Concerning Confidential Information re: 44 . Signed by Judge John L. Kane on 02/28/16.(jhawk, ) (Entered: 02/08/2016) |
| 02/10/2016 | 46 | Unopposed MOTION for Extension of Time to *COMPLETE CLASS DISCOVERY AND TO FILE A CLASS CERTIFICATION MOTION* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 02/10/2016) |
| 02/11/2016 | 47 | MINUTE ORDER. Plaintiffs' Unopposed Motion to Extend Class Discovery and Class Certification Motion Deadline 46 is GRANTED. It is ORDERED that the parties shall have up to and including March 31, 2016, for the taking of a 30 (b)(6) deposition of the defendant. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before May 6, 2016; Defendant's response will be filed on or before June 1, 2016; and Plaintiffs' reply will be filed on or before June 15, 2016. Entered by Judge John L. Kane on 02/11/16. Text Only Entry(jhawk, ) (Entered: 02/11/2016) |
| 03/17/2016 | 48 | ORDER on Motion for Interlocutory Appeal. Defendant's Motion for an Interlocutory Appeal (Doc. 38 ) is DENIED and Defendant's request for a stay pending appeal is DENIED AS MOOT. By Judge John L. Kane on 03/17/2016. (athom, ) (Entered: 03/18/2016) |
| 05/06/2016 | 49 | MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Ex. 3 - US DOL Wage Determination, # 2 Ex. 5 - Menocal Dec., # 3 Ex. 6 - Xahuentitla Dec., # 4 Ex. 7 - Argueta Dec., # 5 Ex. 8 - Gaytan Dec., # 6 Ex. 9 - Valerga Dec., # 7 Ex. 10 - Ortiz Dec., # 8 Ex. 11 - Hernandez Dec, # 9 Ex. 12 - Mendoza Dec, # 10 Ex. 17 - Plaintiffs' Counsel Decs.) (Hood, Alexander) (Entered: 05/06/2016) |
| 05/06/2016 | 50 | UNRESTRICTED DOCUMENT - Level 1-Exhibits to Motion to Certify 49 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Ex. 1 - FRCP 30(b)(6) Dep. of Defendant (Dawn Ceja), # 2 Ex. 2 - Policy and Procedure Manual (#1), # 3 Ex. 4 - Detainee Handbook Local Supp., # 4 Ex. 13 - Policy & Procedure Manual (#2), # 5 Ex. 14 - FRCP 30(b)(6) Dep. of Defendant (Melody Jean Furst), # 6 Ex. 15 - Man Days Billing Report Nov. 2012, # 7 Ex. 16 - Detainee Grievances)(Hood, Alexander) Modified on 5/9/2016 to add text (jhawk, ). |

**1 Supp. App. 5**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 11

| | | Modified on 5/23/2016 unrestricted as no motion to restrict was filed (jhawk, ). (Entered: 05/06/2016) |
|---|---|---|
| 06/01/2016 | 51 | RESPONSE to 49 MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit ICE Aurora Detainee Handbook, # 2 Exhibit PBNDS, # 3 Exhibit ICE National Detainee Handbook, # 4 Exhibit Ceja Declaration, # 5 Exhibit Whyte Decision, # 6 Exhibit VWP Application)(Emery, Mark) (Entered: 06/01/2016) |
| 06/15/2016 | 52 | REPLY to Response to 49 MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 06/15/2016) |
| 10/26/2016 | 53 | Unopposed MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (DeMuro, David) (Entered: 10/26/2016) |
| 10/26/2016 | 54 | ORDER granting 53 Motion to Withdraw as Attorney. ORDERED that Attorneys Shelby A. Felton and David R. DeMuro, co-counsel of record for the defendant The Geo Group, Inc., are hereby withdrawn as counsel of record for The Geo Group, Inc. ORDERED that the electronic mail notifications to Shelby A. Felton and David R. DeMuro are terminated in this case. Signed by Judge John L. Kane on 10/26/16.(jhawk, ) (Entered: 10/26/2016) |
| 10/26/2016 | 55 | NOTICE of Entry of Appearance by Dana L. Eismeier on behalf of GEO Group, Inc., TheAttorney Dana L. Eismeier added to party GEO Group, Inc., The(pty:dft) (Eismeier, Dana) (Entered: 10/26/2016) |
| 02/13/2017 | 56 | NOTICE *of Firm Name Change* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Turner, Andrew) (Entered: 02/13/2017) |
| 02/27/2017 | 57 | ORDER granting 49 Motion to Certify Class and Appointment of Class Counsel. The classes as proposed in the Motion are certified for Representatives' TVPA and unjust enrichment claims. Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerra, and Demetrio Valerga are named as representatives of the classes. Attorneys Brandt Milstein, Andrew Turner, Andrew Free, Alexander Hood, David Seligman, Andrew Schmidt, and Hans Meyer are appointed as counsel for the classes. To proceed with this case, the parties shall file a revised Proposed Stipulated Scheduling and Discovery Order by March 27, 2017. Signed by Judge John L. Kane on 02/27/17. (jhawk, ) (Entered: 02/27/2017) |
| 03/14/2017 | 58 | USCA Letter Advising they have docketed permission to appeal pursuant to 28 U.S.C.1292(b) and Fed. R. App. P. 5. USCA Case No 17-701. (Attachments: # 1 Petition for Permission to Appeal Class Certification, # 2 A, # 3 B) (jhawk, ) (Entered: 03/15/2017) |
| 03/27/2017 | 59 | Joint MOTION for Extension of Time to *File Proposed Stipulated Scheduling and Discovery Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 03/27/2017) |
| 03/28/2017 | 60 | ORDER granting 59 Joint Motion for Extension of Time. The parties shall file a revised Proposed Stipulated Scheduling and Discovery Order by March 31, 2017. Ordered by Judge John L. Kane on 3/28/2017. Text Only Entry (jlksec) (Entered: 03/28/2017) |
| 03/31/2017 | 61 | Proposed Scheduling Order *(Joint, Stipulated)* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, |

**1 Supp. App. 6**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 12

| | | Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Free, Robert) (Entered: 03/31/2017) |
|---|---|---|
| 04/05/2017 | 62 | ORDER on Proposed Scheduling and Discovery Order 61 . The parties are directed to call in jointly at (303) 844-6118 on or before April 13, 2017, to set a date and time for the conference. The Proposed Order indicates that the parties' dispute the effect of the relevant Touhy regulations, 6 C.F.R. 5.41, et seq., on discovery proceedings in this case. Signed by Judge John L. Kane on 04/05/17. (jhawk, ) (Entered: 04/05/2017) |
| 04/11/2017 | 63 | USCA Order. The clerk of this court is directed to open the new appeal once the clerk of the district court notifies this court that the filing fee has been paid. Id. at 5(d)(3). (USCA Case Number 17-701) (jhawk, ) (Entered: 04/12/2017) |
| 04/12/2017 | 64 | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for an IN PERSON Scheduling Conference before Judge Kane at 11:00 a.m. on Wednesday, June 7, 2017, in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver. The court will discuss the Proposed Scheduling and Discovery Order (ECF No. 61) at the hearing. Ordered by Judge John L. Kane on 4/12/2017. Text Only Entry (jlksec) (Entered: 04/12/2017) |
| 04/14/2017 | 65 | NOTICE OF APPEAL as to 57 Order on Motion to Certify Class, by Defendant GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 66 | USCA Appeal Fees received $ 505, receipt number 79387; Full Payment re 65 Notice of Appeal filed by GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 67 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 65 Notice of Appeal filed by GEO Group, Inc., The to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record) (jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 68 | USCA Case Number 17-1125 for 65 Notice of Appeal filed by GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/25/2017 | 69 | MOTION to Stay *Proceedings Pending Rule 23(f) Review* by Defendant GEO Group, Inc., The. (Emery, Mark) (Entered: 04/25/2017) |
| 04/26/2017 | 70 | TRANSCRIPT ORDER FORM re 65 Notice of Appeal by Defendant GEO Group, Inc., The (Emery, Mark) (Entered: 04/26/2017) |
| 04/26/2017 | 71 | LETTER TO USCA and all counsel certifying the record is complete as to 65 Notice of Appeal filed by GEO Group, Inc., The. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 17-01125) Text Only Entry (jhawk, ) (Entered: 04/26/2017) |
| 04/26/2017 | 72 | MOTION for Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A -- DOJ Letter, # 2 Exhibit B -- DOJ Letter, # 3 Exhibit C -- ICE Letter, # 4 Exhibit D -- ICE Letter)(Eismeier, Dana) (Entered: 04/26/2017) |
| 04/26/2017 | 73 | MOTION to Compel by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Ex. A - Defendant's Disclosures, # 2 Ex. B - Disclosed Documents, # 3 Ex. C - Email from Opposing Counsel, # 4 Ex. D - Defendant's Touhy Correspondence, # 5 Ex. E - Defendant's Discovery Response, # 6 Ex. F - Supplemental Discovery Response)(Hood, Alexander) (Entered: 04/26/2017) |
| 05/10/2017 | 74 | RESPONSE to 72 MOTION for Protective Order filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, |

**1 Supp. App. 7**

| | | Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit) (Milstein, Brandt) (Entered: 05/10/2017) |
|---|---|---|
| 05/11/2017 | 75 | Unopposed MOTION for Extension of Time to File Response/Reply as to 73 MOTION to Compel by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A -- Response to Motion to Compel, # 2 Exhibit A to Response to Motion to Compel -- Spreadsheet from AUSA)(Eismeier, Dana) (Entered: 05/11/2017) |
| 05/12/2017 | 76 | MINUTE ORDER GRANTING Doc. 75 , Defendant's Unopposed Motion for Permission to File Response out of Time. Doc. [75-1] is accepted as the Response to the Motion to Compel (Doc. 73 ) and Doc. [75-2] is accepted as Exhibit A to the Response to the Motion to Compel. Entered by Judge John L. Kane on 05/12/17. Text Only Entry (jhawk, ) (Entered: 05/12/2017) |
| 05/12/2017 | 77 | RESPONSE to 73 MOTION to Compel filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(jhawk, ) (Entered: 05/12/2017) |
| 05/16/2017 | 78 | BRIEF in Opposition to 69 MOTION to Stay *Proceedings Pending Rule 23(f) Review* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Seligman, David) (Entered: 05/16/2017) |
| 05/17/2017 | 79 | REPLY to Response to 72 MOTION for Protective Order filed by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 05/17/2017) |
| 05/17/2017 | 80 | REPLY to Response to 73 MOTION to Compel filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 05/17/2017) |
| 05/22/2017 | 81 | Amicus Curiae Brief filed by Shane Cain (jhawk, ) (Entered: 05/22/2017) |
| 05/30/2017 | 82 | REPLY to Response to 69 MOTION to Stay *Proceedings Pending Rule 23(f) Review* filed by Defendant GEO Group, Inc., The. (Emery, Mark) (Entered: 05/30/2017) |
| 06/06/2017 | 83 | MOTION to Withdraw as Attorney *Substitute Counsel* by Defendant GEO Group, Inc., The. (Ley, Michael) (Entered: 06/06/2017) |
| 06/06/2017 | 84 | ORDER Granting Plaintiffs' Motion to Compel 73 and Denying Defendant's Motion for Protective Order 72 . Signed by Judge John L. Kane on 06/06/17. (jhawk, ) (Entered: 06/06/2017) |
| 06/06/2017 | 85 | ORDER Granting in Part and Denying in Part the GEO Group, Inc's Motion to Stay Proceedings Pending Rule 239F0 Review 69 . Specifically, discovery on the class action issues is STAYED, but discovery on the above enumerated issues relating to liability and merits issues shall proceed in accordance with Federal Rule of Civil Procedure 26. Noting GEOs objection to not having been consulted regarding Plaintiffs discovery proposal, the exact number of depositions, requests for production, and interrogatories to be permitted will be addressed at the upcoming scheduling conference on June 7, 2016, at 11 a.m. Signed by Judge John L. Kane on 06/06/17. (jhawk, ) (Entered: 06/06/2017) |
| 06/06/2017 | 86 | MINUTE ORDER GRANTING Motion to Withdraw as Counsel (Doc. 83 ). Given that representation of Defendant will continue through Michael Y. Ley and Dana L. Eismeier of the same law firm, and Charles A. Deacon and Mark Emery of Norton Rose Fulbright US LLP, Attorney Erik Karl Schuessler is authorized to WITHDRAW as counsel. Mr. Schuessler SHALL be REMOVED from future electronic notifications in this case. Entered by Judge John L. Kane on 06/06/17. Text Only Entry (jhawk, ) (Entered: 06/06/2017) |

**I Supp. App. 8**

| | | |
|---|---|---|
| 06/07/2017 | 87 | NOTICE of Entry of Appearance by Juno E. Turner on behalf of All Plaintiffs Attorney Juno E. Turner added to party Olga Alexaklina(pty:pla), Attorney Juno E. Turner added to party Lourdes Argueta(pty:pla), Attorney Juno E. Turner added to party Marcos Brambila(pty:pla), Attorney Juno E. Turner added to party Jesus Gaytan(pty:pla), Attorney Juno E. Turner added to party Hugo Hernandez(pty:pla), Attorney Juno E. Turner added to party Alejandro Menocal(pty:pla), Attorney Juno E. Turner added to party Demetrio Valerga(pty:pla), Attorney Juno E. Turner added to party Dagoberto Vizguerra(pty:pla), Attorney Juno E. Turner added to party Grisel Xahuentitla(pty:pla) (Turner, Juno) (Entered: 06/07/2017) |
| 06/07/2017 | 88 | MINUTE ORDER. Directing the parties to submit a revised Proposed Stipulated Scheduling Order on or before June 30, 2017. Entered by Judge John L. Kane on 06/07/17. (jhawk, ) (Entered: 06/07/2017) |
| 06/07/2017 | 89 | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 6/7/2017. Scheduling Order NOT approved. Court Reporter: Julie Thomas. (babia) (Entered: 06/07/2017) |
| 06/08/2017 | 90 | NOTICE of Entry of Appearance by P. David Lopez on behalf of All Plaintiffs (Lopez, P.) (Entered: 06/08/2017) |
| 06/14/2017 | 91 | NOTICE of Entry of Appearance by Ashley Kathryn Boothby on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Ashley Kathryn Boothby added to party Olga Alexaklina(pty:pla), Attorney Ashley Kathryn Boothby added to party Lourdes Argueta(pty:pla), Attorney Ashley Kathryn Boothby added to party Marcos Brambila(pty:pla), Attorney Ashley Kathryn Boothby added to party Jesus Gaytan(pty:pla), Attorney Ashley Kathryn Boothby added to party Hugo Hernandez(pty:pla), Attorney Ashley Kathryn Boothby added to party Alejandro Menocal(pty:pla), Attorney Ashley Kathryn Boothby added to party Demetrio Valerga(pty:pla), Attorney Ashley Kathryn Boothby added to party Dagoberto Vizguerra(pty:pla), Attorney Ashley Kathryn Boothby added to party Grisel Xahuentitla(pty:pla) (Boothby, Ashley) (Entered: 06/14/2017) |
| 06/14/2017 | 92 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 91 Notice of Entry of Appearance, filed by attorneyAshleyK. Boothby. **DO NOT REFILE THE DOCUMENT. Action to take -** counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (jhawk, ) (Entered: 06/15/2017) |
| 06/16/2017 | 93 | NOTICE of Entry of Appearance by Elizabeth V. Stork on behalf of All Plaintiffs Attorney Elizabeth V. Stork added to party Olga Alexaklina(pty:pla), Attorney Elizabeth V. Stork added to party Lourdes Argueta(pty:pla), Attorney Elizabeth V. Stork added to party Marcos Brambila(pty:pla), Attorney Elizabeth V. Stork added to party Jesus Gaytan(pty:pla), Attorney Elizabeth V. Stork added to party Hugo Hernandez(pty:pla), Attorney Elizabeth V. Stork added to party Alejandro Menocal(pty:pla), Attorney Elizabeth V. Stork added to party Demetrio Valerga(pty:pla), Attorney Elizabeth V. Stork added to party Dagoberto Vizguerra(pty:pla), Attorney Elizabeth V. Stork added to party Grisel Xahuentitla(pty:pla) (Stork, Elizabeth) (Entered: 06/16/2017) |
| 06/16/2017 | 94 | NOTICE of Entry of Appearance by Ossai Miazad on behalf of All Plaintiffs Attorney Ossai Miazad added to party Olga Alexaklina(pty:pla), Attorney Ossai Miazad added to party Lourdes Argueta(pty:pla), Attorney Ossai Miazad added to party Marcos Brambila(pty:pla), Attorney Ossai Miazad added to party Jesus Gaytan(pty:pla), Attorney Ossai Miazad added to party Hugo Hernandez(pty:pla), Attorney Ossai Miazad added to |

**1 Supp. App. 9**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 15

| | | |
|---|---|---|
| | | party Alejandro Menocal(pty:pla), Attorney Ossai Miazad added to party Demetrio Valerga(pty:pla), Attorney Ossai Miazad added to party Dagoberto Vizguerra(pty:pla), Attorney Ossai Miazad added to party Grisel Xahuentitla(pty:pla) (Miazad, Ossai) (Entered: 06/16/2017) |
| 06/20/2017 | 95 | TRANSCRIPT of SCHEDULING CONFERENCE held on 6/7/17 before Judge Kane. Pages: 1-8. <br> **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Thomas, Julie) (Entered: 06/20/2017) |
| 06/27/2017 | 96 | **WITHDRAWN** NOTICE of Intent to Request Redaction by Michael York Ley re 95 Transcript,,, (Ley, Michael) Modified to show WITHDRAWN pursuant to ecf 102 on 7/13/2017 (cthom, ). (Entered: 06/27/2017) |
| 06/27/2017 | 97 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 96 Notice of Intent to Request Redaction filed by attorney Dana L. Eismeier. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take -** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (cthom, ) (Entered: 06/28/2017) |
| 06/30/2017 | 98 | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 06/30/2017) |
| 07/11/2017 | 99 | MOTION to Withdraw *Notice of Intent to Request Redaction* by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 07/11/2017) |
| 07/13/2017 | 100 | Joint MOTION for Extension of Time to *submit Stipulated and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 07/13/2017) |
| 07/13/2017 | 101 | ORDER granting 100 Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before July 28, 2017. Ordered by Judge John L. Kane on 7/13/2017. Text Only Entry (jlksec) (Entered: 07/13/2017) |
| 07/13/2017 | 102 | ORDER granting 99 Motion to Withdraw Notice of Intent to Request Redaction. The Notice of Intent to Request Redaction 96 is withdrawn. Ordered by Judge John L. Kane on 7/13/2017. Text Only Entry (jlksec) (Entered: 07/13/2017) |
| 07/14/2017 | 103 | SCHEDULING AND DISCOVERY ORDER by Judge John L. Kane on 7/14/2017. (cthom, ) (Entered: 07/14/2017) |
| 07/28/2017 | 104 | Second MOTION for Extension of Time to *File Proposed Stipulated Scheduling and Discovery Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 07/28/2017) |

**1 Supp. App. 10**

| | | |
|---|---|---|
| 07/28/2017 | 105 | ORDER granting 104 Second Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before August 4, 2017. Ordered by Judge John L. Kane on 7/28/2017. Text Only Entry (jlksec) (Entered: 07/28/2017) |
| 08/04/2017 | 106 | Third MOTION for Extension of Time to *submit Stipulated and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 08/04/2017) |
| 08/04/2017 | 107 | ORDER granting 106 Third Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before August 18, 2017. Ordered by Judge John L. Kane on 8/4/2017. Text Only Entry (jlksec) (Entered: 08/04/2017) |
| 08/16/2017 | 108 | STIPULATION *and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 08/16/2017) |
| 08/22/2017 | 109 | STIPULATION AND ORDER Concerning Production of Electronically Stored Information. ORDERED by Judge John L. Kane on 8/22/2017. (cthom, ) (Entered: 08/22/2017) |
| 09/21/2017 | 110 | Joint MOTION for Order to *Entry of Stipulated Order regarding the Disclosure of Privileged Information* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only) [Proposed] Stipulated Order regarding the Disclosure of Privileged Information)(Eismeier, Dana) (Entered: 09/21/2017) |
| 09/21/2017 | 111 | ORDER denying 110 Motion for Order. The parties Joint Motion for Entry of Stipulated Order Regarding the Disclosure of Privileged Information (ECF No. 110) is DENIED. A judicial act requires some basis, even under Federal Rule of Evidence 502(d). Here, the parties offer none. The motion may be re-filed with some justification for issuance of the order. Ordered by Judge John L. Kane on 9/21/2017. Text Only Entry (jlksec) (Entered: 09/21/2017) |
| 12/18/2017 | 112 | Stipulated MOTION for Extension of Time to *Extend Discovery Cut-Off* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Stork, Elizabeth) (Entered: 12/18/2017) |
| 12/18/2017 | 113 | ORDER Amending Scheduling and Discovery Order. IT IS HEREBY ORDERED the 112 Stipulated Motion and Proposed Order to Extend Discovery Cut-off is GRANTED and Plaintiffs shall respond to GEOs Second Set of Written Discovery on or before January 19, 2018. The discovery cut-off is extended to May 4, 2018. ORDERED by Judge John L. Kane on 12/18/2017. (cthom, ) (Entered: 12/19/2017) |
| 02/09/2018 | 114 | USCA Opinion as to 65 Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17-1125) (This document is not the Mandate) (cthom, ) (Entered: 02/12/2018) |
| 02/09/2018 | 115 | USCA Judgment as to 65 Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17-1125) (This document is not the Mandate) "We affirm the district court's certification of both classes. We grant theoutstanding motions for leave to file amicus briefs." (cthom, ) (Entered: 02/12/2018) |
| 02/12/2018 | 116 | MINUTE ORDER In light of the opinion of the Tenth Circuit Court of Appeals, this case is referred to Magistrate Judge Hegarty for him to conduct such conferences and proceedings as he deems appropriate for purposes of settlement. The parties amended |

**1 Supp. App. 11**

| | | Proposed Stipulated Scheduling Order shall be filed on or before March 12, 2018. ORDERED by Judge John L. Kane on 2/12/2018. (cthom, ) (Entered: 02/13/2018) |
|---|---|---|
| 02/13/2018 | 117 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 02/13/2018. Pursuant to the Order of Reference issued by the Honorable John L. Kane, ECF No. 116, on or before 2/16/2018, counsel for the parties shall first teleconference together, then call my chambers at (303) 844-4507 to schedule a Settlement Conference in this case. (mdave, ) (Entered: 02/13/2018) |
| 02/14/2018 | 118 | NOTICE of Entry of Appearance by Rachel Williams Dempsey on behalf of All Plaintiffs Attorney Rachel Williams Dempsey added to party Olga Alexaklina(pty:pla), Attorney Rachel Williams Dempsey added to party Lourdes Argueta(pty:pla), Attorney Rachel Williams Dempsey added to party Marcos Brambila(pty:pla), Attorney Rachel Williams Dempsey added to party Jesus Gaytan(pty:pla), Attorney Rachel Williams Dempsey added to party Hugo Hernandez(pty:pla), Attorney Rachel Williams Dempsey added to party Alejandro Menocal(pty:pla), Attorney Rachel Williams Dempsey added to party Demetrio Valerga(pty:pla), Attorney Rachel Williams Dempsey added to party Dagoberto Vizguerra(pty:pla), Attorney Rachel Williams Dempsey added to party Grisel Xahuentitla(pty:pla) (Dempsey, Rachel) (Entered: 02/14/2018) |
| 02/16/2018 | 119 | Unopposed MOTION to Withdraw as Attorney *of Record* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 02/16/2018) |
| 02/16/2018 | 120 | ORDER granting 119 Unopposed Motion for Withdrawal of Appearance. Elizabeth V. Stork is withdrawn as counsel of record for the Plaintiffs in the above-captioned matter. The clerk is directed to remove Elizabeth V. Stork from the CM/ECF notification system in connection with this case. ORDERED by Judge John L. Kane on 2/16/2018. (cthom, ) (Entered: 02/16/2018) |
| 02/20/2018 | 121 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 02/20/2018. Settlement Conference set for 5/2/2018 10:00 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (mdave, ) (Entered: 02/20/2018) |
| 03/05/2018 | 122 | ORDER of USCA as to 65 Notice of Appeal filed by GEO Group, Inc., The. (USCA Case No. 17-1125) (cthom, ) (Entered: 03/06/2018) |
| 03/09/2018 | 123 | Stipulated MOTION for Extension of Time to *File Amended Proposed Stipulated Scheduling Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 03/09/2018) |
| 03/09/2018 | 124 | ORDER granting 123 Motion for Extension of Time to File Amended Proposed Stipulated Scheduling Order. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to June 1, 2018. Ordered by Judge John L. Kane on 3/9/2018. Text Only Entry (jlksec) (Entered: 03/09/2018) |
| 03/13/2018 | 125 | MANDATE of USCA as to 115 USCA Order/Opinion/Judgment, 114 USCA Order/Opinion/Judgment, 65 Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17-1125) (cthom, ) (Entered: 03/13/2018) |
| 03/14/2018 | 126 | Unopposed MOTION for Leave to *Excuse In-Person Attendance at the Settlement Conference* 121 Minute Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 03/14/2018) |

**1 Supp. App. 12**

| | | |
|---|---|---|
| 03/16/2018 | 127 | MINUTE ORDER granting 126 Plaintiffs Unopposed Motion to Excuse In-person Attendance at the Settlement Conference by Magistrate Judge Michael E. Hegarty on 03/16/2018. (mdave, ) (Entered: 03/16/2018) |
| 05/04/2018 | 128 | MINUTE ENTRY FOR SETTLEMENT for proceedings held before Magistrate Judge Michael E. Hegarty: Settlement Conference was held on 5/2/2018 and no settlement was reached as to any claims in this action. (mdave, ) (Entered: 05/04/2018) |
| 05/15/2018 | 129 | NOTICE of Change of Address/Contact Information *for Plaintiffs' Attorney Alexander Hood* by Alexander Neville Hood (Hood, Alexander) (Entered: 05/15/2018) |
| 05/15/2018 | 130 | NOTICE of Change of Address/Contact Information *for Plaintiffs' Attorney David Seligman* by David Hollis Seligman (Seligman, David) (Entered: 05/15/2018) |
| 05/29/2018 | 131 | NOTICE of Change of Address/Contact Information by Rachel Williams Dempsey (Dempsey, Rachel) (Entered: 05/29/2018) |
| 05/31/2018 | 132 | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Monday, June 18, 2018. Ordered by Judge John L. Kane on 5/31/2018. Text Only Entry (jlksec) (Entered: 05/31/2018) |
| 06/11/2018 | 133 | Letter from U.S. Supreme Court regarding Petition for Writ of Certiorari re 65 Notice of Appeal ; assigned Supreme Court No. 17-1648 ( Appeal No. 17-1125) (cthom, ) (Entered: 06/11/2018) |
| 06/18/2018 | 134 | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Monday, July 23, 2018. Ordered by Judge John L. Kane on 6/18/2018. Text Only Entry (jlksec) (Entered: 06/18/2018) |
| 07/23/2018 | 135 | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Wednesday, August 22, 2018. Ordered by Judge John L. Kane on 7/23/2018. Text Only Entry (jlksec) (Entered: 07/23/2018) |
| 08/08/2018 | 136 | NOTICE of Change of Address/Contact Information by Andrew Hess Turner (Turner, Andrew) (Entered: 08/08/2018) |
| 08/16/2018 | 137 | MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty. Settlement Conference held on 8/16/2018. FTR: Hegarty (A501). (tsher, ) (Entered: 08/16/2018) |
| 08/20/2018 | 138 | NOTICE of Entry of Appearance by Elizabeth V. Stork on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Stork, Elizabeth) (Entered: 08/20/2018) |
| 08/22/2018 | 139 | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit B)(Turner, Juno) (Entered: 08/22/2018) |
| 08/24/2018 | 140 | NOTICE of Entry of Appearance *for Naomi Beer* by Naomi G. Beer on behalf of GEO Group, Inc., TheAttorney Naomi G. Beer added to party GEO Group, Inc., The(pty:dft) (Beer, Naomi) (Entered: 08/24/2018) |
| 08/24/2018 | 141 | NOTICE of Entry of Appearance *for David G. Palmer* by David G. Palmer on behalf of GEO Group, Inc., TheAttorney David G. Palmer added to party GEO Group, Inc., The(pty:dft) (Palmer, David) (Entered: 08/24/2018) |
| 08/29/2018 | 142 | MINUTE ORDER. After reviewing the Amended Proposed Stipulated Scheduling Order, I would like to set a Scheduling Conference. Counsel are instructed to call chambers |

| | | |
|---|---|---|
| | | JOINTLY on or before September 12, 2018, to set a date and time for the conference - 303-844-6118. The parties are instructed to refile the Proposed Scheduling Order incorporating Exhibit A dates directly into the order. Ordered by Judge John L. Kane on 8/29/2018. Text Only Entry (jlksec) (Entered: 08/29/2018) |
| 08/30/2018 | 143 | BRIEF *in Support of Defendant's Request for Depositions of Absent Class Members* by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A (Roberts Decision), # 2 Exhibit B (Hayter Declaration))(Eismeier, Dana) (Entered: 08/30/2018) |
| 08/30/2018 | 144 | MOTION for Discovery *Order re Plaintiffs' Opposition to Defendants' Request for Depositions of Absent Class Members* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Juno Turner, # 2 Exhibit A, # 3 Exhibit B, # 4 Certificate of Service)(Turner, Juno) (Entered: 08/30/2018) |
| 09/06/2018 | 145 | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for a Scheduling Conference at 10:30 a.m. on Wednesday, October 3, 2018, before Judge John L. Kane in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. Parties wishing to listen in telephonically may call chambers JOINTLY immediately prior to the hearing and the call will be transferred to the courtroom - 303-844-6118. Ordered by Judge John L. Kane on 9/6/2018. Text Only Entry (jlksec) (Entered: 09/06/2018) |
| 09/11/2018 | 146 | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Turner, Juno) (Entered: 09/11/2018) |
| 09/18/2018 | 147 | ORDER denying Defendant's 143 Request to Depose Absent Class Members. ORDERED by Judge John L. Kane on 9/18/2018. (cthom, ) (Entered: 09/18/2018) |
| 10/01/2018 | 148 | Letter from U.S. Supreme Court regarding Petition for Writ of Certiorari re 65 Notice of Appeal ; assigned Supreme Court No. 17-1648 ( Appeal No. 17-1125) "The petition for a writ of certiorari is denied." (cthom, ) (Entered: 10/02/2018) |
| 10/03/2018 | 149 | AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER Stipulated Protective Order due on or before October 31, 2018. The parties' proposed notice and plan for notice to the class shall be submitted on or before October 31, 2018 Deadline to Amend Pleadings: November 19, 2018. Discovery Cut-off: August 21, 2019. Expert disclosures: October 7, 2019. Rebuttal experts: November 22, 2019. Dispositive Motion Deadline: March 6, 2020. by Judge John L. Kane on 10/3/2018. (cthom, ) Modified to add dates on 10/3/2018 (cthom, ). (Entered: 10/03/2018) |
| 10/03/2018 | 150 | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 10/3/2018. Scheduling Order approved and signed. Court Reporter: Terri Lindblom. (babia) (Entered: 10/03/2018) |
| 10/31/2018 | 151 | Joint STATUS REPORT *and Stipulated Motion for Brief Extension* by Defendant GEO Group, Inc., The. (Beer, Naomi) Modified to add motion event on 11/1/2018 (cthom, ). (Entered: 10/31/2018) |
| 11/01/2018 | 152 | ORDER granting 151 Joint Status Report and Stipulated Motion for Brief Extension. The parties shall submit a proposed Rule 502(b) Order and a revised Protective Order on or before November 20, 2018. The deadline to submit a proposed Notice Plan is extended such that the Notice Plan is due two weeks after the Court has approved a revised Protective Order. Ordered by Judge John L. Kane on 11/1/2018. Text Only Entry (jlksec) (Entered: 11/01/2018) |

**1 Supp. App. 14**

| 11/12/2018 | 153 | NOTICE of Entry of Appearance by Adam Levin Koshkin on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Adam Levin Koshkin added to party Olga Alexaklina(pty:pla), Attorney Adam Levin Koshkin added to party Lourdes Argueta(pty:pla), Attorney Adam Levin Koshkin added to party Marcos Brambila(pty:pla), Attorney Adam Levin Koshkin added to party Jesus Gaytan(pty:pla), Attorney Adam Levin Koshkin added to party Hugo Hernandez(pty:pla), Attorney Adam Levin Koshkin added to party Alejandro Menocal(pty:pla), Attorney Adam Levin Koshkin added to party Demetrio Valerga(pty:pla), Attorney Adam Levin Koshkin added to party Dagoberto Vizguerra(pty:pla), Attorney Adam Levin Koshkin added to party Grisel Xahuentitla(pty:pla) (Koshkin, Adam) (Entered: 11/12/2018) |
| --- | --- | --- |
| 11/20/2018 | 154 | AMENDED Joint Motion for Entry of Stipulated Order Regarding the Disclosure of Privileged Information Pursuant to FRE 502(d) by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(Beer, Naomi) Modified to correct title and add motion event on 11/21/2018 (cthom, ). (Entered: 11/20/2018) |
| 11/20/2018 | 155 | Stipulated Motion for Entry of Proposed Amended Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit Amended Stipulated Protective Order Concerning Confidential Information)(Beer, Naomi) Modified to correct title and add motion event on 11/21/2018 (cthom, ). (Entered: 11/20/2018) |
| 11/26/2018 | 156 | STIPULATED ORDER Regarding the Disclosure of Privileged Information by Judge John L. Kane on 11/26/2018. (cthom, ) (Entered: 11/26/2018) |
| 11/26/2018 | 157 | AMENDED STIPULATED PROTECTIVE ORDER Concerning Confidential Information. ORDERED by Judge John L. Kane on 11/26/2018. (cthom, ) (Entered: 11/26/2018) |
| 12/10/2018 | 158 | Joint MOTION for Extension of Time to *submit a proposed Notice Plan* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 12/10/2018) |
| 12/11/2018 | 159 | ORDER granting 158 Motion for Extension of Time. The deadline to submit a proposed Notice Plan is extended to January 11, 2019. Ordered by Judge John L. Kane on 12/11/2018. Text Only Entry (jlksec) (Entered: 12/11/2018) |
| 12/17/2018 | 160 | Unopposed MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Deacon, Charles) (Entered: 12/17/2018) |
| 12/18/2018 | 161 | ORDER granting 160 Unopposed Motion to Withdraw as Attorney. Charles A. Deacon and Mark Emery of the firm of Norton Rose Fulbright US LLP are withdrawn as counsel of record for the Defendant. ORDERED by Judge John L. Kane on 12/18/2018. (cthom, ) (Entered: 12/18/2018) |
| 01/11/2019 | 162 | Joint MOTION for Issuance *of Plaintiffs' Class Notice Distribution Plan* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A - Class Notice, # 2 Exhibit B - Sample Radio Advertisement Script, # 3 Exhibit C - Sample Online Advertisement Text, # 4 Exhibit D - Proposed Press Release)(Turner, Juno) (Entered: 01/11/2019) |
| 01/14/2019 | 163 | ORDER Approving Plaintiffs' Class Notice Plan by Judge John L. Kane on 1/14/2019. (Attachments: # 1 Class Notice, # 2 Radio Advertisement Script, # 3 Online Advertisement Text, # 4 Press Release)(cthom, ) (Entered: 01/14/2019) |

**1 Supp. App. 15**

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 21

| | | |
|---|---|---|
| 03/12/2019 | 164 | NOTICE of Entry of Appearance by Valerie Eifert Brown on behalf of GEO Group, Inc., TheAttorney Valerie Eifert Brown added to party GEO Group, Inc., The(pty:dft) (Brown, Valerie) (Entered: 03/12/2019) |
| 03/12/2019 | 165 | MOTION to Withdraw as Attorney *of Record* by Defendant GEO Group, Inc., The. (Beer, Naomi) (Entered: 03/12/2019) |
| 03/13/2019 | 166 | ORDER granting 165 Motion to Withdraw as Attorney. David G. Palmer and Naomi G. Beer of the firm of Greenberg Traurig, LLP are withdrawn as counsel of record for the Defendant in the above-captioned matter. Scott A. Schipma is not an attorney of record in the case. ORDERED by Judge John L. Kane on 3/13/2019. (cthom, ) (Entered: 03/13/2019) |
| 03/14/2019 | 167 | NOTICE of Entry of Appearance by Carolyn Patrice Short on behalf of GEO Group, Inc., TheAttorney Carolyn Patrice Short added to party GEO Group, Inc., The(pty:dft) (Short, Carolyn) (Entered: 03/14/2019) |
| 03/18/2019 | 168 | **WITHDRAWN** MOTION to Compel by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Juno Turner, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit O)(Turner, Juno) Modified to show withdrawn pursuant to 175 Order on 4/3/2019 (cthom, ). (Entered: 03/18/2019) |
| 03/18/2019 | 169 | (RESTRICTED DOCUMENT - Level 1) Exhibits by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit N)(Turner, Juno) Modified to add title on 3/19/2019 (cthom, ). (Entered: 03/18/2019) |
| 03/20/2019 | 170 | MINUTE ORDER re: 168 Defendant is DIRECTED to file a Response to Plaintiffs' Motion to Compel on or before April 2, 2019. Additionally, the parties are DIRECTED to call chambers JOINTLY at (303) 844-6118 on or before March 26, 2019, to set a date and time for a hearing on the motion. Available dates for the hearing are April 8th, 9th, or 11th. In-person attendance by at least one attorney for each side is required. Ordered by Judge John L. Kane on 3/20/2019. Text Only Entry (jlksec) (Entered: 03/20/2019) |
| 03/22/2019 | 171 | MINUTE ORDER re: 168 MOTION to Compel. A Motion Hearing is set for Tuesday, April 9, 2019, at 10:30 AM before Judge John L. Kane in Courtroom A802 of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. Ordered by Judge John L. Kane on 3/22/2019. Text Only Entry (jlksec) (Entered: 03/22/2019) |
| 04/01/2019 | 172 | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 04/01/2019) |
| 04/02/2019 | 173 | ORDER granting 172 Motion for Leave to Restrict. ORDERED by Judge John L. Kane on 4/2/2019. (cthom, ) (Entered: 04/02/2019) |
| 04/02/2019 | 174 | STIPULATION re 168 MOTION to Compel by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 04/02/2019) |
| 04/03/2019 | 175 | ORDER Regarding Plaintiffs' 168 Motion to Compel and 174 Stipulation of Plaintiffs' Motion to Compel Discovery. The 174 Stipulation is construed as a Motion to Withdraw the 168 Motion to Compel and is GRANTED. Plaintiffs' Motion to Compel is WITHDRAWN without prejudice to refile, and the Motion Hearing set for April 9, 2019, at 10:30 a.m. is VACATED. ORDERED by Judge John L. Kane on 4/3/2019. (cthom, ) (Entered: 04/03/2019) |

**1 Supp. App. 16**

| | | |
|---|---|---|
| 04/04/2019 | 176 | NOTICE of Entry of Appearance by Stacy Delayne Blank on behalf of GEO Group, Inc., TheAttorney Stacy Delayne Blank added to party GEO Group, Inc., The(pty:dft) (Blank, Stacy) (Entered: 04/04/2019) |
| 04/26/2019 | 177 | MOTION to Withdraw *Affirmative Defense No. 20* by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 04/26/2019) |
| 04/29/2019 | 178 | ORDER granting 177 Unopposed Motion to Withdraw an Affirmative Defense Stated in Defendant's Answer. ORDERED by Judge John L. Kane on 4/29/2019.(cthom, ) (Entered: 04/29/2019) |
| 05/16/2019 | 179 | NOTICE of Change of Address/Contact Information *and Change of Firm* by Juno E. Turner (Turner, Juno) (Entered: 05/16/2019) |
| 05/30/2019 | 180 | NOTICE of Entry of Appearance by Michael J. Scimone on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Michael J. Scimone added to party Olga Alexaklina(pty:pla), Attorney Michael J. Scimone added to party Lourdes Argueta(pty:pla), Attorney Michael J. Scimone added to party Marcos Brambila(pty:pla), Attorney Michael J. Scimone added to party Jesus Gaytan(pty:pla), Attorney Michael J. Scimone added to party Hugo Hernandez(pty:pla), Attorney Michael J. Scimone added to party Alejandro Menocal(pty:pla), Attorney Michael J. Scimone added to party Demetrio Valerga(pty:pla), Attorney Michael J. Scimone added to party Dagoberto Vizguerra(pty:pla), Attorney Michael J. Scimone added to party Grisel Xahuentitla(pty:pla) (Scimone, Michael) (Entered: 05/30/2019) |
| 05/30/2019 | 181 | MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Michael Scimone, # 2 Affidavit of Alexander Hood, # 3 Index of Exhibits, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P, # 20 Exhibit Q, # 21 Exhibit R, # 22 Proposed Order (PDF Only))(Scimone, Michael) (Entered: 05/30/2019) |
| 06/11/2019 | 182 | NOTICE of Entry of Appearance by Patrick J. McCabe on behalf of GEO Group, Inc., TheAttorney Patrick J. McCabe added to party GEO Group, Inc., The(pty:dft) (McCabe, Patrick) (Entered: 06/11/2019) |
| 06/13/2019 | 183 | MOTION to Withdraw as Attorney *Ashley K. Boothby* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 06/13/2019) |
| 06/14/2019 | 184 | ORDER granting 183 Motion to Withdraw as Attorney Ashley Kathryn Boothby. ORDERED by Judge John L. Kane on 6/14/2019.(cthom, ) (Entered: 06/14/2019) |
| 06/18/2019 | 185 | Unopposed MOTION to Amend/Correct/Modify 163 Order on Motion for Issuance by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only), # 2 Affidavit of Michael Scimone, # 3 Affidavit of Anna Joseph, # 4 Affidavit of Nicole Ramos, # 5 Affidavit of Nan Schivone, # 6 Affidavit of Scott Simpson)(Scimone, Michael) (Entered: 06/18/2019) |
| 06/20/2019 | 186 | ORDER granting Plaintiffs' 185 Unopposed Motion to Amend Notice Plan. No later than July 22, 2019, Plaintiffs shall distribute notice to the class as ordered for a ninety (90) day |

**1 Supp. App. 17**

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 23

| | | period.ORDERED by Judge John L. Kane on 6/20/2019.(cthom, ) (Entered: 06/20/2019) |
|---|---|---|
| 06/20/2019 | [187](#) | BRIEF in Opposition to [181](#) MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Affidavit of Dawn Ceja, # [2](#) Affidavit of Valerie Brown, # [3](#) Exhibit Index of Exhibits, # [4](#) Exhibit A, # [5](#) Exhibit B, # [6](#) Exhibit C, # [7](#) Exhibit D, # [8](#) Exhibit E, # [9](#) Exhibit F, # [10](#) Exhibit G, # [11](#) Exhibit I)(Short, Carolyn) (Entered: 06/20/2019) |
| 06/20/2019 | [188](#) | NOTICE of Filing of Exhibit by Defendant GEO Group, Inc., The. (Short, Carolyn) Modified to add text pursuant to [191](#) Order on 6/28/2019 (cthom, ). (Entered: 06/20/2019) |
| 06/20/2019 | [189](#) | (RESTRICTED DOCUMENT - Level 1) Exhibit H to [187](#) Brief in Opposition by Defendant GEO Group, Inc., The.. (Short, Carolyn) Modified to add title on 6/21/2019 (cthom, ). (Entered: 06/20/2019) |
| 06/27/2019 | [190](#) | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 06/27/2019) |
| 06/28/2019 | [191](#) | ORDER Granting [190](#) Motion for Leave to Restrict and Directing the Clerk to terminate [188](#) Motion and modify the text to read "Notice of Filing of Exhibit." ORDERED by Judge John L. Kane on 6/28/2019.(cthom, ) (Entered: 06/28/2019) |
| 07/03/2019 | [192](#) | REPLY to Response to [181](#) MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # [1](#) Affidavit of Michael Scimone, # [2](#) Exhibit A, # [3](#) Exhibit B)(Scimone, Michael) (Entered: 07/03/2019) |
| 07/11/2019 | [193](#) | MOTION for Leave to *File Surreply to* [181](#) MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Exhibit A) (Short, Carolyn) (Entered: 07/11/2019) |
| 07/11/2019 | [194](#) | DECLARATION of *Valerie Brown* regarding MOTION for Leave to *File Surreply to* [181](#) MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* [193](#) by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 07/11/2019) |
| 07/19/2019 | [195](#) | Stipulated MOTION for Extension of Time to *Provide Class Notice* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # [1](#) Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 07/19/2019) |
| 07/19/2019 | [196](#) | ORDER granting [195](#) Stipulated Motion to Extend the Notice Deadline. No later than August 21, 2019, Plaintiffs shall distribute notice to the class according to the [186](#) Class Notice Plan approved by the Court. ORDERED by Judge John L. Kane on 7/19/2019. (cthom, ) (Entered: 07/19/2019) |
| 07/29/2019 | [197](#) | Joint MOTION to Extend Discovery Deadlines by Defendant GEO Group, Inc., The. (Short, Carolyn) Modified on 7/30/2019 to edit title. (sphil, ). (Entered: 07/29/2019) |
| 07/30/2019 | 198 | ORDER granting [197](#) Joint Motion to Extend Discovery Deadlines. AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER. The Discovery Cut-off is extended to October 21, 2019; expert disclosures are due November 21, 2019; rebuttal experts disclosures due January 6, 2020; expert witness depositions due by February 7, 2020; and Dispositive Motion Deadline is extended to April 20, 2020. Ordered by Judge John L. Kane on 7/30/2019. Text Only Entry(jlksec) (Entered: 07/30/2019) |
| 08/01/2019 | [199](#) | NOTICE of Entry of Appearance by Colin Louis Barnacle on behalf of GEO Group, Inc., TheAttorney Colin Louis Barnacle added to party GEO Group, Inc., The(pty:dft) (Barnacle, Colin) (Entered: 08/01/2019) |

**1 Supp. App. 18**

| | | |
|---|---|---|
| 08/01/2019 | 200 | NOTICE of Entry of Appearance by Christopher John Eby on behalf of GEO Group, Inc., TheAttorney Christopher John Eby added to party GEO Group, Inc., The(pty:dft) (Eby, Christopher) (Entered: 08/01/2019) |
| 08/01/2019 | 201 | NOTICE of Entry of Appearance by Ashley Elizabeth Calhoun on behalf of GEO Group, Inc., TheAttorney Ashley Elizabeth Calhoun added to party GEO Group, Inc., The(pty:dft) (Calhoun, Ashley) (Entered: 08/01/2019) |
| 08/01/2019 | 202 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 08/01/2019) |
| 08/01/2019 | 203 | MINUTE ORDER. Pursuant to D.C.COLO.LAttyR 5(b), any attorney wanting to withdraw from a case who has already made an appearance must do so by filing a Motion to Withdraw as Counsel, electronically ("s/") signed, using his/her own ecf account. However, having received and reviewed Ms. Short's Motion to Withdraw Appearance 202 and under the circumstances presented, it is ORDERED that the Motion is GRANTED. Carolyn Short, Valerie Brown, Patrick McCabe and Stacy Blank of Holland & Knight LLP are authorized to WITHDRAW as counsel. They shall be removed from future electronic notifications in this case. ORDERED by Judge John L. Kane on 8/1/20109. Text Only Entry(sphil, ) (Entered: 08/01/2019) |
| 08/20/2019 | 204 | Stipulated MOTION for Extension of Time to *Provide Class Notice* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Scimone, Michael) (Entered: 08/20/2019) |
| 08/20/2019 | 205 | ORDER by Judge John L. Kane on 8/20/2019, re: 204 Plaintiffs' Stipulated Motion to Extend the Class Notice Deadline is GRANTED and ORDERS as follows: **No later than October 21, 2019**, Plaintiffs shall distribute notice to the class according to the Class Notice Plan approved by the Court (ECF No. 186). (sphil, ) (Entered: 08/20/2019) |
| 09/10/2019 | 206 | Supplemental Brief in further support to 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection of Filing of Supplemental Brief in Further Support* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Affidavit of Michael Scimone, # 2 Exhibit A)(Scimone, Michael) Modified on 9/19/2019 to edit document title. (sphil, ). (Entered: 09/10/2019) |
| 09/24/2019 | 207 | Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 09/24/2019) |
| 09/24/2019 | 208 | DECLARATION of *Michael J. Scimone* regarding Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* 207 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Scimone, Michael) (Entered: 09/24/2019) |
| 09/24/2019 | 209 | MINUTE ORDER by Judge John L. Kane on 9/24/2019. Upon review of Plaintiffs' Supplemental Brief in Further Support of Motion to Compel (Doc. 206) and Plaintiffs' Motion to Compel Production of Documents and Enforce this Courts Prior Order (Doc. 207), I find Responses from Defendant The GEO Group, Inc. are necessary. Consequently, GEO is **DIRECTED** to file a Supplemental Response to Plaintiffs' Supplemental Brief (Doc. 206) and a Response to Plaintiffs newest Motion to Compel (Doc. 207) **on or before October 1, 2019**. The expedited timeline is dictated by the |

**1 Supp. App. 19**

| | | |
|---|---|---|
| | | impending depositions. Text Only Entry. (sphil, ) Modified on 9/24/2019 to edit text. (sphil, ). (Entered: 09/24/2019) |
| 10/01/2019 | 210 | RESPONSE to 206 Notice (Other), by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A - ICE Correspondence)(Barnacle, Colin) (Entered: 10/01/2019) |
| 10/01/2019 | 211 | RESPONSE to 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* filed by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 10/01/2019) |
| 10/02/2019 | 212 | REPLY to Response to 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order and Reply to Response to 206 Notice*. filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 10/02/2019) |
| 10/02/2019 | 213 | DECLARATION of *Michael J. Scimone* regarding Reply to Response to Motion, 212 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 10/02/2019) |
| 10/02/2019 | 214 | AMENDED ORDER OF REFERENCE TO MAGISTRATE JUDGE. Pursuant to 28 U.S.C. §636(b) (1)(A) and (B) and Fed.R.Civ.P. 72(a), United States Magistrate Judge Michael Hegarty is designated to conduct proceedings in this civil action as follows: Conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause; Convene such settlement conferences and direct related procedures as may facilitate resolution of this case; Hear and determine pretrial matters, including discovery and other non-dispositive motions; Refer the case to a special master, if necessary, by Judge John L. Kane on 10/2/2019. (evana, ) (Entered: 10/02/2019) |
| 10/02/2019 | 215 | MEMORANDUM regarding 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan, 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Jesus Gaytan, 193 MOTION for Leave to *File Surreply to 181* MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by GEO Group, Inc. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/2/2019. Text Only Entry (jlksec) (Entered: 10/02/2019) |
| 10/03/2019 | 216 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 10/3/2019 denying without prejudice 181 Motion to Compel 30(b)(6) Deposition and Videotaped Inspection and 207 Motion to Compel Production of Documents and Enforce This Courts Prior Order. 193 Motion for Leave to File Surreply is granted in part and denied in part. (tsher, ) (Entered: 10/03/2019) |
| 10/08/2019 | 217 | Stipulated MOTION for Extension of Time to *Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 10/08/2019) |
| 10/08/2019 | 218 | MEMORANDUM regarding 217 Stipulated MOTION for Extension of Time to *Complete Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, |

**1 Supp. App. 20**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 26

| | | |
|---|---|---|
| | | Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/8/2019. Text Only Entry (jlksec) (Entered: 10/08/2019) |
| 10/09/2019 | 219 | MINUTE ORDER granting 217 Motion to Extend Discovery Deadlines File by Magistrate Judge Michael E. Hegarty on 10/9/2019. Designation due by 12/23/2019. Discovery due by 11/21/2019. Designation of Rebuttal Experts due 2/6/2020(tsher, ) (Entered: 10/09/2019) |
| 10/11/2019 | 220 | Joint STATUS REPORT by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 10/11/2019) |
| 10/15/2019 | 221 | Set Hearing: Informal Discovery Conference set for 10/18/2019 10:30 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty pursuant to 216 Minute Order. Text Only Entry. (tsher, ) (Entered: 10/15/2019) |
| 10/16/2019 | 222 | NOTICE of Entry of Appearance by Melissa Louise Cizmorris on behalf of GEO Group, Inc., TheAttorney Melissa Louise Cizmorris added to party GEO Group, Inc., The(pty:dft) (Cizmorris, Melissa) (Entered: 10/16/2019) |
| 10/16/2019 | 223 | NOTICE of Entry of Appearance by Allison N. Angel on behalf of GEO Group, Inc., TheAttorney Allison N. Angel added to party GEO Group, Inc., The(pty:dft) (Angel, Allison) (Entered: 10/16/2019) |
| 10/17/2019 | 224 | MOTION for Leave to Appear *Juno Turner* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 10/17/2019) |
| 10/17/2019 | 225 | MEMORANDUM regarding 224 MOTION for Leave to Appear *Juno Turner* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/17/2019. Text Only Entry (jlksec) (Entered: 10/17/2019) |
| 10/18/2019 | 226 | ORDER granting 224 Unopposed Motion for Leave to Appear. Juno Turner of Towards Justice is permitted to join the discovery conference on October 18, 2019, by telephone and shall do so by calling Judge Hegarty's chambers at 303-844-4507 by 10:30 a.m. ORDERED by Magistrate Judge Michael E. Hegarty on 10/18/2019. Text Only Entry. (cthom, ) (Entered: 10/18/2019) |
| 10/18/2019 | 227 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 10/18/2019.FTR: A501. (cthom, ) (Entered: 10/18/2019) |
| 11/13/2019 | 228 | STIPULATION *Regarding Depositions of Trial Witnesses* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 11/13/2019) |
| 12/06/2019 | 229 | Stipulated MOTION for Extension of Time to *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 12/06/2019) |
| 12/09/2019 | 230 | MEMORANDUM regarding 229 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, |

**1 Supp. App. 21**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 27

| | | |
|---|---|---|
| | | Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty, by Judge John L. Kane on 12/9/2019. Text Only Entry (jlksec) (Entered: 12/09/2019) |
| 12/09/2019 | 231 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 12/9/2019 granting 229 Stipulated Motion to Extend Expert Discovery Deadlines. Initial Expert Disclosures Deadline due 2/14/2020.Rebuttal Expert Disclosures Deadline due 3/30/2020.Expert Witness Depositions Deadline due 4/20/2020. (jgonz, ) (Entered: 12/09/2019) |
| 12/19/2019 | 232 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 12/19/2019. Discovery Conference set for 1/21/2020 01:30 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 12/19/2019) |
| 12/31/2019 | 233 | TRANSCRIPT of Discovery Conference held on October 18, 2019 before Magistrate Judge Hegarty. Pages: 1-99. NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov. Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 12/31/2019) |
| 01/10/2020 | 234 | Unopposed MOTION to Withdraw as Attorney by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 01/10/2020) |
| 01/13/2020 | 235 | ORDER Granting 234 the Unopposed Motion for Withdrawal of Appearance of Elizabeth V. Stork. The Court hereby orders that Elizabeth V. Stork is withdrawn as counsel of record for the Plaintiffs in the above-captioned matter. Ms. Stork shall be removed from future electronic notifications in this case, by Judge John L. Kane on 1/10/2020.(evana, ) (Entered: 01/13/2020) |
| 01/21/2020 | 236 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 1/21/2020. FTR: A1002. (cthom, ) (Entered: 01/21/2020) |
| 02/04/2020 | 237 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 01/21/2020 before Magistrate Judge Hegarty. Pages: 1-38. Prepared by: AB Court Reporting & Video, Inc.. NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov. Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 02/04/2020) |
| 02/10/2020 | 238 | NOTICE of Entry of Appearance by Adrienne Scheffey on behalf of GEO Group, Inc., TheAttorney Adrienne Scheffey added to party GEO Group, Inc., The(pty:dft) (Scheffey, Adrienne) (Entered: 02/10/2020) |
| 02/11/2020 | 239 | NOTICE of Entry of Appearance by Brianne Michelle Power on behalf of All Plaintiffs Attorney Brianne Michelle Power added to party Olga Alexaklina(pty:pla), Attorney Brianne Michelle Power added to party Lourdes Argueta(pty:pla), Attorney Brianne Michelle Power added |

| | | |
|---|---|---|
| | | Michelle Power added to party Marcos Brambila(pty:pla), Attorney Brianne Michelle Power added to party Jesus Gaytan(pty:pla), Attorney Brianne Michelle Power added to party Hugo Hernandez(pty:pla), Attorney Brianne Michelle Power added to party Alejandro Menocal(pty:pla), Attorney Brianne Michelle Power added to party Demetrio Valerga(pty:pla), Attorney Brianne Michelle Power added to party Dagoberto Vizguerra(pty:pla), Attorney Brianne Michelle Power added to party Grisel Xahuentitla(pty:pla) (Power, Brianne) (Entered: 02/11/2020) |
| 02/13/2020 | 240 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 2/13/2020. Discovery Conference set for 2/18/2020 01:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 02/13/2020) |
| 02/14/2020 | 241 | Stipulated MOTION for Extension of Time to *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 02/14/2020) |
| 02/14/2020 | 242 | MEMORANDUM regarding 241 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 02/14/2020. Text Only Entry (jlksec) (Entered: 02/14/2020) |
| 02/18/2020 | 243 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 2/18/2020. 241 Stipulated MOTION for Extension of Time to Complete Expert Discovery is GRANTED. FTR: A501. (cthom, ) (Entered: 02/18/2020) |
| 02/24/2020 | 244 | MOTION to Withdraw as Attorney *(Allison N. Angel)* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 02/24/2020) |
| 02/24/2020 | 245 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 244 MOTION for Withdrawal of Attorney Allison N. Angel filed by Attorney Colin Barnacle. The document is filed incorrectly. REFILE THE DOCUMENT. Action to take - The attorney Allison N. Angel must file a Motion to Withdraw on her own from this case, not another attorney from the same law firm.(Text Only Entry) (evana, ) (Entered: 02/24/2020) |
| 02/24/2020 | 246 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Angel, Allison) (Entered: 02/24/2020) |
| 02/24/2020 | 247 | ORDER THIS MATTER comes before the Court on the Defendant's Motion for Withdrawal of Attorney Allison N. Angel (ECF No. 246 ). The Motion is GRANTED.The Court orders that Allison N. Angel shall be removed as counsel of record for Defendant and shall be removed from future electronic notifications in this case. The Motion filed on her behalf earlier today is MOOTED (ECF No. 244 ). Ms. Angel is advised to update her contact information through the Attorney Services Portal, by Judge John L. Kane on 2/24/2020.(evana, ) (Entered: 02/25/2020) |
| 03/10/2020 | 248 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 3/10/2020. Settlement Conference set for 3/31/2020 10:30 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 03/11/2020) |
| 03/18/2020 | 249 | Stipulated MOTION for Extension of Time to *File Dispositive Motions, Complete Discovery and Designate Experts* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 03/18/2020) |

**1 Supp. App. 23**

Appellate Case: 22-1409      Document: 38-1      Date Filed: 03/24/2023      Page: 29

| | | |
|---|---|---|
| 03/18/2020 | 250 | ORDER Granting 249 Stipulated Motion for Extension of Deadlines. The Parties shall file dispositive motions on or before May 20, 2020; complete discovery by May 20, 2020; designate affirmative experts by April 20, 2020, and designate rebuttal experts by June 3, 2020. By Judge John L. Kane on 03/18/2020. (rvill, ) (Entered: 03/18/2020) |
| 03/24/2020 | 251 | Unopposed MOTION for Leave to *Excuse In-Person Appearance at Settlement Conference* 248 Minute Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 03/24/2020) |
| 03/24/2020 | 252 | MEMORANDUM regarding 251 Unopposed MOTION for Leave to *Excuse In-Person Appearance at Settlement Conference* 248 Minute Order filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 3/24/2020. Text Only Entry (jlksec) (Entered: 03/24/2020) |
| 03/26/2020 | 253 | MINUTE ORDER granting 251 Motion for Leave to Excuse In-Person Appearance at Settlement Conference, by Magistrate Judge Michael E. Hegarty on 3/26/2020.(tsher, ) (Entered: 03/26/2020) |
| 04/02/2020 | 254 | MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty: Settlement Conference held on 3/31/2020. (cthom, ) Modified to correct date on 4/3/2020 (cthom, ). (Entered: 04/03/2020) |
| 04/07/2020 | 255 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 4/7/2020. Status Conference set for 4/8/2020 02:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 04/07/2020) |
| 04/08/2020 | 256 | Stipulated MOTION for Extension of Time to *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 04/08/2020) |
| 04/08/2020 | 257 | MEMORANDUM regarding 256 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 4/8/2020. Text Only Entry (jlksec) (Entered: 04/08/2020) |
| 04/08/2020 | 258 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Status Conference held on 4/8/2020. FTR: A501. (cthom, ) (Entered: 04/08/2020) |
| 04/08/2020 | 259 | MINUTE ORDER granting 256 Motion to Extend Expert Discovery Deadlines by Magistrate Judge Michael E. Hegarty on 4/8/2020. Designation of Affirmative Experts due 5/4/2020. Designation of Rebuttal Experts due 6/17/2020. (tsher, ) (Entered: 04/08/2020) |
| 04/29/2020 | 260 | MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 04/29/2020) |
| 04/29/2020 | 261 | DECLARATION of *Michael J. Scimone* regarding MOTION for Summary Judgment *as to Defendant's Affirmative Defense* 260 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Index of Exhibits, # 2 Exhibit |

T Supp. App. 24

| | | |
|---|---|---|
| | | A, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit I, # 6 Exhibit J, # 7 Exhibit K, # 8 Exhibit L, # 9 Exhibit M, # 10 Exhibit N, # 11 Exhibit O, # 12 Exhibit P, # 13 Exhibit Q, # 14 Exhibit R, # 15 Exhibit S, # 16 Exhibit T, # 17 Exhibit W, # 18 Exhibit BB, # 19 Exhibit CC) (Scimone, Michael) (Entered: 04/29/2020) |
| 04/29/2020 | 262 | RESTRICTED DOCUMENT - Level 1: EXHIBITS to the 261 Declaration of Michael J. Simone by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Index of Exhibits, # 2 Exhibit B, # 3 Exhibit B.1, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit U, # 9 Exhibit V, # 10 Exhibit X, # 11 Exhibit Y, # 12 Exhibit Z, # 13 Exhibit AA)(Scimone, Michael) (Modified on 4/30/2020 edited to add link to 261 and title of the documents)(evana, ). (Modified on 6/15/2020 Unrestricted as no motion for leave to restrict was filed)(evana). Modified on 10/19/2020 to Re-Restrict pursuant to the ]334] Order(evana, ). (Entered: 04/29/2020) |
| 05/14/2020 | 263 | Stipulated MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 05/14/2020) |
| 05/14/2020 | 264 | MEMORANDUM regarding 263 Stipulated MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* filed by The GEO Group, Inc. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 05/14/2020. Text Only Entry (jlksec) (Entered: 05/14/2020) |
| 05/15/2020 | 265 | Joint MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Corrected Stipulation)(Scimone, Michael) (Entered: 05/15/2020) |
| 05/15/2020 | 266 | MEMORANDUM regarding 265 Joint MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 05/15/2020. Text Only Entry (jlksec) (Entered: 05/15/2020) |
| 05/18/2020 | 267 | MINUTE ORDER, by Magistrate Judge Michael E. Hegarty on 5/18/2020. For good cause shown, the parties Corrected Stipulated Motion for Extension of Deadlines1 [filed May 15, 2020; ECF 265 ] is granted. The governing Amended Stipulated Scheduling and Discovery Order (ECF 198) is modified as follows:Fact/expert discovery cutoff: July 31, 2020 Dispositive motions deadline: July 31, 2020. In addition, Defendant shall file a response to Plaintiffs' pending motion for summary judgment on or before June 5, 2020, and Plaintiffs may file a reply in support of the motion on or before June 26, 2020. In light of this order, the original Stipulated Motion for Extension of Deadlines [filed May 14, 2020; ECF 263 ] is denied as moot. (apesa, ) (Entered: 05/18/2020) |
| 05/28/2020 | 268 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Calhoun, Ashley) (Entered: 05/28/2020) |
| 05/28/2020 | 269 | ORDER Granting 268 Motion to Withdraw as Attorney. Attorney Ashley Elizabeth Calhoun shall be removed as counsel of record for Defendant, by Judge John L. Kane on 5/28/2020.(evana, ) (Entered: 05/28/2020) |
| 06/05/2020 | 270 | RESPONSE to 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/05/2020) |

**1 Supp. App. 25**

| 06/05/2020 | 271 | DECLARATION of *Adrienne Scheffey* regarding Response to Motion 270 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit J, # 6 Exhibit K, # 7 Exhibit M, # 8 Exhibit N, # 9 Exhibit O, # 10 Exhibit P, # 11 Exhibit Q, # 12 Exhibit R)(Scheffey, Adrienne) (Entered: 06/05/2020) |
| 06/05/2020 | 272 | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/05/2020) |
| 06/05/2020 | 273 | RESTRICTED DOCUMENT - Level 1: Declaration of Adrienne Scheffey in Support of Defendant The GEO Group, Inc., 120 Response in Opposition to Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defense by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G, # 4 Exhibit H, # 5 Exhibit I, # 6 Exhibit L)(Scheffey, Adrienne) (Modified on 6/8/2020 edited to add the name of the Document filed)(evana, ). (Entered: 06/05/2020) |
| 06/10/2020 | 274 | Emergency MOTION for Writ of Habeas Corpus ad testificandum by Plaintiff Hugo Hernandez. (Attachments: # 1 Proposed Order (PDF Only) Granting Motion and Issuing Writ)(Free, Robert) (Entered: 06/10/2020) |
| 06/11/2020 | 275 | ORDER Granting 274 Plaintiffs' Emergency Motion for Writ of Habeas Corpus Ad Testificandum to Produce Plaintiff Hugo Hernandez Ceren for Live Testimony Prior to Removal, by Judge John L. Kane on 6/11/2020.(evana, ) (Entered: 06/11/2020) |
| 06/11/2020 | 276 | WRIT of Habeas Corpus Ad Testificandum issued. This Writ is issued upon Order of the United States District Court for the District of Colorado. I hereby command that you produce the material witness, detainee Hugo Hernandez Ceren, A-073-956-722, for live, videotaped deposition testimony prior to effectuating his removal from the United States to El Salvador. (evana, ) (Entered: 06/11/2020) |
| 06/15/2020 | 277 | ORDER THIS MATTER, coming before the Court upon Defendant's Motion to Restrict (ECF No. 272 ), and being fully advised in the premises, IT IS HEREBY ORDERED that the Motion to Restrict (ECF No. 272 ) is GRANTED. The Clerk is hereby directed to place Exhibits E, F, G, H, I and L (ECF No. 273 ) under Restriction Level 1 pursuant toD.C.COLO.LCivR 7.2, limiting access thereto to the Parties and the Court, by Judge John L. Kane on 6/15/2020.(evana, ) (Entered: 06/15/2020) |
| 06/17/2020 | 278 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 02/18/2020 before Magistrate Judge Hegarty. Pages: 1-23. Prepared by: AB Litigation Services. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 06/17/2020) |
| 06/23/2020 | 279 | Emergency MOTION to Amend/Correct/Modify 276 Writ Issued, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Ex 1- Amd Notice of Deposition, # 2 Exhibit Ex 2 - Jafek Email)(Turner, Andrew) (Entered: 06/23/2020) |
| 06/23/2020 | 280 | ORDER Granting 279 Plaintiffs' Emergency Motion to Amend Writ of Habeas Corpus Ad Testificandum. The Writ of Habeas Corpus Ad Testificandum issued June 11, 2020, commanding United States Immigration and Customs Enforcement (ICE), Acting ICE |

**1 Supp. App. 26**

| | | |
|---|---|---|
| | | Director Matthew Albence, ICE Louisiana Field Office Director Diane Witte, and any other custodian of detainee and named Plaintiff in this case Hugo Hernandez Ceren, A 073-956-722, to produce him for live, remote, deposition testimony by videotape prior to effectuating his removal to El Salvador is AMENDED to require that Mr. Hernandez Ceren be permitted to give his testimony in court-appropriate civilian attire, specifically a coat, shirt, and tie, by Judge John L. Kane on 6/23/2020.(evana, ) (Entered: 06/23/2020) |
| 06/23/2020 | 281 | MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* by Interested Party U.S. Immigration and Customs Enforcement. (Attachments: # 1 Reaves Decl., # 2 Lovett v. Cole decision)(Jafek, Timothy) (Entered: 06/23/2020) |
| 06/23/2020 | 282 | RESPONSE to 281 MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Ex 1 - Jafek Email, # 2 Exhibit Ex 2 - Turner Email)(Turner, Andrew) (Entered: 06/23/2020) |
| 06/23/2020 | 283 | ORDER Denying 281 ICE's Motion to Reconsider Amendment of the Writ of Habeas Corpus Ad Testificandum, by Judge John L. Kane on 6/23/2020.(evana, ) (Entered: 06/23/2020) |
| 06/25/2020 | 284 | Cross MOTION for Summary Judgment by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/25/2020) |
| 06/25/2020 | 285 | DECLARATION of *Adrienne Scheffey* regarding Cross MOTION for Summary Judgment 284 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(Scheffey, Adrienne) (Entered: 06/25/2020) |
| 06/26/2020 | 286 | REPLY to Response to 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 06/26/2020) |
| 06/26/2020 | 287 | DECLARATION of *Michael J. Scimone* regarding Reply to Response to Motion, 286 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17)(Scimone, Michael) (Entered: 06/26/2020) |
| 06/26/2020 | 288 | Notice of Filing of Exhibit 1 to 287 the Declaration of Michael Scimone in Support of Plaintiffs' Reply in Support of Motion for Summary Judgment by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. **RESTRICTED (Attachments: # 1 Exhibit 1)**(Scimone, Michael) (Modified on 6/30/2020 edited to add the title of the document filed)(evana, ). Modified on 7/29/2020 to un-restrict as no motion to restrict was filed.(sphil, ). Modified on 7/29/2020 (sphil, ). (Modified on 10/19/2020 Re-Restricted pursuant to the 334 Order)(evana, ). (Entered: 06/26/2020) |
| 06/29/2020 | 289 | NOTICE re 281 MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* by Interested Party U.S. Immigration and Customs Enforcement (Jafek, Timothy) (Entered: 06/29/2020) |

**1 Supp. App. 27**

| | | |
|---|---|---|
| 07/01/2020 | 290 | NOTICE of Entry of Appearance by Matthew Fritz-Mauer on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Matthew Fritz-Mauer added to party Olga Alexaklina(pty:pla), Attorney Matthew Fritz-Mauer added to party Lourdes Argueta(pty:pla), Attorney Matthew Fritz-Mauer added to party Marcos Brambila(pty:pla), Attorney Matthew Fritz-Mauer added to party Jesus Gaytan(pty:pla), Attorney Matthew Fritz-Mauer added to party Hugo Hernandez(pty:pla), Attorney Matthew Fritz-Mauer added to party Alejandro Menocal(pty:pla), Attorney Matthew Fritz-Mauer added to party Demetrio Valerga(pty:pla), Attorney Matthew Fritz-Mauer added to party Dagoberto Vizguerra(pty:pla), Attorney Matthew Fritz-Mauer added to party Grisel Xahuentitla(pty:pla) (Fritz-Mauer, Matthew) (Entered: 07/01/2020) |
| 07/08/2020 | 291 | NOTICE of Supplemental Authorities re: 286 Reply to Response to Motion, 270 Response to Motion, 260 MOTION for Summary Judgment as to Defendant's Affirmative Defense by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A)(Barnacle, Colin) (Entered: 07/08/2020) |
| 07/13/2020 | 292 | Stipulated MOTION for Extension of Time to *Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/13/2020) |
| 07/13/2020 | 293 | ORDER granting 292 Stipulated Motion for Extension of Deadlines. The fact/expert discovery cutoff deadline is extended to August 14, 2020; however, the parties may file discovery-related motions regarding third-party discovery from ICE. The Dispositive Motions deadline is extended to August 17, 2020. In addition, Plaintiffs' Response to GEO's Cross Motion for Summary Judgment 284 is due July 31, 2020, and the Reply, if any, is due August 21, 2020. Defendant shall file decertification motions on or before September 28, 2020. Ordered by Judge John L. Kane on 07/13/2020. Text Only Entry(jlksec) (Entered: 07/13/2020) |
| 07/24/2020 | 294 | RESPONSE to 291 Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/24/2020) |
| 07/24/2020 | 295 | DECLARATION of *Michael J. Scimone* regarding Response, 294 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/24/2020) |
| 07/24/2020 | 296 | RESTRICTED DOCUMENT - Level 1: EXHIBIT to 295 Declaration of Michael J. Simone to 294 Plaintiff's Response by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit A)(Scimone, Michael) (Modified on 7/31/2020 edited to add the title of the document filed)(evana, ). (Entered: 07/24/2020) |
| 07/24/2020 | 297 | NOTICE of Supplemental Authorities *Second Notice of Supplemental Authority* re: 294 Response, 270 Response to Motion, 291 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 07/24/2020) |
| 07/31/2020 | 298 | RESPONSE to 284 Cross MOTION for Summary Judgment filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/31/2020) |

**1 Supp. App. 28**

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 34

| | | |
|---|---|---|
| 07/31/2020 | 299 | DECLARATION of *Michael J. Scimone* regarding Response to Motion, 298 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 5)(Scimone, Michael) (Entered: 07/31/2020) |
| 07/31/2020 | 300 | RESTRICTED DOCUMENT - Level 1: EXHIBIT to the 299 Declaration of Michael J. Simone by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 4)(Scimone, Michael) (Modified on 8/3/2020 edited to add the title of the document)(evana, ). (Entered: 07/31/2020) |
| 08/07/2020 | 301 | MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 302 | DECLARATION of *Michael J. Scimone* regarding MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* 301 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 303 | DECLARATION of *Rachel Dempsey* regarding MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* 301 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 304 | RESTRICTED DOCUMENT - Level 1: Notice of Filing EXHIBIT to the Declaration of Rachel Dempsey in Support of Plaintiff's Motion for Jury view 303 as Restricted Document. by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 1, Transcript of Video Deposition) (Scimone, Michael) (Modified on 8/10/2020 edited the text to add the title of the document filed)(evana, ). (Entered: 08/07/2020) |
| 08/17/2020 | 305 | MOTION for Summary Judgment by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 306 | DECLARATION of *Adrienne Scheffey* regarding MOTION for Summary Judgment 305 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit L, # 11 Exhibit M, # 12 Exhibit N, # 13 Exhibit O, # 14 Exhibit P, # 15 Exhibit Q)(Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 307 | MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 308 | DECLARATION of *Adrienne Scheffey* regarding MOTION to Dismiss *for Failure to Join Required Party* 307 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit F, # 4 Exhibit G, # 5 Exhibit H, # 6 Exhibit I)(Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 309 | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |

**1 Supp. App. 29**

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 35

| 08/17/2020 | [310](#) | RESTRICTED DOCUMENT - Level 1: DECLARATION of Adrienne Scheffey by Defendant GEO Group, Inc., The.. (Attachments: # [1](#) Exhibit B, National Detainee Handobook # [2](#) Exhibit K Videotaped deposition of Stuart Grassian, M.D.)(Scheffey, Adrienne) (Modified on 8/18/2020 edited to add the titles of the documents)(evana, ). (Entered: 08/17/2020) |
|---|---|---|
| 08/17/2020 | [311](#) | RESTRICTED DOCUMENT - Level 1: Declaration of Adrienne Scheffey by Defendant GEO Group, Inc., The.. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit E) (Scheffey, Adrienne) Modified on 8/18/2020 (evana, ). (Entered: 08/17/2020) |
| 08/19/2020 | [312](#) | MOTION for Order to *Decertify Class* by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/19/2020 | [313](#) | DECLARATION of *Adrienne Scheffey* regarding MOTION for Order to *Decertify Class* [312](#) by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit H, # [9](#) Exhibit I, # [10](#) Exhibit J, # [11](#) Exhibit K, # [12](#) Exhibit L, # [13](#) Exhibit M, # [14](#) Exhibit N, # [15](#) Exhibit O, # [16](#) Exhibit P, # [17](#) Exhibit Q, # [18](#) Exhibit R, # [19](#) Exhibit S, # [20](#) Exhibit T, # [21](#) Exhibit U, # [22](#) Exhibit W, # [23](#) Exhibit X)(Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/19/2020 | [314](#) | RESTRICTED DOCUMENT - Level 1: Declaration of Adrienne Scheffey in support of Defendant The Geo Group, Inc.'s Motion for Decertification of Class, by Defendant GEO Group, Inc., The.. (Attachments: # [1](#) Exhibit V)(Scheffey, Adrienne) (Modified on 8/20/2020 edited to add the title of the document)(evana, ). (Entered: 08/19/2020) |
| 08/19/2020 | [315](#) | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/21/2020 | [316](#) | REPLY to Response to [284](#) Cross MOTION for Summary Judgment filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/21/2020) |
| 08/21/2020 | [317](#) | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion [316](#) by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit D, # [4](#) Exhibit E, # [5](#) Exhibit F, # [6](#) Exhibit G, # [7](#) Exhibit H, # [8](#) Exhibit I, # [9](#) Exhibit J, # [10](#) Exhibit K)(Scheffey, Adrienne) (Entered: 08/21/2020) |
| 08/21/2020 | [318](#) | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/21/2020) |
| 08/21/2020 | [319](#) | RESTRICTED DOCUMENT - Level 1: Declaration of Adrienne Scheffey in support of Defendant GEO Group, Inc's [316](#) Reply in Support of it's Cross Motion for Summary Judgment by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Exhibit C)(Scheffey, Adrienne) (Modified on 8/24/2020 edited to add the title of the document filed)(evana, ). (Entered: 08/21/2020) |
| 08/28/2020 | [320](#) | ORDER Granting Defendant's Motions to Restrict (ECF No. [309](#) , [315](#) & [318](#) ). The Clerk is directed to place Exhibits B and K (ECF Nos. 310-1 and 310-2); Exhibits A, B and E (ECF Nos. 311-1, 311-2, 311-3); Exhibit V (ECF No. 314-1); and Exhibit C (ECF No. 319-1) under Restriction Level 1 pursuant to D.C.COLO.LCivR 7.2, limiting access thereto to the Parties and the Court, by Judge John L. Kane on 8/28/2020.(evana, ) (Entered: 08/28/2020) |
| 08/28/2020 | [321](#) | MOTION for Extension of Time to File Response/Reply as to [312](#) MOTION for Order to *Decertify Class* , [305](#) MOTION for Summary Judgment , [307](#) MOTION to Dismiss *for Failure to Join Required Party* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, |

**1 Supp. App. 30**

Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only)) (Dempsey, Rachel) (Entered: 08/28/2020)

| 08/28/2020 | 322 | RESPONSE to 321 MOTION for Extension of Time to File Response/Reply as to 312 MOTION for Order to *Decertify Class*, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit 1 - Declaration of Adrienne Scheffey)(Scheffey, Adrienne) (Entered: 08/28/2020) |
| 08/28/2020 | 323 | RESPONSE to 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Scheffey, Adrienne) (Entered: 08/28/2020) |
| 08/28/2020 | 324 | ORDER granting 321 Motion for Extension of Deadlines on Motion for Summary Judgement ECF No. 305 , Motion to Dismiss for Failure to Join Required Party ECF No. 307 , and Motion to Decertify Class ECF No. 312 . Responses to the Motions are due on or before October 25, 2020; Replies, if any, are due November 16, 2020. Ordered by Judge John L. Kane on 8/28/2020. Text Only Entry(jlksec) (Entered: 08/28/2020) |
| 09/11/2020 | 325 | REPLY to Response to 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 09/11/2020) |
| 09/11/2020 | 326 | DECLARATION of *Andrew H Turner* regarding Reply to Response to Motion, 325 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Ex A - Pl 2d Supl Resp to Def 6th Interrogatories, # 2 Exhibit Ex B - Dep Tscpt Grisel Xahuentitla, # 3 Exhibit Ex C - Dep Tscpt Jesus Yepez Gaytan, # 4 Exhibit Ex D - Dep Tscpt Demetrio Valerga, # 5 Exhibit Ex E - Dep Tscpt Alejandro Hernandez Torres, # 6 Exhibit Ex F - Decl of Martin M Rosenbluth) (Turner, Andrew) (Entered: 09/11/2020) |
| 09/25/2020 | 327 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 25 September 2020. At the parties' request, the Court will hold a Discovery Conference in this case on Thursday, October 1, 2020 at 2:00 p.m. in Courtroom A501 on the fifth floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. In advance of the conference, the parties may each prepare a short statement identifying the nature of the dispute(s) and send the statements by email to hegarty_chambers@cod.uscourts.gov. These materials shall be submitted no later than noon on September 30, 2020. (cmadr, ) (Entered: 09/25/2020) |
| 10/01/2020 | 328 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 10/1/2020. FTR: A501. (cthom, ) (Entered: 10/01/2020) |
| 10/06/2020 | 329 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 10/01/2020 before Magistrate Judge Hegarty. Pages: 1-51. Prepared by: AB Litigation Services. NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov. Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 10/06/2020) |

**1 Supp. App. 31**

| | | |
|---|---|---|
| 10/13/2020 | 330 | Corrected TRANSCRIPT of DISCOVERY HEARING held on 10/01/2020 before Magistrate Judge Hegarty. Pages: 1-51. Prepared by: AB Litigation Services. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 10/13/2020) |
| 10/16/2020 | 331 | NOTICE of Change of Address/Contact Information *for Towards Justice* by Juno E. Turner (Turner, Juno) (Entered: 10/16/2020) |
| 10/16/2020 | 332 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 331 Notice of Change of Address/Contact Information filed by attorney Juno Turner. **DO NOT REFILE THE DOCUMENT. Action to take -** counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (evana, ) (Entered: 10/16/2020) |
| 10/16/2020 | 333 | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A - ICE Correspondence, # 2 Exhibit B - Docket, # 3 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 10/16/2020) |
| 10/19/2020 | 334 | ORDER GRANTING Defendant The GEO Group, Inc.'s ("Defendant") Motion to Restrict (ECF No. 333 ) and being fully advised in the premises, hereby GRANTS the Motion. The Clerk is directed to impose Level 1 restriction on ECF Nos. 262-2, 262-3, 262-4, 262-5, 262-6, 261-9, 262-8, 262-9, 261-11, 261-12 and 288. The Court also GRANTS Level 1 restriction for ECF Nos. 296-1, 304, and 300-1 to the extent they have not already been restricted. The parties are reminded to review D.C. Colo.LCivR 72(e). Public Access to Documents and Proceedings. Filing Restricted Documents. A document subject to a motion to restrict shall be filed as a restricted document and shall be subject to restriction until the motion is determined by the court. If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain the restriction selected by the filer for 14 days. If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection, by Judge John L. Kane on 10/19/2020.(evana, ) (Entered: 10/19/2020) |
| 10/26/2020 | 335 | NOTICE of Supplemental Authorities re: 297 Notice of Supplemental Authorities, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party*, 284 Cross MOTION for Summary Judgment , 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense*, 291 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 10/26/2020) |
| 10/26/2020 | 336 | BRIEF in Opposition to 305 MOTION for Summary Judgment filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Declaration of Michael J. Scimone, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 27)(Scimone, Michael) (Entered: 10/26/2020) |

**1 Supp. App. 32**

| 10/26/2020 | [337](#) | RESTRICTED DOCUMENT - Level 1: Exhibits to the Declaration of Michael Scimone In Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (ECF No. [336](#) ) by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # [1](#) Exhibit 16, # [2](#) Exhibit 24, # [3](#) Exhibit 25, # [4](#) Exhibit 26)(Scimone, Michael)(Modified on 10/27/2020 edited the text to add the title of the document filed)(evana, ). (Entered: 10/26/2020) |
| 10/26/2020 | [338](#) | BRIEF in Opposition to [307](#) MOTION to Dismiss *for Failure to Join Required Party* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # [1](#) Declaration of Michael J. Scimone, # [2](#) Exhibit 1, # [3](#) Exhibit 2, # [4](#) Exhibit 3, # [5](#) Exhibit 4, # [6](#) Exhibit 5, # [7](#) Exhibit 6, # [8](#) Exhibit 7, # [9](#) Exhibit 8, # [10](#) Exhibit 9, # [11](#) Exhibit 10, # [12](#) Exhibit 11, # [13](#) Exhibit 12)(Scimone, Michael) (Entered: 10/26/2020) |
| 10/26/2020 | [339](#) | BRIEF in Opposition to [312](#) MOTION for Order to *Decertify Class* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # [1](#) Declaration of Michael J. Scimone, # [2](#) Exhibit 1, # [3](#) Exhibit 2, # [4](#) Exhibit 3, # [5](#) Exhibit 4, # [6](#) Exhibit 5, # [7](#) Exhibit 6, # [8](#) Exhibit 7, # [9](#) Exhibit 8, # [10](#) Exhibit 9, # [11](#) Exhibit 10, # [12](#) Exhibit 13, # [13](#) Exhibit 15, # [14](#) Exhibit 16, # [15](#) Exhibit 17, # [16](#) Exhibit 18, # [17](#) Exhibit 19, # [18](#) Exhibit 20, # [19](#) Exhibit 21, # [20](#) Exhibit 22, # [21](#) Exhibit 23)(Scimone, Michael) (Entered: 10/26/2020) |
| 10/26/2020 | [340](#) | RESTRICTED DOCUMENT - Level 1: Exhibit to the Declaration of Michael J. Scimone in Support of Plaintiffs' Opposition to Defendant's Motion for Decertification (ECF No. [339](#) ) by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # [1](#) Exhibit 11, # [2](#) Exhibit 12, # [3](#) Exhibit 14, # [4](#) Exhibit 24)(Scimone, Michael) (Modified on 10/27/2020 edited to add the title of the document filed)(evana, ). (Entered: 10/26/2020) |
| 10/28/2020 | [341](#) | MOTION for Leave to Restrict Exhibit documents filed at 337-2 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # [1](#) Exhibit A, # [2](#) Proposed Order (PDF Only))(Scimone, Michael) (Modified on 11/3/2020 edited to add link)(evana, ). (Entered: 10/28/2020) |
| 11/06/2020 | [342](#) | Unopposed MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # [1](#) Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 11/06/2020) |
| 11/09/2020 | [343](#) | ORDER The Court, having reviewed Defendant The GEO Group, Inc.'s Unopposed Motion to Restrict Exhibits to Plaintiffs' Opposition to GEO's Motion for Summary Judgment and Opposition to GEO's Motion for Decertification and having considered all arguments raised therein, hereby GRANTS the Motion. This Court shall impose Level 1 restriction on ECF Nos. 337-1 through 337-4 and 340-1 through 340-4, by Judge John L. Kane on 11/9/2020.(evana, ) (Entered: 11/09/2020) |
| 11/09/2020 | 344 | ORDER finding as moot [341](#) Motion for Leave to Restrict. Order [343](#) granted restriction to 337-2, by Judge John L. Kane on 11/09/20. Text Only Entry(jlksec) (Entered: 11/09/2020) |
| 11/10/2020 | [345](#) | RESPONSE to [335](#) Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, |

**1 Supp. App. 33**

| | | |
|---|---|---|
| | | Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A) (Scimone, Michael) (Entered: 11/10/2020) |
| 11/11/2020 | 346 | Unopposed MOTION for Extension of Time to *File Replies*, Unopposed MOTION for Extension of Time to File Response/Reply as to 312 MOTION for Order to *Decertify Class*, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 11/11/2020) |
| 11/12/2020 | 347 | ORDER granting 346 Defendant The GEO Group, Inc.'s Unopposed Motion for Extension of Deadline to File Replies. GEO shall have through and including November 18, 2020, to file replies supporting its Motion for Summary Judgment 305 , Motion to Dismiss for Failure to Join Required Party 307 , and Motion for Decertification of Class 312 . Ordered by Judge John L. Kane on 11/12/20. Text Only Entry(jlksec) (Entered: 11/12/2020) |
| 11/18/2020 | 348 | REPLY to Response to 307 MOTION to Dismiss *for Failure to Join Required Party* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 349 | RESTRICTED DOCUMENT - Level 1: EXHIBIT J to 348 Motion to Dismiss for Failure to Join by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit J - Audit Correspondence)(Scheffey, Adrienne) (Modified on 11/19/2020 edited the title to add the name of the document filed)(evana, ). (Entered: 11/18/2020) |
| 11/18/2020 | 350 | REPLY to Response to 305 MOTION for Summary Judgment filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 351 | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion 350 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit R - Excerpts of Deposition of Hugo Hernandez Ceren, # 2 Exhibit S - Plaintiffs' Responses to GEO's First Set of Written Discovery Requests, # 3 Exhibit T - Exhibit 12 to Deposition of Hugo Hernandez Ceren)(Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 352 | REPLY to Response to 312 MOTION for Order to *Decertify Class* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 353 | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion 352 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit Y - Excerpts of Deposition of Demetrio Valerga, # 2 Exhibit Z - Excerpts of Deposition of Dagoberto Vizguerra, # 3 Exhibit AA - Excerpts of Deposition of Grisel Xahuentitla, # 4 Exhibit BB - Excerpts of Deposition of Jesus Gayten)(Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/25/2020 | 354 | NOTICE re 348 Reply to Response to Motion *to Dismiss for Failure to Join a Required Party* by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Scheffey, Adrienne) (Entered: 11/25/2020) |
| 12/02/2020 | 355 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 12/02/2020) |
| 12/02/2020 | 356 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Eby, Christopher) (Entered: 12/02/2020) |
| 12/02/2020 | 357 | Unopposed MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 12/02/2020) |
| 12/03/2020 | 358 | ORDER Granting 355 Motion to Withdraw as Attorney. Attorney Colin Louis Barnacle terminated as counsel of record and exclude Mr. Barnacle from further service in this case, by Judge John L. Kane on 12/3/2020.(evana, ) (Entered: 12/03/2020) |

**1 Supp. App. 34**

| | | |
|---|---|---|
| 12/03/2020 | 359 | ORDER Granting 356 Motion to Withdraw as Attorney. Attorney Christopher John Eby terminated as counsel of record and exclude Mr. Eby from further service in this case, by Judge John L. Kane on 12/3/2020.(evana, ) (Entered: 12/03/2020) |
| 12/08/2020 | 360 | ORDER Granting 357 The GEO Group, Inc.'s Unopposed Motion to Restrict and being fully advised in the premises, hereby GRANTS the Motion. The Clerk of Court is directed to maintain a Level 1 restriction on ECF Nos. 349 and 349-1, by Judge John L. Kane on 12/8/2020.(evana, ) (Entered: 12/08/2020) |
| 03/24/2021 | 361 | NOTICE of Supplemental Authorities re: 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A - Ndambi v. CoreCivic)(Scheffey, Adrienne) (Entered: 03/24/2021) |
| 03/26/2021 | 362 | RESPONSE to 361 Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 03/26/2021) |
| 05/05/2021 | 363 | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), Hans Christopher Meyer was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/05/2021) |
| 05/06/2021 | 364 | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), Ossai Miazad was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/06/2021) |
| 05/12/2021 | 365 | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), P. David Lopez was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/12/2021) |
| 05/17/2021 | 366 | Notice of Entry of Appearance by Hans Meyer by Plaintiff Alejandro Menocal. (Meyer, Hans) (Modified on 5/17/2021 edited to reflect that this is an Entry of Appearance and not a Motion)(evana, ). (Entered: 05/17/2021) |
| 06/28/2021 | 367 | NOTICE of Supplemental Authorities re: 284 Cross MOTION for Summary Judgment , 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 06/28/2021) |

**1 Supp. App. 35**

| | | |
|---|---|---|
| 07/02/2021 | 368 | MOTION to Strike 367 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A - Email)(Scheffey, Adrienne) (Entered: 07/02/2021) |
| 07/23/2021 | 369 | RESPONSE to 368 MOTION to Strike 367 Notice of Supplemental Authorities, filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/23/2021) |
| 08/02/2021 | 370 | REPLY to Response to 368 MOTION to Strike 367 Notice of Supplemental Authorities, filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/02/2021) |
| 08/31/2021 | 371 | NOTICE of Change of Address/Contact Information by Adrienne Scheffey (Scheffey, Adrienne) (Entered: 08/31/2021) |
| 11/01/2021 | 372 | NOTICE of Change of Address/Contact Information *and Change of Firm* by Rachel Williams Dempsey (Dempsey, Rachel) (Entered: 11/01/2021) |
| 11/01/2021 | 373 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 372 Notice of Change of Address/Contact Information filed by attorney Rachel Williams Dempsey. **DO NOT REFILE THE DOCUMENT. Action to take -** counsel must submit a change of contact request through the **Manage my Account** tab at the https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (evana, ) (Entered: 11/01/2021) |
| 11/01/2021 | 374 | NOTICE of Supplemental Authorities re: 336 Brief in Opposition to Motion,,, 286 Reply to Response to Motion, 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Scimone, Michael) (Entered: 11/01/2021) |
| 11/10/2021 | 375 | RESPONSE to 374 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 11/10/2021) |
| 02/01/2022 | 376 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Cizmorris, Melissa) (Entered: 02/01/2022) |
| 02/02/2022 | 377 | ORDER Granting 376 Motion for Withdrawal of Attorney Melissa I. Cizmorris, by Judge John L. Kane on 2/2/2022.(angar, ) (Entered: 02/02/2022) |
| 02/09/2022 | 378 | NOTICE of Supplemental Authorities re: 336 Brief in Opposition to Motion,,, 286 Reply to Response to Motion, 298 Response to Motion, 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 02/09/2022) |
| 02/11/2022 | 379 | RESPONSE to 378 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 02/11/2022) |
| 10/18/2022 | 380 | Order on the Parties' Cross Motions for Summary Judgment (ECF Nos. 260 , 284 , & 305 ) and Defendant's Motions to Dismiss (ECF No. 307 ) and for Decertification of Class (ECF No. 312 ). Plaintiffs' Motion for Summary Judgment on GEO's Affirmative Defense (ECF No. 260 ) is GRANTED. GEO's Cross Motion for Summary Judgment (ECF Nos. 284 ), Motion to Dismiss (ECF No. 307 ), and Motion for Decertification of Class (ECF No. 312 ) are DENIED. GEO's Motion for Summary Judgment (ECF No. 305 ) is GRANTED IN PART in that the TVPA class is narrowed to beginning on December 23, |

**1 Supp. App. 36**

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 42

| | | |
|---|---|---|
| | | 2004, and the Motion is otherwise DENIED. GEOs Motion to Strike (ECF No. 368 ) is DENIED at moot. ORDERED by Judge John L. Kane on 10/18/2022.(angar, ) (Entered: 10/18/2022) |
| 10/19/2022 | 381 | MINUTE ORDER. Based on the rulings in 380 , this case is ready to be set for trial. The Parties are DIRECTED to confer and, on October 25, 26, or 27, 2022, to call each other and then JOINTLY call chambers at (303) 844-6118 to set dates and times for the pretrial conference, final trial preparation conference, and trial, by Judge John L. Kane on 10/19/2022. Text Only Entry (angar, ) (Entered: 10/19/2022) |
| 10/20/2022 | 382 | MINUTE ORDER as to 301 Motion for Jury View. The Parties are DIRECTED to meaningfully confer regarding the status of the Motion for Jury View, including whether any circumstances have changed since the motion was filed. The Parties' conferral shall include, but is not limited to, a discussion regarding: (1) whether a videorecording of the Aurora Detention Facility is now available. If a videorecording is available, the Parties shall confer regarding whether the videorecording is sufficient in lieu of a jury view; and (2) if a jury view is permitted, whether U.S. Marshals may accompany the Jurors and, if so, whether the Parties propose any limitations on the U.S. Marshals accompanying the Jury to a jury view. After conferral, Plaintiffs shall file a supplemental brief of no more than five pages, on or before November 4, 2022. Defendant shall file a response of no more than five pages, on or before November 18, 2022. No reply brief will be allowed absent further order of the Court. ORDERED by Judge John L. Kane on 10/20/2022. Text Only Entry (angar, ) (Entered: 10/20/2022) |
| 10/27/2022 | 383 | ORDER SETTING PRETRIAL CONFERENCE, FINAL TRIAL PREPARATION CONFERENCE AND THREE-WEEK JURY TRIAL. This case is set for a three-week Jury Trial beginning Monday, April 24, 2023, at 9:00 a.m., before Judge John L. Kane in Courtroom A802 on the 8th Floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. The parties are directed to file a Proposed Pretrial Order on or before January 6, 2023. The Proposed Order shall be submitted via CM/ECF and in an editable format to kane_chambers@cod.uscourts.gov. A Pretrial Conference is set for January 12, 2023, at 10:30 a.m. in the same location as the Jury Trial. Motions in Limine, including motions objecting to expert witness testimony, shall be filed on or before February 10, 2023. Responses to those motions shall be filed on or before March 3, 2023, and any replies shall be filed on or before March 17, 2023. The Proposed Unified Set of Jury Instructions and Verdict Forms are due March 31, 2023, submitted in editable format to kane_chambers@cod.uscourts.gov as well as filed in CM/ECF. Final Witness and Exhibit Lists are due April 12, 2023. A Final Trial Preparation Conference is set Wednesday, April 19, 2023, at 10:30 a.m. in the same location as the Jury Trial. The parties are advised to read Judge Kane's Pretrial and Trial Procedures Memo and use the forms available on the court's website.Ordered by Judge John L. Kane on 10/27/2022. Text Only Entry (jlksec) (Entered: 10/27/2022) |
| 10/27/2022 | 384 | NOTICE of Entry of Appearance by Wayne Howard Calabrese on behalf of GEO Group, Inc., TheAttorney Wayne Howard Calabrese added to party GEO Group, Inc., The(pty:dft) (Calabrese, Wayne) (Entered: 10/27/2022) |
| 10/27/2022 | 385 | NOTICE of Entry of Appearance by Joseph Negron, Jr on behalf of GEO Group, Inc., TheAttorney Joseph Negron, Jr added to party GEO Group, Inc., The(pty:dft) (Negron, Joseph) (Entered: 10/27/2022) |
| 11/04/2022 | 386 | BRIEF in Support of 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center Supplemental Brief in Support of Plaintiffs' Motion for Jury View* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit 1)(Scimone, Michael) (Entered: 11/04/2022) |

**1 Supp. App. 37**

Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 43

| | | |
|---|---|---|
| 11/16/2022 | 387 | NOTICE OF APPEAL as to 380 Order on Motion to Strike,,,, Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Dismiss,,,, Order on Motion for Order,,, by Defendant GEO Group, Inc., The (Filing fee $ 505, Receipt Number ACODC-8784020) (Beer, Naomi) (Entered: 11/16/2022) |
| 11/17/2022 | 388 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 387 Notice of Appeal, filed by GEO Group, Inc., The to the U.S. Court of Appeals. ( Retained Counsel, Fee paid) (Attachments: # 1 Preliminary Record and Docket Sheet) (angar, ) (Entered: 11/17/2022) |
| 11/17/2022 | 389 | USCA Case Number 22-1409 for 387 Notice of Appeal, filed by GEO Group, Inc., The. (angar, ) (Entered: 11/18/2022) |
| 11/18/2022 | 390 | BRIEF in Opposition to 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 11/18/2022) |
| 11/18/2022 | 391 | MOTION to Stay *Proceedings Pending Appeal* by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2022) |
| 11/30/2022 | 392 | TRANSCRIPT ORDER FORM by Defendant GEO Group, Inc., The. Transcript is not necessary re: 387 Notice of Appeal,. (angar, ) (Entered: 12/01/2022) |
| 12/01/2022 | 393 | LETTER TO USCA and all counsel certifying the record is complete as to 387 Notice of Appeal, filed by GEO Group, Inc., The. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 22-1409) Text Only Entry (angar, ) (Entered: 12/01/2022) |
| 12/01/2022 | 394 | Minute ORDER by Magistrate Judge Michael E. Hegarty on 1 December 2022. Pursuant to parties' emailed request, this Court will hold a settlement conference in this case on **December 21, 2022, at 11:30 a.m.** in Courtroom A501 on the fifth floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. (cmadr, ) (Entered: 12/01/2022) |
| 12/02/2022 | 395 | RESPONSE to 391 MOTION to Stay *Proceedings Pending Appeal* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 12/02/2022) |
| 12/05/2022 | 396 | Copy of Transcript Order Form re 387 Notice of Appeal, by Defendant GEO Group, Inc., The. (athom, ) (Entered: 12/05/2022) |
| 12/06/2022 | 397 | MOTION to Appoint Counsel *Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Declaration of Michael Scimone ISO Plaintiffs Motion to Appoint Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer, # 2 Declaration of R. Andrew Free ISO Plaintiffs Motion to Appoint Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer, # 3 Declaration of Matthew Fritz-Mauer ISO Plaintiffs Motion to Appoint Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer, # 4 Proposed Order (PDF Only) Granting Motion to Appoint Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer)(Scimone, Michael) (Entered: 12/06/2022) |
| 12/06/2022 | 398 | REPLY to Response to 391 MOTION to Stay *Proceedings Pending Appeal* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 12/06/2022) |

**1 Supp. App. 38**

| | | |
|---|---|---|
| 12/07/2022 | 399 | ORDER Granting 397 Plaintiffs' Unopposed Motion to Appoint Outten & Golden LLP as Class Counsel and to Withdraw R. Andrew Free and Matthew Fritz-Mauer. Having reviewed this motion, the Court finds that Outten & Golden LLP ("O&G") is an adequate representative for the class who will provide fair representation, and O&G is hereby appointed as class counsel. The Court further orders that R. Andrew Free and Matthew Fritz-Mauer are withdrawn as Class Counsel from this action and are no longer counsel of record. By Judge John L. Kane on 12/7/2022.(trvo, ) (Entered: 12/07/2022) |
| 12/07/2022 | 400 | ORDER; On November 16, 2022, Defendant The GEO Group, Inc. filed a Notice of Appeal 387 relating to my Order 380 granting Plaintiffs' Motion for Summary Judgment on GEO's Affirmative Defenses 260 and denying GEO's Cross Motion for Summary Judgment 284 . GEO then filed a Motion to Stay Proceedings Pending Appeal 391 . Plaintiffs' Response to that Motion 395 agrees that a stay is appropriate for matters that are comprehended within the appeal. As a result, GEO's Motion to Stay 391 is GRANTED in that all proceedings in this case related to the appeal are stayed pending further order of the Court. All trial-related deadlines and settings are VACATED. The parties are DIRECTED to confer within 10 days of any jurisdictional opinion issued by the Tenth Circuit and to submit a joint status report within 14 days of any such opinion. The parties shall state in the status report whether the stay should remain in place or whether the stay should be vacated and new trial dates set. Ordered by Judge John L. Kane on 12/7/2022. Text Only Entry(jlksec) (Entered: 12/07/2022) |
| 12/07/2022 | 401 | ORDER: The Motion for Jury View 301 is DENIED WITHOUT PREJUDICE for Plaintiffs to reinstate it once the stay granted in 398 has been lifted. In the meantime, my staff will be in touch with counsel after January 2, 2023, to arrange for me to visit the Aurora Detention Facility, which I find to be necessary based on the issues raised by the parties. Ordered by Judge John L. Kane on 12/7/2022. Text Only Entry(jlksec) (Entered: 12/07/2022) |
| 12/12/2022 | 402 | Unopposed MOTION for Leave to *Excuse In-Person Attendance At The Settlement Conference* 394 Order, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 12/12/2022) |
| 12/13/2022 | 403 | MEMORANDUM regarding 402 MOTION for Leave to Excuse In-Person Attendance At The Settlement Conference 394 Order filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. Motion referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 12/13/2022. (angar, ) (Entered: 12/13/2022) |
| 12/15/2022 | 404 | Minute ORDER by Magistrate Judge Michael E. Hegarty on 15 December 2022. For good cause shown, Plaintiffs' Unopposed Motion to Excuse In-Person Attendance at the Settlement Conference 402 is granted. The Representative Plaintiffs are excused from appearing in-person at the settlement conference on December 21, 2022. However, counsel shall ensure that the Representative Plaintiffs are available by telephone during the entirety of the conference.(cmadr, ) (Entered: 12/15/2022) |
| 12/20/2022 | 405 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on December 20, 2022. At the parties' emailed request, the settlement conference set for December 21, 2022 is vacated and rescheduled for January 12, 2023, at 10:30 a.m., in Courtroom A-501, on the fifth floor of the Alfred A. Arraj United States Courthouse located at 901 19th Street, Denver, Colorado. (alave, ) (Entered: 12/20/2022) |
| 01/13/2023 | 406 | MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty: Settlement Conference held on 1/13/2023. (cthom, ) (Entered: 01/17/2023) |

**1 Supp. App. 39**



Enforcement and Removal Operations

# National Detainee Handbook

Detention Management Division



U.S. Immigration
and Customs
Enforcement

PL000075

1 Supp. App. 40



**U.S. Immigration and Customs Enforcement**

## Enforcement and Removal Operations (ERO)

### Service Processing Center/ICE/ERO Contract Detention Facility

# Detainee Handbook

## TABLE OF CONTENTS

| Topic | Page No. |
|---|---|
| 1. Introduction | 2 |
| 2. Your Rights and Responsibilities | 2 |
| 3. Initial Admission | 3 |
| 4. Legal File/A-File | 4 |
| 5. Detention File | 4 |
| 6. Classification | 4 |
| 7. Inspection of Persons and Property | 5 |
| 8. Contraband | 5 |
| 9. Unauthorized Property | 6 |
| 10. Segregation | 6 |
| 11. Disciplinary Process | 6 |
| 12. Use of Force | 8 |
| 13. Communication with Staff | 8 |
| 14. Grievance Procedures | 8 |
| 15. Evacuation Drills | 9 |
| 16. Official Counts | 9 |
| 17. Medical Care | 10 |
| 18. Suicide Prevention | 10 |
| 19. Sexual Abuse/Assault Prevention and Intervention Program | 10 |
| 20. Telephone Access | 11 |
| 21. Consular Notifications | 12 |

| Topic | Page No. |
|---|---|
| 22. General Visitation | 12 |
| 23. Attorney Visits | 12 |
| 24. Legal Mail | 13 |
| 25. Outgoing and Incoming Mail | 13 |
| 26. Finances | 14 |
| 27. Meals | 14 |
| 28. Vending Machines or Commissary | 15 |
| 29. Dress Code and Grooming Standards | 15 |
| 30. Clothing | 15 |
| 31. Clothing Exchange | 16 |
| 32 Personal Hygiene | 16 |
| 33. Barbering Services | 17 |
| 34. Sanitary Living Conditions | 17 |
| 35. Smoking Policy | 17 |
| 36. Voluntary Work Program | 17 |
| 37. Recreation Facilities | 18 |
| 38. Library | 18 |
| 39. Law Library | 18 |
| 40. Typewriters and Computers | 19 |
| 41. Religious Services | 19 |
| 42. Marriages | 19 |
| 43. Group Legal Rights Presentations | 19 |

# 1. Introduction

You are currently being detained by the U.S Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) while pending the outcome of your immigration proceedings. It is our responsibility to ensure that you are housed in an environment that is safe and clean and that your daily needs are met while you are in ICE custody.

This handbook will provide you with an overview of the general rules, regulations, policies and procedures that you are required to follow while in ICE custody. The handbook will also provide you with an overview of the programs and services available to you while residing in this ICE-approved facility. Please note that this handbook will be revised upon the implementation of additional ICE standards.

The facility where you are being detained will also provide you with a local detainee handbook (referred to as a "local supplement"), which addresses day-to-day concerns. We request that you become familiar with both the National Detainee Handbook and the local supplement, as you will be expected to comply with these rules while you are in custody.

If you lose your copy of this handbook, you may request a replacement copy from the facility staff.

# 2. Your Rights and Responsibilities

It is ICE's policy to treat detainees with dignity and respect, while maintaining a safe, secure and sanitary detention facility. To assist us in this goal, please cooperate with our staff in the following respects:

- Comply with directions given by staff members and contract security personnel.
- Respect facility staff and other detainees.
- Respect government property, facility property and the property of other detainees.



- Maintain yourself, your clothing and your living area in a clean condition.
- Address our staff by referring to their title and last name (i.e., Doctor Jones, Officer Smith, Nurse Clark), or by Mr., Mrs., or Ms. followed by their last name.



While you are in custody, you have the following rights and responsibilities:

- You have the right to be informed of the rules, procedures and schedules concerning the operation of the facility where you are detained.

  *You have the responsibility to know them and abide by them.*

- You have the right to freedom of religious affiliation and to voluntary religious worship that does not detrimentally affect others or the order and security of the facility.

  *You have the responsibility to recognize and respect the rights of other religious groups and/or beliefs.*

- You have the right to reasonable care. You have the right to be held in acceptable conditions of confinement, which includes nutritious meals, proper bedding and clothing, a regular laundry schedule, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical treatment.

  *It is your responsibility not to waste food, to follow the laundry and shower schedules, maintain neat and clean living quarters, and to seek medical care as needed.*

- You have the right to receive visits from family members and friends, according to the facility's rules and schedules.

  *It is your responsibility to conduct yourself properly during visits and to not accept or pass contraband.*

- You have the right to legal counsel from an attorney of your choice by means of interviews and correspondence, at no cost to the U.S. government.

  *It is your responsibility to obtain the services of an attorney.*

PL000077

**1 Supp. App. 42**



* You have the right to unrestricted and confidential access to your attorney and the courts by correspondence.

  *Presentation of your case is your responsibility, in consultation with your attorney.*

* You have the right to use law library reference materials to assist you in resolving legal problems. You also have the right to receive help, when it is available, through a legal assistance program.

  *It is your responsibility to use those resources according to the prescribed procedures and schedule, and to respect the rights of other detainees to use of the materials.*

* You have the right to a wide range of reading material for educational purposes and for your own enjoyment.

  *It is your responsibility to use these materials for personal benefit, without depriving others of their equal rights to the use of this material.*

* You may have the right to participate in a work program, depending on your detention location.

  *You have a responsibility to take advantage of work opportunities and activities that may help you live more successfully within the facility and the community. You are expected to abide by the regulations governing the use of such activities.*

* You may have the right to an administrative hearing before an immigration judge, depending on the particular facts and circumstances of your case. Alternative removal proceedings (as authorized by statute) may be used to determine your status in the United States. Should you have any questions in these areas, you should discuss them with your deportation officer.

  *Presentation of your case is your responsibility, in consultation with your attorney.*

* You may be authorized for release on bond until your scheduled administrative hearing.

  *It is your responsibility to arrange methods of payment for your bond.*

* You have the right to apply for political asylum if you believe that you could be persecuted in your native country because of your race, religion, nationality, membership in a particular social group, or political opinions.

  *It is your responsibility to prepare and submit the proper forms requesting consideration for political asylum in the United States.*

* You have the right to request voluntary departure, if statutorily eligible, prior to a hearing. If voluntary departure is granted, you waive your right to have your case presented at a hearing.

  *It is your responsibility to inform an ICE officer that you request voluntary departure.*

* Each facility must provide you with a list of rules regarding the operation of the facility where you are detained. The facility must also provide you with reasonable information regarding all of the subjects covered in this handbook relating to non-security related operations of that facility.

  *It is your responsibility to act responsibly and follow the rules of the facility and lawful instructions of the staff. The failure to follow these rules and instructions may result in disciplinary action being taken against you, as necessary, to ensure the order and security of the facility. ICE officers will visit all housing units weekly. You should discuss any issues of concern with those officers. You should have a reasonable expectation that they will respond appropriately to your request for information or assistance.*

## 3. Initial Admission

Upon your arrival at an ICE detention facility, you will undergo intake processing by a facility officer. In general, you can expect the intake processing procedures to occur as follows:

1. The processing officer will retain your clothes, personal property, valuables and money for safekeeping. The facility is required to provide you with itemized receipts for all of your clothing, personal property, valuables and money. It is important that you retain these receipts to claim your property, money and valuables when you are released.



2. Identity documents, such as passports, birth certificates, etc., will be inventoried and then given to an ICE official for placement in your official immigration file. Upon the conclusion of your removal case, we will make every effort to return your documents. In the interim, you may request that your deportation officer provide you with a copy of any of your identity documents. Please see item 4 for more information regarding your immigration files.

3. Each individual facility will identify the type of items that you will be permitted to retain when you arrive for intake processing. For example, you will be allowed to retain legal documentation necessary for your immigration case or, at a minimum, be allowed access to your case material as needed. You will be allowed to keep some personal items with you. Typical permissible personal belongings include: religious medallions, simple wedding bands, photographs, personal reading material, and any other small items that you are approved to keep with you according to the security needs of that facility. Also see the local supplement.

4. You will be provided a secure locker box for storage of your personal items. All of your personal items must be stored in your locker box. ICE is not responsible for the loss of your personal items that you do not store in your locker box. No personal items can be attached to the bunk, wall, or windows. No personal items can be left on windowsills.

5. You will be provided with clothing that is appropriate for the climate where you are detained. You will be provided with sufficient clothing to exchange your dirty garments for clean garments two times each week. You will be issued bedding and a blanket, which you will be allowed to exchange for clean linen weekly.

6. You will be provided with personal hygiene items (e.g., toothbrush, comb) that have been approved by your facility. If you need to replace any of your personal hygiene items at a later time, you must request replacements from your housing officer.

7. You will be able to request writing material, pencils and envelopes for your personal use from your housing officer. Ink pens are not allowed.

8. You will undergo a thorough medical examination conducted by approved medical examiners within 14 days after your arrival. Medical staff or trained officers will also conduct a pre-screening interview to assess your physical and mental health as part of the intake process. If you have any health conditions that require immediate attention from a medical provider, please inform our staff during your intake processing. If you



prefer, you may request to speak directly with medical staff about your health concerns. Any information you provide to our medical staff cannot be shared with non-medical staff and will be treated with strict confidentiality.

# 4. Legal File/A-File

ICE maintains an immigration legal record, commonly called an A-file, for each individual detainee. The A-file contains a summary of all legal transactions and documentation pertaining to your case, including, but not limited to: identification cards, photos, passports and immigration history. If you require access to the documents maintained in your A-file, you will need to submit a Privacy Act Request Form from your deportation officer.

# 5. Detention File

A detention record is maintained by the detention facility and/or ICE for each individual in custody. The detention record includes such documents as:

- Facility disciplinary actions;
- Behavior reports;
- Receipts for funds, valuables and property;
- Detainee's written requests, complaints and issues;
- U.S. government responses; and
- Special housing unit records.

# 6. Classification

Upon your arrival, ICE personnel will conduct an assessment of your records to ensure that you are placed in an appropriate setting within the detention facility. This assessment will provide you with a specific "classification level" based on criminal behavior, criminal convictions, immigration history, disciplinary record, current custody status and any other information considered relevant to determining the most appropriate custody level. Your

PL000079

**1 Supp. App. 44**



designated classification level will ensure that you are placed in the appropriate housing unit with other detainees of comparable classification characteristics. For more information on specific classification levels in your facility, consult your local supplement.

## 6.1 Appeal of Classification

If you feel you have been improperly classified, you have the right to appeal your classification level and resulting housing assignment. You must follow the established facility procedures for filing an appeal of your custody classification level. For more information, consult your local supplement.

## 6.2 Classification Review

If you have been in custody 90 days or more, you may request a review and re-assessment of your custody classification level. If you are detained at an ICE Service Processing Center (SPC) or Contract Detention Facility (CDF), your classification will automatically be reviewed every 90 to 120 days.

## 6.3 Reclassification

Failure to follow rules and regulations within a facility may result in changes to your custody classification level.

If staff determines that you were engaged in misconduct while in ICE custody, ICE will initiate an immediate review of your current classification. This could result in your housing assignment being changed. If at any time you are placed into a segregation unit, your classification assignment will be reviewed prior to your release back into the general population.

# 7. Inspections of Persons and Property

Upon admission, you will be subject to a search of your body and your property. Facility personnel will conduct this search. Searches are also routine requirements when entering the housing units or when leaving the visiting area after a visit. Routine unannounced searches of the facility, detainees and property will be conducted as necessary. Strip searches may be conducted as deemed necessary when the facility has reasonable suspicion to believe that the detainee may be concealing a weapon or other contraband.

All searches are used as a means of interdicting contraband and ensuring safe and sanitary conditions in the facility. Searches are not intended to be punitive in nature.

*You may not refuse to be searched. It is your responsibility to follow the instructions given to you by the staff. Failure to follow lawful, legal direction may result in disciplinary or criminal action being taken against you. Refusal to be searched may also result in your segregation from the general population and placement into an isolation cell to ensure your safety and the safety of others.*

# 8. Contraband

Items considered to be detrimental to the safe and orderly operation of the facility are prohibited and considered to be "contraband." Contraband items include, but are not limited to:

- Any illegal drugs, alcoholic beverages, deadly weapons, dangerous instruments, explosives or any other article that could be used to endanger other persons or the preservation of order in the facility.

- Any item which could be construed as an aid to escape.

- Any item which could be used to disguise or alter the appearance of a detainee.

- Any article of clothing or item for personal use or consumption which has not been cleared first through the Officer in Charge (OIC) or purchased from the commissary or vending machines by a detainee.

PL000080

- Cameras, video, audio or related equipment that can be used to make unauthorized photographs or audio or audio-video recordings of detainees, staff or government property.

*You are responsible for ensuring that you are not in possession of any item that can be considered contraband. You are responsible for knowing the rules regarding contraband items in the facility where you are detained. Possession of contraband may result in disciplinary action being taken against you. For more information, consult your local supplement.*



# 9. Unauthorized Property

Any item can be considered to be contraband when possessed by a detainee or visitor within the facility without authorization from the staff. You must obtain permission in advance to possess any item, even if the type of item is generally allowable in your facility. Staff may limit the quantity of any item, even if the type of item is approved. Any item that is generally permissible for detainees to possess can become unauthorized if it is altered without permission or used in an inappropriate manner. Excess items, altered items or misused items may be discarded in accordance with facility policy and procedure. For more information, consult your local supplement.

# 10. Segregation

ICE detention facilities employ the following types of segregation to house detainees who require more intensive supervision:

**Administrative segregation** is special housing for certain detainees who:

- Are pending investigation and/or hearings for disciplinary violations;
- Need medical observation;
- Are pending a transfer or release within 24 hours;

- Are a security risk; and/or,
- Need protective custody.

All detainees located in administrative segregation shall have their cases reviewed within three working days of being placed in administrative segregation, to determine the propriety of continued placement in the Special Housing Unit. If you remain in administrative segregation for seven days, a supervisor will conduct another review of your case to determine whether continued segregation is warranted. You may appeal the administrative segregation order or the review decision, in writing, to the facility administrator.

**Disciplinary segregation** is a special housing unit for certain detainees who:

- Are a serious disruption in general population;
- Require secure physical confinement; and/or,
- Have received a disciplinary sanction from the Institutional Disciplinary Panel.

A case review will be conducted on each detainee placed in disciplinary segregation every seven days to ensure that the detainee is abiding by all rules and regulations and is offered showers, meals, recreation, etc. You may appeal the disciplinary segregation order or the review decision, in writing, to the facility administrator.

# 11. Disciplinary Process

Many individuals have to share limited space inside the detention facility. It is extremely important that order and discipline be maintained. Order and discipline are not only for the benefit of the staff, but also for the safety and welfare of you and other detainees. While many problems can be resolved informally through counseling, disciplinary measures must occasionally be imposed.

If you are facing possible disciplinary action involving a violation of an administrative rule, you have the right to due process, including the right to have any disciplinary matter resolved promptly.

Every ICE facility will adhere to the following procedures to resolve your disciplinary matter fairly and quickly:

## 11.1 Administrative Violations

If you are accused of committing a prohibited act, you must be given a copy of the incident report during the formal investigative process and not less than 24 hours before your appearance before the Institutional Disciplinary Panel. If the allegations are serious, you may be placed in a segregation unit for a temporary period. An official investigation will be started within 24 hours of the responsible supervisor being notified of the incident or allegations.

After reviewing the report from the investigating officer, a supervisor may resolve the incident informally or forward it to the disciplinary panel, depending on the severity of the prohibited act and the information provided from the investigation. If the case is referred to a disciplinary panel hearing officer, the hearing will take place as soon as practical, but no later than seven days after the alleged violation, excluding weekends and holidays.

The Institutional Disciplinary Panel is comprised of three staff members appointed by the facility administrator. One of the three staff members serves as the panel chairperson. The panel should not include the reporting officer, the investigating officer, and any member of the referring unit, or anyone who witnessed or was directly involved in the incident.

The disciplinary panel uses an established system of charges and sanctions for rule violations. The panel may render a verdict in your case using these charges and sanctions. The panel can reduce the charges if deemed appropriate. If you do not accept the panel's verdict, you may use your right to appeal as listed below.

Prior to referring the incident report to the disciplinary panel, you will be informed of your rights at the panel, both verbally and in writing. Your rights prior to appearing before the disciplinary panel include:



1. The right to a written copy of the charges against you, at least 24 hours prior to appearing before the panel.

2. The right to a full-time staff member of your choice who may represent you before the panel.

3. The right to present documentary evidence and to call witnesses on your behalf provided that the use of witnesses before the panel does not compromise institutional safety.

4. The right to remain silent. Your silence alone may not be used to support a finding that you committed a prohibited act.

5. The right to be present throughout the disciplinary hearing, except during panel deliberations and when institutional safety would be jeopardized or compromised by your presence.

6. The right to appear before the panel when they advise you of their decision, except when institutional safety would be jeopardized. Regardless if you are able to appear before the panel to receive their decision, you will be provided with a written notice of the panel's decision that explains the basis of their findings.

7. The right to appeal the decision of the panel to the facility administrator. You must file an Appeal Form within five days from the date when you are notified of the panel's decision.

At any time during the hearing, the disciplinary panel may find the need to order a further investigation into the alleged prohibited act and may continue the hearing to a future time. The panel may recommend that you be placed into disciplinary segregation for a specified period of time that may not exceed 60 days for all violations arising out of one incident. However, the facility administrator or his or her designee must approve the panel's recommendation before any detainee is placed into disciplinary segregation.

## 11.2 Criminal Violations

All detainees are subject to all laws of the United States and of the state or territory in which they are detained. Any detainee violating these laws may be charged criminally and tried for that violation in the appropriate local, state, or federal court. You will be formally notified if you are charged with a criminal violation while you are in ICE custody. Once you are notified that you are being charged with a criminal violation of law, you will be advised that you have the right to have legal representation for any interviews or court appearances related to the criminal charges pending against you. If you are indigent, an attorney will be appointed to represent you for the course of the criminal case.

PL000082

The filing or disposition of charges in a judicial court of record for the violation of local, state, or federal law does not, in any way, prevent or affect the administrative handling of the same act as an institutional disciplinary matter, nor of taking disciplinary action against the detainee in question. However, information obtained during the administrative processing of the institutional disciplinary matter cannot be used to incriminate the detainee/defendant in a criminal case.



## 12. Use of Force

Officers may use physical force only after all reasonable efforts to resolve a detainee situation have failed. Officers shall use as little force as necessary to:

- Gain control of the detainee;
- Protect and ensure the safety of detainees, staff and others;
- Prevent serious property damage; and
- Ensure the security and orderly operation of the facility.

Physical restraints shall be used only under specified conditions to gain control of a detainee who is endangering himself, herself, or others.

## 13. Communication with Staff

You are encouraged to speak informally with staff about everyday concerns and for information about facility policies and procedures. Once each week, ICE/ERO staff will visit the facility and talk with detainees.

You may submit written questions, requests or concerns to facility or ICE/ERO staff using a Detainee Request Form. In addition you may file a written request or complaint with ICE regarding your treatment at a facility using the Detainee Request Form. You may request this form from your housing officer. These forms are collected a minimum of twice a week and are forwarded or faxed

to the ICE office with responsibility for your care and well-being. ICE is required to respond within three business days to your request or to notify you if your request cannot be responded to within three business days. In the absence of forms you may use a sheet of paper.

To prepare your request, you may obtain assistance from another detainee, your housing officer, or other facility staff. If you choose, you may seal the request in an envelope that is clearly addressed with the name, title and/or office to which the request is to be forwarded. Your request will be promptly routed and delivered to the appropriate officials by staff (not by detainees) without reading, alteration, or delay.

Informal written requests are not intended as a substitute for the more formal process addressed in the next section, Grievance Procedures.

## 14. Grievance Procedures

You have the right to pursue a formal complaint or grievance in accordance with the following procedures:

1. Before writing a formal complaint or grievance, we request that you first attempt to resolve your complaint or grievance informally with the housing unit officer or appropriate staff member. You should present your oral complaint or informal grievance no later than five days from the date the underlying event, incident, or condition became a concern.

2. If you express your concerns orally to an officer or other staff member, he or she will make every effort to resolve the situation informally to your satisfaction. If your concerns are not resolved informally, you may then request a Grievance Form from your housing officer. You then have five days to return your completed Grievance Form back to your housing officer.

3. Your housing officer will then submit your completed form to the grievance supervisor/officer for resolution. If the grievance officer or supervisor cannot resolve



PL000093

a written grievance, then it will be forwarded to the Chief of Security or the appropriate department head.

4. If the department head cannot provide resolution, then a Detainee Grievance Committee (DGC) will be convened to review the grievance. In an ICE SPC, the DGC will be comprised of an Assistant Officer In Charge and two department heads or their representatives. In an ICE CDF, at least one member of the grievance committee must be an ICE employee (see local supplement). No one named in the complaint, involved with earlier resolution attempts, or involved with helping prepare the written grievance may participate in the grievance committee.

5. The DGC may call witnesses, inspect evidence or otherwise gather facts essential to an impartial decision. The committee will offer you the opportunity to appear before it to present your case, answer questions and respond to conflicting evidence or testimony. The committee may also provide you with an opportunity to discuss your case telephonically.

6. The DGC shall have 15 days to reach a decision. Within five working days of reaching a decision, the DGC will provide the detainee with its response to the grievance, in writing. The written response will state the decision and the reasons for it. DGC decisions can be appealed to the facility administrator within five business days of receipt. **The facility administrator's decision is final**.

7. You **may not** submit a grievance on behalf of another detainee. **You may,** however, seek assistance from another detainee or staff member in preparing your grievance. Your need to obtain assistance will not normally justify an extension of the five day time limit for submission of your written grievance.

8. No harassment, punishment or disciplinary action will result simply because you are seeking resolution of a complaint.

9. A copy of your detainee grievance will be maintained in your detention file for a period of three years.

You may file a complaint about staff misconduct, abuse or civil rights violations directly with the U.S. Department of Homeland Security, Office of the Inspector General (OIG):

— E-mail at DHSOIGHOTLINE@DHS.GOV
— Telephone at 1-800-323-8603
— Mail from your housing unit at no cost to you:

> DHS OIG HOTLINE
> 245 Murray Drive, SE
> Building 410
> Washington, DC 20538



# 15. Evacuation Drills

To ensure your safety in the event of an emergency, all facilities approved to house ICE detainees perform periodic evacuation drills. Facilities may not be able to inform you in advance of any drill. These drills are not designed to frighten or inconvenience you, but rather to ensure that you know what safety measures are essential for your safety.

For example, it is important that you know where the emergency exits are located and the proper procedures for exiting the building to ensure your safety during an actual emergency, such as a fire, gas leak, civil disaster or other dangerous situation.

In your housing unit, you will find a diagram showing the location of all fire exits. Study this diagram carefully. You are required to follow directions regarding any emergency or non-emergency event and your failure to do so may result in disciplinary action.

# 16. Official Counts

In order to maintain proper accountability of detainees at this facility, we conduct official counts a minimum of three times each day. You are required to participate and be counted in accordance with the rules and policy in place at the facility where you are detained. For more information, consult your local supplement.

During all official counts, no movement or talking is permitted. Any disruptions during counts may result in a lockdown of the units involved and disciplinary action may be taken against any detainees contributing to any disruption.

*Please remember that it is your responsibility to be present and counted during any population count and to follow the instructions of staff conducting the count. Failure to stand for the count so that you can be counted is grounds for disciplinary action against you.*

For more information, consult your local supplement.

Unless you feel that you require emergency medical assistance, you must submit a written request for a sick call appointment at designated drop boxes in your housing unit. Sick call requests will be picked up daily and forwarded to the facility's medical department. All detainees signing up for a sick call will be seen in accordance with the schedule provided by the medical authority where they are detained. For more information, consult your local supplement. Sick call slips are expeditiously reviewed and those assigned the highest priority are seen first, generally on the next business day, as appropriate. Detainees signing up for sick call on the weekend will generally be seen on Monday, if the request is deemed non-urgent by medical staff after review of the slip.

Emergency care is always available to you should you feel it necessary. If you feel you are experiencing a medical emergency, tell your housing unit officer or the nearest staff member immediately. If you cannot get to a facility officer or staff member, tell anyone who can get the assistance you need.

## 18. Suicide Prevention

If you are feeling depressed, think you may harm yourself, or need someone to talk to, you should immediately advise your housing unit officer. You will be referred to the appropriate medical professional. All potentially suicidal or severely depressed individuals are treated with sensitivity and receive the proper referrals for assistance.

## 19. Sexual Abuse/Assault Prevention and Intervention Program

ICE operates the Sexual Abuse and Assault Prevention and Intervention Program for all detention facilities. If you feel unsafe because of threats of sexual abuse or assault, or if you are sexually abused or assaulted, you should immediately advise the housing officer, another staff member or the sexual abuse prevention program coordinator. (See local supplement for contact information for the program coordinator.) Information concerning the identity of a detainee victim reporting a sexual assault, and the facts of the report itself, shall be limited to those who have a need to know in order to make decisions concerning the detainee-victim's welfare, and for law enforcement/investigative purposes.

There are several ways that you can report abuse and protect yourself from becoming a victim. See your local supplement for contact information for the program coordinator. If you feel you are at risk of being abused, you may do one or all of the following:



## 17. Medical Care

During your period of detention, you have the right to timely and adequate medical care if you are sick, injured or otherwise in need of treatment. The ICE Health Service Corps (IHSC) or contract medical staff provides medical care to all detainees staying in ICE-approved facilities. You have the opportunity to request medical care at any time. In ICE facilities, a detainee medical appointment request is called a "sick call."

If you are ill or in need of medical attention, you must first sign up for a sick call using the appropriate form. If it is after sick call hours, you must notify your housing unit officer, who will contact the on-call medical staff member.



PL000085

U.S. Immigration and Customs Enforcement · National Detainee Handbook

1 Supp. App. 50

- Contact your housing unit officer or the unit supervisor.
- File an emergency grievance stating the nature of your problems and your immediate needs. Your housing unit officer or the unit supervisor will tell you how to file an emergency grievance.
- Contact ICE, using the Staff/Detainee Request form.
- File a complaint directly to the U.S. Department of Homeland Security, Office of the Inspector General (OIG):
  - E-mail at DHSOIGHOTLINE@DHS.GOV
  - Telephone at 1-800-323-8603
  - Mail from your housing unit at no cost to you:

**DHS OIG HOTLINE**
**245 Murray Drive, SE**
**Building 410**
**Washington, DC 20538**

- Notify a relative or friend and they may contact ICE or the OIG directly on your behalf.

If you are sexually abused or assaulted, the appropriate staff at your facility will arrange for medical treatment and victim counseling.

# 20. Telephone Access

## 20.1 General Telephone Access

You will be provided with access to a telephone during the admission process and within your respective housing area during your detention. In facilities where demand for telephone use is high, the facility may regulate the amount of time you have to make and complete your call. However, it may not be less than 15 minutes per call. For more information, consult your local supplement.

In case of an emergency, such as illness or death in your family, you should request assistance from your housing unit officer or a supervisor, or directly from ICE personnel, to make telephone calls at times that telephones are not normally available. Routine telephone calls to attorneys are not generally considered to be emergencies.

Your telephone access may be restricted if you are found to be violating the rules of the facility or are found to be abusing the equipment. Your access may also be severely restricted if you are found using the telephone to further illegal activities.

***It is your responsibility to follow the rules of the facility regarding access to telephones and to take proper care of the equipment when you are using it. For more information, consult your local supplement.***

## 20.2 Telephone Access to Attorney

Calls made from detainee phone systems are subject to monitoring, with the exception of calls to an attorney. Facilities may not monitor any call to an attorney.

***You are responsible for listing attorney numbers on your Authorized Phone Numbers Form to ensure that the calls between you and your attorney are not monitored.***

The ICE field office in the area where you are detained will provide a list of pro bono legal organizations and their phone numbers to you. Often, telephone numbers of pro bono providers are posted in the housing units. Dialing instructions will be posted.

***It is your right to request a copy of free legal service providers if one was not provided to you or when you are transferred from one detention facility to another.***

## 20.3 Free Calls

You are entitled to access of free and toll-free telephone calls to the following entities:

- Consulates;
- Courts;
- Immigration Courts;
- Pro bono attorneys or free legal aid groups recognized by the Executive Office for Immigration Review;

PL000086

**1 Supp. App. 51**

- The U.S. Department of Homeland Security, Office of the Inspector General.

If you experience any problems with the ICE pro bono telephone system, please report the problem to your housing officer so that we can take immediate steps to ensure that the system is functioning properly. If your housing unit's phone system does not allow for toll-free calls to the entities listed in the above paragraph, you may request toll-free calls to be arranged by your housing officer. There will also be instructions posted in your facility for alternative means to complete calls in the event that the ICE pro bono telephone system is not functioning properly.

*It is your right to request access to the ICE pro bono telephone system. If your request to call is refused, you should notify any ICE officer that you wish to submit a written request for access so that your call will be facilitated. Please refer to "Communication with Staff" on page 8 of this handbook for detailed instructions.*

## 21. Consular Notifications

As a non-U.S. citizen who has been arrested or detained, you are entitled to have ICE notify your country's consular representatives here in the United States. A consular official from your country may be able to provide assistance, such as helping you obtain legal counsel, contacting your family or visiting you in detention. If you want ICE to notify your country's consular officials, you can





request that your deportation officer make a notification at any time. After ICE notifies your consular officials, they are permitted to call or visit you directly. At any detention center, you are also entitled to contact your consulate, free of charge, using any telephone system at the center.

## 22. General Visitation

You are entitled to have visitors come to see you at all facilities housing ICE detainees. In order to enter the facility, visitors must be dressed in appropriate and socially acceptable attire. If your visitor brings children (seventeen years of age or under), the adult visitor is expected to supervise these children to ensure that they will not disturb others. Any disruptive conduct by either a detainee or his or her visitors may result in the termination of the visit. Such disruptive conduct could have an adverse effect on future visitation privileges.

You are not allowed to accept any item from a visitor unless it is first presented by the visitor to the appropriate supervisory personnel for approval. Any unapproved item that you accept from a visitor can be seized as contraband, and you could be subject to administrative and criminal penalties for having contraband.

You should discourage your visitors from bringing large quantities of hand-carried parcels or other items. Visitors may be required to leave such items in a locker or their vehicles. All of your visitors and any of their hand-held items are subject to search.

*It is your responsibility to understand the rules and to ensure that potential visitors understand the rules regarding visitation. Consult your local supplement for more information.*

## 23. Attorney Visits

Legal representatives or paralegals may visit detainees during the hours established by the facility administrator, seven days a week. You may request to meet with your legal representative during meal hours. If you request this

PL000087

option, you will be provided a meal tray or sack meal to eat during your meeting.

You should receive a list of pro bono legal organizations operating in your area from the facility staff. Your facility should also post this list in all detainee-housing areas and other appropriate areas. This list is updated quarterly.

If you wish to see a representative or paralegal from an organization on the pro bono list, it is your responsibility to contact that individual for an appointment. You can use the free access telephones to contact these legal organizations.

If you have made an appointment to meet with an attorney, legal representative or paralegal from an organization, legal firm or other association or company, it is your responsibility to cancel the appointment if you do not intend to keep it. Appointment cancellations may not be accomplished on your behalf by or through an officer or another detainee. Consult your local supplement for more information.

## 24. Legal Mail

Legal or special correspondence is defined in the ICE National Detention Standards as a detainee's written communication to or from private attorneys and other legal representatives, government attorneys, judges, courts, embassies and consulates, the President and Vice-President of the United States, members of Congress, the U.S. Department of Justice (including the Office of the Inspector General), the U.S. Department of Homeland Security (including ICE), the U.S. Public Health Service, administrators of grievance systems and representatives of the news media.

Legal correspondence may be held for a reasonable period (not to exceed twenty-four hours) to allow verification of the privileged status of the addressee or sender. Incoming legal correspondence will be opened in the presence of the detainee. It will be inspected for contraband, but will not be read unless reasonable suspicion exists of abuse of legal correspondence and not unless authorized by the facility administrator.

The detainee, in the presence of staff, will seal outgoing legal correspondence. Incoming legal correspondence will be treated as privileged only if the name and official status of the sender appear on the envelope. Outgoing legal correspondence similarly requires that not only the name, but also the official status of the recipient appears on the envelope. It will be your responsibility to advise the senders of legal correspondence of the labeling requirements. **Both incoming and outgoing legal mail shall be labeled "Legal Mail" on the envelope.**

Indigent detainees will be permitted to mail, at government expense, a reasonable amount of correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative, consular official and any court. Consult your local supplement for more information.



## 25. Outgoing and Incoming Mail

You have the right to correspond with persons or organizations consistent with the safety, security and orderly operation of the facility where you are detained. All incoming and outgoing letters are subject to inspection, for content and contraband. You are responsible for the contents of your outgoing mail.

If you choose to correspond with others, you must follow the following established procedures:

* You may send or receive mail to or from anyone you know personally.
* You may seal your outgoing letters and place them in the detainee mailbox, or use any other method designated by the facility administrator.
* You are required to write your name, your Alien or ID number, and the facility address on the upper left-hand corner of the envelope of all outgoing mail.
* Your incoming mail must also include your Alien or ID number as part of the envelope address and also listed on the first page of any written letter.

Any incoming mail lacking your Alien or ID number will be returned to sender, including any legal correspondence or packages.

Incoming mail that does not list your Alien or ID number will be rejected and returned to the sender. If the staff has reason to believe that you are violating or circumventing mail policies, your mailing privileges could be restricted. Mail restriction usually means that you may only write to people that have been approved by the facility administrator. It also means that all your incoming and outgoing mail could be censored or read by the staff.

PL000088

Incoming mail that does not meet facility standards will be considered contraband and withheld. Correspondence that may be rejected includes, but is not limited to, items with the following content:

- Material that depicts, describes or encourages activities that could lead to physical violence or group disruptions;
- Information regarding the manufacture of explosives or weapons; information regarding escape plots, plans to commit illegal activities or to violate ICE rules or facility guidelines;
- Information regarding the production of drugs or alcohol;
- Sexually explicit material;
- Threats, extortion, obscenity or profanity;
- Coded messages;
- Anything that affects the safety and security of the facility; or any other contraband.

All incoming mail is normally delivered to you within 24 hours of receipt by facility staff, and your outgoing mail will be routed to the proper postal office no later than the day after receipt by facility staff (excluding weekends and holidays). The sole exception is mail requiring special handling for security purposes. Mail may be delivered to the housing units already opened and inspected.

Any identity documents that are received in the mail shall be forwarded to your deportation officer. You will receive notification that the identity document has been forwarded. You may make a written request to your deportation officer to receive a certified copy of the identity document.

When you depart the facility, your incoming mail will be marked "Return to Sender" and returned to the postal service.

You may not write to other penal, correctional or detention facilities without the express permission of the facility administrator and the ICE Field Officer Director. You must request permission by completing a Detainee Request Form. If you attempt to send mail to another penal, correctional or detention facility without an approved request, the correspondence is considered contraband and you could be subject to disciplinary action. You may not write to another detainee detained within your own facility without permission from the Officer in Charge.

Pencils, paper and envelopes may be obtained from the Housing Unit Officer. They may also be purchased from the commissary. Indigent detainees will get at least three stamped envelopes per week for personal mail.

Subscriptions to publications, magazines and catalogs are not allowed.

*You are responsible for knowing the individual rules and regulations regarding correspondence in the facility where you are detained. You are responsible for the contents of your outgoing mail. Consult your local supplement for more information.*

## 26. Finances

Occasionally, you may wish to send money to your family or to others outside of the facility. We advise you not to send cash through the mail. To send money in a more secure manner, you may contact the shift supervisor, who will make arrangements for you to purchase a money order. If you receive money in the mail, the officer, in your presence, will issue you a receipt for the money before placing it in your account.

Each facility shall have established rules and procedures specifically regarding the handling of cash, checks, money orders or other funds of its detainees. The facility must provide you with a written copy of their policies and procedures and assist you with understanding these rules. *Consult your local supplement for more information.*



## 27. Meals

All meals served by our facilities are nutritionally balanced, dietician-approved and properly prepared. We only serve our meals in wholesome, clean, safe surroundings. We do not use food as either a disciplinary measure or reward. All detainees will be provided with meals from a standard menu unless a special diet request is approved. In some detention facilities, meal times and menus are posted on the bulletin board in the housing units.

While most facilities do not serve pork products, it is not a prohibited item. You may check the menu and request a common fare diet (religious/diet menu) when appropriate. Other special diet requests for religious reasons should be referred to the chaplain for evaluation.

Special diet requests for medical reasons are referred to medical personnel for evaluation.

PL000089

At each meal, you will be issued appropriate eating utensils and a napkin. The utensils must be returned at the end of each meal.

Meals are served either in a central dining area or, where appropriate, in the dining area of each housing unit. Each detainee is allowed one meal to be consumed during mealtime, for a total of three meals a day. Detainees in the Special Housing Unit (SHU) and detainees on lockdown status will be served in their individual cells.

*If you have a special dietary need due to religious or medical reasons, it is your responsibility to request a special diet that meets your needs. Your request will be evaluated to ensure that you will be provided with an appropriate meal. Consult your local supplement for more information.*



# 28. Vending Machines or Commissary

Your facility may or may not participate in a program that provides you with an opportunity to purchase commissary items. If your facility has a commissary program or vending machines, then your facility will also have specific local procedures about access. You do not have a right to have access to commissary items, but the facility is required to provide you with supplies to meet your basic personal hygiene needs. If your facility has a commissary program, your participation is completely voluntary. You are not required to purchase any items from a facility.

*If you order commissary items and you are subsequently transferred or removed prior to receiving your items, you are not entitled to a refund or to have your items forwarded. However, the facility where you ordered the commissary items may at its own discretion provide you with a refund prior to your departure from their facility. Consult your local supplement for more information.*

# 29. Dress Code and Grooming Standards

Detainees are required to keep themselves clean and to wear appropriate clothing and footwear during all activities. Any deviations from maintaining good personal hygiene and from wearing appropriate clothing could cause potential conflicts with your peers and others. Poor personal hygiene or unsanitary habits can also have a negative impact on the health and safety of yourself and others. Failure to comply with the dress code and grooming standards could ultimately become an issue that requires staff intervention, including appropriate disciplinary action.

A. Ordinarily, detainees may wear any reasonably safe and hygienic hairstyle with the following exceptions:

   1. For safety and hygiene reasons, kitchen workers and detainee workers operating machinery shall keep their hair in a neat, clean and commonly accepted style.

   2. All kitchen workers shall wear a hairnet when working in the kitchen.

B. Ordinarily, facial hair may be grown without restriction. However, there is one exception:

   1. For safety reasons, detainee workers operating machinery (including kitchen workers) are not authorized to wear facial hair and are expected to be clean-shaven while performing their duties. This restriction from wearing facial hair is a requirement for employment in the above described work assignments (i.e. kitchen worker and machine operator). Acceptance of the job denotes acceptance of the grooming standards. There will be no exceptions to this requirement, including requests based on medical reasons.

*You are responsible for learning and following the facility dress code for the location where you are detained. Consult your local supplement for more information.*

# 30. Clothing

The basic uniform for detainees shall be distinctive in appearance as to identify the detainee according to his or her security level. **In ICE/ERO and contract facilities (SPCs and CDFs),** the basic uniform is blue, orange or red.

1. Blue uniforms and wristbands—Level 1 detainees.

2. Orange uniforms and wristbands—Level 2 detainees.

3. Red uniforms and wristbands—Level 3 detainees.

PL000090

**1 Supp. App. 55**

All issued clothing shall be worn as specified in the following instructions and in no other manner. These requirements are essential to ensure compliance with appropriate security, hygiene and conduct.

- Clothing must be clean and in good repair. Torn clothing is not authorized apparel.
- Only kitchen workers will be authorized to wear white uniforms.
- The wearing of mixed colors is not authorized for outer garments.
- While in the housing units, the detainee kitchen workers will wear the appropriate color uniform.

### In addition:

- Undergarments may be worn without outer garments only while inside the sleeping quarters or the restrooms. **NO EXCEPTIONS!**
- Shower shoes may be worn only inside the housing unit.
- Shoes must be worn at all times when outside the housing units.
- Hats or other head covers will not be authorized for the general population unless approved as religious items by the facility chaplain. Workers will be issued the proper head cover when required, which shall be worn only while performing work-related duties.
- Detainees must wear a complete uniform (shirt, pants and shoes) at all times while in the dining hall, medical visits, court appointments and during religious services and visitations.
- Pants must be worn at a point about the waist that prevents the crease of the buttocks or undergarments from showing, regardless of the length of the shirt.
- Detainees may not walk about the facility with their hands inside the waistband of their pants, regardless of weather conditions.
- No article of clothing may be worn in a manner not normally intended for that item (using a shirt as a head band or head cover, rolling up pants legs, etc.).
- No alteration or modification of facility issued clothing will be allowed.

## 31. Clothing Exchange

Clothing exchanges, for male and female detainees, will be made on a "one dirty garment for one clean garment" basis according to the following schedule:

- Outer garments shall be exchanged twice a week.

- Socks, underwear and towels shall be exchanged daily.
- Sheets and pillowcases shall be exchanged weekly.
- All food service detainee volunteer workers shall be required to exchange outer garments (whites) daily.
- All other volunteer workers may exchange outer garments according to facility policy. *Consult your local supplement for more information.*

In order to ensure an adequate supply of clean clothing for all detainees, the hoarding of clothing is prohibited. Generally, detainees are not permitted to wash clothing, bedding, tennis shoes or other items in their housing unit, unless washing machines and clothes dryers are available according to facility policy.

## 32. Personal Hygiene

You will be living in a dormitory or secure housing unit with other individuals, so personal hygiene is essential for promoting a healthy and harmonious living environment.

You are expected to bathe regularly and to keep your hair clean. Your housing unit will post a shower schedule to designate specific times that your section or unit can use the shower during each day.

Personal hygiene items for male and female detainees, such as soap, toothpaste, toothbrushes, combs, hairbrushes and other items will be issued to you upon admission. If you run out of any issued item, you can ask your housing officer for a replacement. Female detainees can request feminine hygiene products from the housing officer as needed.

Disposable razors are provided on a daily basis and may not be shared. Razors will be checked out on an as-needed basis and must be returned when you have finished shaving. For health and safety reasons, more than one detainee shall not use a single disposable razor. We prohibit the sharing of razors in order to prevent the spread of communicable diseases, such as HIV and hepatitis.



PL000091

If you will be attending a court hearing, you will be afforded the opportunity to shave before appearing.

You must check with the facility where you are detained for its respective rules and policies regarding the use of disposable razors. *Consult your local supplement for more information.*

## 33. Barbering Services

Barbering services vary by facility and location. Each facility is required to provide information regarding how to request and obtain hair care. It is your responsibility to familiarize yourself with facility rules and policies regarding hair care and barbering services.

*It is your responsibility to request hair care in accordance with the rules of the facility where you are detained. Consult your local supplement for more information.*

## 34. Sanitary Living Conditions

Clean facilities help to ensure safety and detainee personal health. It is in your best interest to maintain a clean living area and to avoid health and safety problems associated with unsanitary living conditions.

When your bed is not in use, it must be made up to facility standards. We require that you keep your bed and immediate area clean and neat. You are also required to make your bed daily before reporting for your work assignment or when you begin your daily routine. Hanging of sheets, towels, blankets or clothing from wires, lights, beds, bars or other objects is not permitted. Special accommodations will be provided for wet towels.

Storage of personal effects, including hygiene items, must be done in accordance with the policies and procedures that you will be shown. Do not place items at any unauthorized location, such as on windowsills, windows, bunks, lockers, under a mattress, etc. Items in violation of storage rules may be confiscated and removed from the unauthorized area. If your items are confiscated for being placed in an unauthorized area, it is your responsibility to identify and reclaim your items from the appropriate supervisor.

## 35. Smoking Policy

Generally, most facilities do not allow smoking. All federal facilities, and those contracted directly by the federal government, are required to be smoke-free. *Consult your local supplement for more information.*



## 36. Voluntary Work Program

We will make every effort to ensure that you have an opportunity to participate in a voluntary work program. However, many local and state owned facilities used by ICE do not allow ICE detainees to participate in their work programs. If you are detained in a local or state owned jail that is used by special agreement with ICE, you will not necessarily receive monetary compensation for your work. *Consult your local supplement for more information.*

If you are housed in an ICE Service Processing Center or Contract Detention Facility, you will be paid $1.00 per day worked (not per work assignment). Ordinarily, you will not be permitted to work in excess of eight hours daily or 40 hours weekly unless a request is made to and approved by the facility administrator or designee.

In order to participate in this program, you will be required to sign a voluntary work program statement and to complete any work-related training. You will be required to adhere to all dress, grooming and hairstyle restrictions related to your work assignment. If you are accepted into a volunteer work program, you will be expected to work according to an assigned work schedule and to perform assigned duties at a satisfactory level. Deficiencies such as unexcused absences or unsatisfactory work performance may result in removal from the voluntary work program.

You are not entitled to compensation for tasks that involve maintaining your personal area or cleaning up after yourself in general use areas. You are required to perform basic cleaning tasks within your living unit, regardless of where you are held. For example, you could be disciplined if you refuse to make your bed or otherwise refuse to clean up after yourself.

*You are responsible for becoming familiar with the policies and procedures regarding voluntary work at the facility where you are detained. Consult your local supplement for more information.*

PL000092

1 Supp. App. 57

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 63



# 37. Recreation Facilities

## 37.1 Housing Unit Recreation

If your period of detention is expected to last longer than 72 hours, you will be provided with the opportunity to participate in leisure activities. Leisure activities may include access to television, movies or games and game boards. The type of leisure activities available are determined by each facility and are dependent upon your level of classification and housing assignment in the facility. *Consult your local supplement for more information.*



## 37.2 Outside Recreation

If your period of detention is expected to last longer than 72 hours, you will have an opportunity for one hour of outdoor recreation per day, five days per week. Outdoor





recreational opportunities can be limited by inclement weather or physical security concerns. Indoor recreation may not be substituted for outdoor recreation.

If you are housed in a facility in which only indoor recreation is allowed, you will have the opportunity after an interim period of six months to accept an offer to be transferred to a facility where outdoor recreation is available.

# 38. Library

Most detention facilities contain standard library materials similar to those found in a school or community library. The needs, interests and abilities of the majority of detainees are carefully considered and the library collection developed accordingly. In facilities where a library is available, you are permitted to check out books during designated hours. It is important that you take care of the books and materials that you use and return them in a timely manner, so other detainees have the opportunity to read and enjoy them as well. *Consult your local supplement for more information.*



# 39. Law Library

As a detainee in the custody of ICE, you are entitled to access to a designated law library and to office equipment to copy and prepare legal documents. The law library access hours will be posted in all housing units. (See local

PL000093

**1 Supp. App. 58**

supplement for law library access hours.) Your facility shall provide you with access to approved legal materials, facilities, equipment and document copying privileges. You are entitled to a minimum access of five hours each week to the law library so that you can work on your legal case. You may request additional time by using a written request form that provides a justification for your need for additional access to the law library.

Many facilities provide detainees with access to law materials using Lexis-Nexis, a Web-based research database that provides up-to-date access to legal materials in an electronic format. Where this system is available, it replaces legal books and publications.

Self-help material is provided and made available to all detainees for their use for research or preparation of legal documents. The facility shall permit detainees to assist other detainees in researching and preparing legal documents upon written request to the facility administrator. The facility administrator may refuse to allow such assistance if there is any security risk or any other concerns. Detainees may provide legal assistance to others on a voluntary basis only. No detainee shall be allowed to charge a fee or accept anything of value for providing such assistance. The facility will not pay any detainee to provide legal assistance to another detainee.

*You are responsible for following the rules regarding access to the law library and use of any equipment. Any deliberate violation or willful failure to follow the rules may result in disciplinary action being taken against you and a loss of your privilege to use the law library. Consult your local supplement for more information.*



# 40. Typewriters and Computers

Typewriters and/or computers are available in the law library for preparation of legal documents **ONLY**. These typewriters are not to be used for personal correspondence. You may request paper and pencils from your housing officer for writing personal correspondence.

# 41. Religious Services

You are entitled to have access to religious resources, services, instruction and counseling on a voluntary basis. It is ICE policy to provide all detainees with the freedom and opportunity to pursue any religious belief or practice, within the constraints of security and safety considerations. Every detention facility is required to provide you with reasonable access to religious services and providers of your faith.

*It is your responsibility to review information at each facility regarding the times and types of programs that are available at the facility where you are detained.*

# 42. Marriages

You or your legal representative may request permission to marry from the facility administrator, ICE Field Office Director, or his or her designee. Your request to marry must be submitted in writing to the facility administrator. Your written request must specifically address the following three issues:

- Whether you are legally eligible to be married;
- Whether you are mentally competent to enter into a marriage; and
- Whether the intended spouse will certify that they will marry you.

Your request must be accompanied by a written affirmation by your future spouse that certifies that he or she intends to marry you.

The facility administrator will refer your request to the ERO Field Office Director once it is complete. Final approval must be obtained from the Field Office Director in the area where you are detained. Failure to obtain this approval could result in a delay or cancellation of any ceremonies or approved visits for the purpose of marriage.

# 43. Group Legal Rights Presentations

At some facilities, volunteer groups within the local community will hold group legal rights presentations to provide information and assistance to ICE detainees. The facility will post notification in common areas so that you will be aware of these scheduled presentations in advance. A sign-up sheet will be available in each housing unit, and you will be given the opportunity to attend. Presentations are open to all detainees, regardless of the presenter's intended audience. Exceptions may be made when a detainee's attendance could pose a security risk.



Detainees in segregation will be allowed to attend group presentations in keeping with security requirements. If necessary, presentations may be made to individuals in segregation, provided that the presenter agrees to such arrangements and that security can be maintained. If a detainee in segregation cannot attend any type of presentation due to security reasons, and both the detainee and the presenters so request, alternative arrangements may be made.

Some facilities may not have group legal rights presentations because there are not any volunteers in the community offering them. If there are no volunteers available and willing to provide presentations, then we regret that none will be given.

PL000095

1 Supp. App. 60

Case 1:14-cv-02887-JLK-MEH Document 261-3 Filed 04/29/20 USDC Colorado Page 2 of 9
Case 3:17-cv-05806-RJB Document 229-2 Filed 08/08/20 Page 2 of 9
Appellate Case: 22-1409 Document: 38-1 Date Filed: 03/24/2023 Page: 66

THE HONORABLE ROBERT J. BRYAN

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>     Defendant. | Case No.: 3:17-cv-05806-RJB<br><br>DECLARATION OF TAE D. JOHNSON<br>ASSISTANT DIRECTOR, CUSTODY<br>MANAGEMENT DIVISION,<br>ENFORCEMENT AND REMOVAL<br>OPERATIONS (ERO) UNITED STATES<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT (ICE) DEPARTMENT<br>OF HOMELAND SECURITY (DHS) |

I, Tae D. Johnson, make the following statement under oath subject to the penalty of perjury pursuant to the laws of the United States and the State of Washington:

1. My name is Tae D. Johnson. I am competent to testify in these matters in that I am over the age of majority and I am familiar with the subjects discussed herein.

2. I am a member of the Senior Executive Service serving as the Assistant Director, Custody Management Division, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS), in Washington, D.C. I have held this position since January 2, 2011. My current work address is: 500 12th Street Southwest, Washington, D.C. 20536.

Case 1:14-cv-02887-JLK-MEH   Document 261-3   Filed 04/29/20   USDC Colorado   Page 3 of 9
Case 3:17-cv-05769-RBJB   Document 299-2   Filed 08/03/20   Page 3 of 9
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 67

3. I hold a Bachelor of Science degree in accounting from Salisbury University in Salisbury, Maryland.

4. In 1992, I began my federal career in Salisbury, Maryland with the former Immigration and Naturalization Service (INS). For the past 20 years, I have served as a detention enforcement officer, a supervisory detention enforcement officer, a supervisory immigration enforcement agent and deportation officer with INS and ICE.

5. Since 2011, while at ICE headquarters, I have served as a Unit Chief of the detention standards compliance unit, as Chief of Staff for the Office of Detention Policy and Planning, as Special Assistant to the Assistant Secretary for ICE, and as Deputy Chief of Staff for the Executive Associate Director for ERO.

6. In my current position as Assistant Director, I oversee and direct the Custody Management Division, which provides policy and oversight for the administrative custody of more than 41,000 detainees daily and roughly 375,000 detainees annually. The Custody Management Division oversees and manages ICE detention operations to provide for the safety, security and care of detainees in ICE custody. The ICE detention system consists of more than 250 local and state facilities operating under intergovernmental service agreements, contract detention facilities, ICE-owned facilities and facilities operated by the Bureau of Prisons.

7. ICE arranges for detention services through three primary types of arrangements. Service Processing Centers (SPCs) are government-owned facilities and are operated directly by ICE. Contract Detention Facilities (CDFs) are contractor-owned-and-operated facilities at which ICE has contracts with private services providers. Intergovernmental Service Agreements (IGSAs) are agreements between ICE and a state or political subdivision of a state, such as a local government. (8 U.S.C. §1103(11)(A)). Sometimes the state or political subdivision then enters into a subcontractor agreement for a private contractor to operate the facility.

8. Northwest Detention Center (NWDC) in Tacoma, Pierce County, Washington is a CDF, and is within my chain of authority. NWDC operates pursuant to a performance-based contract, which is a results-oriented method of contracting focused on outputs, quality, and outcomes.

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
2 of 8

Case 1:14-cv-02887-JLK-MEH  Document 261-3  Filed 04/29/20  USDC Colorado  Page 4 of 9
Case 3:17-cv-05806-RJB  Document 229-2  Filed 08/08/20  Page 4 of 9
Appellate Case: 22-1409  Document: 38-1  Date Filed: 03/24/2023  Page: 68

Performance-based contracts do not designate *how* a contractor is to perform the work, but rather establishes the expected outcomes and results that the government expects. It is then the responsibility of the contractor to meet the government's requirements at the price the vendor quoted. The NWDC contract is also a firm-fixed price contract, which means that GEO responded to the government's requirements by quoting fully burdened rates (i.e. bed day rate, transportation rate, etc.).at which it would perform the requirements outlined in the contract's Performance Work Statement (PWS). When contracting for detention services in the Seattle Field Office region, ICE sought a firm-fixed price performance-based contract for a full-service facility that would provide the safe and secure detention, transportation, detention management, and ancillary services for up to 1,575 adult detainees.

9. I am aware that the State of Washington filed a lawsuit, *State v. GEO*, U.S. District Court Western District of Washington ECF Case No. 3:17-cv-05806-RJB, making certain wage-related claims against ICE's contractor, The GEO Group, INC. (GEO). I am also aware that in a related action, *Nwauzor v. GEO*, U.S. District Court Western District of Washington, ECF Case No. 3:17-cv-05806-RJB, ICE detainees filed a class action lawsuit against GEO alleging an entitlement to minimum wages for participating in the VWP.

10. Aliens whom ICE officers and agents arrest for civil immigration violations are those for whom ICE has probable cause to believe are removable from the United States.[1]  When an individual is detained in ICE custody, ICE provides for their care and custody under the agency's detention standards. These standards provide for the health and welfare of ICE's detainees.[2]  ICE ensures its custodial supervision obligations are met through a set of standards and inspections to ensure all types of its facilities implement and adhere to ICE's

---

[1] See generally 8 U.S.C. § 1357 (2018); see also, 8 U.S.C. § 1101(a)(3), "[t]he term "alien" means any person not a citizen or national of the United States."
[2] See, e.g., https://www.ice.gov/factsheets/facilities-pbnds

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
3 of 8

Case 1:14-cv-02887-JLK-MEH   Document 261-3   Filed 04/29/20   USDC Colorado   Page 5 of 9
Case 3:17-cv-05769-RJB   Document 229-2   Filed 08/03/20   Page 5 of 9
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 69

contractual requirements and detention standards. The agency's first set of national detention standards were originally issued in September 2000 to facilitate safe, secure, and humane conditions of confinement, access to legal representation and safe and secure operations across the detention system. The standards established consistency of program operations and management expectations, accountability for compliance and a culture of professionalism.

11. One of the many aspects of ICE's detention standards is the Voluntary Work Program. Among other purposes, the VWP enables detainees to receive an allowance of no less than $1 per day that they can then save or spend on commissary items. The purpose of the Voluntary Work Program of the 2011 Performance-Based National Detention Standards (PBNDS)[3] is to provide detainees opportunities to work and earn money while detained, subject to the number of work opportunities available and within the constraints of the safety, security, and good order of the facility. The intent of the Voluntary Work Program is to reduce the negative impact of confinement through decreased idleness, improved detainee morale, and fewer disciplinary incidents. Money earned through the program also allows detainees to buy commissary goods, and pay for phone calls, etc."

12. ICE administers the VWP in its own Services Processing Centers ("SPCs") and according to the PBNDS. According to the NWDC contract with ICE, GEO should manage a detainee work program.[4] The contract states that Detainee labor shall be used in accordance with the detainee work plan developed by the Contractor, in this case GEO, and will adhere to the ICE

---

[3] The Performance-Based National Detention Standards (PBNDS) establishes consistent conditions of confinement, program operations, and management expectations to ensure a safe and secure a detention environment for staff and detainees in the ICE detention system.

[4] See ICE/GEO NWDC Contract.

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
4 of 8

PBNDS on the Voluntary Work Program.[5]  The contract also states that "[d]etainee labor shall be used in accordance with the detainee work plan developed by the Contractor and will adhere to the ICE PBNDS on Voluntary Work Program. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, services, or other jobs…Detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor."[6]

13. Under a 1950 law codified at 8 U.S.C. § 1555(d), ICE is authorized to pay "allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed." The Agency receives an appropriation from which it can make these payments.  The amount of the payments was most recently specified in the appropriations act for Fiscal Year 1979, which set it at a maximum of $1 per day. Pub. L. No. 95-431.  Congress set this rate in 1979 and has not adjusted it since.  Per the terms of the contract, as well as the authority provided above, the reimbursement for the Voluntary Work Program is $1.00 per day per detainee.  The PNBDS also provides that detainees who participate in the VWP shall receive no less than $1 per day for their participation.  ICE reimburses GEO $1 per day per detainee for the VWP, the amount to which GEO is entitled under the contract, and pursuant to the authority provided above.  Per PBNDS, GEO then pays the detainee directly.  This is the same rate that ICE provides to detainees in its own SPC facilities.

14. The NWDC contract states "the contractor shall comply with all applicable federal, state, and local laws…".[7]  Additionally, within the VWP section of the NWDC contract, the contract

---

[5] See *Id.*
[6] See *Id.*
[7] See *Id.*

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
5 of 8

Case 1:14-cv-02887-JLK-MEH   Document 261-3   Filed 04/29/20   USDC Colorado   Page 7 of 9
Case 3:17-cv-05806-RJB   Document 229-2   Filed 08/03/20   Page 6 of 8
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 71

states that "the detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations."[8]

15. ICE involved stakeholders to develop its PBNDS. The workgroup relied upon national correction standards from the American Correctional Association ("ACA"). State and local jails similarly follow ACA standards.

16. PBNDS, including Standard 5.8 that describes the expected outcomes and practices of the VWP, reflect performance standards for ICE detention.

17. ICE audits NWDC for PBNDS compliance, including compliance with VWP objectives and protocols. ICE reports to Congress its efforts to implement and enforce PBNDS standards at NWDC and other facilities. ICE's enforcement of PBNDS has been a priority given ICE's commitment to the fair and humane treatment of ICE detainees.

18. ICE's series of detention standards apply to all types of ICE processing facilities. Regardless of which type of facility arrangement ICE selects, all detainees at all ICE facilities are at all times in the lawful custody of ICE. Accordingly, ICE relies on its contractors to perform in accord with contract requirements at contract facilities. At the NWDC, ICE occupies a significant portion of the facility unrelated to GEO's detention services to fulfill its operational objectives to include its federal immigration courts. ICE has unfettered access to the secure areas and the detainees. The NWDC is subject to DHS audits, third party inspections, and civil rights inspections. Detainees have access to hotlines Monday thru Friday during waking hours by which they can report complaints about VWP participation, other tasks assigned to them, or any other facility related grievances. ICE reviews and

[8] See *Id.*

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
6 of 8

Case 1:14-cv-02887-JLK-MEH   Document 261-3   Filed 04/29/20   USDC Colorado   Page 8 of 9
Case 3:17-cv-05769-RJB   Document 229-2   Filed 08/03/20   Page 8 of 9
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 72

resolves detainee complaints that ICE receives, according to its established procedures and protocols, which includes any complaints about the VWP or detainee work at the NWDC.

19. NWDC has implemented and conforms to current PBNDS. The PBNDS requires that detainees receive at least $1.00 (USD) per day for work performed in the VWP.

20. ICE employs a full-time detention services manager at NWDC whose primary responsibility is to ensure the facility is in compliance with the PBNDS requirements, including those related to the VWP.

21. ICE also employs a contracting officer's representative ("COR") who works full-time at NWDC. The COR's primary duty is to monitor GEO's performance to ensure that all of the technical requirements under the contract are met by the delivery date or within the period of performance, and at the price or within the estimated cost stipulated in the contract.

22. With GEO's monthly invoice, GEO's Assistant Warden for Administration at the NWDC provides the COR an itemization of participants in the VWP, which includes detainee number, name, date of participation, work performed, and amount paid. The COR reviews this itemization and the corresponding totals of $1.00 per day per participant. The COR verifies that the line item on the invoice matches the proper contract line item number for the VWP on the contract. If the supporting paperwork for the entire invoice meets ICE standards, the COR signs the invoice to approve payment.

23. GEO may not otherwise expend the funds allocated for the reimbursement for the $1 per day allowance for detainee participation in the VWP. If a detainee participates in the VWP, the $1 per day allowance must be provided to the detainee. Per the PBNDS, the facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
7 of 8

Case 1:14-cv-02887-JLK-MEH   Document 261-3   Filed 04/29/20   USDC Colorado   Page 9 of 9
Case 3:17-cv-05806-RJB   Document 229-2   Filed 08/03/20   Page 8 of 9
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 73

24. The NWDC contract set the quantity of $1.00 reimbursements at 114,975 per option year. GEO shall not exceed that quantity without prior approval by the contracting officer. This approval can be sought by GEO and would be memorialized through a bi-lateral contract modification.

25. The $1.00 per day allocation and reimbursement rate for VWP participation is consistent with national detention standards applied similarly at state and local levels where ICE detainees often are placed.

   I declare, under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: August 1, 2018



TAE D. JOHNSON
Assistant Director
Custody Management Division
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
8 of 8

**DECLARATION OF SHANNON ELY**
**CONTRACTING OFFICER**
**OFFICE OF ACQUISITION MANAGEMENT**
**UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT**
**DEPARTMENT OF HOMELAND SECURITY**

I, Shannon Ely, make the following statement under oath subject to penalty of perjury:

1. My name is Shannon Ely.  I am competent to testify in these matters in that I am over the age of majority and I am familiar with the subjects discussed herein.  The statements contained in this declaration are based upon my personal knowledge or information provided to me in my official capacity.  The following statements are true and correct to the best of my information, knowledge, and belief.

2. I am a Contracting Officer at U.S. Immigration and Customs Enforcement (ICE), Office of Acquisition Management (OAQ).  I have held this position since September 30, 2007.  My current work address is: 801 I (Eye) St. NW Washington, D.C. 20536.

3. The ICE Enforcement and Removal Operations (ERO) facility located at 3130 North Oakland Street Aurora, CO 80010, known as the Aurora Contract Detention Facility (Aurora CDF) is a Contract Detention Facility (CDF), owned and operated by a contractor.

4. ICE CDF contracts are performance-based contracts.  ICE ERO utilizes requirements document, such as a Statement of Work (SOW), a Statement of Objectives (SOO), or Performance Work Statement (PWS) to outline ICE's requirement, including a list of objectives, applicable standards, and terms and conditions that a contractor must comply with.

5. ICE ERO published its requirement through its requirements documents and solicited proposals and price quotes from vendors.

DECLARATION OF SHANNON ELY
OFFICE OF ACQUISITION MANAGEMENT
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT

6. By bidding on the Aurora CDF contracts and providing a proposal and a quoted price, The GEO Group, Inc. (GEO) (formerly known as Wackenhut Correction Corporation) indicated it would meet ICE's requirement in accordance with the contract's requirements documents and corresponding standards.

7. During the timeframe of 2004 to the present, civil immigration detention services at the Aurora CDF have been performed under three different contract vehicles.

8. From March 27, 2003 to September 28, 2006, services were performed by GEO (doing business as Wackenhut Correction Corporation), under Contract No. ACD-3-C-0008.

9. Contract No. ACD-3-C-0008 did not contain a specific term in the SOW regarding personal housekeeping or a voluntary work program.

10. Contract No. ACD-3-C-0008 required "full compliance with the INS Detention Standards," which would have been the 2000 National Detention Standards (NDS).

11. Contract No. ACD-3-C-0008 included a requirement that the contractor create a Quality Assurance Plan (QAP) "that addressed critical, measurable, operational performance standards for the services required under this contract. The contractor shall incorporate in the QAP a periodic system that reviews and updates the changes to all plans, policies and procedures. The QAP shall include a monthly audit, or as directed by INS which shall include the performance review of the facility operations for compliance with the QAP and compliance with the requirements of this contract... The contractor's QAP shall be capable of identifying deficiencies, appropriate corrective action(s) and timely implementation plan(s) to the Contracting Officer."

12. From September 29, 2006 to February 14, 2011, services were performed by GEO under Contract No. HSCEOP-06-D-00010.

13. Contract No. HSCEOP-06-D-00010 contained a section entitled "Manage a Detainee Work Program" at Section 10.6. This section reads: "Detainee labor shall be used in accordance with the detainee work plan developed by the Contractor. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service or other jobs. The detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations.... Detainees shall not be used to perform the responsibilities or duties of an *Employee* of the Contractor. Appropriate safety/protective clothing and equipment shall be provided to detainee workers as appropriate. Detainees shall not be assigned work that is considered hazardous or dangerous. This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands."

14. Contract No. HSCEOP-06-D-00010 Modification 18, dated April 28, 2010, incorporated "the new National Performance Based Detention Standards," which would have been the ICE 2008 Performance-Based Detention Standards.

15. The PWS for Contract No. HSCEOP-06-D-00010 contained a requirement that the "Contractor is responsible for management and quality control actions necessary to meet the quality standards set forth in the contract. In compliance with the Federal Acquisition Regulation (FAR) Clause 52.246-4, Inspection of Services-Fixed, the Contractor must provide a quality control plan (QCP) to the CO for concurrent not later than the post award conference."

16. From September 15, 2011 to the present, detention services at Aurora CDF have been performed by GEO under Contract No. HSCEDM-11-D-00003.

DECLARATION OF SHANNON ELY
OFFICE OF ACQUISITION MANAGEMENT
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
3 of 7

17. The 2008 Performance-Based National Detention Standards (PBNDS) were incorporated into the award of Contract No. HSCEDM-11-D-00003.

18. The SOW for Contract No. HSCEDM-11-D-00003 contained a requirement that the contractor maintain a "Voluntary Work Program". The section stated: " (1) Detainees may have opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of safety, security, and good order. (2) Detainees will be able to volunteer for work assignments but otherwise not be required to work, except to do personal housekeeping. (3) Essential operations and services will be enhanced through productivity from detainees. (4) the negative impact of confinement will be reduced through less idleness, improved morale and fewer disciplinary incidents. (5) Detainee working conditions will comply will all applicable federal, state, and local work safety laws and regulations. (6) There will be no discrimination regarding voluntary work program access based on any detainee's race, religion, national origin, gender, sexual orientation, or disability. (7) The applicable contents and procedures in this Standard will be communicated to the detainee in a language or manner that the detainee can understand."

19. The 2011 Performance Based National Detention Standards (PBNDS 2011) Minimal standards, several Optimal Standards, and an updated Quality Assurance Surveillance Plan were incorporated into Contract No. HSCEDM-11-D-00003 through Modification 5, dated May 23, 2013.

20. The 2011 PBNDS, 2016 revision was incorporated into HSCEDM-11-D-00003 through Modification 26, dated February 4, 2017. The 2016 revision to the 2011 PBNDS did not include any changes to the Voluntary Work Program (VWP) chapter.

DECLARATION OF SHANNON ELY
OFFICE OF ACQUISITION MANAGEMENT
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT

4 of 7

1 Supp. App. 72

21. Except for the contract references and detention standard references above, there are no other contract terms in any of the three contracts for the Aurora CDF that relate to "personal housekeeping" or the VWP.

22. The Housing Unit Sanitation Policy (HUSP) is a GEO policy, created by GEO. The GEO HUSP is not created by ICE nor is it a requirement of the contract. ICE did not draft or negotiate GEO's HUSP.

23. Contract No. HSCEDM-11-D-00003 contained a Quality Control Plan (QCP), which is a contractor produced self-inspection plan that describes the internal staffing and procedures that the...Contractor will use to meet the quality, quantity, timeliness, responsiveness, customer satisfaction, and other performance standards specified in the contract." The Contract also contained a Quality Assurance Surveillance Plan (QASP), which is a government produced plan that "sets forth the procedures and guidelines that ICE will use to inspect the technical performance of the Contractor. It presents the financial values and mechanisms for applying adjustments to the Contractor's invoices as dictated by work performance measured to the desired level of accomplishment."

24. As part of the QASP, the ERO Contracting Officer Representative (COR) checks for the following criteria with regard to the VWP and personal housekeeping:

   a. Facility has a voluntary work program

   b. Maintain a written chart with work assignments/classification level

   c. Facility complies with work hour and pay requirements for detainees

   d. Detainees are medically screened to participate

   e. Detainees receive proper training and safety requirement

   f. Detainee housekeeping meets standards for neatness, cleanliness and sanitation

25. During the time frame of 2004 to the present, there have been no Contract Discrepancy Reports (CDR) pertaining to VWP or personal housekeeping at Aurora CDF.

26. During the time frame of 2004 to the present, there have been no Requests for Equitable Adjustment (REA) pertaining to personal housekeeping and only one REA related to VWP at the Aurora CDF.

27. The single REA related to the VWP at the Aurora CDF was dated April 18, 2018 and was received as a letter from Amber D. Martin, GEO's Executive Vice President for Contract Administration to the ICE Contracting Officer.  In the letter, GEO requested an equitable adjustment of $1,928,433.38 to Contract HSCEDM-11-D-00003 under the contract's Changes Clause, alleging that the "contract requirements are incomplete because GEO reasonably believed that it could perform these specifications and contract requirements without incurring legal fees to defend such specifications and contract requirements."

28. By letter dated June 21, 2018, the ICE Contracting Officer denied the REA request in its entirety.  The basis for this determination was: (1) "There have been no constructive changes to the terms of the Contract." (2) "The performance specification and standards are not 'incomplete' and are not defective…the service provider has been on notice about these terms since contract inception [in 2011], when the performance-based contract was negotiated." (3) "GEO's legal fees and expenses are not cognizable costs under the contract terms or under [Federal Acquisition Regulation] FAR 31.205-47…GEO's defense of these private lawsuits is a defense of its contract performance."

1     I declare, under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and

2   correct to the best of my knowledge, information and belief.

3

4   DATED:  October 11, 2019

5

6                                           _Shannon Ely_____

7                                           Shannon Ely
                                            Contracting Officer
8                                           Office of Acquisition Management
                                            U.S. Immigration and Customs Enforcement
                                            Department of Homeland Security

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   DECLARATION OF SHANNON ELY
     OFFICE OF ACQUISITION MANAGEMENT
25   UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887-JLK

_____

RULE 30(b)(6) DEPOSITION OF:
DAWN CEJA - March 29, 2016
The GEO Group, Inc.

_____

ALEJANDRO MENOCAL, et al.,

Plaintiffs,

v.

THE GEO GROUP, INC.,

Defendant.

_____

PURSUANT TO NOTICE, the Rule 30(b)(6)
deposition of DAWN CEJA, THE GEO GROUP, INC., was
taken on behalf of the Plaintiffs at 600 Grant Street,
Suite 450, Denver, Colorado 80203, on March 29, 2016,
at 9:34 a.m., before Darcy Curtis, Registered
Professional Reporter and Notary Public within
Colorado.

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 3 of
Menocal v. The Geo Group, Inc.                    DAWN CEJA                              3/29/2016
Appellate Case: 22-1409      Document: 38-1      Date Filed: 03/24/2023      Page: 82

Page 2

                    A P P E A R A N C E S

        For the Plaintiffs:

                ANDREW FREE, ESQ.
                Law Office of R. Andrew Free
                1212 7th Avenue North
                Nashville, Tennessee 37208

                ALEXANDER HOOD, ESQ.
                Towards Justice
                1535 High Street
                Suite 300
                Denver, Colorado 80218

                ANDREW H. TURNER, ESQ.
                Buescher, Kelman, Perera & Turner, P.C.
                600 Grant Street
                Suite 450
                Denver, Colorado 80203

                BRANDT P. MILSTEIN, ESQ.
                Milstein Law Office
                595 Canyon Boulevard
                Boulder, Colorado 80302


        For the Defendant:

                SHELBY A. FELTON, ESQ.
                Vaughan & DeMuro
                720 South Colorado Boulevard
                Penthouse, North Tower
                Denver, Colorado 80246

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 4 of
Menocal v. The Geo Group, Inc.          DAWN CEJA          3/29/2016
Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 83

Page 26

```
 1              A.   For ICE housing units, I would say

 2    approximately 13 units.

 3              Q.   How many different beds are there within

 4    those 13 units?

 5              A.   It varies.  The large ones contain 80.

 6              Q.   Okay.  Do you sometimes call those units

 7    pods?

 8              A.   Sometimes, yes.

 9              Q.   What else do you use to refer to them?

10              A.   Housing unit.

11              Q.   What are they named in order to

12    differentiate them?  In other words, you don't call

13    each housing unit a housing unit.  You may use a

14    letter or a name system.  How does that work?

15              A.   They're each annotated with a letter and

16    a number.

17              Q.   What are the letters and numbers?

18              A.   One section are the A units, one section

19    are B units, another section is D, as in David,

20    another section is E, as in Edward, medical area.

21              Q.   Anything else?

22              A.   Not regarding immigration, no.

23              Q.   Okay.  So I think you told me a moment

24    ago that for immigration at the Aurora Detention

25    Facility, there are 13 units?
```

Menocal v. The Geo Group, Inc.                    DAWN CEJA                              3/29/2016

```
 1            A.   That includes medical and E unit, yes.

 2            Q.   Okay.  There's no C unit for immigrants?

 3            A.   Not for ICE, no.

 4            Q.   And no F or G unit?

 5            A.   No.

 6            Q.   When an ICE detainee is subject to this

 7   housing unit sanitation policy, can you explain to me,

 8   please, who is creating this policy.

 9            A.   So the policy is pieces of ACA

10   requirements, PBNDS, the ICE Performance-Based

11   National Detention Standards, and sometimes pieces of

12   corporate GEO policy.  So we take all of these

13   requirements and we put them into a site-specific

14   policy.

15            Q.   Who is "we"?

16            A.   The facility.

17            Q.   And in that case, this is the Aurora

18   facility?

19            A.   Yes.

20            Q.   And is that GEO?

21            A.   The Aurora facility.

22            Q.   When you're talking about we, you're

23   discussing The GEO Group?

24            A.   I am saying the Aurora staff.  Every GEO

25   facility is different, so I am only referring to
```

Menocal v. The Geo Group, Inc.                    DAWN CEJA                    3/29/2016
Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 85

Page 28

```
 1   Aurora.

 2           Q.    That's all I want you to discuss for the

 3   purposes of this question.

 4           A.    Okay.

 5           Q.    I'm asking:  Do you know the name of the

 6   person or the people, names of the people, who take

 7   these three sources of the policy and put them

 8   together?

 9           A.    It changes.  Currently we have our

10   accreditation manager that does our policy review.

11           Q.    Anybody else?

12           A.    Everybody will review a policy, and if

13   they have additions or things that need to be deleted,

14   that's what I refer to as a policy review.  It's a

15   group.  Then the final policy is reviewed by the

16   warden and signed off when it's done by the warden and

17   by immigration.

18           Q.    Who is "we" in the policy review group?

19           A.    Usually the department heads, so it could

20   be myself, the program manager, the accreditation

21   manager, the chief of security.  Usually people more

22   in the upper echelon.

23           Q.    How often does that happen?

24           A.    Annually.

25           Q.    Who at ICE signs off on the policy?
```

 1              A.     The COTAR, the contracting officer's

 2     technical representative.

 3              Q.     **Do you know which version of the**

 4     **Performance-Based National Detention Standards the**

 5     **policy is currently drawn from?**

 6              A.     Currently we are going off of the 2011,

 7     and then I think there's been some adjustments on

 8     there that are from 2013.

 9              Q.     **Do you happen to know which version of**

10     **the Performance-Based National Detention Standard**

11     **governs the current contract between ICE and GEO?**

12              A.     The same ones that I just said.

13              Q.     **Okay.  The housing unit sanitation policy**

14     **applies to all ICE detainees at the Aurora Detention**

15     **Facility, correct?**

16              A.     Yes.

17              Q.     **Are they provided a copy of this policy?**

18              A.     No.

19              Q.     **What are they provided in order to know**

20     **how they need to comply?**

21              A.     They, upon initial admission, review a

22     PowerPoint presentation as an orientation video.  They

23     receive a handbook, a local supplement handbook, and

24     they also receive an ICE handbook.  In each housing

25     unit are bulletin boards, and we post notices and

Menocal v. The Geo Group, Inc.                    DAWN CEJA                    3/29/2016

```
 1   things along such as that on those housing unit

 2   bulletin boards.

 3          Q.   Is it a separate PowerPoint and video?

 4          A.   Yes.

 5          Q.   Okay.  And that PowerPoint includes

 6   information about the housing unit sanitation policy,

 7   correct?

 8          A.   Yes.

 9          Q.   Have you seen the video?

10          A.   I initially put the original one

11   together, yes.

12          Q.   You were responsible for compiling it.

13   Do you know if that's the one that's used right now?

14          A.   There have been updates to it.

15          Q.   Okay.  Do you know what information it

16   provides detainees regarding the housing unit

17   sanitation policy?

18          A.   I would have to review it again to give

19   you accurate information.

20          Q.   Okay.  Can you remember anything about

21   what it says?

22          A.   No.

23          Q.   Do you know what languages it's brought

24   in?

25          A.   English and Spanish.
```

Menocal v. The Geo Group, Inc.                DAWN CEJA                      3/29/2016

 1   of anything else that the detainees are informed about

 2   what they have to do to comply with the housing unit

 3   sanitation policy?

 4           A.    Not outside of the housing unit, no.

 5           Q.    I would like you to take a look in Tab 7

 6   of the binder in front of you.  And we're going to

 7   turn -- we're going to make Tab 7 Exhibit 2 to this

 8   deposition.

 9               (Deposition Exhibit 2 was marked.)

10           Q.    I'm going to represent to you that Tab 7

11   includes documents that The GEO Group has provided to

12   the plaintiffs' counsel that are marked GEO_MEN and

13   they begin with the No. 1 and they continue through

14   the No. 159.  That's at the end of Tab 7 right before

15   Tab 8.  We're going to call those Bates numbers.  So

16   if I use that, you know what that means.

17           A.    Yes.

18           Q.    If you would turn to what's marked as 55,

19   page 55 -- it's on the side, so you will have to turn

20   your binder 90 degrees -- do you recognize what's in

21   front of you?

22           A.    Yes.

23           Q.    What is that?

24           A.    A page of the detainee handbook.

25           Q.    You can turn to the previous page.  And

scheduling@huntergeist.com              HUNTER + GEIST, INC.              303-832-5966/800-525-8490

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 10
of 29
Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 89

Page 33

Menocal v. The Geo Group, Inc.                    DAWN CEJA                    3/29/2016

1   at the top left-hand corner, it says, "ICE Detainee

2   Handbook."

3           A.   Yes.  However, I'm not sure which year

4   this is.

5           Q.   Okay.  Would it make a difference for the

6   answers?

7           A.   Not necessarily.  However, it is reviewed

8   annually.

9           Q.   Sure.  I'll tell you what.  If you see

10  this policy and something sticks out at you as not

11  being current or not accurately reflecting GEO's

12  policies about the housing unit sanitation, let me

13  know.

14          A.   Okay.

15          Q.   Is that fair?

16          A.   Yes.

17          Q.   We'll work off of this document.  If we

18  need to change it, just let us know.  Fair?

19          A.   Yes.

20          Q.   Great.  Who put this document together,

21  this ICE detainee handbook?

22          A.   It's a group of people.  So the handbook

23  has been in effect since I started back in 1995.  So

24  over the years as standards change, contracts change,

25  the policy review committee will review this on an

scheduling@huntergeist.com          HUNTER + GEIST, INC.          303-832-5966/800-525-8490

Menocal v. The Geo Group, Inc.                     DAWN CEJA                           3/29/2016

 1  annual basis and make changes as needed.

 2          Q.    And the policy review committee has

 3  always been GEO or its corporate predecessor; is that

 4  correct?

 5          A.    Local Aurora staff, yes.

 6          Q.    The local GEO folks in Aurora?

 7          A.    Yes.

 8          Q.    Again, I'm not asking about any GEO

 9  office anywhere else for the purpose of this next line

10  of questions.  Section V on page 55, do you see that

11  section?

12          A.    Yes.

13          Q.    And what does that say?  It says, "The

14  center will maintain the highest sanitation standards

15  at all times in all locations without exception.

16  There will be an organized, supervised and continuous

17  program of daily cleaning by all detainees to maintain

18  those standards."

19          A.    Yes.

20          Q.    Is this part of your housing unit

21  sanitation policy?

22          A.    To have high sanitation levels, yes.

23          Q.    And indeed, to have an organized,

24  supervised and continuous program of daily cleaning by

25  all detainees to maintain those standards?

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 12
of 19
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 91

Page 35

Menocal v. The Geo Group, Inc.                                    DAWN CEJA                                    3/29/2016

1          A.   Correct, the voluntary work program with

2    the detainees.

3          **Q.   So when you read this second sentence,**

4    **you are understanding the organized, supervised**

5    **continuous program of daily cleaning by all detainees**

6    **to mean the voluntary work program; is that right?**

7          A.   It's all encompassing.  So you have your

8    voluntary work program, which covers areas in laundry

9    or kitchen, and then you have your housing unit

10   sanitation, which we discussed earlier.

11         **Q.   Okay.  What else does the voluntary work**

12   **program cover that is not covered by the housing unit**

13   **sanitation policy?**

14         A.   I don't follow your question.

15         **Q.   It's because I've been trying to sort of**

16   **separate these things out into topics, because I want**

17   **us to be in one lane, if we can, mentally.**

18         A.   Okay.

19         **Q.   Because we have a topic about the**

20   **voluntary work program; we have a topic about the**

21   **housing sanitation policy.  It seems to me that you've**

22   **described it as two programs, the voluntary work**

23   **program and then the obligations of the detainees.  Is**

24   **that a fair understanding?**

25         A.   I see it as your housing unit where you

scheduling@huntergeist.com                    HUNTER + GEIST, INC.                    303-832-5966/800-525-8490

Menocal v. The Geo Group, Inc.          DAWN CEJA                              3/29/2016
Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 92

Page 36

1    do your housing unit sanitation, and then there is as

2    well your voluntary work program where they put in an

3    application and are chosen to work in other areas of

4    the facility.

5              Q.    But sometimes the voluntary work program

6    detainees work in the housing unit; is that right?

7              A.    Yes.

8              Q.    If you'll turn the page to the next part

9    of the exhibit, it's page 56.  Do you see on the

10   left-hand column where it says, "Housing Unit

11   Sanitation"?

12             A.    Yes.

13             Q.    It says, "Each and every detainee must

14   participate in the facility's sanitation program.  A

15   list of detainees is developed each day by staff and

16   is posted daily for viewing.  During a general cleanup

17   all detainees must participate.  The assigned housing

18   unit officer will be responsible for assuring this

19   general cleanup is done on a regular basis."  Do you

20   see that?

21             A.    Yes.

22             Q.    Is that the current policy of GEO?

23             A.    Yes.

24             Q.    What's a general cleanup?

25             A.    After meals they have a day room area,

Menocal v. The Geo Group, Inc.          DAWN CEJA          3/29/2016
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 93

1    which is a common area, where all of the TVs and

2    tables are located.  They all eat at these tables, so

3    after meal service, they will clean up the tables,

4    wipe down the tables, and sweep and mop the floors.

5          Q.    And that is -- according to this policy,

6    all detainees are required to participate?

7          A.    In that common area cleanup.

8          Q.    So that's every meal?

9          A.    Yes.

10          Q.    So when it says, "this general cleanup is

11    done on a regular basis," that's one of the examples.

12    A meal time is one of the examples; is that right?

13          A.    Yes.

14          Q.    Are there any other examples of when a

15    general cleanup happens?

16          A.    No.  The general cleanup that that is

17    discussing is after the meal service.

18          Q.    Okay.  So there's never another time when

19    there's a general cleanup?

20          A.    Not in the common area, no.

21          Q.    Okay.  What about anywhere else?

22          A.    No.

23          Q.    All right.  Every single detainee at the

24    Aurora Detention Facility who is detained under the

25    ICE contract is bound by this housing unit sanitation

Menocal v. The Geo Group, Inc.                                DAWN CEJA                                3/29/2016
Appellate Case: 22-1409      Document: 38-1      Date Filed: 03/24/2023      Page: 94

1    policy; is that right?

2          A.   If they're housed in a housing unit.

3          Q.   **Where else could they be housed if**

4    **they're an ICE detainee?**

5          A.   Medical.

6          Q.   **So if you're in medical, you're not**

7    **subject to those cleanup requirements?**

8          A.   If there's a medical condition or some

9    type of contagious disease that they may have, then,

10   no.

11         Q.   **Okay.  How many people can be housed in**

12   **medical at a time?**

13         A.   I believe there's 11 beds in there.

14         Q.   **Okay.  What's the current bed count at**

15   **the facility for ICE detainees?**

16         A.   Today?

17         Q.   **Yes.  How many available beds do you**

18   **have?**

19         A.   The contract is up to 525.

20         Q.   **So the maximum number of beds that you**

21   **can supply to ICE under your contract?**

22         A.   Yes.

23         Q.   **If you could, I now would like you to**

24   **take a look at pages 46 and 51 -- excuse me -- 46**

25   **through 51.  So you're going to go backwards and**

scheduling@huntergeist.com              HUNTER + GEIST, INC.              303-832-5966/800-525-8490

```
 1              Q.    And explain to me what that is.  How do
 2      you get there?  What's the purpose of it?
 3                    MS. FELTON:  Object to form.
 4              Q.    (BY MR. FREE)  Compound.  Let's just
 5      explain to me what the disciplinary segregation unit
 6      is.
 7              A.    So if a detainee is charged with an
 8      offense, they will -- depending on the offense, they
 9      could go to disciplinary segregation.  However, if
10      they haven't had their hearing, they will be on the
11      administrative segregation side, so they will still be
12      afforded all of the opportunities, such as TV and
13      recreation and everything else, until their hearing is
14      done.  Once the hearing is done, depending on which
15      level of offense, after their hearing if they are
16      found guilty and disciplinary segregation time is
17      warranted, they will be moved to the other side so
18      they can't see the television.
19              Q.    How does disciplinary segregation differ
20      from the living unit that the detainee is normally
21      detained within?
22              A.    There's not a lot of difference.  And let
23      me explain why.  Because in our segregation unit,
24      they're still afforded television and they are also
25      afforded social time.  They still get recreation.
```

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 17

Menocal v. The Geo Group, Inc.                    DAWN CEJA                            3/29/2016
Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 96

Page 54

```
 1    They still get all of the regular amenities that

 2    general population gets.  It's just more of a

 3    restricted movement.

 4          Q.    How is movement restricted within

 5    disciplinary segregation?

 6          A.    So they don't get as much time out of

 7    their cell as you would in general population.  So

 8    social time for somebody that is in administrative

 9    segregation can be up to two hours a day where they

10    can come out of their cell and socialize with other

11    detainees that are in administrative segregation in

12    the segregation unit.

13          Q.    What about for disciplinary segregation?

14    How much social time is there there?

15          A.    No social time for disciplinary

16    segregation.

17          Q.    Unlike the situation you described

18    earlier in the general pop housing units, in both

19    administrative segregation and disciplinary

20    segregation, the doors are closed, right?

21          MS. FELTON:  Object to form.

22          A.    Yes.

23          Q.    (BY MR. FREE)  Is there anybody else in

24    the detainee's cell with him or her when he or she is

25    in administrative segregation?
```

```
 1              A.    They are all single cell units.

 2              Q.    What about in disciplinary segregation?

 3    Is anybody else in the cell with a person who is

 4    detained in disciplinary segregation?

 5              A.    No.  It's one unit.  So one side is

 6    disciplinary, one is administrative.

 7              Q.    What's the purpose of administrative

 8    segregation?

 9              A.    That can vary also.  So there's

10    protective custody.  A detainee can request to be

11    placed on protective custody.  We could say, hey, you

12    need to be put on protective custody, based on threats

13    that are being made, for that person's safety.  ICE

14    can request somebody be placed in administrative seg

15    for protective custody purposes.  A lot of people just

16    like to go back there for the peace and quiet.  We

17    only average about four people back there, so it's

18    very quiet.  They get to watch TV.  Some people really

19    enjoy it back there.

20              Q.    I don't understand.  You just told me

21    that a lot of people like to go to administrative

22    segregation for the peace and quiet.  And I think I

23    understood you to testify that there are only four

24    people back there during a given day?

25              A.    On average.
```

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 19
Menocal v. The Geo Group, Inc.                    DAWN CEJA                        3/29/2016
Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 98

Page 56

 1          Q.   You have 500 beds that at some point are

 2     in some level of being filled; is that right?

 3          A.   525.

 4          Q.   So if it's so popular, why doesn't

 5     everybody go back there during the day?

 6          A.   Some of them do for short periods of

 7     time.

 8          Q.   Like how long?

 9          A.   It depends.  Some go back there for a

10     week.  Some go back there for a few days.  Some just

11     say they can't handle general population living.

12          Q.   They go to administrative segregation,

13     not disciplinary segregation?

14          A.   Correct.  Only -- and I'm only discussing

15     administrative segregation.

16          Q.   Let's talk about disciplinary

17     segregation.  Same explanation that you gave for

18     administrative segregation as far as the purpose, or

19     does it have a different purpose?

20          A.   As I stated earlier, if you get charged

21     with a violation, depending on the level, usually 100

22     and 200 levels, you're automatically going to be taken

23     back there and be put on the administrative

24     segregation side pending your hearing.

25          Q.   I don't know that that answers my

Menocal v. The Geo Group, Inc.                    DAWN CEJA                           3/29/2016

```
 1                    (At this time Mr. Turner entered the

 2        room.)

 3               Q.    Do you recognize this document?

 4               A.    Yes.

 5               Q.    Or these documents?

 6               A.    Yes.

 7               Q.    What are they?  Let's start with the

 8        first page.

 9               A.    They are all different versions of the

10        cleanup list over the years that has been used to

11        specify who is going to clean up after meal service.

12               Q.    Who created these documents?

13               A.    I do not know who created any of these

14        versions.

15               Q.    Okay.  How often are they distributed to

16        detainees?

17               A.    Usually --

18                    MS. FELTON:  Object to form.

19               A.    They're not distributed to detainees, but

20        usually what happens is the assigned officer on the

21        graveyard shift will fill out the names and the person

22        who will be responsible for the following day's meals,

23        so when dayshift comes on, it will be ready to go.

24               Q.    (BY MR. FREE)  Okay.  And then where is

25        this posted, if it's posted?
```

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 21
of 28
Menocal v. The Geo Group, Inc.                    DAWN CEJA                              3/29/2016
Appellate Case: 22-1409     Document: 38-1     Date Filed: 03/24/2023     Page: 100

Page 84

```
 1            A.    Usually it's posted right by the detainee
 2    mailboxes.  They fold it and hang it over the edge.
 3            Q.    As far as you know, is this the way that
 4    the detainees find out that they're responsible for
 5    cleaning up after meals pursuant to the housing unit
 6    sanitation policy?
 7            A.    Yes.
 8            Q.    Okay.  This falls -- I just want to make
 9    sure I understand.  This falls outside of the realm of
10    the voluntary work program; is that right?
11            A.    This is for all of the common area, yes.
12            Q.    This is within the housing unit
13    sanitation policy and not the voluntary work program?
14            A.    It's part of the living area.
15            Q.    How does that answer my question?
16            A.    What I referred to before, when we had
17    the same discussion, that the common area is part of
18    the living area.  It's all connected.
19            Q.    Let's try this a different way.  Do
20    people get paid for doing these jobs?
21            A.    No.
22            Q.    Are they required to do these jobs?
23            A.    To keep the area clean, we assign them,
24    yes.
25            Q.    The answer is, yes, they're required to
```

Menocal v. The Geo Group, Inc.                    DAWN CEJA                              3/29/2016

Page 85

```
 1    do these jobs?

 2          A.    Yes.

 3          Q.    If they don't do these jobs, they can

 4    potentially be charged with a disciplinary infraction,

 5    a 300-level infraction?

 6          A.    Possibly, yes.

 7          Q.    And that could possibly lead to solitary

 8    confinement?

 9                MS. FELTON:   Object to form.

10          Q.    (BY MR. FREE)   Excuse me.   Administrative

11    segregation; is that right?

12          A.    Yes.

13          Q.    And this is something that is explained

14    to the detainees when they come in?

15          A.    It's in the handbook, yes.

16          Q.    And this is a uniform policy throughout

17    all of the tiers in which ICE detainees are kept?

18                MS. FELTON:   Object to form.

19          A.    I don't know.

20          Q.    (BY MR. FREE)   Let me clarify.   In each

21    place where an ICE detainee is housed, does GEO use a

22    cleanup list, like the ones we've just reviewed, to

23    notify the detainees of their responsibilities for

24    cleaning?

25          A.    I do not --
```

Case 1:14-cv-02887-JLK-MEH   Document 261-12   Filed 04/29/20   USDC Colorado   Page 23
of 32

Menocal v. The Geo Group, Inc.                    DAWN CEJA                           3/29/2016
Appellate Case: 22-1409      Document: 38-1      Date Filed: 03/24/2023    Page: 102

Page 89

1   you'll turn to PL 54, the 300-level offense that you

2   were referring to earlier, would that have been 306,

3   refusal to clean assigned living area?

4        A.   Yes.

5        Q.   Okay.  And that's in the high moderate

6   offense category; is that right?

7        A.   Yes.

8        Q.   There are low moderate offense

9   categories, but this is not in them; is that right?

10       A.   Yes.  If you're referring to the 400

11  level, yes.

12       Q.   That is right.  And in the list of

13  sanctions that apply to high moderate offenses,

14  detainees are informed through this document that GEO

15  could initiate criminal proceedings?

16            MS. FELTON:  Object to form.

17       Q.   (BY MR. FREE)  Is that right?

18       A.   That's what is listed, yes.

19       Q.   I'm going to ask whether these other

20  sanctions could follow from a 306 violation.  I think

21  the one we talked about earlier was a disciplinary

22  segregation, up to 72 hours, right?

23       A.   Yes.

24       Q.   They could lose a job; is that right?

25       A.   Yes.

Appellate Case: 22-1409    Document: 38-1    Date Filed: 03/24/2023    Page: 103

```
 1              Q.    They could be given a disciplinary

 2     transfer; is that right?

 3              A.    That's what is listed.

 4              Q.    That is GEO's policy?

 5                    MS. FELTON:  Object to form.

 6              A.    This comes out of the PBNDS.

 7              Q.    (BY MR. FREE)  I'm sorry.  I thought you

 8     said it was in the ICE detainee handbook.

 9              A.    Yes, but it's based off of the PBNDS.

10              Q.    Is it your understanding that if there's

11     a discrepancy between GEO's policy or practice and the

12     PBNDS, the PBNDS controls; in other words, GEO must

13     follow the PBNDS?

14                    MS. FELTON:  Object to form.

15              A.    Yes.  It is part -- it's tied to the

16     contract.

17              Q.    (BY MR. FREE)  Okay.  Yes, exactly.  So

18     GEO, as part of the contract, has agreed to abide by

19     the PBNDS; is that right?

20              A.    Yes.

21              Q.    To the extent this ICE detainee handbook

22     that's given to the detainees contains things that

23     aren't explicitly mentioned in the PBNDS, it's GEO's

24     requirement that these things comply with the PBNDS,

25     right?
```

Menocal v. The Geo Group, Inc.                    DAWN CEJA                           3/29/2016

```
 1                    MS. FELTON:  Object to form.

 2          A.   I don't understand.

 3          Q.   (BY MR. FREE)  Okay.  The PBNDS does not

 4     contain all of these lists of codes, right?

 5          A.   I'm pretty sure they do.

 6          Q.   Okay.  We'll come back to that.

 7          A.   I'm pretty sure.

 8          Q.   This is taken directly from the PBNDS?

 9          A.   I'm pretty sure.

10          Q.   And that's 2008, 2011?

11          A.   It's been in the last two versions, the

12     2008 and the 2011.

13          Q.   Okay.

14          A.   That's where we get it from.

15          Q.   As part of your duties as assistant

16     warden of operations, have you ever seen a document

17     called a statement of work?

18          A.   That sounds like something that would be

19     in the contract.

20          Q.   Okay.  Do you have any understanding as

21     to what the purpose of that document is?

22                    MS. FELTON:  Object to form.

23          Q.   (BY MR. FREE)  No?

24          A.   It's in the contract.

25          Q.   Okay.
```

```
 1   say force to work.

 2           Q.   (BY MR. FREE)   I'll rephrase.   Thank you

 3   for clarifying that you didn't understand.   Is there

 4   anything in the Performance-Based National Detention

 5   Standards that expands the scope of work that

 6   detainees may be required to do?

 7           A.   Maybe not in the PBNDS, but I would also

 8   want to check the contract to see if there's anything

 9   specific.

10           Q.   That's a great idea.   Let's look at it.

11   If you turn to page 14 of the same tab, Tab 7, do you

12   see at the top it says, "Section H - Special Contract

13   Requirements"?

14           A.   Yes.

15           Q.   And I will proffer to you that if you go

16   backward, you're going to find that this is part of

17   the GEO contract that has been disclosed to the

18   plaintiffs in heavily redacted form at GEO Menocal

19   Bates 1 all of the way to this page, page 14.   This is

20   all part of their contract.

21           A.   Okay.

22           Q.   Okay.   Does that look right to you, that

23   that's all part of the contract?

24           A.   Yes.

25           Q.   So it says, "The following
```

Page 125

```
 1   constraints" -- this is at Section H-5.  The previous

 2   several paragraphs are blocked out.  We can't see

 3   them.  "The following constraints comprise the

 4   statutory, regulatory, policy and operational

 5   consideration that will affect the contractor."  It

 6   says, "Constraints include, but are not limited to" --

 7   if you turn the page and go to page 15, you look at

 8   No. 10 --

 9         A.   Yes.

10         Q.   -- it says the PBNDS.  In this one, it

11   says 2008, so I'm a little confused about the

12   testimony earlier that 2011 applies.  It's okay.  For

13   our purposes, we're just going to agree that '11 is

14   what applies, right?

15         A.   2011 does apply because there was a

16   contract modification that incorporates all of the

17   2011 standards into the current contract.

18         Q.   So we don't have that, but maybe we'll

19   get it.  Do you know if that contract modification

20   alters in any way the voluntary work program?

21         A.   From what I recall, is that it

22   incorporates the 2011 PBNDS, so everything that's in

23   the PBNDS applies.

24         Q.   Got it.  So if you look at the things

25   that the contractor must follow, the statutory,
```

Menocal v. The Geo Group, Inc.                                              DAWN CEJA                                              3/29/2016

```
 1   regulatory, policy and operational consideration,

 2   No. 10 says the PBNDS.  Does that make sense?

 3        A.   Yes.

 4        Q.   Okay.  So when you say you're going to

 5   have to look at the contract, the contract requires

 6   GEO to follow the PBNDS, right?

 7        A.   Yes.

 8        Q.   Okay.  Now, you seem like you want to say

 9   something else.

10        A.   I just want to make sure that we're on

11   the same page here.

12        Q.   Sure.

13        A.   Because I understand that this

14   incorporates the 2008.  However, there might be a

15   section in the contract that also refers to other

16   sections in the contract that would reflect back on

17   the PBNDS, if that makes sense.

18        Q.   As far as you know, the PBNDS that is in

19   front of you is the one that's in force and the one

20   that GEO follows?

21        A.   Yes.

22        Q.   And as far as you know, there's nothing

23   else in the PBNDS that would permit GEO to require

24   additional work by detainees?

25        A.   Correct.
```

REPORTER'S CERTIFICATE

STATE OF COLORADO           )
                            ) ss.
CITY AND COUNTY OF DENVER   )

          I, Darcy Curtis, Registered Professional
Reporter and Notary Public ID 20064016972, State of
Colorado, do hereby certify that previous to the
commencement of the examination, the said DAWN CEJA
was duly sworn by me to testify to the truth in
relation to the matters in controversy between the
parties hereto; that the said deposition was taken in
machine shorthand by me at the time and place
aforesaid and was thereafter reduced to typewritten
form; that the foregoing is a true transcript of the
questions asked, testimony given, and proceedings had.

          I further certify that I am not employed
by, related to, nor of counsel for any of the parties
herein, nor otherwise interested in the outcome of
this litigation.

          IN WITNESS WHEREOF, I have affixed my
signature this 12th day of April, 2016.


          My commission expires May 2, 2018.


___X_ Reading and Signing was requested.

_____ Reading and Signing was waived.

_____ Reading and Signing is not required.

**Facility Voluntary Work Program Pay Rates between 2011 and 2014**

| | |
|---|---|
| Adelanto Detention Facility | $1.00 |
| Aurora Ice Processing Facility | $1.00 |
| Broward Detention Facility | $1.00 |
| Mesa Verde Ice Processing Center | $1.00 |
| Montgomery Ice Processing Center[1] | N/A |
| Northwest/Tacoma Ice Processing Center | $1.00 |
| South Texas Detention Facility | $1.00 to $3.00 |
| Folkston ICE Processing Center | $1.00 to $2.50 |
| Joe Corley Detention Facility | $1.00 to $3.00 |
| LaSalle Detention Facility | $1.00 to $4.00 |
| Pine Prairie Detention Facility | $1.00 |
| South Louisiana Detention Facility[2] | N/A |

---

[1] The Montgomery ICE Processing Center was not in operation during the class period. Following the class period, detainees in the Voluntary Work Program were paid between $1.00 and $3.00 per day.

[2] The South Louisiana Detention Facility was not operated by GEO during the class period.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

CIVIL ACTION NO.:  1:14-CV-02887-JLK


ALEJANDRO MENOCAL, et al.,

          Plaintiffs,

-vs-

THE GEO GROUP, INC.,

          Defendant.
_____/




DEPOSITION OF AMBER MARTIN



Friday, February 28, 2020
9:23 a.m. - 11:40 a.m.



SHAVITZ LAW GROUP, PA
951 Yamato Road, Suite 285
Boca Raton, Florida




Stenographically Reported By:
JULIE BRUENS, FPR
Florida Professional Reporter

Amber Martin
February 28, 2020                                                        2

```
 1                        APPEARANCES

 2

 3   On behalf of the Plaintiffs:
          TOWARDS JUSTICE
 4        1410 High Street, Suite 300
          Denver, Colorado 80218
 5        720-441-2236
          juno@towardsjustice.org
 6        BY: JUNO TURNER, ESQUIRE

 7        OUTTEN & GOLDEN, LLP
          One California Street, 12th Floor
 8        San Francisco, California 94111
          415-638-8800
 9        akoshkin@outtengolden.com
          BY: ADAM KOSHKIN, ESQUIRE
10
     On behalf of the Defendant:
11        AKERMAN
          1900 Sixteenth Street, Suite 1700
12        Denver, Colorado 80202
          303-260-7712
13        colin.barnacle@akerman.com
          adrienne.scheffey@akerman.com
14        BY: COLIN BARNACLE, ESQUIRE
              ADRIENNE SCHEFFEY, ESQUIRE
15
          THE GEO GROUP, INC.
16        4955 Technology Way
          Boca Raton, Florida 33431
17        561-443-1786
          cwilke@geogroup.com
18        BY: CHERYL WILKE, ESQUIRE

19
                            -  -  -
20

21

22

23

24

25
```

**1 Supp. App. 106**

Amber Martin
February 28, 2020

42

```
 1        Q.   You mentioned a couple of times in your

 2   testimony this morning the GEO detainee handbook.  Do

 3   you recall that testimony?

 4        A.   Yes.

 5        Q.   Okay.  Do you know the process by which GEO

 6   drafts that handbook?

 7        A.   Yes.

 8        Q.   Can you describe it?

 9        A.   When the facility first opens, all the

10   policies, procedures, post orders, handbooks, etc., they

11   are all drafted during an activation phase, and they are

12   submitted to ICE for ICE's approval.  Any time there's a

13   change in any of those regulations, policies, etc., they

14   are again drafted and submitted to ICE for their

15   approval.

16        Q.   Okay.  And who on the GEO side handles that

17   process?

18        A.   It's handled at a local level.

19        Q.   Okay.  With the Aurora facility, are you aware

20   who is in charge of the detainee handbook?

21        A.   I don't know specifically who would be in

22   charge.  It would be a facility administrator's designee

23   most likely.

24        Q.   I'm sorry, a facility --

25        A.   The facility administrator's designee.
```

Amber Martin

February 28, 2020                                      43

```
 1    Probably the compliance person.

 2         Q.   Is the facility administrator like the warden?

 3         A.   Yes.

 4         Q.   Okay.  Let's take a quick bathroom break, if

 5    it that's okay.

 6              (Off the record.)

 7    BY MS. TURNER:

 8         Q.   So we're back on the record.  I think earlier,

 9    Ms. Martin, you testified that the PBNDS -- strike that.

10              You testified that ICE has revised the PBNDS

11    on a couple of occasions during the period covered by

12    this lawsuit; correct?

13         A.   Correct.

14         Q.   Okay.  And there was a change from 2000 --

15    strike that.

16              There was a revised PBNDS issued by ICE in

17    2011; correct?

18         A.   Yes.

19         Q.   And then again in 2016; correct?

20         A.   Yes.

21         Q.   Okay.  So I've handed you a document that has

22    been marked as Exhibit 9.  It is an e-mail and an

23    attachment with bates numbering GEO-Men5496 through 636.

24              My first questions are just going to be about

25    who the folks are that are on the e-mail, but feel free
```

Amber Martin
February 28, 2020

1    to take a moment and let me know when you're ready.

2              (Thereupon, the document was marked as

3    Plaintiff's Exhibit 9 for identification.)

4         A.   I'm ready.

5         Q.   Do you know who Kevin Martin is?

6         A.   It appears he's the quality control

7    administrator for the facility.

8         Q.   For the Aurora facility?

9         A.   Yes.

10        Q.   Okay.  And it appears from this cover e-mail

11   he says attachment is a breakdown of the major changes

12   within the new ICE standards.  Do you see that?

13        A.   Yes.

14        Q.   And this e-mail was sent on April 4th, 2012;

15   correct?

16        A.   Yes.

17        Q.   Okay.  And if you take a look on page 54597,

18   the title of the attachment is summary of major changes

19   between the 2008 and 2011 performance-based national

20   detention standards.  Do you see that?

21        A.   Yes.

22        Q.   Okay.  And so is it fair to say that it

23   appears that Mr. Martin is sending out this information

24   to facility staff?

25        A.   It appears.

U.S. LEGAL SUPPORT
(877) 479-2484

Amber Martin
February 28, 2020

1        Q.    Okay.  And I want to direct your attention to

2    page 54629.  Actually, let's start with 54628.

3        A.    Okay.

4        Q.    And so at the bottom of 54628, it makes

5    reference to the Voluntary Work Program; correct?

6        A.    Correct.

7        Q.    And GEO has operated a Voluntary Work Program

8    at the Aurora facility since at least 2008; correct?

9        A.    Correct.

10       Q.    And detainees who participate in the Voluntary

11   Work Program are paid a dollar per day; correct?

12       A.    Yes.

13       Q.    Okay.  And that was true for the duration of

14   the period covered by this lawsuit; correct?

15       A.    I believe so, yes.

16       Q.    Okay.  So if you take a look underneath where

17   it says 5.8, Voluntary Work Program, it says the

18   following are the major changes made to the Voluntary

19   Work Program detention standard.

20            So is it fair to conclude from this that Mr.

21   Martin is summarizing changes in the Voluntary Work

22   Program standard from the 2008 to the 2011 PBNDS?

23       A.    Yes.

24       Q.    Okay.  And at the top of page 629, it says

25   compensation, the required compensation for work was

Amber Martin
February 28, 2020

46

```
 1    increased from one dollar per day to "at least one

 2    dollar per day".  Do you see that?

 3         A.   Yes.

 4         Q.   Okay.  Was GEO aware of this change to the

 5    PBNDS?

 6         A.   Yes.

 7         Q.   And did GEO make any changes to the

 8    compensation it pays to detainees as a result of this

 9    change to the PBNDS?

10         A.   Not at Aurora, no.

11         Q.   What about at other facilities?

12         A.   I don't believe there was any changes made.

13    There are different compensations at different

14    facilities, but there's no changes made, no.

15         Q.   So to the extent that the compensation was

16    more at other facilities, it wasn't because of this

17    change to the PBNDS?

18         A.   Correct.

19         Q.   When, as in this document, ICE has made

20    changes to the PBNDS that effects GEO's operations, how

21    does that -- how does GEO sort of account for those

22    changes in operating the Aurora facility?

23         A.   Well, this change here had several different

24    layers.  There was optimal standards, and there was

25    standards, and we had a negotiation back and forth with
```

Amber Martin
February 28, 2020

 1    ICE on which standards they wanted us to use.  When

 2    those standards were memorialized, we changed any

 3    handbooks, policies, and procedures that were

 4    applicable.

 5        Q.   Okay.  So ICE rolls out this new set of

 6    standards, and GEO and ICE have a conversation about the

 7    degree to which GEO's operations need to adjust to

 8    reflect those new standards; is that correct?

 9        A.   Correct.  There were several standards that

10    had financial impact, and so there was discussions

11    whether, you know, those standards wanted to be changed

12    by ICE.  That's why they sub-categoried them.

13        Q.   And you say whether those standards wanted to

14    be changed by ICE.  What does that mean?

15        A.   Like I said, there's optimal standards, and

16    then I can't remember the other word, but there were

17    provisional standards, and any time there was a

18    financial impact that was significant to the government,

19    then we decided -- you know, we had discussions on

20    whether or not to -- ICE would enforce those standards.

21    That's why they had two categories of standards.

22        Q.   And the two categories again were --

23        A.   Optimal, and I can't remember the other word.

24        Q.   Was one of them mandatory?

25        A.   It may have been.

U.S. LEGAL SUPPORT
(877) 479-2484

Amber Martin
February 28, 2020

78

```
 1                    CERTIFICATE OF OATH

 2

 3

 4    THE STATE OF FLORIDA,

 5    COUNTY OF PALM BEACH.

 6

 7

 8

 9              I, Julie Bruens, Florida Professional

10    Reporter, Notary Public, State of Florida, certify that

11    AMBER MARTIN personally appeared before me on the

12    28th of February, 2020 and was duly sworn.

13

14              Signed this 4th day of March, 2020.

15

16

17

18

19              _____
                Julie Bruens, FPR
20              Notary Public, State of Florida
                Commission No.:  #GG186376
21              Commission Expires:  April 13, 2022

22

23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2

 3   THE STATE OF FLORIDA,

 4   COUNTY OF PALM BEACH.

 5

 6               I, Julie Bruens, Florida Professional

 7   Reporter, certify that I was authorized to and did

 8   stenographically report the deposition of AMBER MARTIN;

 9   pages 1 through 77; that a review of the transcript was

10   requested; and that the transcript is a true record of

11   my stenographic notes.

12               I further certify that I am not a

13   relative, employee, attorney, or counsel of any of the

14   parties, nor am I a relative or employee of any of the

15   parties' attorneys or counsel connected with the action,

16   nor am I financially interested in the action.

17

18               Dated this 4th day of March, 2020.

19

20

21

22         _____
                 Julie Bruens, FPR
23               Florida Professional Reporter

24

25
```

# OFFICE OF INSPECTOR GENERAL

# Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California


Homeland Security

**March 6, 2017**
OIG-17-43-MA



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

March 6, 2017

MEMORANDUM FOR:   Thomas D. Homan
                  Acting Assistant Secretary
                  U.S. Immigration and Customs Enforcement

FROM:             John Roth
                  Inspector General

SUBJECT:          *Management Alert on Issues Requiring Immediate
                  Action at the Theo Lacy Facility in Orange, California*

A November 16, 2016 unannounced Office of Inspector General (OIG) inspection of the Theo Lacy Facility (TLF) in Orange, California, raised serious concerns, some that pose health risks and others that violate U.S. Immigration and Customs Enforcement's (ICE) 2008 *Performance-Based National Detention Standards* (PBNDS) and result in potentially unsafe conditions at the facility. Because of concerns raised during the inspection, we recommended that ICE take immediate action to ensure compliance with the 2008 PBNDS and strengthen its oversight of TLF. Specifically, we expressed the following concerns about:

- Food handling at TLF poses health risks. Detainees were being served, and reported being regularly served, meat that appeared to be spoiled. Orange County Sheriff's Department (OCSD) staff members are not handling meat safely, including meat being sent to other ICE detention facilities.
- Unsatisfactory conditions and services at the facility, including moldy and mildewed shower stalls, refuse in cells, and inoperable phones.
- Some "high-risk" detainees are in less restrictive barracks-style housing and some "low-risk" detainees are in more restrictive housing modules; the basis for housing decisions is not adequately documented.
- Contrary to ICE detention standards, inspectors observed high-risk detainees and low-risk detainees together in parts of TLF. Although detainees were purportedly identified by classification level, this was not apparent to the inspectors.
- Moves from less restrictive barracks to more restrictive housing modules are not explained to detainees, nor are detainees given the opportunity to appeal changes, as required by ICE detention standards.

*www.oig.dhs.gov*



## OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

- OCSD's more restrictive disciplinary segregation violates ICE detention standards.
- Neither ICE nor OCSD properly documents grievances from detainees to ensure resolution, notification of resolution, and opportunities to appeal.

After inspecting this facility on November 16, 2016, the OIG team briefed local OCSD and ICE management on these concerns. To address the concerns detailed in the alert, we recommended that, as soon as possible, ICE prevent further health risks by ensuring that OCSD follow U.S. Department of Agriculture guidelines for safe food handling. We also recommended that ICE undertake a full review of TLF and OCSD's management of the facility to ensure its compliance with ICE's 2008 PBNDS. Finally, we recommended that ICE develop a comprehensive oversight plan for TLF to ensure OCSD's future compliance with ICE's 2008 PBNDS.

We provided a draft of this alert to ICE for management comments and corrective actions. ICE concurred with the intent of all three recommendations and is implementing corrective actions to address our concerns. All three recommendations are resolved and open. We have included ICE's comments, proposed corrective actions, and our analysis in the alert, and we have attached a copy of the ICE response.

Consistent with our responsibility under the *Inspector General Act*, we will provide copies of this alert to appropriate congressional committees with oversight and appropriation responsibility over the Department of Homeland Security. We will post a version of the alert on our website.

You may call me with questions, or your staff may contact Laurel Loomis Rimon, Acting Assistant Inspector General for Inspections and Evaluations, at (202) 254-4100.

Attachment

1 Supp. App. 117

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Management Alert

The Theo Lacy Facility (TLF), operated by the Orange County Sherriff's Department (OCSD), houses U.S. Immigration and Customs Enforcement (ICE) detainees through an Intergovernmental Service Agreement. TLF has the capacity to house 3,442 males, all with some degree of criminal history. Some detainees have been convicted of crimes, served their prison sentence, and have been transferred to TLF to await deportation by ICE or an



Figure 1. Entrance to Theo Lacy Facility
*Source*: OCSD

immigration court hearing. Other detainees have violated immigration laws and are also awaiting either deportation or an immigration court hearing. At the end of October, 478 detainees were housed at Theo Lacy. That detainee count typically changes daily as new detainees enter the facility and others are released.

Prior to detention, ICE reviews each detainee's criminal record and assigns a risk level of high, medium/high, medium/low, or low. ICE bases its risk levels on the severity of past criminal charges and convictions, including immigration violations and other security risks, such as gang affiliation or a history of substance abuse. For example, individuals convicted of major drug offenses, national security crimes, and violent crimes such as murder, manslaughter, rape, robbery, or kidnapping are assessed as having a higher risk level than those convicted of minor drug and property offenses such as burglary, larceny, fraud, and money laundering.

Facilities such as TLF that are maintained for ICE through an Intergovernmental Service Agreement are to comply with ICE's 2008 *Performance-Based National Detention Standards* (ICE detention standards).

**Poor Conditions at the Theo Lacy Facility**

*Problems with Food Handling*

In the TLF kitchen, we identified a host of potential food safety problems, which could endanger the health of detainees at TLF and in other facilities serviced by the TLF kitchen. Of deepest concern, when inspecting the refrigeration units, we observed slimy, foul-smelling lunch meat that appeared to be spoiled.

**1 Supp. App. 118**



# OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

According to kitchen staff, this meat was slated to be served to detainees for lunch the day of our site visit. Detainees reported being repeatedly served lunch meat that smelled and tasted bad, which they rinsed with water before eating.

We also observed careless and potentially unsafe handling of food:

- Meat that was marked as "keep frozen" on the manufacturing label was stored in a refrigerator with no indication of how long it had been thawing.
- Lunch meat and ground beef was stored uncovered in large walk-in refrigerators.
- Different types of unwrapped, sliced lunch meat were mingled in containers and not identified; for example, a container labeled as bologna contained bologna and sliced turkey.
- Unwrapped lunch meat was stored in unlabeled, uncovered containers with no information describing contents, processing dates, or expiration dates.

  

Figure 2. Thawing meat with no dates; different lunch meats stored together with no labels; label from bologna in refrigerator for 7 days past the prepared date; all observed by the Office of Inspector General (OIG) at TLF on November 17, 2016
*Source*: OIG

Further, ICE staff informed us:

- Loaves of lunch meat were delivered frozen, thawed in the refrigerator for several days, sliced, refrozen, and sent to other detention facilities in the area.
- Loaves of lunch meat were delivered frozen, thawed in the refrigerator for several days, then sliced and refrigerated for more than a week before being served.

According to the U.S. Department of Agriculture (USDA), the safe storage time in a refrigerator for opened packages of lunch meat is 3-5 days. The practice of thawing, slicing, then refreezing meat for transport would make it difficult for TLF kitchen staff to adhere to those food safety recommendations. Further, by

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

not labeling the sliced, open lunch meat in the refrigeration unit, the kitchen staff has no way of knowing how long the portion packs have been in the containers. These practices could lead to detainee illness from ingesting spoiled meat.

**Recommendation 1**: We recommend that, as soon as possible, ICE ensure that the Orange County Sherriff's Department is following U.S. Department of Agriculture safe food handling guidelines to prevent health risks to detainees at the Theo Lacy Facility and other detention facilities that receive food from the Theo Lacy Facility.

**ICE Response:** ICE concurs. OCSD reported that it follows the California Code of Regulations, Title 15 for Local Detention Facilities. Although ICE indicated that Theo Lacy kitchen facilities, sanitation, and food preparation, service, and storage must comply with standards set forth in the California Health and Safety and Retail Food Codes, it also acknowledged that it must have safe food handling practices to prevent health risks to detainees as outlined in the reporting of spoiled food slated for service to detainees. ICE reported that Theo Lacy food handling guidelines follow USDA methods or protocols for safe food handling. TLF has been using these food service handling guidelines prior to the contract with ICE (for over 5 years). Although, USDA's methods or protocols for safe food handling are not a requirement of ICE's 2008 PBNDS, ICE concurs that OCSD must have safe food handling practices and guidelines to prevent health risks to detainees or other individuals in their custody.

The standard from the 2008 PBNDS on *Food Service* requires, in part, that each facility has a food service program under the direct supervision of an experienced food service administrator (FSA) who is responsible for:

- planning, controlling, directing, and evaluating food service;
- establishing standards of sanitation, safety and security; and
- developing specifications for the procurement of food, equipment, and supplies.

According to ICE, TLF has a certified FSA (as well as two food service managers) and, in addition to ICE detention standards, follows the Orange County, California's *Health Care Agency's Environmental Health Services* guidelines for food safety. County health inspectors routinely inspect OCSD facilities, including TLF.

ICE also reported that OCSD is in the process of re-competing its pre-packaged lunch meat vendor, which was expected to be posted for bids before the end of January 2017. The procurement process is projected to take approximately 4

**1 Supp. App. 120**

## OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

months. Although the contract re-compete is part of OCSD's routine procurement process, the sack lunches that are currently being prepared at TLF will be replaced with pre-packaged box lunches with set expiration dates that will be brought in from an outside vendor. Estimated completion date: May 2017.

Although ICE reported that TLF does not provide food to any other detention facility, this was reported in error. ICE revised its statement and indicated that it still provides food to other detention facilities; it is addressing its food handling issues by moving to a vendor that will provide pre-sliced and individually packaged lunch meat, which will address concerns at all affected facilities.

**OIG Analysis**: ICE's response to this recommendation addresses the intent of the recommendation. This recommendation is resolved and will remain open until ICE provides evidence that current food handling complies with USDA standards or similar standards that prevent health risks to detainees. Once completed, ICE should also provide a copy of the new pre-packaged box lunch contract that shows requirements ensuring set expiration dates are documented and followed.

*Lack of Cleanliness in Common Showers and Individual Cells*

In two modules housing detainees, common area showers were not clean. We found trash, mildew, and mold in the shower stalls. According to OCSD staff, detainees are required to clean their showers daily; however, detainees are only given a scrub brush and an all-purpose cleaner, which does not combat mold and mildew. Additionally, requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area.



Figure 3. Moldy, mildewed shower stalls observed by OIG at TLF on November 16, 2016 *Source: OIG*

**1 Supp. App. 121**

# OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

Also, in two of the modular housing units, we observed individual detainee cells that did not appear to be well-maintained or clean. In two cases, detainees had large collections of empty food containers and newspapers. According to ICE detention standards, garbage and refuse are to be collected and removed as often as necessary to maintain sanitary conditions and to avoid creating health hazards. Collections of items in individual cells could potentially attract vermin and present a health hazard for detainees.



Figure 4. Broken plug on phone observed by OIG at TLF on November 16, 2016 *Source:* OIG

*Unusable Telephones*

An ICE Office of Professional Responsibility, Office of Detention Oversight report from a 2013 inspection of TLF identified telephone problems, including low volume and inoperable phones. In three modules we visited, the telephones were not operable. Detainees interviewed also confirmed that some phones did not work and the low volume on others prevented them from using the phones.

## Failure to Properly Document Detainee Classification Decisions and Comply with ICE Detention Standards

*Inadequate Documentation of Decisions on Detainee Classification*

ICE detention standards require detention facilities to implement a system to classify detainees based on past criminal convictions, including immigration violations, and other security risk factors. Facilities must physically house detainees according to their classification level. Through our observations and interviews with OCSD staff, we determined that OCSD is not properly documenting its detainee classification process, and its housing reclassifications do not comply with ICE detention standards.

Before in-processing at TLF, ICE gives OCSD a classification form for each detainee that contains ICE's classification risk assessment of high, medium/high, medium low, or low. Facilities are permitted to develop local classification systems, as long as the classification criteria are objective and uniformly applied and procedures meet ICE requirements. OCSD staff informed us that they do not change ICE's initial classification level, but they consider

## OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

the ICE's classification along with their own detainee classification interview to determine the level of "criminal sophistication"[1] and assign housing.

Although OCSD personnel showed us examples of completed questionnaires from classification interviews, OCSD does not document these interviews in the detainee's file. Through our review of detainee files, we found detainees identified by ICE as high risk who were housed in the least restrictive barracks and detainees identified by ICE as medium/low risk housed in more restrictive modular housing. Even though OCSD officials said they use ICE's initial classification, we found no detainee file documentation showing they took this classification into consideration when determining initial housing assignments. Additionally, we found no correlation between ICE's initial classification and OCSD's assessment.

*High-risk and Low-risk Detainees Are Allowed to Mix*

ICE detention standards also specify that facilities may not mingle low-risk detainees with high-risk detainees. During the facility tour, we observed that detainees of all risk levels were housed in the barracks. OCSD staff explained that detainees of different classification levels do not "program" together, meaning they do not eat or attend religious services or recreation activities at the same time. Fundamentally, this setup satisfies the ICE detention standards' prohibition against mingling high-risk detainees and low-risk detainees. However, while touring the barracks area, we noted that detainees of all risk levels were able to roam the entire area, accessing the phones, law library, and outdoor space, and entering and exiting the housing bays freely. Although OSCD personnel said each detainee is issued an armband and identification card indicating risk classification, these were not readily apparent to the OIG team. Some detainees were not wearing an armband at all. This type of mingling may allow a less restrictive living environment for detainees, but it skirts the ICE detention standards' prohibition, which is designed to "protect the community, staff, contractors, volunteers, and detainees from harm."

*Changes to Detainee Housing Do Not Comply with ICE Detention Standards*

During our review of detainee files, we determined that OCSD staff were not informing detainees of their reasons for moving detainees from barracks to more restrictive modules. There was also no evidence of a process for detainees to formally appeal such a move. OCSD staff told the OIG team that detainees

---

[1] OCSD staff referred to criminal sophistication as an overall assessment of a detainee's criminal background, including gang affiliation, past incarceration record, and types of violations on criminal history.

**1 Supp. App. 123**

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

housed in the modules were there because they needed closer supervision than the barracks allowed, but we determined the reasons behind the need were not properly documented in detainee files. OCSD also does not review detainees' classifications before moving them from barracks to modules.

According to ICE detention standards, facility classification systems must include procedures for detainees to appeal their classification levels, but OCSD staff said they never, for any reason, change ICE's initial classification of detainees. Because they do not change classification levels, OIG concluded that OCSD is able to avoid the requirement for allowing detainees to appeal housing decisions. We also concluded that, as a result, OCSD staff can move detainees at will without technically violating ICE detention standards, and detainees are stripped of their right to appeal housing decisions, which should be based on their classification level.

## OCSD's More Restrictive Disciplinary Segregation Violates ICE Detention Standards

OCSD is violating ICE detention standards for disciplinary segregation. Detainees at TLF are placed in disciplinary segregation in a special management unit as punishment for violations of facility rules. According to OCSD staff and the OCSD-provided detainee handbook, disciplinary segregation at TLF means a person is isolated for 24 hours a day in a cell with no access to visitors, recreation, or group religious services. The detainees are released briefly every other day to shower. In contrast, ICE detention standards require that detainees placed in disciplinary segregation receive a minimum of 1 hour of recreation five times per week, opportunities for general visitation, religious guidance, and limited access to telephones and reading material. However, through observation and interviews, we determined that detainees are not allowed any recreation time, visitation, religious guidance, or telephone access. They were permitted to access one book from the library for the duration of their stay in solitary, lasting up to 30 days.

## ICE Does Not Track Detainee Grievances

We identified problems with processes for filing both written and oral grievances with ICE and OCSD. Detention standards require facilities to have a procedure for formal grievances to ensure detainees are being treated fairly. Detainees may file grievances related to the conditions of confinement, including medical care, staff misconduct, food, telephones, visiting procedures, and disability discrimination. TLF has two grievance processes, one overseen by ICE and one by OCSD. Detainees wishing to file a written grievance with ICE fill out an ICE form and place it in ICE's box in their living area, which is picked up by a contractor daily. Detainees wishing to file a written grievance

**1 Supp. App. 124**

## OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

with OCSD fill out a different form, which is placed in a different box and is picked up by supervising deputies after each shift.

Through interviews with the ICE Grievance Officer we identified the following problems with the ICE grievance process:

- ICE does not track written grievances from detainees in the facility to ensure the grievances are received, resolved, and that detainees receive a response. Grievances are maintained in a database owned by a private contractor, and the ICE Grievance Officer said ICE does not have access to this database.
- ICE personnel do not document or track oral grievances from detainees, and detainees do not receive a documented response.
- Detainees said they were not given the opportunity to appeal their grievances with ICE.
- When ICE receives a written grievance that OCSD must address, ICE forwards the grievance to OCSD or the medical staff for response. However, after forwarding these grievances, ICE does not track them to ensure they are resolved and that detainees receive a response.

Through interviews with OCSD officials and detainees, as well as document review, we identified the following problems with the OCSD grievance process:

- ICE does not track these grievances or have visibility into these grievances filed with OCSD to ensure they are resolved and detainees receive a response.
- OCSD sends ICE an email summarizing the grievance received and the resolution, but ICE personnel have no assurance they have been notified of all grievances or that all grievances have been fully resolved. We reviewed some of these emails and confirmed they did not include full details of detainees' grievances, a description of the resolution, or confirmation that the detainee had been notified about the resolution.
- Detainees said they were not given the opportunity to appeal grievances. We reviewed all 46 detainee grievances filed with OCSD in 2016, and found that there were no documented appeals.

**Recommendation 2**: We recommend that ICE undertake a full review and inspection of the Theo Lacy Facility and the Orange County Sherriff's Department's management of the facility to ensure compliance with ICE's 2008 *Performance-Based National Detention Standards*.

**ICE Response**: ICE concurs. ICE reported to us that the TLF is inspected yearly by ICE's contract inspector, the Nakamoto Group, and is scheduled for

**1 Supp. App. 125**

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

its next full inspection to ensure compliance with the 2008 PBNDS during the week of October 23, 2017. In the interim, TLF will undergo an inspection by the ICE Office of Detention Oversight within the Office of Professional Responsibility, beginning February 7, 2017. At the end of the inspection, the Office of Detention Oversight will conduct an onsite out-briefing of facility staff and local field office management regarding any deficiencies identified during the review, followed by an official report of findings to ICE leadership. The Los Angeles Field Office (LAFO) will work with the facility to put in place any necessary corrective action plans, should deficiencies be identified. Estimated completion date: November 2017

**OIG Analysis**: ICE's response to this recommendation addresses the intent of the recommendation. In ICE's corrective actions, we will look specifically at the handling and management of grievances and at the segregation processes used at TLF. This recommendation is resolved and will remain open until ICE provides evidence that it is in full compliance with the 2008 PBNDS, based on the results of an independent contractor's full inspection and Office of Detention Oversight inspection. Once completed, ICE should provide a copy of the completed inspections identifying compliance with the standards.

**Recommendation 3**: We recommend that ICE develop a comprehensive oversight plan for the Theo Lacy Facility to ensure the Orange County Sherriff's Department's future compliance with both the intent and the implementation of ICE's 2008 *Performance-Based National Detention Standards*.

**ICE Response**: ICE concurs. ICE reported that it recently instituted a group meeting at TLF for onsite ICE staff and facility leadership, including food service managers, for the purpose of discussing facility compliance issues and other areas of concern. In addition, the group has developed a facility-specific form that will be used to document routine and recurring inspections of the food service areas and food-related processes at the facility.

According to ICE, its Detention Standards Compliance Officer is onsite at TLF 3 weeks per month to work with facility staff and other onsite ICE supervisory personnel to monitor facility compliance and implement any necessary corrective action. ICE will continue to monitor and evaluate whether additional oversight staff should be deployed to TLF for additional coverage.

LAFO will continue to engage with OCSD and monitor any developing issues to expeditiously remedy and correct any compliance deficiencies. In addition, LAFO management has continued to conduct independent onsite spot inspections of any notable problematic areas or areas of concern. The results of the spot inspections are immediately addressed with OCSD for any necessary

**1 Supp. App. 126**

# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

corrective action in order to ensure compliance with the 2008 PBNDS. Estimated completion date: November 2017

**OIG Analysis**: ICE's response to this recommendation addresses the intent of the recommendation. This recommendation is resolved and will remain open until ICE provides evidence it has modified its oversight of the facility to ensure the intent of the 2008 PBNDS is being met and the standards are being implemented. We will look specifically for changes in handling grievances and segregation at TLF. Corrective actions completed must include all areas of concern identified in the report, not just proper food handling. Once completed, ICE should provide a copy of its revised oversight plan to ensure ongoing monitoring of compliance at TLF.

## Scope and Methodology

During our inspection, we interviewed the following ICE staff members: ICE Supervisory Detention and Deportation Officer, Orange County Detainee Program; ICE Assistant Field Office Director, Detention Management and Compliance; and Medical Oversight at Theo Lacy facility. We interviewed three employees of the Orange County Sheriff's Office: Orange County Administrative Manager, ICE Detention Custody Division; OCSD Classification Deputy, ICE Compliance; and Lieutenant, ICE Compliance. We also interviewed five detainees.

As part of our inspection we toured the following areas of the facility:
- General medical unit for detainees housed in barracks-style housing
- Medical modular housing detainees who require more frequent medical assistance
- Kitchen, including food preparation, food storage, and equipment cleaning areas, intake/out-processing area
- Special Management Unit (commonly known as solitary confinement)
- Modular housing units, including individual cells, common showers, and medical units within modules
- Barracks-style housing
- Control room

During the unannounced inspection, we interviewed ICE and OCSD staff from the facility and five detainees. We reviewed documentation from a previous ICE inspection and documentation of grievances.

We used ICE's 2008 PBNDS to conduct our inspection, as these are the standards the facility reported currently operating under. These standards, which were developed in coordination with component stakeholders, prescribe

**1 Supp. App. 127**

# OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

the expected outcomes of each standard and the expected practices required to achieve them. ICE detention standards were also designed to improve safety, security, and conditions of confinement for detainees.

**1 Supp. App. 128**

# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security



*Office of the Chief Financial Officer*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

**U.S. Immigration
and Customs
Enforcement**

January 13, 2017

| | |
|---|---|
| MEMORANDUM FOR: | John Roth<br>Inspector General<br>Office of the Inspector General |
| FROM: | Jonathan Carver<br>Chief Financial Officer |
| SUBJECT: | Management Response for "Management Alert on Issues<br>Requiring Immediate Action at the Theo Lacy Facility in<br>Orange California", dated January 6, 2017. |

U.S. Immigration and Customs Enforcement's (ICE) wishes to express our appreciation for your staff's work on the referenced Management Alert.

On January 6, 2017, the Department of Homeland Security, Office of Inspector General (OIG), issued a draft management alert titled *"Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California",* OIG Report 17-XX-MA.  Following an unannounced inspection, OIG concluded that conditions at the Theo Lacy Facility (TLF) posed health risks and violated ICE's 2008 Performance Based National Detention Standards (PBNDS).

Specifically, OIG's concerns centered on conditions such as food handling, serving potentially spoiled meat at TLF, and other unsatisfactory conditions.  The inspectors found some "high-risk" detainees were housed in less restrictive barracks-style housing while some "low-risk" detainees were in more restrictive housing modules.  The inspectors determined that there was no adequate documentation for housing decisions.

Finally, the report emphasized the fact that Orange County Sheriff's Department's (OCSD) more restrictive disciplinary segregation violates ICE's detention standards.  Also, neither ICE nor OCSD properly documents grievances from detainees to ensure resolution, notification of resolution, and opportunities to appeal.

ICE concurs with each of the three recommendations made in the Management Alert.

www.ice.gov

**1 Supp. App. 129**

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response "Management Alert on Issues Requiring Immediate Action at the Theo
Lacy Facility in Orange California"

Page 2

***Recommendation 1: Ensure OCSD follows U.S. Department of Agriculture's safe food
handling guidelines to prevent health risks to detainees at TLF and other detention
facilities that receive food from TLF.***

***Response 1:*** ICE concurs. OCSD follows the California Department of Corrections and
Rehabilitation (CDCR) Title 15 for Local Detention Facilities, Section 1254, (Kitchen
Facilities, Sanitation, and Food Storage. (a) Kitchen facilities, sanitation, and food
preparation, service, and storage shall comply with standards set forth in Health and
Safety Code, Division 104, Part 7, Chapters 1-13, Sections 113700 et seq. California
Retail Food Code.) CDCR food handling guidelines follow U.S. Department of
Agriculture's (USDA) methods or protocols for safe food handling. TLF has been using
CDCR Title 15 food service handling guidelines prior to the contract with ICE (for over 5
years). However, USDA's methods or protocols for safe food handling are not a
requirement of the ICE 2008 performance based national detention standards (PBNDS).
ICE concurs that OCSD must have safe food handling practices and guidelines to prevent
health risks to detainees or other individuals in their custody.

The 2008 standard on *Food Service* requires, in part, that each facility has a food service
program under the direct supervision of an experienced food service administrator (FSA)
who is responsible for:

Planning, controlling, directing and evaluating food service

Establishing standards of sanitation, safety and security; and

Developing specifications for the procurement of food, equipment and supplies.

TLF has a certified FSA (as well as two food service managers) and, in addition to the
ICE detention standards, follows the County of Orange, California's "Health Care
Agency Environmental Health Services" guidelines for food safety. OCSD facilities,
including TLF, are routinely inspected by county health inspectors.

OCSD is in the process of re-competing its pre-packaged lunch meat vendor, which is
expected to be posted for bids before the end of January 2017. The procurement process
is projected to take approximately four months. Although the contract re-compete is part
of OCSD's routine procurement process, the sack lunches that are currently being
prepared at TLF will be replaced with pre-packaged box lunches with set expiration dates
that will be brought in from an outside vendor.

TLF does not provide food to any other detention facility.

Estimated Completion Date: May 2017

***Recommendation 2: Undertake a full review and inspection of TLF and OCSD's
management of TLF to ensure compliance with ICE's 2008 PBNDS.***

**1 Supp. App. 130**

**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response "Management Alert on Issues Requiring Immediate Action at the Theo
Lacy Facility in Orange California"

Page 3

**Response 2:** ICE concurs. TLF is inspected yearly by the ICE's contract inspector, the
Nakamoto Group, and is scheduled for its next full inspection to ensure compliance with
the PBNDS 2008 standards during the week of October 23, 2017. In the interim, the TLF
will undergo an inspection by the ICE Office of Detention Oversight (ODO), within the
Office of Professional Responsibility (OPR), beginning February 7, 2017. At the end of
the inspection, ODO will conduct an on-site out-briefing of facility staff and local field
office management regarding any deficiencies identified during the review, followed by
an official report of findings to ICE leadership. The Los Angeles Field Office (LAFO)
will work with the facility to put in place any necessary corrective action plans, should
deficiencies be identified. Estimated Completion Date: November 2017

***Recommendation 3: Develop a comprehensive oversight plan for TLF to ensure
OCSD's future compliance with both the intent and the implementation of ICE's 2008
PBNDS.***

**Response:** ICE concurs. Beginning recently, a group meeting has been instituted at TLF
for on-site ICE staff and facility leadership, to include food service managers, for the
purpose of discussing facility compliance issues and other areas of concern. In addition,
the group has developed a facility-specific form that will be used to document routine and
recurring inspections of the food service areas and food-related processes at the facility.
ICE's Detention Standards Compliance Officer is on site at TLF three weeks per month
to work with facility staff and other on-site ICE supervisory personnel to monitor facility
compliance and implement any necessary corrective action. ICE will continue to monitor
and evaluate whether additional oversight staff should be deployed to the TLF for
additional coverage.

LAFO will continue to engage with OCSD and monitor any developing issues to
expeditiously remedy and correct any compliance deficiencies. In addition, LAFO
management has continued to conduct independent onsite spot-inspections of any notable
problematic or areas of concern. The results of the spot-inspections are immediately
addressed with OCSD for any necessary corrective action in order to ensure compliance
of ICE's 2008 PBNDS. Estimated Completion Date: November 2017

Should you have any questions, please contact Michael Moy, Senior Portfolio Manager,
at (202) 732-6263.

cc:    DHS GAO/OIG Liaison Office

**ADDITIONAL INFORMATION AND COPIES**

To view this and any of our other reports, please visit our website at: www.oig.dhs.gov.

For further information or questions, please contact Office of Inspector General Public Affairs at: DHS-OIG.OfficePublicAffairs@oig.dhs.gov.  Follow us on Twitter at: @dhsoig.



**OIG HOTLINE**

To report fraud, waste, or abuse, visit our website at www.oig.dhs.gov and click on the red "Hotline" tab. If you cannot access our website, call our hotline at (800) 323-8603, fax our hotline at (202) 254-4297, or write to us at:

Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive, SW
Washington, DC  20528-0305

1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF COLORADO
 2
                CIVIL ACTION NO.:  1:14-CV-02887-JLK
 3

 4   ALEJANDRO MENOCAL, et al.,

 5                   Plaintiffs,

 6   -vs-

 7   THE GEO GROUP, INC.,

 8                   Defendant.
     _____/
 9

10

11

12                 DEPOSITION OF DAVID VENTURELLA

13

                        Tuesday, July 21, 2020
14                       9:43 a.m. - 3:49 p.m.

15

16              ALL PARTIES APPEARED REMOTELY

17

18
                    Stenographically Reported By:
19                        JULIE BRUENS, FPR
                    Florida Professional Reporter
20

21

22

23

24

25
```

```
 1                          APPEARANCES

 2

 3   On behalf of the Plaintiffs:
                  OUTTEN & GOLDEN, LLP
 4                685 Third Avenue
                  New York, New York 10017
 5                212-245-1000
                  mscimone@outtengolden.com
 6                BY: MICHAEL J. SCIMONE, ESQUIRE
                      RACHEL DEMPSEY, ESQUIRE
 7

 8   On behalf of the Defendant:
                  AKERMAN
 9                1900 Sixteenth Street, Suite 1700
                  Denver, Colorado 80202
10                303-260-7712
                  adrienne.scheffey@akerman.com
11                BY: ADRIENNE SCHEFFEY, ESQUIRE

12                THE GEO GROUP, INC.
                  4955 Technology Way
13                Boca Raton, Florida 33431
                  561-443-1786
14                cwilke@geogroup.com
                  BY: CHERYL WILKE, ESQUIRE
15
     ALSO PRESENT:
16
          DAN EISMEIER
17
          ANDREW FREE
18
          JOE RIVERA, VIDEOGRAPHER
19

20                        -   -   -

21

22

23

24

25
```

```
 1         Q.   Okay.  And now if you turn to the very -- if
 2    you were to scroll down to the very bottom of the PDF --
 3         A.   The last page?
 4         Q.   The very last page, yeah.  Let me know when
 5    you're there.
 6         A.   Okay.
 7              MS. SCHEFFEY:  And is that the document that
 8         it looks like it has 2555 on it -- 2755 on the
 9         bottom?
10              MR. SCIMONE:  Yes.  So this has a stamp at the
11         bottom for the record 2018-ICLI00052 bates 2755.
12              MS. SCHEFFEY:  Thank you.
13              THE WITNESS:  Okay.  I'm at the bottom of the
14         document.
15    BY MR. SCIMONE:
16         Q.   All right.  And so looking at the signature
17    block, you'll see there's a box right over the space
18    where a signature would normally appear, but right below
19    that, you can see the title is unredacted, and it says
20    senior vice president of business development.  Do you
21    see that?
22         A.   I do.
23         Q.   And this is in February of 2018.  Was that
24    your job title at that time?
25         A.   Yes.
```

David Venturella
July 21, 2020

61

```
 1        Q.   Okay.  And so although it's redacted here, did

 2   you sign this letter?

 3        A.   Yes.

 4        Q.   Did you draft this letter personally?

 5        A.   I did draft parts of it.  There were others

 6   who reviewed it and made changes.

 7        Q.   But all the original text was from you?

 8        A.   Well, when you say -- I mean, it was

 9   definitely reviewed and things were changed, so I'm not

10   sure what you mean by all the original text.

11        Q.   Sure.  I mean, so the first draft of the

12   letter as I understand was something that you wrote?

13        A.   Yes.

14        Q.   Were there other parts of the letter that

15   were -- the first draft was done by anyone else besides

16   you?

17        A.   Again, there were other people who reviewed

18   it, had input in it.  I don't know all of those

19   individuals, but like a lot of documents, it goes

20   through several iterations before the final one is

21   approved.

22        Q.   Sure.  And this is an official communication

23   to ICE; correct?

24        A.   Yes, it's official.

25        Q.   Through the company?
```

David Venturella
July 21, 2020

62

```
 1        A.    Yes.

 2        Q.    Okay.  So and essentially given that it's an

 3   official communication from the GEO Group to the

 4   government, you would want to be careful about the

 5   information that goes into this document; correct?

 6             MS. SCHEFFEY:  Object to form.

 7             THE WITNESS:  We want it to be correct and

 8        factual and accurate.

 9   BY MR. SCIMONE:

10        Q.    So besides yourself, of the people who had

11   input into this letter, who else do you know of who had

12   input?

13        A.    I would imagine our general counsel or

14   individuals from our general counsel's office would have

15   had input in this.  Others, I don't know specifically

16   who had input.

17        Q.    Do you know whether there were other

18   executives at the GEO Group who had input into this

19   letter?

20             MS. SCHEFFEY:  Object to form, asked and

21        answered.

22             THE WITNESS:  I would assume.  That's kind of

23        our common practice that other people would have

24        input.

25   BY MR. SCIMONE:
```

David Venturella
July 21, 2020

63

```
 1        Q.   Okay.  But you don't know for a fact whether
 2   they did or not?
 3        A.   No, I don't recall.
 4        Q.   Okay.  Do you know for a fact whether the
 5   general counsel's office had input into the letter?
 6        A.   I would say I feel pretty strongly that they
 7   had input in it.
 8        Q.   So looking at the top of the letter now -- you
 9   can scroll up to the top and we'll start up there.
10   Okay.  So you see at the top, this is dated February
11   14th, 2018?
12        A.   I do.
13        Q.   Okay.  And this is addressed to acting
14   director Thomas Homan; correct?
15        A.   Yes.
16        Q.   And at the time, did you know Mr. Homan
17   personally?
18        A.   Yes.
19        Q.   Have you interacted with him during your
20   employment with ICE?
21        A.   Yes.
22        Q.   While you were at ICE, what was his position
23   relative to yours?  Can you situate him within the
24   agency?
25             MS. SCHEFFEY:  Object to form.
```

```
 1              THE WITNESS:  Well, that changed a number of
 2         times throughout the year, or the years, I should
 3         say, that we were in the agency together.
 4    BY MR. SCIMONE:
 5         Q.   Do you remember what his position was at the
 6    time that you left relative to yours?
 7         A.   He was the deputy executive assistant director
 8    for ERO at the time.
 9         Q.   All right.  So he was within the same division
10    that you were at the time that you left; is that right?
11              MS. SCHEFFEY:  Object to form.
12              THE WITNESS:  Yes.  Correct.
13    BY MR. SCIMONE:
14         Q.   Were you friendly with Thomas Homan during
15    that time?
16         A.   Yes.
17         Q.   And did that relationship have any impact on
18    the decision by the GEO Group to have this letter come
19    from you?
20              MS. SCHEFFEY:  Object to form.
21              THE WITNESS:  No.
22    BY MR. SCIMONE:
23         Q.   Did you have discussions about who the letter
24    should come from?
25              MS. SCHEFFEY:  Object to form, and I'm going
```

David Venturella
July 21, 2020

70

```
 1    open now?

 2         A.    I do.

 3         Q.    Okay.  So looking at the cover of this

 4    document, is it familiar to you?

 5         A.    It is.

 6         Q.    All right.  And do you recognize this as the

 7    cover of the Performance-Based National Detention

 8    Standards for 2011?

 9         A.    Yes, it is.

10         Q.    And so what we've done here, this was all part

11    of one document, so I'm just going to represent to you

12    what we have here.  I just tried to cut down the size of

13    the files so we could open it in the chat window.

14              So it has the cover and preface through the

15    table of contents, and then it jumps to a couple of

16    sections.  There's Section 3.1, disciplinary system, and

17    then there's another jump from there to -- starting at

18    bates number 62798 to Section 5.8 titled Voluntary Work

19    Program.

20              So I would like you to turn to that section,

21    the Voluntary Work Program, and it's going to be on the

22    page bate stamps GEO MEN 62798.  Let me know when you're

23    there.

24         A.    Sorry.  This is a little slow.

25         Q.    It's okay.
```

U.S. LEGAL SUPPORT
(877) 479-2484

1          A.   Okay.  Voluntary Work Program.  I got it.

2          Q.   Okay.  So is this the Voluntary Work Program

3    that you mentioned earlier, the VWP?

4          A.   The standard for it, sure.

5          Q.   And I'll draw your attention to the text

6    underneath that first section, purpose and scope, that

7    begins in italics right underneath the bullet points.

8    Do you see that?

9          A.   I do.

10         Q.   Okay.  And it says there procedures in italics

11   are specifically required for SPCs, CDFs, and dedicated

12   IGSA facilities.  What is a CDF?

13              MS. SCHEFFEY:  Object to form, foundation.

14              THE WITNESS:  A contract detention facility

15        for these purposes.

16   BY MR. SCIMONE:

17         Q.   And that's what the Aurora Detention Facility

18   is, correct, a CDF?

19         A.   Correct.

20         Q.   All right.  And so is it your understanding

21   that the italicized text in these standards is mandatory

22   for a facility like Aurora?

23         A.   Yes.

24         Q.   Okay.  So now if you'll turn to the next page,

25   I'll draw your attention to Section C, where it says

David Venturella
July 21, 2020

 1     personal housekeeping required.

 2          A.    Uh-huh.

 3          Q.    Do you see that?

 4          A.    I do.

 5          Q.    Okay.  All right.  And it says work

 6     assignments are voluntary, however, all detainees are

 7     required for personal housekeeping.  And then it

 8     continues detainees are required to maintain their

 9     immediate living areas in a neat and orderly manner

10     by -- and then it lists four things.  Do you see that

11     text?

12          A.    I do.

13          Q.    Okay.  And just take a minute to read through

14     those four items and let me know when you're done.

15          A.    Okay.  Done.

16          Q.    Okay.  So is it your understanding that work

17     assignments in a contract detention facility under the

18     PBNDS are -- have to be voluntary with the exception of

19     these four things?

20                MS. SCHEFFEY:  Object to form.

21                THE WITNESS:  Yes.

22     BY MR. SCIMONE:

23          Q.    Okay.  So now if you'll turn back to Exhibit 1

24     and scroll down to --

25          A.    Hold on.  I'm going to need assistance from

```
 1    Cheryl here.  I'm not able to pull it up.

 2              MS. WILKE:  That's okay.  What page would you

 3         like him to do go to, sir?

 4              MR. SCIMONE:  2754.

 5              MS. WILKE:  On document one?

 6              MR. SCIMONE:  Yes.  Correct.

 7    BY MR. SCIMONE:

 8         Q.   Let me know when you're ready.

 9         A.   Okay.  I'm ready.

10         Q.   Okay.  So you see the section titled concerted

11    challenges to ICE authority and Federal law?

12         A.   Yes.

13         Q.   Okay.  In that first paragraph, I would like

14    to draw your attention to the last sentence.  It says to

15    the extent that plaintiffs allege that disciplinary

16    segregation is an unlawful threat for refusal to work,

17    this section comes directly from ICE policies, which I

18    should assist in defending.  Do you see that?

19         A.   I do.

20         Q.   Okay.  So in this letter, when you refer to

21    disciplinary segregation as a sanction for refusing to

22    work, is that referring to refusal to do those four

23    mandatory things that are stated in the PBNDS?

24              MS. SCHEFFEY:  Object to form, misstates prior

25         testimony.  You may answer.
```

David Venturella
July 21, 2020

74

```
 1              THE WITNESS:  I think it could be any work

 2       assignment.

 3  BY MR. SCIMONE:

 4       Q.   Okay.  Let's turn back to document number two,

 5  Exhibit Number 2.

 6       A.   Okay.  Sorry.

 7       Q.   Okay.  Sorry about all the back and forth.

 8            MS. WILKE:  What particular page, sir?

 9            MR. SCIMONE:  Yeah.  62631.  The fourth page

10       of the PDF, if that's helpful.

11            MS. WILKE:  62631.  Okay.

12  BY MR. SCIMONE:

13       Q.   All right.

14       A.   Okay.

15       Q.   Okay.  So -- all right.  So just looking at

16  this page, it says at the top 3.1, disciplinary system.

17  So you recognize this to be the section of the PBNDS

18  that deals with discipline?

19       A.   Yes.

20       Q.   Okay.  And so if you scroll down now to -- all

21  right.  Page 62642.

22       A.   62642.  Is that what you said?

23       Q.   That's right.  Yes.

24       A.   Okay.

25       Q.   All right.  You see the section high moderate
```

David Venturella
July 21, 2020

84

```
 1         would have discussed with counsel.

 2    BY MR. SCIMONE:

 3         Q.   Mr. Venturella, let me ask you a different

 4    question.  This sentence here about the one dollar per

 5    day rate and the idea that it can't be increased without

 6    ICE's authorization, was that a sentence that you

 7    drafted when you wrote this letter?

 8         A.   I do not recall.

 9         Q.   Do you recall whether that sentence was added

10    to the letter by GEO's counsel?

11         A.   I don't recall.

12         Q.   At the time that you wrote this letter, did

13    you have any understanding in your mind about whether or

14    not the VWP rate could be increased?  And I'm talking

15    when you drafted the letter but before you received

16    input on it from counsel.

17         A.   The way I would answer that question is that

18    any changes to anything we do on an ICE contract

19    requires ICE's authorization.

20              So whether it's that particular line or any

21    other activity, if ICE previously approved it and we

22    wanted to change it, then ICE has to approve that

23    change.

24         Q.   Okay.  I think we covered this earlier, but

25    when you were at ICE, decisions about whether or not to
```

David Venturella
July 21, 2020                                                          85

 1   approve a change like that, that wouldn't be something

 2   that came before you in your capacity at ICE; correct?

 3        A.   That's correct.

 4        Q.   Okay.  Based on your understanding, though,

 5   and at the time you wrote this letter, is it true that

 6   ICE can approve an increase in the VWP rate that the

 7   contractor pays to detainees in a Voluntary Work

 8   Program?

 9             MS. SCHEFFEY:  Object to form.

10             THE WITNESS:  ICE can authorize an increase.

11   BY MR. SCIMONE:

12        Q.   Okay.  All right.  I'm going to drop a new

13   exhibit into the chat window, so look out for that.  It

14   will be Exhibit 3.

15             (Thereupon, the document was marked as

16   Plaintiff's Exhibit 3 for identification.)

17             MS. SCHEFFEY:  Cheryl will need to help you

18        with that.

19             THE WITNESS:  She's sliding over as we speak.

20             MR. SCIMONE:  It's a smaller document, so

21        hopefully this one won't be as difficult as the

22        last.

23             MS. WILKE:  That was an easy one.

24             MR. SCIMONE:  Sorry, I didn't hear that.

25             MS. WILKE:  That was an easy one.  Which page

**1 Supp. App. 146**

David Venturella
July 21, 2020

86

```
 1          would you like him to go to, sir?

 2                  THE WITNESS:  Just start on the first page.

 3                  MS. WILKE:  Okay.

 4                  MS. SCHEFFEY:  And has this been disclosed in

 5          this litigation or produced?

 6                  MR. SCIMONE:  Yes.  If you look at the top,

 7          you'll see there's ECF information.  You'll see

 8          this lawsuit on June 26th, and the docket number is

 9          287-13.

10   BY MR. SCIMONE:

11      Q.   Okay.  Mr. Venturella, take a look at this

12   document.  And my question for you is going to be

13   whether you recognize the general form and format of it.

14   Not with respect to specific contents, but just the form

15   of the document.

16      A.   All right.  It's not a document that I'm

17   familiar with.  I don't produce invoices, so I can't say

18   that I've seen this before.

19      Q.   Okay.  You do recognize this as an invoice

20   though?

21      A.   I can read the words on the PDF here, so yes,

22   it says invoice.

23      Q.   Okay.  And it's an invoice directed from the

24   GEO Group, that comes from the GEO Group; correct?

25                  MS. SCHEFFEY:  Object to form.
```

```
 1            THE WITNESS:  Yes.

 2   BY MR. SCIMONE:

 3       Q.   And you see the GEO Group -- that's the GEO

 4   Group's logo in the upper right-hand corner; correct?

 5       A.   Yes.

 6       Q.   And there's an address right underneath the

 7   logo in Texas, and it's -- and that address is for the

 8   South Texas Detention Complex.  Do you recognize that as

 9   a GEO facility?

10       A.   Yes.

11       Q.   Okay.  Now, if you look over to the left,

12   underneath the date and the invoice and client number,

13   there's an address for DHS ICE.  Do you see that?

14       A.   Yes.

15       Q.   And that's directed to the Burling Finance

16   Center in Vermont.  Do you -- are you familiar with the

17   fact that DHS has a finance center in Vermont?

18       A.   Yes.

19       Q.   And do you understand that finance center to

20   be a place that processes ICE payments to contractors?

21       A.   Yes.

22       Q.   All right.  And is it your understanding that

23   GEO regularly sends invoices to ICE for payments related

24   to its contract detention facilities?

25       A.   Yes.
```

David Venturella
July 21, 2020

88

1      Q.    Who prepares those invoices?

2      A.    I would have to defer to Amber Martin on that.

3  I don't know who does.

4      Q.    Is it your understanding that those invoices

5  are prepared by people who have knowledge about the

6  information that's put in the invoice, the dollar

7  amounts and the type category and that sort of thing?

8      A.    Again, I'm not familiar with the process and

9  who does it, and I think Ms. Martin would be the best

10  person to ask that question.

11      Q.    Okay.  But just in general, when -- the

12  question I'm asking is just when GEO sends invoices to

13  ICE, they are prepared by people who have knowledge of

14  the things that they are invoicing the agency for; is

15  that fair to say?

16            MS. SCHEFFEY:  Object to form, asked and

17       answered.

18            THE WITNESS:  Honestly, I don't know.

19  BY MR. SCIMONE:

20      Q.    Is it your understanding that GEO just has

21  people with no knowledge about the subject matter make

22  up invoices?

23            MS. SCHEFFEY:  Object to form.

24            THE WITNESS:  I'm not going to answer that.

25       That's ridiculous.

U.S. LEGAL SUPPORT
(877) 479-2484

David Venturella
July 21, 2020

89

```
 1   BY MR. SCIMONE:

 2       Q.   Okay.  Well, sir, you're under oath here at a

 3   deposition.  I'm afraid you have an obligation to answer

 4   my questions.  So the question I'm asking is --

 5           MS. SCHEFFEY:  Michael, he can answer your

 6       factual questions.  He doesn't have to answer

 7       argumentative questions.

 8           MR. SCIMONE:  Okay.  Adrienne, let me make my

 9       record please.

10   BY MR. SCIMONE:

11       Q.   The question I'm asking is in your experience

12   as an executive working for the GEO Group, you know that

13   the company submits invoices to ICE and to the

14   Department of Homeland Security.  My question is just

15   whether those invoices are prepared by people who have

16   knowledge about the things that are being invoiced.

17           MS. SCHEFFEY:  Objection to form and misstates

18       prior testimony.

19   BY MR. SCIMONE:

20       Q.   Is that something that you have knowledge

21   about?

22           THE WITNESS:  Right, and I'm answering I don't

23       know what those individuals have knowledge of.  If

24       that's what you're asking me, I do not know that.

25   BY MR. SCIMONE:
```

U.S. LEGAL SUPPORT
(877) 479-2484

```
 1    didn't know about given the way I just released this

 2    information?

 3             MS. SCHEFFEY:  Object to form.

 4             THE WITNESS:  So in a procurement for

 5         detention services, even state, city, or local

 6         entities can compete in those competitions.  So we

 7         only knew of those three companies, for example, in

 8         the Houston area, but that didn't preclude anybody

 9         else to submit a proposal.

10    BY MR. SCIMONE:

11         Q.   And ICE --

12         A.   So I can't know all of the competitors, but

13    typically, we know of the three or four or five

14    companies that compete in that space.  But again, it's

15    not limited to just the private sector.

16         Q.   So in these instances, how did you come to

17    know that these companies were competing for those

18    contracts?

19             MS. SCHEFFEY:  Object to form.

20             THE WITNESS:  Well, we knew that MTC and

21         CoreCivic, as they are now known, already had an

22         existing facility in Houston.  We were aware of

23         Emerald having facilities -- I think it was

24         probably multiple facilities at the time -- and we

25         had a facility that was within the area of
```

```
 1        competition.

 2   BY MR. SCIMONE:

 3        Q.   Okay.  And you referred to state and local

 4   governments bidding on contracts as well.  Is that

 5   what's referred to as an IGSA?  Is that what you're

 6   talking about?

 7             MS. SCHEFFEY:  Object to form.

 8             THE WITNESS:  Correct.

 9   BY MR. SCIMONE:

10        Q.   And that's intergovernmental services

11   agreement?

12        A.   That's correct.

13        Q.   And so tell me if I have this right.

14   Generally speaking, IGSA is where there's a facility

15   provided by a municipality or a state or some other

16   government entity, and so they offer to contract with

17   ICE to provide that space; is that correct?

18        A.   Correct.

19             MS. SCHEFFEY:  Object to form.

20   BY MR. SCIMONE:

21        Q.   Is that generally right?

22        A.   Correct.

23        Q.   Okay.  Do IGSAs have any kind of competitive

24   advantage over, you know, contract detention facilities

25   and those kinds of procurements?
```

Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 158

163

```
 1              MS. SCHEFFEY:  Object to form.

 2              THE WITNESS:  So typically -- so the short

 3         answer is yes, they do, in that they have already

 4         existing space that they have paid for, financed

 5         through the county, through the city, whatever.  So

 6         it's existing, and they make that space available

 7         to ICE generally at a lower cost because the

 8         facility has been paid for, it has been staffed,

 9         and they just have available beds that they can

10         offer at a much lower rate.

11              Now, the downside to that is with the ever

12         changing and evolving standards, those facilities

13         are less likely to make those changes to meet those

14         standards.  So in some cases, they have an

15         advantage, and in other cases, they don't.

16    BY MR. SCIMONE:

17         Q.   Take a look at paragraph 27.  Before we get

18    there, actually, let me ask a different question.  Are

19    you aware of any legal authority that allows ICE to

20    contract directly with private prison companies absent

21    an IGSA?

22              MS. SCHEFFEY:  Object to form and calls for a

23         legal conclusion.

24              THE WITNESS:  Am I aware of any authority?

25              MR. SCIMONE:  Yes.
```

**1 Supp. App. 153**

David Venturella
July 21, 2020

189

```
 1    you questions about when you were at the agency, but

 2    given your experience in dealing with members of

 3    Congress at the GEO Group, the cost of detention

 4    services is something that is sometimes discussed when

 5    legislatures are considering these issues; correct?

 6            MS. SCHEFFEY:  Objection.

 7            THE WITNESS:  Our discussions with

 8        legislature, members of Congress, that's what

 9        you're -- you're asking our discussions with

10        members of Congress?

11    BY MR. SCIMONE:

12        Q.   Let me ask -- well, we can withdraw the

13    question.  I understand this really isn't your area.

14            But there are people at the GEO Group who are

15    responsible for communicating with legislatures about

16    matters that are important to GEO's business; right?

17            MS. SCHEFFEY:  Objection.

18            THE WITNESS:  Yes.

19    BY MR. SCIMONE:

20        Q.   And generally, is it your understanding that

21    the cost of detention services is one of the things that

22    legislatures are concerned about?

23            MS. SCHEFFEY:  Objection.

24            THE WITNESS:  Yes, I believe cost is a factor

25        or concern.
```

David Venturella
July 21, 2020

190

```
1    BY MR. SCIMONE:

2         Q.   Okay.  There are some detention centers that

3    are owned by ICE; is that right?

4              MS. SCHEFFEY:  Objection.

5              THE WITNESS:  There are -- yeah, there are I

6         think four or five that are -- the buildings are

7         owned by ICE, correct, or the Federal government.

8    BY MR. SCIMONE:

9         Q.   And are they managed by private companies?

10             MS. SCHEFFEY:  Objection.

11             THE WITNESS:  Based on my understanding, yes.

12   BY MR. SCIMONE:

13        Q.   All right.  But what -- is it fair to say that

14   one alternative that the agencies could consider but

15   haven't, don't currently, is that that they could

16   operate detention centers themselves?  ICE could operate

17   detention centers themselves?

18             MS. SCHEFFEY:  Objection.

19             THE WITNESS:  That is certainly one option.

20   BY MR. SCIMONE:

21        Q.   And in general, isn't one of the reasons for

22   private contracting that it's generally considered to be

23   more cost effective than having the government provide

24   services itself?

25             MS. SCHEFFEY:  Objection.
```

**1 Supp. App. 155**

David Venturella
July 21, 2020

191

```
 1              THE WITNESS:  Correct.

 2     BY MR. SCIMONE:

 3         Q.   If that changed, if the cost of providing

 4     detention services went up to the point that it became

 5     more expensive, and significantly more expensive, is it

 6     fair to say that that might have an impact on the

 7     political decisions that are made about using

 8     immigration detention as opposed to one of the other

 9     alternatives that we talked about?

10              MS. SCHEFFEY:  Objection.

11              THE WITNESS:  It would be a -- certainly a

12         consideration.

13     BY MR. SCIMONE:

14         Q.   When did GEO first win the Aurora contract, do

15     you know?

16         A.   I want to say 1986.

17         Q.   Do you know if it was a competitive bid at the

18     time?

19         A.   I don't know.  I wasn't there.

20         Q.   Fair enough.  I know we're talking ancient

21     history now.  The contract has been renewed from time to

22     time, right, for Aurora?

23              MS. SCHEFFEY:  Objection.

24              THE WITNESS:  Yes.

25     BY MR. SCIMONE:
```

Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 162

```
 1                    CERTIFICATE OF REPORTER

 2

 3   THE STATE OF FLORIDA,

 4   COUNTY OF PALM BEACH.

 5

 6              I, Julie Bruens, Florida Professional

 7   Reporter, certify that I was authorized to and did

 8   stenographically report the deposition of BRIAN EVANS;

 9   pages 1 through 109; that a review of the transcript was

10   requested; and that the transcript is a true record of

11   my stenographic notes.

12              I further certify that I am not a

13   relative, employee, attorney, or counsel of any of the

14   parties, nor am I a relative or employee of any of the

15   parties' attorneys or counsel connected with the action,

16   nor am I financially interested in the action.

17

18              Dated this 24th day of July, 2020.

19

20

21

22   _____
     Julie Bruens, FPR
23   Florida Professional Reporter

24

25
```

```
 1                    WITNESS NOTIFICATION LETTER

 2
     July 24th, 2020
 3

 4   DAVID VENTURELLA
     C/O
 5   CHERYL WILKE, ESQUIRE
     THE GEO GROUP, INC.
 6   4955 Technology Way
     Boca Raton, Florida 33431
 7   561-443-1786
     cwilke@geogroup.com
 8
     IN RE:  ALEJANDRO MENOCAL, et al. Vs. THE GEO GROUP,
 9   INC.
                        Deposition, taken on July 21, 2020
10         U.S. Legal Support Job No. 2211505

11

12   The transcript of the above proceeding is now available
     for your review.
13
     Please call to schedule an appointment between the hours
14   of 9:00 a.m. and 4:00 p.m., Monday through Friday, at a
     U.S. Legal Support office located nearest you.
15
     We respectfully request that the witness complete their
16   review within a reasonable time, and return the errata
     sheet to our
17   office. You need not return the entire transcript.

18
     Sincerely,
19

20

21

22   _____
     Julie Bruens, FPR
23   U.S. Legal Support, Inc.
     444 West Railroad Avenue, Suite 300
24   West Palm Beach, Florida  33401
     561.835.0220
25
```

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 1:14-cv-02887-JLK-MEH
 3    _____

 4                  VIDEOTAPE DEPOSITION OF:
           HUGO A. HERNANDEZ-CEREN - June 24, 2020
 5                    Via RemoteDepoTM
               (NONCONFIDENTIAL ONLY TRANSCRIPT)
 6    _____

 7    ALEJANDRO MENOCAL, MARCOS BRAMBILA,
      GRISEL XAHUENTITLA, HUGO HERNANDEZ, LOURDES ARGUETA,
 8    JESUS GAYTAN, OLGA ALEXAKLINA, DAGOBERTO VIZGUERRA,
      and DEMETRIO VALERGA, on their own and on behalf of
 9    all others similarly situated,

10    Plaintiffs,

11    v.

12    THE GEO GROUP, INC.,

13    Defendant.
      _____

14
                  PURSUANT TO NOTICE, the videotape
15    deposition of HUGO A. HERNANDEZ-CEREN was taken on
      behalf of the Defendant in La Salle Parish, Louisiana,
16    on June 24, 2020, at 3:11 p.m. GMT, 9:11 a.m. MDT,
      before Tracy C. Masuga, Registered Professional
17    Reporter, Certified Realtime Reporter, and Notary
      Public within Colorado appearing remotely from
18    Arapahoe County, Colorado.

19

20

21

22

23

24

25
```

Hugo Hernandez-Ceren   06/24/2020                Non-ConfidentialPage 24
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1    detained.

 2             Q.    (BY MS. SCHEFFEY)  Are you still

 3    reviewing the document, Mr. Hernandez?

 4             A.    Yes.

 5             Q.    Okay.

 6             A.    Just it's a lot.

 7             Q.    No, no, that's fine.  There's no rush.

 8             A.    Okay.  I'm done.

 9             Q.    Okay.  So do you know about when you

10    were at the Aurora facility?

11             A.    I believe it was 2014.

12             Q.    Okay.  2014.  Would it have been the

13    dates that are reflected in your commissary account?

14             A.    Yes.

15             Q.    So I was seeing March 2014 to

16    approximately April 2015.  Do you have any reason to

17    believe that would not be correct?

18             A.    That's correct.

19             Q.    All right.  And so then you -- you had

20    mentioned that you had been detained somewhere else

21    before that.  Where was that?

22             A.    I was transferred.  Like I say, I went

23    to Joe Corley, Conroe; Harlingen; La Villa, Texas;

24    Pearsall; Las Vegas; and finally Aurora.

25             Q.    Okay.  And when you lived in Aurora, did

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 25
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1    you live in a dorm with other people?

 2         A.   Yes.

 3         Q.   Can you describe the layout for me?

 4         A.   It's the -- do you want me to describe

 5    the dorm, you mean?

 6         Q.   Yeah, or the pod, whatever you would

 7    like to describe or whatever you remember.

 8         A.   Okay.  Well, once you enter the dorm,

 9    there's a GEO guard, his desk, a microwave, phones, a

10    couple of tables, a shower.  There's a -- the bottom

11    tier and the top tier, four cells.  There's a rec

12    yard, and there's cells that are for four detainees,

13    and there are cells that can hold eight detainees.

14         Q.   Okay.  And did you live in a cell with

15    four detainees or with eight detainees?

16         A.   I lived with four.  It was a total of

17    four.

18         Q.   And who did you live with?

19         A.   My friend Sanchez and two other

20    detainees.

21         Q.   And were your roommates the same

22    throughout the entire stay at Aurora?

23         A.   No.

24         Q.   Who -- who else did you live with other

25    than Mr. Sanchez?

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 26
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1          A.   Nica -- well, we usually don't go by

2     names.  We go by nicknames.

3          **Q.   Okay.**

4          A.   So there's a -- Nica was one of them,

5     Sanchez was one of them.  There's Nica and Sanchez.

6     And then my bunkee Guerrero, he -- he was my bunkee.

7     So it was Nica, Sanchez, and Guerrero.

8          **Q.   Okay.  Tell me about Mr. Sanchez.**

9          A.   I don't understand.  What -- what do you

10    want me to tell you about him?

11         **Q.   How did you two become friends?**

12         A.   Through our cell living.

13         **Q.   Okay.  Did you two participate in any**

14    **activities together?**

15         A.   Do our workout together sometimes.

16    Mostly we'll sit down at the table and eat and

17    conversate, watch TV.

18         **Q.   Okay.  And was that table that you're**

19    **talking about in your living area?**

20         A.   No.  That was in the common area

21    outside.

22         **Q.   Okay.  And so that was -- how often do**

23    **you spend in that area with the table?**

24         A.   About maybe -- let me see.  Almost half

25    a day we'll be in that table.

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 72
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

```
 1   will be paid each day?

 2        A.   Yes.

 3        Q.   And what is that amount?

 4        A.   One dollar.

 5        Q.   And did you know that at the time you

 6   signed this document?

 7        A.   Yes.

 8        Q.   Okay.  Thank you.

 9             I'm going to open up another exhibit.

10   This should be 8.

11             (Deposition Exhibit 8 was remotely

12   introduced.)

13             MS. SCHEFFEY:  And, Andrew, I'll go

14   through this one and then we can take a break after

15   this document, okay?

16             MR. FREE:  Good deal.  Thanks.

17        Q.   (BY MS. SCHEFFEY)  Okay.  Mr. Hernandez,

18   can you see the document on your screen?

19        A.   Yes.

20        Q.   All right.  And I'm going to give you

21   the remote control and you can scroll through.  Let me

22   know when you're done reviewing.

23             MR. FREE:  Adrienne, just given the

24   time, do you have a question you want him to be

25   thinking about while he's scrolling?
```

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 73
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1              MS. SCHEFFEY:  Yeah.

2         Q.   (BY MS. SCHEFFEY)  I want to know if you

3    can confirm your signatures at the bottom, that it's

4    your signature, and that you've seen these documents

5    before.

6              MR. FREE:  Okay.  Thanks.

7              MS. SCHEFFEY:  And then everything else

8    will be pretty quick.  And thank you to everyone for

9    being patient with the technology.

10        Q.   (BY MS. SCHEFFEY)  And, Mr. Hernandez, I

11   can point you to the parts I want to talk to you about

12   if you want to scroll through and just see if you

13   recognize it and if it's your signature on the bottom.

14        A.   I just want to make sure that I'm

15   understanding --

16        Q.   That's fine.

17        A.   -- if that's fine.

18        Q.   Yep.

19        A.   Yes.

20        Q.   Okay.  So is this your signature?

21        A.   Yes.

22        Q.   And have you seen this document before?

23        A.   Yes.

24        Q.   Okay.  And your understanding -- what is

25   your understanding of your signature on this

Hugo Hernandez-Ceren   06/24/2020        Non-ConfidentialPage 74
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1    verification?

2         A.    That I agree.

3         Q.    Okay.  And are the representations in

4    this document accurate, to the best of your knowledge?

5         A.    Yes.

6         Q.    Okay.  I want to go to a specific one.

7    So I'm going to go to Interrogatory No. 27, which you

8    should be able to see on your screen.  This

9    interrogatory asks you to describe with as much

10   specificity as possible each circumstance in which a

11   GEO employee threatened you with administrative or

12   disciplinary segregation for failing to clean any area

13   of the Aurora Detention Facility.  Did I read that

14   correctly?

15        A.    Yes.

16        Q.    You responded, "Plaintiff does not

17   recall specific dates, but recalls one instance in

18   which a GEO employee threatened Plaintiff with

19   solitary confinement for failure to clean . . . ."

20   Did I read that correctly?

21        A.    Yes.

22        Q.    Can you describe that one instance?

23        A.    One detainee refused to clean and told

24   the GEO guard that he was going to not clean because

25   he was no janitor and that he was not being paid for

Hugo Hernandez-Ceren   06/24/2020            Non-ConfidentialPage 75
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1    that type of job and that they had to hire someone to

 2    do that.

 3            And the GEO guard took out a bag, a

 4    trash bag, and shown it to him and rolled it out the

 5    roll, and stretched it out, and said, "Well, let's

 6    make it easier.  Here's your bags," trying to give it

 7    to him.  And he said, "Just pack your stuff because

 8    you're going to go to the hole.  Because this is on

 9    the handbook.  This is on the handbook, so it's not

10    something that you can fight for.  Just here's your

11    bag and go to the hole."  And --

12        Q.   What was the name of the detainee?

13            MR. FREE:  Counsel, I don't think he was

14    finished with his answer.

15            MS. SCHEFFEY:  Okay.  I'm sorry.

16        A.   And there was actually a second time

17    where --

18        Q.   (BY MS. SCHEFFEY)  Can you -- can we

19    table the second time so we can just go through the

20    first one and then we'll go to the second one?

21        A.   Okay.

22        Q.   Because I want to just talk about this

23    one instance here where it says there's one instance.

24    So what was the name of the detainee at that one

25    instance?

U.S. LEGAL SUPPORT, INC.
303-832-5966                    **1 Supp. App. 166**

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 76
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

```
 1              A.   I don't remember.

 2              Q.   Was it Mr. Valerga?

 3              A.   No.

 4              Q.   Was it Mr. Menocal?

 5              A.   No.

 6              Q.   Was it Mr. Brambila?

 7              A.   No.

 8              Q.   Okay.   And do you know the name of the

 9   guard or officer?

10              A.   Yeah.   The name of the guard is Officer

11   Sanchez.

12              Q.   Okay.   Is that the same Mr. Sanchez you

13   mentioned earlier?

14              A.   Yes.

15              Q.   Do you know his first name?

16              A.   No.   They only carry their last names.

17   We don't know their first names.

18              Q.   Could you describe him to me?

19              A.   He's Mexican.   He's like about

20   five-four, light-skinned, kind of chunky.

21              Q.   Okay.

22              A.   Yeah.

23              Q.   Were there any other Officer Sanchezes

24   that you remember?

25              A.   No.
```

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 77
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1        Q.   I asked just because that's a, you know,

2   maybe a common last name.

3        A.   Yeah.

4        Q.   So it was Mr. Sanchez.  Was the detainee

5   sent to segregation?

6        A.   No, because he started cleaning right

7   away.

8        Q.   Okay.  And did Mr. Sanchez threaten to

9   turn off the TV before or any other threatened

10  punishment before threatening segregation?

11       A.   Yes.  I mean, the TVs don't go on.  If

12  the detainee doesn't start cleaning or doesn't -- they

13  refuse to clean, the TVs and the phones don't go on.

14       Q.   Okay.  So after everyone finishes

15  cleaning, then they turn on the TVs and you can watch?

16       A.   Yes, correct.

17       Q.   Were there certain shows that you liked

18  to watch?

19            MR. FREE:  Objection, relevance.

20       A.   No, just any random thing on TV.

21       Q.   (BY MS. SCHEFFEY)  Okay.  So was there a

22  rush to get, you know -- I don't know, Judge Judy is

23  on at 9:00, and everyone wants to get in.

24       A.   No.

25       Q.   No?

Appellate Case: 22-1409   Document: 38-1   Date Filed: 03/24/2023   Page: 174

Hugo Hernandez-Ceren   06/24/2020        Non-ConfidentialPage 78
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1          A.   No.  Not like that, no.  But --

 2          **Q.   Okay.  Would other detainees volunteer**

 3   **to clean, if someone refused, in order to get the TVs**

 4   **turned on?**

 5          MR. FREE:  Objection, form.

 6          A.   To the best of my knowledge, yeah,

 7   sometimes they will -- somebody will jump in just so

 8   we can get the TVs on and phones and, you know,

 9   take -- take care of it.

10          **Q.   (BY MS. SCHEFFEY)  Okay.  So then I know**

11   **you wanted to tell me about a second instance.  Can**

12   **you tell me what happened on that instance, and if**

13   **possible, tell me the name of the detainee, if you**

14   **remember, and the name of any officers.**

15          A.   Well, there was this other incident with

16   this detainee where he was refusing, and then everyone

17   got involved, and it was like, oh, well, nobody really

18   wants to clean, and the GEO guard felt like he -- he

19   didn't know what to do, so he called a sergeant.  And

20   this is a GEO sergeant.

21          And the sergeant came in and called a

22   meeting for everyone and got everybody together, and

23   stated that, "Okay.  If you refuse to clean, you will

24   be sent to the hole.  If you refuse to listen to the

25   guard, you will be sent to the hole.  And that's not a

Hugo Hernandez-Ceren   06/24/2020         Non-ConfidentialPage 79
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1    place where you want to be at because it's cold in

 2    there.  You're going to lose your privileges.  No

 3    commissary, no visitation, no rec yard.  You're not

 4    going to get enough showers in there.  You're going to

 5    be lonely.  It's pretty cold.

 6              "But the most important thing about this

 7    is that I'm going to make sure that GEO sends their

 8    documents to the court, and you're fighting your

 9    cases, so you do not want to look bad.  Already you

10    look bad with the red uniform on, and now you're going

11    to look even worse because you're coming from the

12    hole.

13              "And we're going to make sure that those

14    documents get there to the judge, and the judge is

15    going to see if she wants to leave you here in the

16    country, so you can go back to your family, or they

17    can remove you.  But you're not going to look good

18    when this gets to the judge."

19         Q.   And I don't want to cut you off.  Is

20    that it?  I have a few follow-ups.

21         A.   Yeah, yeah, that's it.

22         Q.   What was the name of the officer in that

23    instance, do you recall?

24         A.   That's a -- that's a sergeant.  I don't

25    remember --

Hugo Hernandez-Ceren   06/24/2020     Non-ConfidentialPage 161
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1    ahead.  Just do it.  Do it," and, you know, fall in

2    and start cleaning.  Eventually you'll start cleaning

3    because, I mean, now you have not only that, that the

4    GEO guard is telling you, but now you have everybody

5    else on you, telling you that you have to clean it and

6    just go forward.

7          **Q.   When the GEO guard showed you the trash**

8    **bag, what was he implying?  What was your**

9    **understanding of what the guard was implying?**

10         MS. SCHEFFEY:  Object to form.

11         A.   The bag simply means, "Pack your stuff.

12   You're going to the hole."  That's what that means.

13         **Q.   (BY MR. KOSHKIN)  Was the time you just**

14   **described with the detainee that didn't want to be --**

15   **that he wasn't a janitor, was that the only time you**

16   **ever saw the guard bring out the trash bag?**

17         A.   I saw it multiple times with different

18   guards where they -- where they show the bag or they

19   at least will show you the roll.

20         **Q.   Well, what did they say?  Can you**

21   **describe another incident?  What did the guard say?**

22         A.   Another guard said, "Okay.  Well, here,"

23   and just put the entire roll on top of the -- his

24   desk.  He said, "Hey, if you don't -- if you don't

25   want to do it, well, let's just start counting," and

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 162
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1    put the -- put the roll right on top.  And, you know,

2    the roll means the garbage bag and the garbage bag

3    means the hole.  So we all knew what was that roll

4    about or the garbage bag.

5         Q.   And was there any other way that you

6    knew that the cleaning was mandatory?

7              MS. SCHEFFEY:  Object to form.

8         A.   Just by the GEO guard and the handbooks

9    and --

10        Q.   (BY MR. KOSHKIN)  You mentioned earlier

11   today a story where a sergeant came and spoke to your

12   pod.  Did the sergeant tell you that -- in that story

13   you mentioned, the sergeant told you that if you

14   didn't clean, you would go to the hole.  From that,

15   did you understand that you had to clean or otherwise

16   go to the hole?

17        A.   Yes.

18             MS. SCHEFFEY:  Object to form, leading,

19   and misstates prior testimony.

20        A.   Yeah, that will be -- that will tell you

21   completely that it was mandatory, because now it's --

22   it's a sergeant telling you, and that -- that will

23   definitely show you that it's really mandatory.

24        Q.   (BY MR. KOSHKIN)  When you had to clean

25   due to this mandatory cleaning, what did you clean?

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 163
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

```
 1              MS. SCHEFFEY:  Object to form.

 2         A.   You have to grab anything.  Either you

 3  wipe the tables, you mop, you sweep, you squeegee, you

 4  clean the rec yard, wipe the -- the phones, clean the

 5  microwave, change the garbage bag, clean the showers,

 6  disinfect the showers, pick up all the trash, like the

 7  toothpaste, the shampoo -- the shampoo bottles.  And

 8  that's -- that's about it.  That's all the things.

 9  That's about it.

10         Q.   (BY MR. KOSHKIN)  When you say you

11  cleaned the rec yard, for example, what did -- what

12  did that entail?

13         A.   The rec yard, you have to sweep it, just

14  pick up any -- any trash, mostly sweep it.

15         Q.   Was it a large space?

16         A.   Not that much.  It was -- it was a small

17  space, just similar to this, just way bigger.  You can

18  probably fit probably maybe 10, 15 people in there,

19  but it's -- it's a small, little box.

20         Q.   What material is the floor that you were

21  sweeping?

22         A.   Concrete.

23         Q.   Was there usually a lot of trash?

24              MS. SCHEFFEY:  Object to form.

25         A.   Sometimes.
```

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 164
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

 1          Q.   (BY MR. KOSHKIN)   What about cleaning

 2    the phones:   What did you have to do to clean the

 3    phones?

 4          A.   You have to disinfect the phones and

 5    wipe the phones and wipe the stalls too.   Like the

 6    dividers, you have to wipe those too.

 7          Q.   What did you use to wipe those?

 8          A.   Usually, you'll get the -- the -- the

 9    window cleaner, and that will be -- that same cleaner

10    will be for tables, microwave, everything.   That

11    window cleaner was for everything.

12          Q.   And you mentioned the microwave again.

13    What did you -- what did cleaning the microwave

14    require?

15          MS. SCHEFFEY:   Object to form.

16          A.   You have to disinfect the microwave,

17    spray the inside and wipe it and then close it and

18    then spray the outside and wipe it.

19          Q.   (BY MR. KOSHKIN)   You also mentioned

20    sweeping, mopping, and squeegeeing the floor.   Can you

21    describe what those terms mean?

22          A.   Well, first you've got to sweep the

23    entire floor, and then -- then you've got to mop it,

24    and then since it's dry and that type of floor doesn't

25    dry that fast, because it's full of wax, so it won't

Hugo Hernandez-Ceren   06/24/2020       Non-ConfidentialPage 165
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1    dry fast, so then you have to squeegee the water to

2    one of the drains and then let it -- let it dry.

3        Q.    You also mentioned cleaning the showers.

4    Can you describe what that process was like?

5        A.    The showers -- the showers have

6    curtains.  You have to spray the showers to disinfect

7    the curtains, and you have to spray the showerheads,

8    the buttons, the little space where you put your soap,

9    and then you've got to -- you've also got to sweep it,

10   pick up all the empty shampoo bottles, toothbrushes,

11   stuff like that.

12       Q.    Were these all messes that you made?

13             MS. SCHEFFEY:  Object to form.

14       A.    No.

15       Q.    (BY MR. KOSHKIN)  Were they messes that

16   other detainees in the dorm made?

17       A.    Yes.

18       Q.    How long did all this cleaning take?

19       A.    About an hour -- about an hour to an

20   hour 30 minutes sometimes.

21       Q.    Were you able to use the common area if

22   you weren't cleaning, during the cleanup time?

23       A.    No.

24       Q.    And how often did you participate in the

25   cleanup?

Hugo Hernandez-Ceren   06/24/2020         Non-ConfidentialPage 213
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1              I, HUGO A. HERNANDEZ-CEREN, do hereby

2      certify that I have read the above and foregoing

3      deposition and that the same is a true and accurate

4      transcription of my testimony, except for attached

5      amendments, if any.

6              Amendments attached   (  ) Yes   (  ) No

7

8

9                        _____

10                       HUGO A. HERNANDEZ-CEREN

11

12             The signature above of HUGO A.

13     HERNANDEZ-CEREN was subscribed and sworn or affirmed

14     to before me in the county of _____,

15     state of _____, this _____ day

16     of _____, 2020.

17

18

19                       _____

                         Notary Public
20                       My Commission expires:

21

22

23

24

25     Alejandro Menocal, 6/24/20 (tcm)

Hugo Hernandez-Ceren   06/24/2020   Non-ConfidentialPage 214
ALEJANDRO MENOCAL, ET AL. v. THE GEO GROUP, INC.

1                    REPORTER'S CERTIFICATE

2    STATE OF COLORADO          )
                                )  ss.
3    ARAPAHOE COUNTY            )

4
                I, TRACY C. MASUGA, Registered
5    Professional Reporter, Certified Realtime Reporter,
     and Notary Public 19924005553, State of Colorado, do
6    hereby certify that previous to the commencement of
     the examination, the said HUGO A. HERNANDEZ-CEREN
7    declared his testimony in this matter is under penalty
     of perjury; that the said examination was taken in
8    machine shorthand by me remotely and was thereafter
     reduced to typewritten form; that the foregoing is a
9    true transcript of the questions asked, testimony
     given, and proceedings had.

10
                I further certify that I am not employed
11   by, related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of
12   this litigation.

13              IN WITNESS WHEREOF, I have affixed my
     signature this 30th day of June, 2020.
14
                My commission expires April 24, 2024.
15

16   __X__ Reading and Signing was requested.

17   _____ Reading and Signing was waived.

18   _____ Reading and Signing is not required.

19

20

21              _Tracy C. Masuga_

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, I electronically filed the foregoing appendix with Clerk of the Court for the U.S. Court of Appeals for the Tenth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett