

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell                                                                 Phone: (303) 844-3433
*Clerk*

Date: 11/17/2022

| | | | | USA or other |
|---|---|---|---|---|
| ☐Pro Se | ☒Retained | ☐CJA | ☐FPD | ☐Federal Agency |
| | | | | (Appeal Fee Exempt) |

Case No: __14-cv-2887-JLK-MEH__                    ☐Amended Notice of Appeal
                                                  ☐Other pending appeals
Date Filed: __11/16/2022__                          ☐Transferred Successive
                                                      §2254 or §2255
Appellant: __GEO Group, Inc., The__                 ☐Supplemental Record

Pro Se Appellant:
          ☐IFP forms mailed/given        ☐Motion IFP pending     ☐Appeal fee paid
                                         ☐IFP denied             ☐Appeal fee not paid

Retained Counsel:
          ☒Appeal fee paid        ☐Appeal fee not paid        ☐Motion IFP filed

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals. Please refer to the forms, procedures, and requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record that are found on the Tenth Circuit's website, www.ca10.uscourts.gov.

If not already completed, either an appeal fee payment for filing this case or filing of a motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 days after the notice of appeal was filed with the District Court.

If you have questions, please contact this office.

Sincerely,

JEFFREY P. COLWELL, CLERK

by:  s/A. Garcia Garcia
          Deputy Clerk

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

Rev. 8/17/2017

APPEAL,MJ CIV PP,NDISPO,STAYDI

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:14–cv–02887–JLK–MEH</u>

Menocal et al v. The GEO Group, Inc.

Assigned to: Judge John L. Kane

Referred to: Magistrate Judge Michael E. Hegarty

 Case in other court:  USCA, 17–01125

 USCA, 17–00701

Cause: 05:704 Labor Litigation

Date Filed: 10/22/2014

Jury Demand: Defendant

Nature of Suit: 790 Other Labor Litigation

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Alejandro Menocal** | represented by | **Alexander Neville Hood** |

Towards Justice and Hood Law Office, PLLC

Towards Justice: P.O. Box 371680, PMB 44465

Hood Law Office: 1312 17th Street

Denver, CO 80237

802–578–5682

Email: <u>alex@towardsjustice.org</u>

*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**

Milstein Turner, PLLC

1490 Lafayette Street

Suite 304

Denver, CO 80218

303–305–8230

Email: <u>andrew@milsteinturner.com</u>

*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**

The Meyer Law Office, P.C.

P.O. Box 40394

1547 North Gaylord Street

Denver, CO 80204

303–831–0817

Fax: 720–210–9858

Email: <u>hans@themeyerlawoffice.com</u>

*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**P. David Lopez**

Outten & Golden LLP

601 Massachusetts Avenue NW

Second Floor West Suite

Washington, DC 20001
202–847–4400
Fax: 202–847–4410
Email: pdl@outtengolden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
Outten & Golden LLP
One California Street
12th Floor
San Francisco, CA 94111
415–638–8800
Email: akoshkin@outtengolden.com
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
Kelman Buescher Law Firm
600 Grant Street
Suite 825
Denver, CO 80203
303–333–7751
Fax: 303–333–7758
Email: aboothby@laborlawdenver.com
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
Towards Justice–Denver
1410 High Street
Suite 300
Denver, CO 80218
319–239–3840
Fax: 303–957–2289
Email: brianne@towardsjustice.org
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
Towards Justice–Denver
P.O. Box 371680
PMB 44465
Denver, CO 80237–5680
(720) 248–8426
Fax: (303) 957–2289
Email: david@towardsjustice.org
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
Outten & Golden LLP
685 Third Avenue
25th Floor
New York, NY 10017
212–245–1000

Fax: 646–509–2060
Email: estork@outtengolden.com
*TERMINATED: 02/16/2018*

**Juno E. Turner**
Towards Justice–Denver
P.O. Box 371680
PMB 44465
Denver, CO 80237–5680
720–441–2236
Email: juno@towardsjustice.org
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
Kelman Buescher Law Firm
600 Grant Street
Suite 825
Denver, CO 80203
303–333–7751
Email: mfritzmauer@laborlawdenver.com
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
Outten & Golden LLP
685 Third Avenue
25th Floor
New York, NY 10017
212–245–1000
Email: mscimone@outtengolden.com
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
Outten & Golden LLP
685 Third Avenue
25th Floor
New York, NY 10017
212–245–1000
Fax: 646–509–2060
Email: om@outtengolden.com
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
Outten & Golden LLP
One California Street
12th Floor
San Francisco, CA 94111
415–638–8800
Email: rdempsey@outtengolden.com
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
R. Andrew Free Law Office

P.O. Box 90568
Nashville, TN 37209
844–321–3221 x 1
Fax: 615–829–8959
Email: Andrew@ImmigrantCivilRights.com
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
Milstein Turner, PLLC
1942 Broadway
Suite 509
Boulder, CO 80302
303–440–8780
Email: brandt@milsteinturner.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Marcos Brambila** | represented by | **Alexander Neville Hood** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

4

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Grisel Xahuentitla**                    represented by    **Alexander Neville Hood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*

5

*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Hugo Hernandez**                               represented by

**Alexander Neville Hood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lourdes Argueta**                     represented by   **Alexander Neville Hood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

8

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jesus Gaytan**                              represented by   **Alexander Neville Hood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Olga Alexaklina**                    represented by

**Alexander Neville Hood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H. Turner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hans Christopher Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**P. David Lopez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dagoberto Vizguerra**                     represented by   **Alexander Neville Hood**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Andrew H. Turner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Hans Christopher Meyer**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **P. David Lopez**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Adam Levin Koshkin**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ashley Kathryn Boothby**
                                                            (See above for address)
                                                            *TERMINATED: 06/14/2019*

                                                            **Brianne Michelle Power**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **David Hollis Seligman**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

12

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Demetrio Valerga**                   represented by   **Alexander Neville Hood**
*on their own behalf and on behalf of all*                (See above for address)
*others similarly situated*                               *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Andrew H. Turner**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Hans Christopher Meyer**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **P. David Lopez**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Adam Levin Koshkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Kathryn Boothby**
(See above for address)
*TERMINATED: 06/14/2019*

**Brianne Michelle Power**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Hollis Seligman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth V. Stork**
(See above for address)
*TERMINATED: 02/16/2018*

**Juno E. Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Fritz–Mauer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Scimone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ossai Miazad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Williams Dempsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Andrew Free**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandt P. Milstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

GEO Group, Inc., The                represented by   **Erik Karl Schuessler**
Burns Figa & Will PC
6400 South Fiddlers Green Circle
Plaza Tower One
Suite 1000
Greenwood Village, CO 80111
303–796–2626
Fax: 303–796–2777
Email: eschuessler@bfwlaw.com
*TERMINATED: 06/06/2017*
*LEAD ATTORNEY*

**Adrienne Scheffey**
Akerman LLP
1900 16th Street
Suite 1700
Denver, CO 80202
303–796–2626
Fax: 303–796–7777
Email: ascheffey@bfwlaw.com
*ATTORNEY TO BE NOTICED*

**Allison N. Angel**
Akerman LLP
1900 16th Street
Suite 1700
Denver, CO 80202
303–260–7712
Fax: 303–260–7714
Email: allison.angel@akerman.com
*TERMINATED: 02/24/2020*

**Ashley Elizabeth Calhoun**
Akerman LLP
1900 16th Street
Suite 1700
Denver, CO 80202
303–260–7712
Fax: 303–260–7714
Email: ashley.calhoun@akerman.com
*TERMINATED: 05/28/2020*
*ATTORNEY TO BE NOTICED*

**Carolyn Patrice Short**
Holland & Knight LLP
2929 Arch Street
Cira Center
Suite 800
Philadelphia, PA 19104
215–252–9553
Fax: 215–867–6070

Email: Carolyn.Short@hklaw.com
*TERMINATED: 08/01/2019*

**Charles A. Deacon**
Norton Rose Fulbright US LLP
111 West Houston Street
Suite 1800
San Antonio, TX 78205
210–270–7133
Fax: 210–270–7205
Email: charlie.deacon@nortonrosefulbright.com
*TERMINATED: 12/18/2018*

**Christopher John Eby**
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street
Suite 500
Denver, CO 80202
303–583–9919
Fax: 303–583–9999
Email: chris.eby@nelsonmullins.com
*TERMINATED: 12/03/2020*

**Colin Louis Barnacle**
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street
Suite 500
Denver, CO 80202
303–583–9918
Email: colin.barnacle@nelsonmullins.com
*TERMINATED: 12/03/2020*

**Dana L. Eismeier**
Burns Figa & Will PC
6400 South Fiddlers Green Circle
Plaza Tower One
Suite 1000
Greenwood Village, CO 80111
303–796–2626
Fax: 303–796–2777
Email: deismeier@bfwlaw.com
*ATTORNEY TO BE NOTICED*

**David R. DeMuro**
Vaughan & DeMuro
720 South Colorado Boulevard
North Tower, Penthouse
Denver, CO 80246
303–837–9200
Email: ddemuro@vaughandemuro.com
*TERMINATED: 10/26/2016*

**David G. Palmer**
Greenberg Traurig LLP
1144 15th Street
Suite 3300
Denver, CO 80202
303–572–6500
Fax: 303–572–6540
Email: palmerdg@gtlaw.com
*TERMINATED: 03/13/2019*

**Joseph Negron , Jr.**
The GEO Group
4955 Technology Way
Boca Raton, FL 33431
561–999–7535
Fax: 561–999–7647
Email: jnegron@geogroup.com
*ATTORNEY TO BE NOTICED*

**Mark Thomas Emery**
Norton Rose Fulbright US LLP
799 9th Street
Suite 1000
Washington, DC 20001–4501
202–662–0210
Fax: 202–662–4643
Email: mark.emery@nortonrosefulbright.com
*TERMINATED: 12/18/2018*

**Melissa Louise Cizmorris**
Akerman LLP
1900 16th Street
Suite 1700
Denver, CO 80202
303–260–7712
Fax: 303–260–7714
Email: melissa.cizmorris@akerman.com
*TERMINATED: 02/02/2022*

**Michael York Ley**
Burns Figa & Will PC
6400 South Fiddlers Green Circle
Plaza Tower One
Suite 1000
Greenwood Village, CO 80111
303–796–2626
Email: mley@bfwlaw.com
*ATTORNEY TO BE NOTICED*

**Naomi G. Beer**
Greenberg Traurig LLP
1144 15th Street

Suite 3300
Denver, CO 80202
303–572–6500
Fax: 572–6540
Email: beern@gtlaw.com
*TERMINATED: 03/13/2019*

**Patrick J. McCabe**
Holland & Knight LLP
2929 Arch Street
Cira Center
Suite 800
Philadelphia, PA 19104
215–252–9529
Fax: 215–867–6070
Email: Patrick.McCabe@hklaw.com
*TERMINATED: 08/01/2019*

**Shelby Anne Felton**
Denver City Attorney's Office
201 West Colfax Avenue
Denver, CO 80202–5332
720–913–3117
Email: shelby.felton@denvergov.org
*TERMINATED: 10/26/2016*

**Stacy Delayne Blank**
Holland & Knight LLP
100 North Tampa Street
Suite 4100
Tampa, FL 33602
813–227–8500
Fax: 813–229–0134
Email: stacy.blank@hklaw.com
*TERMINATED: 08/01/2019*

**Valerie Eifert Brown**
Holland & Knight LLP
2929 Arch Street
Cira Center
Suite 800
Philadelphia, PA 19104
215–252–9569
Fax: 215–867–6070
Email: valerie.brown@hklaw.com
*TERMINATED: 08/01/2019*

**Wayne Howard Calabrese**
The GEO Group
4955 Technology Way
Boca Raton, FL 33431
561–999–7362

Fax: 561–999–7647
Email: wcalabrese@geogroup.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

| | | |
|---|---|---|
| **U.S. Immigration and Customs Enforcement** | represented by | **Timothy Bart Jafek** |

U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0407
Email: timothy.jafek@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/22/2014 | 1 | | COMPLAINT *CLASS ACTION COMPLAINT FOR UNPAID WAGES AND FORCED LABOR* against The GEO Group, Inc. (Filing fee $ 400,Receipt Number 1082–4105561)Attorney Brandt Powers Milstein added to party Olga Alexaklina(pty:pla), Attorney Brandt Powers Milstein added to party Lourdes Argueta(pty:pla), Attorney Brandt Powers Milstein added to party Marcos Brambila(pty:pla), Attorney Brandt Powers Milstein added to party Jesus Gaytan(pty:pla), Attorney Brandt Powers Milstein added to party Hugo Hernandez(pty:pla), Attorney Brandt Powers Milstein added to party Alejandro Menocal(pty:pla), Attorney Brandt Powers Milstein added to party Demetrio Valerga(pty:pla), Attorney Brandt Powers Milstein added to party Dagoberto Vizguerra(pty:pla), Attorney Brandt Powers Milstein added to party Grisel Xahuentitla(pty:pla), filed by Jesus Gaytan, Grisel Xahuentitla, Olga Alexaklina, Demetrio Valerga, Marcos Brambila, Dagoberto Vizguerra, Hugo Hernandez, Alejandro Menocal, Lourdes Argueta. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Milstein, Brandt) (Entered: 10/22/2014) |
| 10/23/2014 | 2 | | Case assigned to Magistrate Judge Craig B. Shaffer. Text Only Entry. (jofox ) (Entered: 10/23/2014) |
| 10/23/2014 | 3 | | SUMMONS issued by Clerk. Magistrate Judge Consent Form issued pursuant to Magistrate Judge Pilot Project to Assign Civil Cases to Full Time Magistrate Judges. (Attachments: # 1 Magistrate Judge Consent Form) (jofox ) (Entered: 10/23/2014) |
| 10/23/2014 | 4 | | NOTICE of Entry of Appearance *as Counsel for Plaintiffs* by Robert Andrew Free on behalf of All Plaintiffs Attorney Robert Andrew Free added to party Olga Alexaklina(pty:pla), Attorney Robert Andrew Free added to party Lourdes Argueta(pty:pla), Attorney Robert Andrew Free added to party Marcos Brambila(pty:pla), Attorney Robert Andrew Free added to party Jesus Gaytan(pty:pla), Attorney Robert Andrew Free added to party Hugo Hernandez(pty:pla), Attorney Robert Andrew Free added to party Alejandro Menocal(pty:pla), Attorney Robert Andrew Free added to party Demetrio Valerga(pty:pla), Attorney Robert Andrew Free added to party Dagoberto Vizguerra(pty:pla), Attorney Robert Andrew Free added to party Grisel |

| | | | |
|---|---|---|---|
| | | | Xahuentitla(pty:pla) (Free, Robert) (Entered: 10/23/2014) |
| 10/28/2014 | 5 | | SUMMONS Returned Executed by All Plaintiffs. GEO Group, Inc., The served on 10/24/2014, answer due 11/14/2014. (Milstein, Brandt) (Entered: 10/28/2014) |
| 10/31/2014 | 6 | | NOTICE of Entry of Appearance by David R. DeMuro on behalf of GEO Group, Inc., TheAttorney David R. DeMuro added to party GEO Group, Inc., The(pty:dft) (DeMuro, David) (Entered: 10/31/2014) |
| 10/31/2014 | 7 | | MINUTE ORDER setting a Scheduling Conference on 12/19/2014 at 11:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. ORDERED that parties shall adhere to the deadlines and instructions as set forth in  Preparation for Rule 16(b) Scheduling Conference, located on the court's website under "Judicial Officers." Text Only Entry by Magistrate Judge Craig B. Shaffer on 10/31/14. (cbssec) (Entered: 10/31/2014) |
| 10/31/2014 | 8 | | NOTICE of Entry of Appearance by Shelby Anne Felton on behalf of GEO Group, Inc., TheAttorney Shelby Anne Felton added to party GEO Group, Inc., The(pty:dft) (Felton, Shelby) (Entered: 10/31/2014) |
| 11/14/2014 | 9 | | CONSENT to Jurisdiction of Magistrate Judge by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/14/2014) |
| 11/14/2014 | 10 | | CASE REASSIGNED pursuant to 9 Consent to Jurisdiction of Magistrate Judge. Consent not achieved. This case is reassigned to Judge John L. Kane. All future pleadings should be designated as 14–cv–02887–JLK–CBS. (Text Only Entry) (nmarb, ) (Entered: 11/14/2014) |
| 11/14/2014 | 11 | | MOTION to Dismiss by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A and B, # 2 Exhibit C and D)(Felton, Shelby) (Entered: 11/14/2014) |
| 11/17/2014 | 12 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION to Dismiss by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/17/2014) |
| 11/17/2014 | 13 | | MINUTE ORDER GRANTING Plaintiffs' Motion to Extend Deadline to Respond to Motion to Dismiss (Doc. 12), which is unopposed. ORDERED that the due date for Plaintiffs' response is extended fourteen days to and including December 19, 2014 by Judge John L. Kane on 11/17/14. Text Only Entry(jhawk, ) (Entered: 11/17/2014) |
| 11/21/2014 | 14 | | MINUTE ORDER vacating the 12/19/14 Scheduling Conference in light of this case being reassigned per doc. # 10 . Text Only Entry by Magistrate Judge Craig B. Shaffer on 11/21/14. (cbssec) (Entered: 11/21/2014) |
| 12/19/2014 | 15 | | RESPONSE to 11 MOTION to Dismiss filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Milstein, Brandt) (Entered: 12/19/2014) |

| 12/22/2014 | 16 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION to Dismiss by Defendant GEO Group, Inc., The. (Felton, Shelby) (Entered: 12/22/2014) |
| 12/23/2014 | 17 | | ORDER granting 16 Motion for Extension of Time to File Reply. Defendant has up to and including January 16, 2015, to file its reply in support of the Motion to Dismiss, by Judge John L. Kane on 12/23/14. Text Only Entry(jlksec) (Entered: 12/23/2014) |
| 01/16/2015 | 18 | | REPLY to Response to 11 MOTION to Dismiss filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit E, # 2 Exhibit F)(Felton, Shelby) (Entered: 01/16/2015) |
| 01/23/2015 | 19 | | Unopposed MOTION for Leave to *File Sur−reply to* 18 Reply to Response to Motion by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 01/23/2015) |
| 01/27/2015 | 20 | | ORDER granting 19 Motion for Leave. Plaintiffs shall file a sur−reply regarding Defendant's McNamara−O'Hara Service Contract Act and Government Contractor defense arguments no later than February 17, 2015, by Judge John L. Kane on 01/27/2015. (athom, ) (Entered: 01/27/2015) |
| 02/17/2015 | 21 | | SURREPLY re 11 MOTION to Dismiss filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit)(Milstein, Brandt) (Entered: 02/17/2015) |
| 03/20/2015 | 22 | | NOTICE of Change of Address/Contact Information by Alexander Neville Hood (Hood, Alexander) (Entered: 03/20/2015) |
| 07/06/2015 | 23 | | Memorandum Opinion and ORDER. Plaintiffs' CMWO claims are dismissed, and Defendant's motion is denied with respect to Plaintiffs' TVPA and unjust enrichment claims. Entered by Judge John L. Kane on 07/06/15.(jhawk, ) (Entered: 07/07/2015) |
| 07/10/2015 | 24 | | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for a Scheduling Conference at 11:00 a.m. on Tuesday, August 11, 2015, in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver. The parties shall prepare and file a Stipulated Scheduling and Discovery Order on or before Tuesday, August 4, 2015. See instructions for proper formatting of this order in Judge Kane's Pretrial and Trial Procedures Memorandum, available on the court's website at http://www.cod.uscourts.gov/Home.aspx (Select Judge Kane under "Judicial Officers," "Senior Article III Judges"). A form of order is also available on the website, and the parties' proposed Scheduling Order should follow the example provided, which is different from those used by magistrate and other judges of this court. Judge Kane requests that an editable version of the Stipulated Scheduling Order be emailed to chambers as well, at Kane_Chambers@cod.uscourts.gov.Counsel and pro se litigants shall read and strictly adhere to all instructions in the Judges Pretrial and Trial Procedures Memorandum. Particular attention is called to Part III, regarding motions for summary judgment. Entered by Judge John L. Kane on 07/10/15. Text Only |

| | | | Entry (jhawk, ) (Entered: 07/10/2015) |
|---|---|---|---|
| 07/15/2015 | 25 | | NOTICE of Entry of Appearance by Charles A. Deacon on behalf of GEO Group, Inc., TheAttorney Charles A. Deacon added to party GEO Group, Inc., The(pty:dft) (Deacon, Charles) (Entered: 07/15/2015) |
| 07/20/2015 | 26 | | ANSWER to 1 Complaint,,,, by GEO Group, Inc., The.(Felton, Shelby) (Entered: 07/20/2015) |
| 07/24/2015 | 27 | | NOTICE of Entry of Appearance by Mark Thomas Emery on behalf of GEO Group, Inc., TheAttorney Mark Thomas Emery added to party GEO Group, Inc., The(pty:dft) (Emery, Mark) (Entered: 07/24/2015) |
| 08/04/2015 | 28 | | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 08/04/2015) |
| 08/04/2015 | 29 | | MOTION for Reconsideration re 23 Order on Motion to Dismiss by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 08/04/2015) |
| 08/11/2015 | 30 | | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 8/11/2015. Scheduling Order NOT approved and signed. Court Reporter: Kara Spitler. (babia) (Entered: 08/11/2015) |
| 08/24/2015 | 31 | | MOTION to Strike 29 MOTION for Reconsideration re 23 Order on Motion to Dismiss by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 08/24/2015) |
| 08/24/2015 | 32 | | MOTION to Stay *PLAINTIFFS' RESPONSE DEADLINE TO DEFENDANT'S MOTION FOR RECONSIDERATION [DOC. 29] PENDING A DECISION ON PLAINTIFFS' MOTION TO STRIKE [DOC. 31]* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga. (Hood, Alexander) (Entered: 08/24/2015) |
| 08/26/2015 | 33 | | ORDER on Motion for Reconsideration. Defendant's Motion for Reconsideration 29 is DENIED, and Plaintiffs' Motion to Strike the Motion for Reconsideration 31 and Motion to Stay Plaintiffs' Response Deadline 32 are DENIED AS MOOT. Entered by Judge John L. Kane on 08/26/15.(jhawk, ) (Entered: 08/26/2015) |
| 08/31/2015 | 34 | | STIPULATION for Extension of Time *for Discovery Responses* by Defendant GEO Group, Inc., The. (Felton, Shelby) (Entered: 08/31/2015) |
| 09/03/2015 | 35 | | MINUTE ORDER. The parties are ORDERED to confer and jointly submit a proposed briefing schedule for the Plaintiffs' motion for class certification, as well as a proposed schedule for any discovery on class certification issues to be conducted in connection with that motion, on or before September 11, 2015. The Court will address the balance of the schedule in this case after resolution of Plaintiffs' class certification motion. Entered by Judge John L. Kane on 09/03/15. Text Only Entry (jhawk, ) (Entered: 09/04/2015) |
| 09/10/2015 | 36 | | |

| | | | Joint STATUS REPORT by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 09/10/2015) |
|---|---|---|---|
| 09/11/2015 | 37 | | MINUTE ORDER. Pursuant to the parties' Joint Status Report 36 , it is ORDERED that the parties shall have up to and including December 15, 2015 to complete discovery regarding class certification issues. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before January 11, 2016, Defendant's response will be filed on or before February 11, 2016, and Plaintiffs' reply will be filed on or before February 25, 2016. Entered by Judge John L. Kane on 09/11/15. Text Only Entry (jhawk, ) (Entered: 09/11/2015) |
| 09/22/2015 | 38 | | MOTION for Order to *Certifying an Interlocutory Appeal and*, MOTION to Stay *Litigation Pending Appeal* by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 09/22/2015) |
| 10/13/2015 | 39 | | RESPONSE to 38 MOTION for Order to *Certifying an Interlocutory Appeal and* MOTION to Stay *Litigation Pending Appeal* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Free, Robert) (Entered: 10/13/2015) |
| 10/21/2015 | 40 | | BRIEF in Support of 38 MOTION for Order to *Certifying an Interlocutory Appeal and* MOTION to Stay *Litigation Pending Appeal* filed by Defendant GEO Group, Inc., The. (Deacon, Charles) (Entered: 10/21/2015) |
| 11/13/2015 | 41 | | Unopposed MOTION for Extension of Time to *Complete Class Discovery and Class Certification Briefing* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 11/13/2015) |
| 11/16/2015 | 42 | | MINUTE ORDER. Plaintiffs' Unopposed Motion for Extension of Time 41 is GRANTED. It is ORDERED that the parties shall have up to and including January 26, 2016, to complete discovery regarding class certification issues. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before February 26, 2016; Defendant's response will be filed on or before March 21, 2016; and Plaintiffs' reply will be filed on or before April 7, 2016. Entered by Judge John L. Kane on 11/16/15. Text Only Entry(jhawk, ) (Entered: 11/16/2015) |
| 02/01/2016 | 43 | | NOTICE of Change of Address/Contact Information by Shelby Anne Felton (Felton, Shelby) (Entered: 02/01/2016) |
| 02/05/2016 | 44 | | Stipulated MOTION for Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Felton, Shelby) (Entered: 02/05/2016) |
| 02/08/2016 | 45 | | Stipulated Protective Order Concerning Confidential Information re: 44 . Signed by Judge John L. Kane on 02/28/16.(jhawk, ) (Entered: 02/08/2016) |
| 02/10/2016 | 46 | | Unopposed MOTION for Extension of Time to *COMPLETE CLASS DISCOVERY AND TO FILE A CLASS CERTIFICATION MOTION* by |

| | | | Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 02/10/2016) |
|------------|----|---|---------------------------------------------------------------------------------------------------------------------------------|
| 02/11/2016 | 47 | | MINUTE ORDER. Plaintiffs' Unopposed Motion to Extend Class Discovery and Class Certification Motion Deadline 46 is GRANTED. It is ORDERED that the parties shall have up to and including March 31, 2016, for the taking of a 30 (b)(6) deposition of the defendant. It is further ORDERED that Plaintiffs' Motion for Class Certification will be filed on or before May 6, 2016; Defendant's response will be filed on or before June 1, 2016; and Plaintiffs' reply will be filed on or before June 15, 2016. Entered by Judge John L. Kane on 02/11/16. Text Only Entry(jhawk, ) (Entered: 02/11/2016) |
| 03/17/2016 | 48 | | ORDER on Motion for Interlocutory Appeal. Defendant's Motion for an Interlocutory Appeal (Doc. 38 ) is DENIED and Defendant's request for a stay pending appeal is DENIED AS MOOT. By Judge John L. Kane on 03/17/2016. (athom, ) (Entered: 03/18/2016) |
| 05/06/2016 | 49 | | MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Ex. 3 – US DOL Wage Determination, # 2 Ex. 5 – Menocal Dec., # 3 Ex. 6 – Xahuentitla Dec., # 4 Ex. 7 – Argueta Dec., # 5 Ex. 8 – Gaytan Dec., # 6 Ex. 9 – Valerga Dec., # 7 Ex. 10 – Ortiz Dec., # 8 Ex. 11 – Hernandez Dec, # 9 Ex. 12 – Mendoza Dec, # 10 Ex. 17 – Plaintiffs' Counsel Decs.)(Hood, Alexander) (Entered: 05/06/2016) |
| 05/06/2016 | 50 | | UNRESTRICTED DOCUMENT – Level 1–Exhibits to Motion to Certify 49 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Ex. 1 – FRCP 30(b)(6) Dep. of Defendant (Dawn Ceja), # 2 Ex. 2 – Policy and Procedure Manual (#1), # 3 Ex. 4 – Detainee Handbook Local Supp., # 4 Ex. 13 – Policy & Procedure Manual (#2), # 5 Ex. 14 – FRCP 30(b)(6) Dep. of Defendant (Melody Jean Furst), # 6 Ex. 15 – Man Days Billing Report Nov. 2012, # 7 Ex. 16 – Detainee Grievances)(Hood, Alexander) Modified on 5/9/2016 to add text (jhawk, ). Modified on 5/23/2016 unrestricted as no motion to restrict was filed (jhawk, ). (Entered: 05/06/2016) |
| 06/01/2016 | 51 | | RESPONSE to 49 MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit ICE Aurora Detainee Handbook, # 2 Exhibit PBNDS, # 3 Exhibit ICE National Detainee Handbook, # 4 Exhibit Ceja Declaration, # 5 Exhibit Whyte Decision, # 6 Exhibit VWP Application)(Emery, Mark) (Entered: 06/01/2016) |
| 06/15/2016 | 52 | | REPLY to Response to 49 MOTION to Certify Class *UNDER RULE 23(b)(3) AND TO APPOINT CLASS COUNSEL UNDER RULE 23(g)* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 06/15/2016) |
| 10/26/2016 | 53 | | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (DeMuro, David) (Entered: 10/26/2016) |
| 10/26/2016 | 54 | | ORDER granting 53 Motion to Withdraw as Attorney. ORDERED that Attorneys Shelby A. Felton and David R. DeMuro, co–counsel of record for the defendant The Geo Group, Inc., are hereby withdrawn as counsel of record for The Geo Group, Inc. ORDERED that the electronic mail notifications to Shelby A. Felton and David R. DeMuro are terminated in this case. Signed by Judge John L. Kane on 10/26/16.(jhawk, ) (Entered: 10/26/2016) |
| 10/26/2016 | 55 | | NOTICE of Entry of Appearance by Dana L. Eismeier on behalf of GEO Group, Inc., TheAttorney Dana L. Eismeier added to party GEO Group, Inc., The(pty:dft) (Eismeier, Dana) (Entered: 10/26/2016) |
| 02/13/2017 | 56 | | NOTICE *of Firm Name Change* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Turner, Andrew) (Entered: 02/13/2017) |
| 02/27/2017 | 57 | | ORDER granting 49 Motion to Certify Class and Appointment of Class Counsel. The classes as proposed in the Motion are certified for Representatives' TVPA and unjust enrichment claims. Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerra, and Demetrio Valerga are named as representatives of the classes. Attorneys Brandt Milstein, Andrew Turner, Andrew Free, Alexander Hood, David Seligman, Andrew Schmidt, and Hans Meyer are appointed as counsel for the classes. To proceed with this case, the parties shall file a revised Proposed Stipulated Scheduling and Discovery Order by March 27, 2017. Signed by Judge John L. Kane on 02/27/17. (jhawk, ) (Entered: 02/27/2017) |
| 03/14/2017 | 58 | | USCA Letter Advising they have docketed permission to appeal pursuant to 28 U.S.C.1292(b) and Fed. R. App. P. 5. USCA Case No 17–701. (Attachments: # 1 Petition for Permission to Appeal Class Certification, # 2 A, # 3 B) (jhawk, ) (Entered: 03/15/2017) |
| 03/27/2017 | 59 | | Joint MOTION for Extension of Time to *File Proposed Stipulated Scheduling and Discovery Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 03/27/2017) |
| 03/28/2017 | 60 | | ORDER granting 59 Joint Motion for Extension of Time. The parties shall file a revised Proposed Stipulated Scheduling and Discovery Order by March 31, 2017. Ordered by Judge John L. Kane on 3/28/2017. Text Only Entry (jlksec) (Entered: 03/28/2017) |
| 03/31/2017 | 61 | | Proposed Scheduling Order *(Joint, Stipulated)* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Free, Robert) (Entered: 03/31/2017) |
| 04/05/2017 | 62 | | ORDER on Proposed Scheduling and Discovery Order 61 . The parties are directed to call in jointly at (303) 844–6118 on or before April 13, 2017, to set a date and time for the conference. The Proposed Order indicates that the |

| | | | |
|---|---|---|---|
| | | | parties' dispute the effect of the relevant Touhy regulations, 6 C.F.R. 5.41, et seq., on discovery proceedings in this case. Signed by Judge John L. Kane on 04/05/17. (jhawk, ) (Entered: 04/05/2017) |
| 04/11/2017 | 63 | | USCA Order. The clerk of this court is directed to open the new appeal once the clerk of the district court notifies this court that the filing fee has been paid. Id. at 5(d)(3). (USCA Case Number 17–701) (jhawk, ) (Entered: 04/12/2017) |
| 04/12/2017 | 64 | | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for an IN PERSON Scheduling Conference before Judge Kane at 11:00 a.m. on Wednesday, June 7, 2017, in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver. The court will discuss the Proposed Scheduling and Discovery Order (ECF No. 61) at the hearing. Ordered by Judge John L. Kane on 4/12/2017. Text Only Entry (jlksec) (Entered: 04/12/2017) |
| 04/14/2017 | 65 | | NOTICE OF APPEAL as to 57 Order on Motion to Certify Class, by Defendant GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 66 | | USCA Appeal Fees received $ 505, receipt number 79387; Full Payment re 65 Notice of Appeal filed by GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 67 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 65 Notice of Appeal filed by GEO Group, Inc., The to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record)(jhawk, ) (Entered: 04/14/2017) |
| 04/14/2017 | 68 | | USCA Case Number 17–1125 for 65 Notice of Appeal filed by GEO Group, Inc., The. (jhawk, ) (Entered: 04/14/2017) |
| 04/25/2017 | 69 | | MOTION to Stay *Proceedings Pending Rule 23(f) Review* by Defendant GEO Group, Inc., The. (Emery, Mark) (Entered: 04/25/2017) |
| 04/26/2017 | 70 | | TRANSCRIPT ORDER FORM re 65 Notice of Appeal by Defendant GEO Group, Inc., The (Emery, Mark) (Entered: 04/26/2017) |
| 04/26/2017 | 71 | | LETTER TO USCA and all counsel certifying the record is complete as to 65 Notice of Appeal filed by GEO Group, Inc., The. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 17–01125) Text Only Entry (jhawk, ) (Entered: 04/26/2017) |
| 04/26/2017 | 72 | | MOTION for Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A –– DOJ Letter, # 2 Exhibit B –– DOJ Letter, # 3 Exhibit C –– ICE Letter, # 4 Exhibit D –– ICE Letter)(Eismeier, Dana) (Entered: 04/26/2017) |
| 04/26/2017 | 73 | | MOTION to Compel by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Ex. A – Defendant's Disclosures, # 2 Ex. B – Disclosed Documents, # 3 Ex. C – Email from Opposing Counsel, # 4 Ex. D – Defendant's Touhy Correspondence, # 5 Ex. E – Defendant's Discovery Response, # 6 Ex. F – Supplemental Discovery Response)(Hood, Alexander) (Entered: 04/26/2017) |
| 05/10/2017 | 74 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE to 72 MOTION for Protective Order filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit)(Milstein, Brandt) (Entered: 05/10/2017) |
| 05/11/2017 | 75 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 73 MOTION to Compel by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A –– Response to Motion to Compel, # 2 Exhibit A to Response to Motion to Compel –– Spreadsheet from AUSA)(Eismeier, Dana) (Entered: 05/11/2017) |
| 05/12/2017 | 76 | | MINUTE ORDER GRANTING Doc. 75 , Defendant's Unopposed Motion for Permission to File Response out of Time. Doc. [75−1] is accepted as the Response to the Motion to Compel (Doc. 73 ) and Doc. [75−2] is accepted as Exhibit A to the Response to the Motion to Compel. Entered by Judge John L. Kane on 05/12/17. Text Only Entry (jhawk, ) (Entered: 05/12/2017) |
| 05/12/2017 | 77 | | RESPONSE to 73 MOTION to Compel filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(jhawk, ) (Entered: 05/12/2017) |
| 05/16/2017 | 78 | | BRIEF in Opposition to 69 MOTION to Stay *Proceedings Pending Rule 23(f) Review* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Seligman, David) (Entered: 05/16/2017) |
| 05/17/2017 | 79 | | REPLY to Response to 72 MOTION for Protective Order filed by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 05/17/2017) |
| 05/17/2017 | 80 | | REPLY to Response to 73 MOTION to Compel filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 05/17/2017) |
| 05/22/2017 | 81 | | Amicus Curiae Brief filed by Shane Cain (jhawk, ) (Entered: 05/22/2017) |
| 05/30/2017 | 82 | | REPLY to Response to 69 MOTION to Stay *Proceedings Pending Rule 23(f) Review* filed by Defendant GEO Group, Inc., The. (Emery, Mark) (Entered: 05/30/2017) |
| 06/06/2017 | 83 | | MOTION to Withdraw as Attorney *Substitute Counsel* by Defendant GEO Group, Inc., The. (Ley, Michael) (Entered: 06/06/2017) |
| 06/06/2017 | 84 | | ORDER Granting Plaintiffs' Motion to Compel 73 and Denying Defendant's Motion for Protective Order 72 . Signed by Judge John L. Kane on 06/06/17. (jhawk, ) (Entered: 06/06/2017) |
| 06/06/2017 | 85 | | ORDER Granting in Part and Denying in Part the GEO Group, Inc's Motion to Stay Proceedings Pending Rule 239F0 Review 69 . Specifically, discovery on the class action issues is STAYED, but discovery on the above enumerated issues relating to liability and merits issues shall proceed in accordance with Federal Rule of Civil Procedure 26. Noting GEOs objection to not having been consulted regarding Plaintiffs discovery proposal, the exact number of depositions, requests for production, and interrogatories to be permitted will be addressed at the upcoming scheduling conference on June 7, 2016, at 11 a.m. |

| | | | |
|---|---|---|---|
| | | | Signed by Judge John L. Kane on 06/06/17. (jhawk, ) (Entered: 06/06/2017) |
| 06/06/2017 | 86 | | MINUTE ORDER GRANTING Motion to Withdraw as Counsel (Doc. 83 ). Given that representation of Defendant will continue through Michael Y. Ley and Dana L. Eismeier of the same law firm, and Charles A. Deacon and Mark Emery of Norton Rose Fulbright US LLP, Attorney Erik Karl Schuessler is authorized to WITHDRAW as counsel. Mr. Schuessler SHALL be REMOVED from future electronic notifications in this case. Entered by Judge John L. Kane on 06/06/17. Text Only Entry (jhawk, ) (Entered: 06/06/2017) |
| 06/07/2017 | 87 | | NOTICE of Entry of Appearance by Juno E. Turner on behalf of All Plaintiffs Attorney Juno E. Turner added to party Olga Alexaklina(pty:pla), Attorney Juno E. Turner added to party Lourdes Argueta(pty:pla), Attorney Juno E. Turner added to party Marcos Brambila(pty:pla), Attorney Juno E. Turner added to party Jesus Gaytan(pty:pla), Attorney Juno E. Turner added to party Hugo Hernandez(pty:pla), Attorney Juno E. Turner added to party Alejandro Menocal(pty:pla), Attorney Juno E. Turner added to party Demetrio Valerga(pty:pla), Attorney Juno E. Turner added to party Dagoberto Vizguerra(pty:pla), Attorney Juno E. Turner added to party Grisel Xahuentitla(pty:pla) (Turner, Juno) (Entered: 06/07/2017) |
| 06/07/2017 | 88 | | MINUTE ORDER. Directing the parties to submit a revised Proposed Stipulated Scheduling Order on or before June 30, 2017. Entered by Judge John L. Kane on 06/07/17. (jhawk, ) (Entered: 06/07/2017) |
| 06/07/2017 | 89 | | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 6/7/2017. Scheduling Order NOT approved. Court Reporter: Julie Thomas. (babia) (Entered: 06/07/2017) |
| 06/08/2017 | 90 | | NOTICE of Entry of Appearance by P. David Lopez on behalf of All Plaintiffs (Lopez, P.) (Entered: 06/08/2017) |
| 06/14/2017 | 91 | | NOTICE of Entry of Appearance by Ashley Kathryn Boothby on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Ashley Kathryn Boothby added to party Olga Alexaklina(pty:pla), Attorney Ashley Kathryn Boothby added to party Lourdes Argueta(pty:pla), Attorney Ashley Kathryn Boothby added to party Marcos Brambila(pty:pla), Attorney Ashley Kathryn Boothby added to party Jesus Gaytan(pty:pla), Attorney Ashley Kathryn Boothby added to party Hugo Hernandez(pty:pla), Attorney Ashley Kathryn Boothby added to party Alejandro Menocal(pty:pla), Attorney Ashley Kathryn Boothby added to party Demetrio Valerga(pty:pla), Attorney Ashley Kathryn Boothby added to party Dagoberto Vizguerra(pty:pla), Attorney Ashley Kathryn Boothby added to party Grisel Xahuentitla(pty:pla) (Boothby, Ashley) (Entered: 06/14/2017) |
| 06/14/2017 | 92 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 91 Notice of Entry of Appearance, filed by attorneyAshleyK. Boothby. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (jhawk, ) (Entered: 06/15/2017) |
| 06/16/2017 | 93 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Entry of Appearance by Elizabeth V. Stork on behalf of All Plaintiffs Attorney Elizabeth V. Stork added to party Olga Alexaklina(pty:pla), Attorney Elizabeth V. Stork added to party Lourdes Argueta(pty:pla), Attorney Elizabeth V. Stork added to party Marcos Brambila(pty:pla), Attorney Elizabeth V. Stork added to party Jesus Gaytan(pty:pla), Attorney Elizabeth V. Stork added to party Hugo Hernandez(pty:pla), Attorney Elizabeth V. Stork added to party Alejandro Menocal(pty:pla), Attorney Elizabeth V. Stork added to party Demetrio Valerga(pty:pla), Attorney Elizabeth V. Stork added to party Dagoberto Vizguerra(pty:pla), Attorney Elizabeth V. Stork added to party Grisel Xahuentitla(pty:pla) (Stork, Elizabeth) (Entered: 06/16/2017) |
| 06/16/2017 | 94 | | NOTICE of Entry of Appearance by Ossai Miazad on behalf of All Plaintiffs Attorney Ossai Miazad added to party Olga Alexaklina(pty:pla), Attorney Ossai Miazad added to party Lourdes Argueta(pty:pla), Attorney Ossai Miazad added to party Marcos Brambila(pty:pla), Attorney Ossai Miazad added to party Jesus Gaytan(pty:pla), Attorney Ossai Miazad added to party Hugo Hernandez(pty:pla), Attorney Ossai Miazad added to party Alejandro Menocal(pty:pla), Attorney Ossai Miazad added to party Demetrio Valerga(pty:pla), Attorney Ossai Miazad added to party Dagoberto Vizguerra(pty:pla), Attorney Ossai Miazad added to party Grisel Xahuentitla(pty:pla) (Miazad, Ossai) (Entered: 06/16/2017) |
| 06/20/2017 | 95 | | TRANSCRIPT of SCHEDULING CONFERENCE held on 6/7/17 before Judge Kane. Pages: 1–8. <br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Thomas, Julie) (Entered: 06/20/2017) |
| 06/27/2017 | 96 | | **WITHDRAWN** NOTICE of Intent to Request Redaction by Michael York Ley re 95 Transcript,,, (Ley, Michael) Modified to show WITHDRAWN pursuant to ecf 102 on 7/13/2017 (cthom, ). (Entered: 06/27/2017) |
| 06/27/2017 | 97 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 96 Notice of Intent to Request Redaction filed by attorney Dana L. Eismeier. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (cthom, ) (Entered: 06/28/2017) |
| 06/30/2017 | 98 | | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Hood, Alexander) (Entered: 06/30/2017) |

| 07/11/2017 | 99 | | MOTION to Withdraw *Notice of Intent to Request Redaction* by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 07/11/2017) |
|---|---|---|---|
| 07/13/2017 | 100 | | Joint MOTION for Extension of Time to *submit Stipulated and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 07/13/2017) |
| 07/13/2017 | 101 | | ORDER granting 100 Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before July 28, 2017. Ordered by Judge John L. Kane on 7/13/2017. Text Only Entry (jlksec) (Entered: 07/13/2017) |
| 07/13/2017 | 102 | | ORDER granting 99 Motion to Withdraw Notice of Intent to Request Redaction. The Notice of Intent to Request Redaction 96 is withdrawn. Ordered by Judge John L. Kane on 7/13/2017. Text Only Entry (jlksec) (Entered: 07/13/2017) |
| 07/14/2017 | 103 | | SCHEDULING AND DISCOVERY ORDER by Judge John L. Kane on 7/14/2017. (cthom, ) (Entered: 07/14/2017) |
| 07/28/2017 | 104 | | Second MOTION for Extension of Time to *File Proposed Stipulated Scheduling and Discovery Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 07/28/2017) |
| 07/28/2017 | 105 | | ORDER granting 104 Second Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before August 4, 2017. Ordered by Judge John L. Kane on 7/28/2017. Text Only Entry (jlksec) (Entered: 07/28/2017) |
| 08/04/2017 | 106 | | Third MOTION for Extension of Time to *submit Stipulated and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 08/04/2017) |
| 08/04/2017 | 107 | | ORDER granting 106 Third Joint Motion for Extension of Time. The parties will submit to the Court a stipulated ESI Protocol on or before August 18, 2017. Ordered by Judge John L. Kane on 8/4/2017. Text Only Entry (jlksec) (Entered: 08/04/2017) |
| 08/16/2017 | 108 | | STIPULATION *and Proposed Order Concerning Production of Electronically Stored Information* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 08/16/2017) |
| 08/22/2017 | 109 | | STIPULATION AND ORDER Concerning Production of Electronically Stored Information. ORDERED by Judge John L. Kane on 8/22/2017. (cthom, ) (Entered: 08/22/2017) |
| 09/21/2017 | 110 | | Joint MOTION for Order to *Entry of Stipulated Order regarding the Disclosure of Privileged Information* by Defendant GEO Group, Inc., The. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # <u>1</u> Proposed Order (PDF Only) [Proposed] Stipulated Order regarding the Disclosure of Privileged Information)(Eismeier, Dana) (Entered: 09/21/2017) |
| 09/21/2017 | 111 | | ORDER denying <u>110</u> Motion for Order. The parties Joint Motion for Entry of Stipulated Order Regarding the Disclosure of Privileged Information (ECF No. 110) is DENIED. A judicial act requires some basis, even under Federal Rule of Evidence 502(d). Here, the parties offer none. The motion may be re–filed with some justification for issuance of the order. Ordered by Judge John L. Kane on 9/21/2017. Text Only Entry (jlksec) (Entered: 09/21/2017) |
| 12/18/2017 | <u>112</u> | | Stipulated MOTION for Extension of Time to *Extend Discovery Cut–Off* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Stork, Elizabeth) (Entered: 12/18/2017) |
| 12/18/2017 | <u>113</u> | | ORDER Amending Scheduling and Discovery Order. IT IS HEREBY ORDERED the <u>112</u> Stipulated Motion and Proposed Order to Extend Discovery Cut–off is GRANTED and Plaintiffs shall respond to GEOs Second Set of Written Discovery on or before January 19, 2018. The discovery cut–off is extended to May 4, 2018. ORDERED by Judge John L. Kane on 12/18/2017. (cthom, ) (Entered: 12/19/2017) |
| 02/09/2018 | <u>114</u> | | USCA Opinion as to <u>65</u> Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17–1125) (This document is not the Mandate) (cthom, ) (Entered: 02/12/2018) |
| 02/09/2018 | <u>115</u> | | USCA Judgment as to <u>65</u> Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17–1125) (This document is not the Mandate) "We affirm the district court's certification of both classes. We grant theoutstanding motions for leave to file amicus briefs." (cthom, ) (Entered: 02/12/2018) |
| 02/12/2018 | 116 | | MINUTE ORDER In light of the opinion of the Tenth Circuit Court of Appeals, this case is referred to Magistrate Judge Hegarty for him to conduct such conferences and proceedings as he deems appropriate for purposes of settlement. The parties amended Proposed Stipulated Scheduling Order shall be filed on or before March 12, 2018. ORDERED by Judge John L. Kane on 2/12/2018. (cthom, ) (Entered: 02/13/2018) |
| 02/13/2018 | <u>117</u> | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 02/13/2018. Pursuant to the Order of Reference issued by the Honorable John L. Kane, ECF No. 116, on or before 2/16/2018, counsel for the parties shall first teleconference together, then call my chambers at (303) 844–4507 to schedule a Settlement Conference in this case. (mdave, ) (Entered: 02/13/2018) |
| 02/14/2018 | <u>118</u> | | NOTICE of Entry of Appearance by Rachel Williams Dempsey on behalf of All Plaintiffs Attorney Rachel Williams Dempsey added to party Olga Alexaklina(pty:pla), Attorney Rachel Williams Dempsey added to party Lourdes Argueta(pty:pla), Attorney Rachel Williams Dempsey added to party Marcos Brambila(pty:pla), Attorney Rachel Williams Dempsey added to party Jesus Gaytan(pty:pla), Attorney Rachel Williams Dempsey added to party Hugo Hernandez(pty:pla), Attorney Rachel Williams Dempsey added to party Alejandro Menocal(pty:pla), Attorney Rachel Williams Dempsey added to party Demetrio Valerga(pty:pla), Attorney Rachel Williams Dempsey added to party Dagoberto Vizguerra(pty:pla), Attorney Rachel Williams Dempsey |

| | | | added to party Grisel Xahuentitla(pty:pla) (Dempsey, Rachel) (Entered: 02/14/2018) |
|---|---|---|---|
| 02/16/2018 | 119 | | Unopposed MOTION to Withdraw as Attorney *of Record* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 02/16/2018) |
| 02/16/2018 | 120 | | ORDER granting 119 Unopposed Motion for Withdrawal of Appearance. Elizabeth V. Stork is withdrawn as counsel of record for the Plaintiffs in the above–captioned matter. The clerk is directed to remove Elizabeth V. Stork from the CM/ECF notification system in connection with this case. ORDERED by Judge John L. Kane on 2/16/2018. (cthom, ) (Entered: 02/16/2018) |
| 02/20/2018 | 121 | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 02/20/2018. Settlement Conference set for 5/2/2018 10:00 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (mdave, ) (Entered: 02/20/2018) |
| 03/05/2018 | 122 | | ORDER of USCA as to 65 Notice of Appeal filed by GEO Group, Inc., The. (USCA Case No. 17–1125) (cthom, ) (Entered: 03/06/2018) |
| 03/09/2018 | 123 | | Stipulated MOTION for Extension of Time to *File Amended Proposed Stipulated Scheduling Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 03/09/2018) |
| 03/09/2018 | 124 | | ORDER granting 123 Motion for Extension of Time to File Amended Proposed Stipulated Scheduling Order. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to June 1, 2018. Ordered by Judge John L. Kane on 3/9/2018. Text Only Entry (jlksec) (Entered: 03/09/2018) |
| 03/13/2018 | 125 | | MANDATE of USCA as to 115 USCA Order/Opinion/Judgment, 114 USCA Order/Opinion/Judgment, 65 Notice of Appeal filed by GEO Group, Inc., The : (USCA Case No. 17–1125) (cthom, ) (Entered: 03/13/2018) |
| 03/14/2018 | 126 | | Unopposed MOTION for Leave to *Excuse In–Person Attendance at the Settlement Conference* 121 Minute Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Milstein, Brandt) (Entered: 03/14/2018) |
| 03/16/2018 | 127 | | MINUTE ORDER granting 126 Plaintiffs Unopposed Motion to Excuse In–person Attendance at the Settlement Conference by Magistrate Judge Michael E. Hegarty on 03/16/2018. (mdave, ) (Entered: 03/16/2018) |
| 05/04/2018 | 128 | | MINUTE ENTRY FOR SETTLEMENT for proceedings held before Magistrate Judge Michael E. Hegarty: Settlement Conference was held on 5/2/2018 and no settlement was reached as to any claims in this action. (mdave, ) (Entered: 05/04/2018) |
| 05/15/2018 | 129 | | NOTICE of Change of Address/Contact Information *for Plaintiffs' Attorney Alexander Hood* by Alexander Neville Hood (Hood, Alexander) (Entered: |

| | | | |
|---|---|---|---|
| | | | 05/15/2018) |
| 05/15/2018 | 130 | | NOTICE of Change of Address/Contact Information *for Plaintiffs' Attorney David Seligman* by David Hollis Seligman (Seligman, David) (Entered: 05/15/2018) |
| 05/29/2018 | 131 | | NOTICE of Change of Address/Contact Information by Rachel Williams Dempsey (Dempsey, Rachel) (Entered: 05/29/2018) |
| 05/31/2018 | 132 | | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Monday, June 18, 2018. Ordered by Judge John L. Kane on 5/31/2018. Text Only Entry (jlksec) (Entered: 05/31/2018) |
| 06/11/2018 | 133 | | Letter from U.S. Supreme Court regarding Petition for Writ of Certiorari re 65 Notice of Appeal ; assigned Supreme Court No. 17–1648 ( Appeal No. 17–1125) (cthom, ) (Entered: 06/11/2018) |
| 06/18/2018 | 134 | | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Monday, July 23, 2018. Ordered by Judge John L. Kane on 6/18/2018. Text Only Entry (jlksec) (Entered: 06/18/2018) |
| 07/23/2018 | 135 | | MINUTE ORDER. The deadline to file an Amended Proposed Stipulated Scheduling Order is extended to Wednesday, August 22, 2018. Ordered by Judge John L. Kane on 7/23/2018. Text Only Entry (jlksec) (Entered: 07/23/2018) |
| 08/08/2018 | 136 | | NOTICE of Change of Address/Contact Information by Andrew Hess Turner (Turner, Andrew) (Entered: 08/08/2018) |
| 08/16/2018 | 137 | | MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty. Settlement Conference held on 8/16/2018. FTR: Hegarty (A501). (tsher, ) (Entered: 08/16/2018) |
| 08/20/2018 | 138 | | NOTICE of Entry of Appearance by Elizabeth V. Stork on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Stork, Elizabeth) (Entered: 08/20/2018) |
| 08/22/2018 | 139 | | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit B)(Turner, Juno) (Entered: 08/22/2018) |
| 08/24/2018 | 140 | | NOTICE of Entry of Appearance *for Naomi Beer* by Naomi G. Beer on behalf of GEO Group, Inc., TheAttorney Naomi G. Beer added to party GEO Group, Inc., The(pty:dft) (Beer, Naomi) (Entered: 08/24/2018) |
| 08/24/2018 | 141 | | NOTICE of Entry of Appearance *for David G. Palmer* by David G. Palmer on behalf of GEO Group, Inc., TheAttorney David G. Palmer added to party GEO Group, Inc., The(pty:dft) (Palmer, David) (Entered: 08/24/2018) |
| 08/29/2018 | 142 | | MINUTE ORDER. After reviewing the Amended Proposed Stipulated Scheduling Order, I would like to set a Scheduling Conference. Counsel are instructed to call chambers JOINTLY on or before September 12, 2018, to set a date and time for the conference – 303–844–6118. The parties are instructed to refile the Proposed Scheduling Order incorporating Exhibit A dates directly |

| | | into the order. Ordered by Judge John L. Kane on 8/29/2018. Text Only Entry (jlksec) (Entered: 08/29/2018) |
|---|---|---|
| 08/30/2018 | 143 | BRIEF *in Support of Defendant's Request for Depositions of Absent Class Members* by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A (Roberts Decision), # 2 Exhibit B (Hayter Declaration))(Eismeier, Dana) (Entered: 08/30/2018) |
| 08/30/2018 | 144 | MOTION for Discovery *Order re Plaintiffs' Opposition to Defendants' Request for Depositions of Absent Class Members* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Juno Turner, # 2 Exhibit A, # 3 Exhibit B, # 4 Certificate of Service)(Turner, Juno) (Entered: 08/30/2018) |
| 09/06/2018 | 145 | MINUTE ORDER SETTING SCHEDULING CONFERENCE. This case is set for a Scheduling Conference at 10:30 a.m. on Wednesday, October 3, 2018, before Judge John L. Kane in Courtroom A802 on the 8th floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. Parties wishing to listen in telephonically may call chambers JOINTLY immediately prior to the hearing and the call will be transferred to the courtroom – 303–844–6118. Ordered by Judge John L. Kane on 9/6/2018. Text Only Entry (jlksec) (Entered: 09/06/2018) |
| 09/11/2018 | 146 | Proposed Scheduling Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Turner, Juno) (Entered: 09/11/2018) |
| 09/18/2018 | 147 | ORDER denying Defendant's 143 Request to Depose Absent Class Members. ORDERED by Judge John L. Kane on 9/18/2018. (cthom, ) (Entered: 09/18/2018) |
| 10/01/2018 | 148 | Letter from U.S. Supreme Court regarding Petition for Writ of Certiorari re 65 Notice of Appeal ; assigned Supreme Court No. 17–1648 ( Appeal No. 17–1125) "The petition for a writ of certiorari is denied." (cthom, ) (Entered: 10/02/2018) |
| 10/03/2018 | 149 | AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER Stipulated Protective Order due on or before October 31, 2018. The parties' proposed notice and plan for notice to the class shall be submitted on or before October 31, 2018 Deadline to Amend Pleadings: November 19, 2018. Discovery Cut–off: August 21, 2019. Expert disclosures: October 7, 2019. Rebuttal experts: November 22, 2019. Dispositive Motion Deadline: March 6, 2020. by Judge John L. Kane on 10/3/2018. (cthom, ) Modified to add dates on 10/3/2018 (cthom, ). (Entered: 10/03/2018) |
| 10/03/2018 | 150 | MINUTE ENTRY for Scheduling Conference proceedings held before Judge John L. Kane on 10/3/2018. Scheduling Order approved and signed. Court Reporter: Terri Lindblom. (babia) (Entered: 10/03/2018) |
| 10/31/2018 | 151 | Joint STATUS REPORT *and Stipulated Motion for Brief Extension* by Defendant GEO Group, Inc., The. (Beer, Naomi) Modified to add motion event on 11/1/2018 (cthom, ). (Entered: 10/31/2018) |

| 11/01/2018 | 152 | | ORDER granting 151 Joint Status Report and Stipulated Motion for Brief Extension. The parties shall submit a proposed Rule 502(b) Order and a revised Protective Order on or before November 20, 2018. The deadline to submit a proposed Notice Plan is extended such that the Notice Plan is due two weeks after the Court has approved a revised Protective Order. Ordered by Judge John L. Kane on 11/1/2018. Text Only Entry (jlksec) (Entered: 11/01/2018) |
| 11/12/2018 | 153 | | NOTICE of Entry of Appearance by Adam Levin Koshkin on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Adam Levin Koshkin added to party Olga Alexaklina(pty:pla), Attorney Adam Levin Koshkin added to party Lourdes Argueta(pty:pla), Attorney Adam Levin Koshkin added to party Marcos Brambila(pty:pla), Attorney Adam Levin Koshkin added to party Jesus Gaytan(pty:pla), Attorney Adam Levin Koshkin added to party Hugo Hernandez(pty:pla), Attorney Adam Levin Koshkin added to party Alejandro Menocal(pty:pla), Attorney Adam Levin Koshkin added to party Demetrio Valerga(pty:pla), Attorney Adam Levin Koshkin added to party Dagoberto Vizguerra(pty:pla), Attorney Adam Levin Koshkin added to party Grisel Xahuentitla(pty:pla) (Koshkin, Adam) (Entered: 11/12/2018) |
| 11/20/2018 | 154 | | AMENDED Joint Motion for Entry of Stipulated Order Regarding the Disclosure of Privileged Information Pursuant to FRE 502(d) by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(Beer, Naomi) Modified to correct title and add motion event on 11/21/2018 (cthom, ). (Entered: 11/20/2018) |
| 11/20/2018 | 155 | | Stipulated Motion for Entry of Proposed Amended Protective Order by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit Amended Stipulated Protective Order Concerning Confidential Information)(Beer, Naomi) Modified to correct title and add motion event on 11/21/2018 (cthom, ). (Entered: 11/20/2018) |
| 11/26/2018 | 156 | | STIPULATED ORDER Regarding the Disclosure of Privileged Information by Judge John L. Kane on 11/26/2018. (cthom, ) (Entered: 11/26/2018) |
| 11/26/2018 | 157 | | AMENDED STIPULATED PROTECTIVE ORDER Concerning Confidential Information. ORDERED by Judge John L. Kane on 11/26/2018. (cthom, ) (Entered: 11/26/2018) |
| 12/10/2018 | 158 | | Joint MOTION for Extension of Time to *submit a proposed Notice Plan* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 12/10/2018) |
| 12/11/2018 | 159 | | ORDER granting 158 Motion for Extension of Time. The deadline to submit a proposed Notice Plan is extended to January 11, 2019. Ordered by Judge John L. Kane on 12/11/2018. Text Only Entry (jlksec) (Entered: 12/11/2018) |
| 12/17/2018 | 160 | | Unopposed MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Deacon, Charles) (Entered: 12/17/2018) |
| 12/18/2018 | 161 | | |

| | | | |
|---|---|---|---|
| | | | ORDER granting 160 Unopposed Motion to Withdraw as Attorney. Charles A. Deacon and Mark Emery of the firm of Norton Rose Fulbright US LLP are withdrawn as counsel of record for the Defendant. ORDERED by Judge John L. Kane on 12/18/2018. (cthom, ) (Entered: 12/18/2018) |
| 01/11/2019 | 162 | | Joint MOTION for Issuance *of Plaintiffs' Class Notice Distribution Plan* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A – Class Notice, # 2 Exhibit B – Sample Radio Advertisement Script, # 3 Exhibit C – Sample Online Advertisement Text, # 4 Exhibit D – Proposed Press Release)(Turner, Juno) (Entered: 01/11/2019) |
| 01/14/2019 | 163 | | ORDER Approving Plaintiffs' Class Notice Plan by Judge John L. Kane on 1/14/2019. (Attachments: # 1 Class Notice, # 2 Radio Advertisement Script, # 3 Online Advertisement Text, # 4 Press Release)(cthom, ) (Entered: 01/14/2019) |
| 03/12/2019 | 164 | | NOTICE of Entry of Appearance by Valerie Eifert Brown on behalf of GEO Group, Inc., TheAttorney Valerie Eifert Brown added to party GEO Group, Inc., The(pty:dft) (Brown, Valerie) (Entered: 03/12/2019) |
| 03/12/2019 | 165 | | MOTION to Withdraw as Attorney *of Record* by Defendant GEO Group, Inc., The. (Beer, Naomi) (Entered: 03/12/2019) |
| 03/13/2019 | 166 | | ORDER granting 165 Motion to Withdraw as Attorney. David G. Palmer and Naomi G. Beer of the firm of Greenberg Traurig, LLP are withdrawn as counsel of record for the Defendant in the above–captioned matter. Scott A. Schipma is not an attorney of record in the case. ORDERED by Judge John L. Kane on 3/13/2019. (cthom, ) (Entered: 03/13/2019) |
| 03/14/2019 | 167 | | NOTICE of Entry of Appearance by Carolyn Patrice Short on behalf of GEO Group, Inc., TheAttorney Carolyn Patrice Short added to party GEO Group, Inc., The(pty:dft) (Short, Carolyn) (Entered: 03/14/2019) |
| 03/18/2019 | 168 | | **WITHDRAWN** MOTION to Compel by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Juno Turner, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit O)(Turner, Juno) Modified to show withdrawn pursuant to 175 Order on 4/3/2019 (cthom, ). (Entered: 03/18/2019) |
| 03/18/2019 | 169 | | (RESTRICTED DOCUMENT – Level 1) Exhibits by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit N)(Turner, Juno) Modified to add title on 3/19/2019 (cthom, ). (Entered: 03/18/2019) |
| 03/20/2019 | 170 | | MINUTE ORDER re: 168 Defendant is DIRECTED to file a Response to Plaintiffs' Motion to Compel on or before April 2, 2019. Additionally, the parties are DIRECTED to call chambers JOINTLY at (303) 844–6118 on or before March 26, 2019, to set a date and time for a hearing on the motion. Available dates for the hearing are April 8th, 9th, or 11th. In–person |

| | | | |
|---|---|---|---|
| | | | attendance by at least one attorney for each side is required. Ordered by Judge John L. Kane on 3/20/2019. Text Only Entry (jlksec) (Entered: 03/20/2019) |
| 03/22/2019 | 171 | | MINUTE ORDER re: 168 MOTION to Compel. A Motion Hearing is set for Tuesday, April 9, 2019, at 10:30 AM before Judge John L. Kane in Courtroom A802 of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. Ordered by Judge John L. Kane on 3/22/2019. Text Only Entry (jlksec) (Entered: 03/22/2019) |
| 04/01/2019 | 172 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 04/01/2019) |
| 04/02/2019 | 173 | | ORDER granting 172 Motion for Leave to Restrict. ORDERED by Judge John L. Kane on 4/2/2019. (cthom, ) (Entered: 04/02/2019) |
| 04/02/2019 | 174 | | STIPULATION re 168 MOTION to Compel by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 04/02/2019) |
| 04/03/2019 | 175 | | ORDER Regarding Plaintiffs' 168 Motion to Compel and 174 Stipulation of Plaintiffs' Motion to Compel Discovery. The 174 Stipulation is construed as a Motion to Withdraw the 168 Motion to Compel and is GRANTED. Plaintiffs' Motion to Compel is WITHDRAWN without prejudice to refile, and the Motion Hearing set for April 9, 2019, at 10:30 a.m. is VACATED. ORDERED by Judge John L. Kane on 4/3/2019. (cthom, ) (Entered: 04/03/2019) |
| 04/04/2019 | 176 | | NOTICE of Entry of Appearance by Stacy Delayne Blank on behalf of GEO Group, Inc., TheAttorney Stacy Delayne Blank added to party GEO Group, Inc., The(pty:dft) (Blank, Stacy) (Entered: 04/04/2019) |
| 04/26/2019 | 177 | | MOTION to Withdraw *Affirmative Defense No. 20* by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 04/26/2019) |
| 04/29/2019 | 178 | | ORDER granting 177 Unopposed Motion to Withdraw an Affirmative Defense Stated in Defendant's Answer. ORDERED by Judge John L. Kane on 4/29/2019.(cthom, ) (Entered: 04/29/2019) |
| 05/16/2019 | 179 | | NOTICE of Change of Address/Contact Information *and Change of Firm* by Juno E. Turner (Turner, Juno) (Entered: 05/16/2019) |
| 05/30/2019 | 180 | | NOTICE of Entry of Appearance by Michael J. Scimone on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Michael J. Scimone added to party Olga Alexaklina(pty:pla), Attorney Michael J. Scimone added to party Lourdes Argueta(pty:pla), Attorney Michael J. Scimone added to party Marcos Brambila(pty:pla), Attorney Michael J. Scimone added to party Jesus Gaytan(pty:pla), Attorney Michael J. Scimone added to party Hugo Hernandez(pty:pla), Attorney Michael J. Scimone added to party Alejandro Menocal(pty:pla), Attorney Michael J. Scimone added to party Demetrio Valerga(pty:pla), Attorney Michael J. Scimone added to party Dagoberto Vizguerra(pty:pla), Attorney Michael J. Scimone added to party Grisel Xahuentitla(pty:pla) (Scimone, Michael) (Entered: 05/30/2019) |
| 05/30/2019 | 181 | | MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, |

| | | | |
|---|---|---|---|
| | | | Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Michael Scimone, # 2 Affidavit of Alexander Hood, # 3 Index of Exhibits, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P, # 20 Exhibit Q, # 21 Exhibit R, # 22 Proposed Order (PDF Only))(Scimone, Michael) (Entered: 05/30/2019) |
| 06/11/2019 | 182 | | NOTICE of Entry of Appearance by Patrick J. McCabe on behalf of GEO Group, Inc., TheAttorney Patrick J. McCabe added to party GEO Group, Inc., The(pty:dft) (McCabe, Patrick) (Entered: 06/11/2019) |
| 06/13/2019 | 183 | | MOTION to Withdraw as Attorney *Ashley K. Boothby* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 06/13/2019) |
| 06/14/2019 | 184 | | ORDER granting 183 Motion to Withdraw as Attorney Ashley Kathryn Boothby. ORDERED by Judge John L. Kane on 6/14/2019.(cthom, ) (Entered: 06/14/2019) |
| 06/18/2019 | 185 | | Unopposed MOTION to Amend/Correct/Modify 163 Order on Motion for Issuance by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only), # 2 Affidavit of Michael Scimone, # 3 Affidavit of Anna Joseph, # 4 Affidavit of Nicole Ramos, # 5 Affidavit of Nan Schivone, # 6 Affidavit of Scott Simpson)(Scimone, Michael) (Entered: 06/18/2019) |
| 06/20/2019 | 186 | | ORDER granting Plaintiffs' 185 Unopposed Motion to Amend Notice Plan. No later than July 22, 2019, Plaintiffs shall distribute notice to the class as ordered for a ninety (90) day period. ORDERED by Judge John L. Kane on 6/20/2019.(cthom, ) (Entered: 06/20/2019) |
| 06/20/2019 | 187 | | BRIEF in Opposition to 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Affidavit of Dawn Ceja, # 2 Affidavit of Valerie Brown, # 3 Exhibit Index of Exhibits, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit I)(Short, Carolyn) (Entered: 06/20/2019) |
| 06/20/2019 | 188 | | NOTICE of Filing of Exhibit by Defendant GEO Group, Inc., The. (Short, Carolyn) Modified to add text pursuant to 191 Order on 6/28/2019 (cthom, ). (Entered: 06/20/2019) |
| 06/20/2019 | 189 | | (RESTRICTED DOCUMENT – Level 1) Exhibit H to 187 Brief in Opposition by Defendant GEO Group, Inc., The.. (Short, Carolyn) Modified to add title on 6/21/2019 (cthom, ). (Entered: 06/20/2019) |
| 06/27/2019 | 190 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 06/27/2019) |
| 06/28/2019 | 191 | | ORDER Granting 190 Motion for Leave to Restrict and Directing the Clerk to terminate 188 Motion and modify the text to read "Notice of Filing of |

| | | | |
|---|---|---|---|
| | | | Exhibit." ORDERED by Judge John L. Kane on 6/28/2019.(cthom, ) (Entered: 06/28/2019) |
| 07/03/2019 | 192 | | REPLY to Response to 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Affidavit of Michael Scimone, # 2 Exhibit A, # 3 Exhibit B)(Scimone, Michael) (Entered: 07/03/2019) |
| 07/11/2019 | 193 | | MOTION for Leave to *File Surreply to* 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(Short, Carolyn) (Entered: 07/11/2019) |
| 07/11/2019 | 194 | | DECLARATION of *Valerie Brown* regarding MOTION for Leave to *File Surreply to* 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* 193 by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 07/11/2019) |
| 07/19/2019 | 195 | | Stipulated MOTION for Extension of Time to *Provide Class Notice* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 07/19/2019) |
| 07/19/2019 | 196 | | ORDER granting 195 Stipulated Motion to Extend the Notice Deadline. No later than August 21, 2019, Plaintiffs shall distribute notice to the class according to the 186 Class Notice Plan approved by the Court. ORDERED by Judge John L. Kane on 7/19/2019.(cthom, ) (Entered: 07/19/2019) |
| 07/29/2019 | 197 | | Joint MOTION to Extend Discovery Deadlines by Defendant GEO Group, Inc., The. (Short, Carolyn) Modified on 7/30/2019 to edit title. (sphil, ). (Entered: 07/29/2019) |
| 07/30/2019 | 198 | | ORDER granting 197 Joint Motion to Extend Discovery Deadlines. AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER. The Discovery Cut–off is extended to October 21, 2019; expert disclosures are due November 21, 2019; rebuttal experts disclosures due January 6, 2020; expert witness depositions due by February 7, 2020; and Dispositive Motion Deadline is extended to April 20, 2020. Ordered by Judge John L. Kane on 7/30/2019. Text Only Entry(jlksec) (Entered: 07/30/2019) |
| 08/01/2019 | 199 | | NOTICE of Entry of Appearance by Colin Louis Barnacle on behalf of GEO Group, Inc., TheAttorney Colin Louis Barnacle added to party GEO Group, Inc., The(pty:dft) (Barnacle, Colin) (Entered: 08/01/2019) |
| 08/01/2019 | 200 | | NOTICE of Entry of Appearance by Christopher John Eby on behalf of GEO Group, Inc., TheAttorney Christopher John Eby added to party GEO Group, Inc., The(pty:dft) (Eby, Christopher) (Entered: 08/01/2019) |
| 08/01/2019 | 201 | | NOTICE of Entry of Appearance by Ashley Elizabeth Calhoun on behalf of GEO Group, Inc., TheAttorney Ashley Elizabeth Calhoun added to party GEO Group, Inc., The(pty:dft) (Calhoun, Ashley) (Entered: 08/01/2019) |
| 08/01/2019 | 202 | | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Short, Carolyn) (Entered: 08/01/2019) |

| 08/01/2019 | 203 | | MINUTE ORDER. Pursuant to D.C.COLO.LAttyR 5(b), any attorney wanting to withdraw from a case who has already made an appearance must do so by filing a Motion to Withdraw as Counsel, electronically ("s/") signed, using his/her own ecf account. However, having received and reviewed Ms. Short's Motion to Withdraw Appearance 202 and under the circumstances presented, it is ORDERED that the Motion is GRANTED. Carolyn Short, Valerie Brown, Patrick McCabe and Stacy Blank of Holland & Knight LLP are authorized to WITHDRAW as counsel. They shall be removed from future electronic notifications in this case. ORDERED by Judge John L. Kane on 8/1/20109. Text Only Entry(sphil, ) (Entered: 08/01/2019) |
| 08/20/2019 | 204 | | Stipulated MOTION for Extension of Time to *Provide Class Notice* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Scimone, Michael) (Entered: 08/20/2019) |
| 08/20/2019 | 205 | | ORDER by Judge John L. Kane on 8/20/2019, re: 204 Plaintiffs' Stipulated Motion to Extend the Class Notice Deadline is GRANTED and ORDERS as follows: **No later than October 21, 2019**, Plaintiffs shall distribute notice to the class according to the Class Notice Plan approved by the Court (ECF No. 186). (sphil, ) (Entered: 08/20/2019) |
| 09/10/2019 | 206 | | Supplemental Brief in further support to 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection of Filing of Supplemental Brief in Further Support* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Affidavit of Michael Scimone, # 2 Exhibit A)(Scimone, Michael) Modified on 9/19/2019 to edit document title. (sphil, ). (Entered: 09/10/2019) |
| 09/24/2019 | 207 | | Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 09/24/2019) |
| 09/24/2019 | 208 | | DECLARATION of *Michael J. Scimone* regarding Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* 207 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Scimone, Michael) (Entered: 09/24/2019) |
| 09/24/2019 | 209 | | MINUTE ORDER by Judge John L. Kane on 9/24/2019. Upon review of Plaintiffs' Supplemental Brief in Further Support of Motion to Compel (Doc. 206) and Plaintiffs' Motion to Compel Production of Documents and Enforce this Courts Prior Order (Doc. 207), I find Responses from Defendant The GEO Group, Inc. are necessary. Consequently, GEO is **DIRECTED** to file a Supplemental Response to Plaintiffs' Supplemental Brief (Doc. 206) and a Response to Plaintiffs newest Motion to Compel (Doc. 207) **on or before October 1, 2019**. The expedited timeline is dictated by the impending depositions. Text Only Entry. (sphil, ) Modified on 9/24/2019 to edit text. (sphil, ). (Entered: 09/24/2019) |

| 10/01/2019 | 210 | RESPONSE to 206 Notice (Other), by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A – ICE Correspondence)(Barnacle, Colin) (Entered: 10/01/2019) |
|---|---|---|
| 10/01/2019 | 211 | RESPONSE to 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* filed by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 10/01/2019) |
| 10/02/2019 | 212 | REPLY to Response to 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order and Reply to Response to 206 Notice.* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 10/02/2019) |
| 10/02/2019 | 213 | DECLARATION of *Michael J. Scimone* regarding Reply to Response to Motion, 212 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 10/02/2019) |
| 10/02/2019 | 214 | AMENDED ORDER OF REFERENCE TO MAGISTRATE JUDGE. Pursuant to 28 U.S.C. §636(b) (1)(A) and (B) and Fed.R.Civ.P. 72(a), United States Magistrate Judge Michael Hegarty is designated to conduct proceedings in this civil action as follows: Conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause; Convene such settlement conferences and direct related procedures as may facilitate resolution of this case; Hear and determine pretrial matters, including discovery and other non–dispositive motions; Refer the case to a special master, if necessary, by Judge John L. Kane on 10/2/2019. (evana, ) (Entered: 10/02/2019) |
| 10/02/2019 | 215 | MEMORANDUM regarding 181 MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan, 207 Third MOTION to Compel *Production of Documents and Enforce This Courts Prior Order* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Marcos Brambila, Hugo Hernandez, Grisel Xahuentitla, Alejandro Menocal, Jesus Gaytan, 193 MOTION for Leave to *File Surreply to 181* MOTION to Compel *30(b)(6) Deposition and Videotaped Inspection* filed by GEO Group, Inc. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/2/2019. Text Only Entry (jlksec) (Entered: 10/02/2019) |
| 10/03/2019 | 216 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 10/3/2019 denying without prejudice 181 Motion to Compel 30(b)(6) Deposition and Videotaped Inspection and 207 Motion to Compel Production of Documents and Enforce This Courts Prior Order. 193 Motion for Leave to File Surreply is granted in part and denied in part. (tsher, ) (Entered: 10/03/2019) |
| 10/08/2019 | 217 | Stipulated MOTION for Extension of Time to *Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, |

| | | | Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 10/08/2019) |
|---|---|---|---|
| 10/08/2019 | 218 | | MEMORANDUM regarding 217 Stipulated MOTION for Extension of Time to *Complete Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/8/2019. Text Only Entry (jlksec) (Entered: 10/08/2019) |
| 10/09/2019 | 219 | | MINUTE ORDER granting 217 Motion to Extend Discovery Deadlines File by Magistrate Judge Michael E. Hegarty on 10/9/2019. Designation due by 12/23/2019. Discovery due by 11/21/2019. Designation of Rebuttal Experts due 2/6/2020(tsher, ) (Entered: 10/09/2019) |
| 10/11/2019 | 220 | | Joint STATUS REPORT by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 10/11/2019) |
| 10/15/2019 | 221 | | Set Hearing: Informal Discovery Conference set for 10/18/2019 10:30 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty pursuant to 216 Minute Order. Text Only Entry. (tsher, ) (Entered: 10/15/2019) |
| 10/16/2019 | 222 | | NOTICE of Entry of Appearance by Melissa Louise Cizmorris on behalf of GEO Group, Inc., TheAttorney Melissa Louise Cizmorris added to party GEO Group, Inc., The(pty:dft) (Cizmorris, Melissa) (Entered: 10/16/2019) |
| 10/16/2019 | 223 | | NOTICE of Entry of Appearance by Allison N. Angel on behalf of GEO Group, Inc., TheAttorney Allison N. Angel added to party GEO Group, Inc., The(pty:dft) (Angel, Allison) (Entered: 10/16/2019) |
| 10/17/2019 | 224 | | MOTION for Leave to Appear *Juno Turner* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Juno) (Entered: 10/17/2019) |
| 10/17/2019 | 225 | | MEMORANDUM regarding 224 MOTION for Leave to Appear *Juno Turner* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 10/17/2019. Text Only Entry (jlksec) (Entered: 10/17/2019) |
| 10/18/2019 | 226 | | ORDER granting 224 Unopposed Motion for Leave to Appear. Juno Turner of Towards Justice is permitted to join the discovery conference on October 18, 2019, by telephone and shall do so by calling Judge Hegarty's chambers at 303–844–4507 by 10:30 a.m. ORDERED by Magistrate Judge Michael E. Hegarty on 10/18/2019. Text Only Entry. (cthom, ) (Entered: 10/18/2019) |
| 10/18/2019 | 227 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 10/18/2019.FTR: A501. (cthom, ) (Entered: 10/18/2019) |
| 11/13/2019 | 228 | | STIPULATION *Regarding Depositions of Trial Witnesses* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 11/13/2019) |

| 12/06/2019 | 229 | | Stipulated MOTION for Extension of Time to *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 12/06/2019) |
|---|---|---|---|
| 12/09/2019 | 230 | | MEMORANDUM regarding 229 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty, by Judge John L. Kane on 12/9/2019. Text Only Entry (jlksec) (Entered: 12/09/2019) |
| 12/09/2019 | 231 | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 12/9/2019 granting 229 Stipulated Motion to Extend Expert Discovery Deadlines. Initial Expert Disclosures Deadline due 2/14/2020.Rebuttal Expert Disclosures Deadline due 3/30/2020.Expert Witness Depositions Deadline due 4/20/2020. (jgonz, ) (Entered: 12/09/2019) |
| 12/19/2019 | 232 | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 12/19/2019. Discovery Conference set for 1/21/2020 01:30 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 12/19/2019) |
| 12/31/2019 | 233 | | TRANSCRIPT of Discovery Conference held on October 18, 2019 before Magistrate Judge Hegarty. Pages: 1–99.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 12/31/2019) |
| 01/10/2020 | 234 | | Unopposed MOTION to Withdraw as Attorney by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Stork, Elizabeth) (Entered: 01/10/2020) |
| 01/13/2020 | 235 | | ORDER Granting 234 the Unopposed Motion for Withdrawal of Appearance of Elizabeth V. Stork. The Court hereby orders that Elizabeth V. Stork is withdrawn as counsel of record for the Plaintiffs in the above–captioned matter. Ms. Stork shall be removed from future electronic notifications in this case, by Judge John L. Kane on 1/10/2020.(evana, ) (Entered: 01/13/2020) |
| 01/21/2020 | 236 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 1/21/2020. FTR: A1002. (cthom, ) (Entered: 01/21/2020) |
| 02/04/2020 | 237 | | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 01/21/2020 before Magistrate Judge Hegarty. Pages: 1–38. Prepared by: AB Court Reporting & Video, Inc.. |

| | | | |
|---|---|---|---|
| | | | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 02/04/2020) |
| 02/10/2020 | 238 | | NOTICE of Entry of Appearance by Adrienne Scheffey on behalf of GEO Group, Inc., TheAttorney Adrienne Scheffey added to party GEO Group, Inc., The(pty:dft) (Scheffey, Adrienne) (Entered: 02/10/2020) |
| 02/11/2020 | 239 | | NOTICE of Entry of Appearance by Brianne Michelle Power on behalf of All Plaintiffs Attorney Brianne Michelle Power added to party Olga Alexaklina(pty:pla), Attorney Brianne Michelle Power added to party Lourdes Argueta(pty:pla), Attorney Brianne Michelle Power added to party Marcos Brambila(pty:pla), Attorney Brianne Michelle Power added to party Jesus Gaytan(pty:pla), Attorney Brianne Michelle Power added to party Hugo Hernandez(pty:pla), Attorney Brianne Michelle Power added to party Alejandro Menocal(pty:pla), Attorney Brianne Michelle Power added to party Demetrio Valerga(pty:pla), Attorney Brianne Michelle Power added to party Dagoberto Vizguerra(pty:pla), Attorney Brianne Michelle Power added to party Grisel Xahuentitla(pty:pla) (Power, Brianne) (Entered: 02/11/2020) |
| 02/13/2020 | 240 | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 2/13/2020. Discovery Conference set for 2/18/2020 01:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 02/13/2020) |
| 02/14/2020 | 241 | | Stipulated MOTION for Extension of Time *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 02/14/2020) |
| 02/14/2020 | 242 | | MEMORANDUM regarding 241 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 02/14/2020. Text Only Entry (jlksec) (Entered: 02/14/2020) |
| 02/18/2020 | 243 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 2/18/2020. 241 Stipulated MOTION for Extension of Time to Complete Expert Discovery is GRANTED. FTR: A501. (cthom, ) (Entered: 02/18/2020) |
| 02/24/2020 | 244 | | MOTION to Withdraw as Attorney *(Allison N. Angel)* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 02/24/2020) |
| 02/24/2020 | 245 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 244 MOTION for Withdrawal of Attorney |

| | | |
|---|---|---|
| | | Allison N. Angel filed by Attorney Colin Barnacle. The document is filed incorrectly. REFILE THE DOCUMENT. Action to take – The attorney Allison N. Angel must file a Motion to Withdraw on her own from this case, not another attorney from the same law firm.(Text Only Entry) (evana, ) (Entered: 02/24/2020) |
| 02/24/2020 | 246 | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Angel, Allison) (Entered: 02/24/2020) |
| 02/24/2020 | 247 | ORDER THIS MATTER comes before the Court on the Defendant's Motion for Withdrawal of Attorney Allison N. Angel (ECF No. 246 ). The Motion is GRANTED.The Court orders that Allison N. Angel shall be removed as counsel of record for Defendant and shall be removed from future electronic notifications in this case. The Motion filed on her behalf earlier today is MOOTED (ECF No. 244 ). Ms. Angel is advised to update her contact information through the Attorney Services Portal, by Judge John L. Kane on 2/24/2020.(evana, ) (Entered: 02/25/2020) |
| 03/10/2020 | 248 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 3/10/2020. Settlement Conference set for 3/31/2020 10:30 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 03/11/2020) |
| 03/18/2020 | 249 | Stipulated MOTION for Extension of Time to *File Dispositive Motions, Complete Discovery and Designate Experts* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 03/18/2020) |
| 03/18/2020 | 250 | ORDER Granting 249 Stipulated Motion for Extension of Deadlines. The Parties shall file dispositive motions on or before May 20, 2020; complete discovery by May 20, 2020; designate affirmative experts by April 20, 2020, and designate rebuttal experts by June 3, 2020. By Judge John L. Kane on 03/18/2020. (rvill, ) (Entered: 03/18/2020) |
| 03/24/2020 | 251 | Unopposed MOTION for Leave to *Excuse In−Person Appearance at Settlement Conference* 248 Minute Order by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 03/24/2020) |
| 03/24/2020 | 252 | MEMORANDUM regarding 251 Unopposed MOTION for Leave to *Excuse In−Person Appearance at Settlement Conference* 248 Minute Order filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 3/24/2020. Text Only Entry (jlksec) (Entered: 03/24/2020) |
| 03/26/2020 | 253 | MINUTE ORDER granting 251 Motion for Leave to Excuse In−Person Appearance at Settlement Conference, by Magistrate Judge Michael E. Hegarty on 3/26/2020.(tsher, ) (Entered: 03/26/2020) |
| 04/02/2020 | 254 | MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty: Settlement Conference held on 3/31/2020. (cthom, ) Modified to correct date on 4/3/2020 (cthom, ). (Entered: 04/03/2020) |

| 04/07/2020 | 255 | | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 4/7/2020. Status Conference set for 4/8/2020 02:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (tsher, ) (Entered: 04/07/2020) |
| 04/08/2020 | 256 | | Stipulated MOTION for Extension of Time to *Complete Expert Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 04/08/2020) |
| 04/08/2020 | 257 | | MEMORANDUM regarding 256 Stipulated MOTION for Extension of Time to *Complete Expert Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 4/8/2020. Text Only Entry (jlksec) (Entered: 04/08/2020) |
| 04/08/2020 | 258 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Status Conference held on 4/8/2020. FTR: A501. (cthom, ) (Entered: 04/08/2020) |
| 04/08/2020 | 259 | | MINUTE ORDER granting 256 Motion to Extend Expert Discovery Deadlines by Magistrate Judge Michael E. Hegarty on 4/8/2020. Designation of Affirmative Experts due 5/4/2020. Designation of Rebuttal Experts due 6/17/2020. (tsher, ) (Entered: 04/08/2020) |
| 04/29/2020 | 260 | | MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 04/29/2020) |
| 04/29/2020 | 261 | | DECLARATION of *Michael J. Scimone* regarding MOTION for Summary Judgment *as to Defendant's Affirmative Defense* 260 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit I, # 6 Exhibit J, # 7 Exhibit K, # 8 Exhibit L, # 9 Exhibit M, # 10 Exhibit N, # 11 Exhibit O, # 12 Exhibit P, # 13 Exhibit Q, # 14 Exhibit R, # 15 Exhibit S, # 16 Exhibit T, # 17 Exhibit W, # 18 Exhibit BB, # 19 Exhibit CC)(Scimone, Michael) (Entered: 04/29/2020) |
| 04/29/2020 | 262 | | RESTRICTED DOCUMENT – Level 1: EXHIBITS to the 261 Declaration of Michael J. Simone by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Index of Exhibits, # 2 Exhibit B, # 3 Exhibit B.1, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit U, # 9 Exhibit V, # 10 Exhibit X, # 11 Exhibit Y, # 12 Exhibit Z, # 13 Exhibit AA)(Scimone, Michael) (Modified on 4/30/2020 edited to add link to 261 and title of the documents)(evana, ). (Modified on 6/15/2020 Unrestricted as no motion for leave to restrict was filed)(evana). Modified on 10/19/2020 to Re–Restrict pursuant to the ]334] Order(evana, ). (Entered: 04/29/2020) |
| 05/14/2020 | 263 | | Stipulated MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* by Defendant GEO Group, Inc., The. (Barnacle, Colin) (Entered: 05/14/2020) |

| 05/14/2020 | 264 | | MEMORANDUM regarding 263 Stipulated MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* filed by The GEO Group, Inc. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 05/14/2020. Text Only Entry (jlksec) (Entered: 05/14/2020) |
|---|---|---|---|
| 05/15/2020 | 265 | | Joint MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Corrected Stipulation)(Scimone, Michael) (Entered: 05/15/2020) |
| 05/15/2020 | 266 | | MEMORANDUM regarding 265 Joint MOTION for Extension of Time to *File Dispositive Motions and Complete Discovery* filed by Lourdes Argueta, Demetrio Valerga, Dagoberto Vizguerra, Olga Alexaklina, Hugo Hernandez, Marcos Brambila, Alejandro Menocal, Grisel Xahuentitla, Jesus Gaytan. Motions referred to Magistrate Judge Michael E. Hegarty by Judge John L. Kane on 05/15/2020. Text Only Entry (jlksec) (Entered: 05/15/2020) |
| 05/18/2020 | 267 | | MINUTE ORDER, by Magistrate Judge Michael E. Hegarty on 5/18/2020. For good cause shown, the parties Corrected Stipulated Motion for Extension of Deadlines1 [filed May 15, 2020; ECF 265 ] is granted. The governing Amended Stipulated Scheduling and Discovery Order (ECF 198) is modified as follows:Fact/expert discovery cutoff: July 31, 2020 Dispositive motions deadline: July 31, 2020. In addition, Defendant shall file a response to Plaintiffs' pending motion for summary judgment on or before June 5, 2020, and Plaintiffs may file a reply in support of the motion on or before June 26, 2020. In light of this order, the original Stipulated Motion for Extension of Deadlines [filed May 14, 2020; ECF 263 ] is denied as moot. (apesa, ) (Entered: 05/18/2020) |
| 05/28/2020 | 268 | | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Calhoun, Ashley) (Entered: 05/28/2020) |
| 05/28/2020 | 269 | | ORDER Granting 268 Motion to Withdraw as Attorney. Attorney Ashley Elizabeth Calhoun shall be removed as counsel of record for Defendant, by Judge John L. Kane on 5/28/2020.(evana, ) (Entered: 05/28/2020) |
| 06/05/2020 | 270 | | RESPONSE to 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/05/2020) |
| 06/05/2020 | 271 | | DECLARATION of *Adrienne Scheffey* regarding Response to Motion 270 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit J, # 6 Exhibit K, # 7 Exhibit M, # 8 Exhibit N, # 9 Exhibit O, # 10 Exhibit P, # 11 Exhibit Q, # 12 Exhibit R)(Scheffey, Adrienne) (Entered: 06/05/2020) |
| 06/05/2020 | 272 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/05/2020) |
| 06/05/2020 | 273 | | RESTRICTED DOCUMENT – Level 1: Declaration of Adrienne Scheffey in Support of Defendant The GEO Group, Inc., 120 Response in Opposition to Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defense by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit E, # 2 Exhibit |

| | | | |
|---|---|---|---|
| | | | F, # <u>3</u> Exhibit G, # <u>4</u> Exhibit H, # <u>5</u> Exhibit I, # <u>6</u> Exhibit L)(Scheffey, Adrienne) (Modified on 6/8/2020 edited to add the name of the Document filed)(evana, ). (Entered: 06/05/2020) |
| 06/10/2020 | <u>274</u> | | Emergency MOTION for Writ of Habeas Corpus ad testificandum by Plaintiff Hugo Hernandez. (Attachments: # <u>1</u> Proposed Order (PDF Only) Granting Motion and Issuing Writ)(Free, Robert) (Entered: 06/10/2020) |
| 06/11/2020 | <u>275</u> | | ORDER Granting <u>274</u> Plaintiffs' Emergency Motion for Writ of Habeas Corpus Ad Testificandum to Produce Plaintiff Hugo Hernandez Ceren for Live Testimony Prior to Removal, by Judge John L. Kane on 6/11/2020.(evana, ) (Entered: 06/11/2020) |
| 06/11/2020 | <u>276</u> | | WRIT of Habeas Corpus Ad Testificandum issued. This Writ is issued upon Order of the United States District Court for the District of Colorado. I hereby command that you produce the material witness, detainee Hugo Hernandez Ceren, A–073–956–722, for live, videotaped deposition testimony prior to effectuating his removal from the United States to El Salvador. (evana, ) (Entered: 06/11/2020) |
| 06/15/2020 | <u>277</u> | | ORDER THIS MATTER, coming before the Court upon Defendant's Motion to Restrict (ECF No. <u>272</u> ), and being fully advised in the premises, IT IS HEREBY ORDERED that the Motion to Restrict (ECF No. <u>272</u> ) is GRANTED. The Clerk is hereby directed to place Exhibits E, F, G, H, I and L (ECF No. <u>273</u> ) under Restriction Level 1 pursuant toD.C.COLO.LCivR 7.2, limiting access thereto to the Parties and the Court, by Judge John L. Kane on 6/15/2020.(evana, ) (Entered: 06/15/2020) |
| 06/17/2020 | <u>278</u> | | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 02/18/2020 before Magistrate Judge Hegarty. Pages: 1–23. Prepared by: AB Litigation Services.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 06/17/2020) |
| 06/23/2020 | <u>279</u> | | Emergency MOTION to Amend/Correct/Modify <u>276</u> Writ Issued, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # <u>1</u> Exhibit Ex 1– Amd Notice of Deposition, # <u>2</u> Exhibit Ex 2 – Jafek Email)(Turner, Andrew) (Entered: 06/23/2020) |
| 06/23/2020 | <u>280</u> | | ORDER Granting <u>279</u> Plaintiffs' Emergency Motion to Amend Writ of Habeas Corpus Ad Testificandum. The Writ of Habeas Corpus Ad Testificandum issued June 11, 2020, commanding United States Immigration and Customs Enforcement (ICE), Acting ICE Director Matthew Albence, ICE Louisiana |

| | | | |
|---|---|---|---|
| | | | Field Office Director Diane Witte, and any other custodian of detainee and named Plaintiff in this case Hugo Hernandez Ceren, A 073–956–722, to produce him for live, remote, deposition testimony by videotape prior to effectuating his removal to El Salvador is AMENDED to require that Mr. Hernandez Ceren be permitted to give his testimony in court–appropriate civilian attire, specifically a coat, shirt, and tie, by Judge John L. Kane on 6/23/2020.(evana, ) (Entered: 06/23/2020) |
| 06/23/2020 | 281 | | MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* by Interested Party U.S. Immigration and Customs Enforcement. (Attachments: # 1 Reaves Decl., # 2 Lovett v. Cole decision)(Jafek, Timothy) (Entered: 06/23/2020) |
| 06/23/2020 | 282 | | RESPONSE to 281 MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Ex 1 – Jafek Email, # 2 Exhibit Ex 2 – Turner Email)(Turner, Andrew) (Entered: 06/23/2020) |
| 06/23/2020 | 283 | | ORDER Denying 281 ICE's Motion to Reconsider Amendment of the Writ of Habeas Corpus Ad Testificandum, by Judge John L. Kane on 6/23/2020.(evana, ) (Entered: 06/23/2020) |
| 06/25/2020 | 284 | | Cross MOTION for Summary Judgment by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 06/25/2020) |
| 06/25/2020 | 285 | | DECLARATION of *Adrienne Scheffey* regarding Cross MOTION for Summary Judgment 284 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A)(Scheffey, Adrienne) (Entered: 06/25/2020) |
| 06/26/2020 | 286 | | REPLY to Response to 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 06/26/2020) |
| 06/26/2020 | 287 | | DECLARATION of *Michael J. Scimone* regarding Reply to Response to Motion, 286 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17)(Scimone, Michael) (Entered: 06/26/2020) |
| 06/26/2020 | 288 | | Notice of Filing of Exhibit 1 to 287 the Declaration of Michael Scimone in Support of Plaintiffs' Reply in Support of Motion for Summary Judgment by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. **RESTRICTED (Attachments: # 1 Exhibit 1)**(Scimone, Michael) (Modified on 6/30/2020 edited to add the title of the document filed)(evana, ). Modified on 7/29/2020 to un–restrict as no motion to restrict was filed.(sphil, ). Modified on 7/29/2020 (sphil, ). (Modified on 10/19/2020 Re–Restricted pursuant to the 334 Order)(evana, ). (Entered: |

| | | | 06/26/2020) |
|---|---|---|---|
| 06/29/2020 | 289 | | NOTICE re 281 MOTION for Reconsideration re 280 Order on Motion to Amend/Correct/Modify,,, *and Response to ECF No. 279* by Interested Party U.S. Immigration and Customs Enforcement (Jafek, Timothy) (Entered: 06/29/2020) |
| 07/01/2020 | 290 | | NOTICE of Entry of Appearance by Matthew Fritz–Mauer on behalf of Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel XahuentitlaAttorney Matthew Fritz–Mauer added to party Olga Alexaklina(pty:pla), Attorney Matthew Fritz–Mauer added to party Lourdes Argueta(pty:pla), Attorney Matthew Fritz–Mauer added to party Marcos Brambila(pty:pla), Attorney Matthew Fritz–Mauer added to party Jesus Gaytan(pty:pla), Attorney Matthew Fritz–Mauer added to party Hugo Hernandez(pty:pla), Attorney Matthew Fritz–Mauer added to party Alejandro Menocal(pty:pla), Attorney Matthew Fritz–Mauer added to party Demetrio Valerga(pty:pla), Attorney Matthew Fritz–Mauer added to party Dagoberto Vizguerra(pty:pla), Attorney Matthew Fritz–Mauer added to party Grisel Xahuentitla(pty:pla) (Fritz–Mauer, Matthew) (Entered: 07/01/2020) |
| 07/08/2020 | 291 | | NOTICE of Supplemental Authorities re: 286 Reply to Response to Motion, 270 Response to Motion, 260 MOTION for Summary Judgment as to Defendant's Affirmative Defense by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A)(Barnacle, Colin) (Entered: 07/08/2020) |
| 07/13/2020 | 292 | | Stipulated MOTION for Extension of Time to *Complete Discovery* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/13/2020) |
| 07/13/2020 | 293 | | ORDER granting 292 Stipulated Motion for Extension of Deadlines. The fact/expert discovery cutoff deadline is extended to August 14, 2020; however, the parties may file discovery–related motions regarding third–party discovery from ICE. The Dispositive Motions deadline is extended to August 17, 2020. In addition, Plaintiffs' Response to GEO's Cross Motion for Summary Judgment 284 is due July 31, 2020, and the Reply, if any, is due August 21, 2020. Defendant shall file decertification motions on or before September 28, 2020. Ordered by Judge John L. Kane on 07/13/2020. Text Only Entry(jlksec) (Entered: 07/13/2020) |
| 07/24/2020 | 294 | | RESPONSE to 291 Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/24/2020) |
| 07/24/2020 | 295 | | DECLARATION of *Michael J. Scimone* regarding Response, 294 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/24/2020) |
| 07/24/2020 | 296 | | RESTRICTED DOCUMENT – Level 1: EXHIBIT to 295 Declaration of Michael J. Simone to 294 Plaintiff's Response by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel |

| | | | |
|---|---|---|---|
| | | | Xahuentitla.. (Attachments: # 1 Exhibit A)(Scimone, Michael) (Modified on 7/31/2020 edited to add the title of the document filed)(evana, ). (Entered: 07/24/2020) |
| 07/24/2020 | 297 | | NOTICE of Supplemental Authorities *Second Notice of Supplemental Authority* re: 294 Response, 270 Response to Motion, 291 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 07/24/2020) |
| 07/31/2020 | 298 | | RESPONSE to 284 Cross MOTION for Summary Judgment filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/31/2020) |
| 07/31/2020 | 299 | | DECLARATION of *Michael J. Scimone* regarding Response to Motion, 298 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 5)(Scimone, Michael) (Entered: 07/31/2020) |
| 07/31/2020 | 300 | | RESTRICTED DOCUMENT – Level 1: EXHIBIT to the 299 Declaration of Michael J. Simone by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 4)(Scimone, Michael) (Modified on 8/3/2020 edited to add the title of the document)(evana, ). (Entered: 07/31/2020) |
| 08/07/2020 | 301 | | MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 302 | | DECLARATION of *Michael J. Scimone* regarding MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* 301 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 303 | | DECLARATION of *Rachel Dempsey* regarding MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* 301 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 08/07/2020) |
| 08/07/2020 | 304 | | RESTRICTED DOCUMENT – Level 1: Notice of Filing EXHIBIT to the Declaration of Rachel Dempsey in Support of Plaintiff's Motion for Jury view 303 as Restricted Document. by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 1, Transcript of Video Deposition)(Scimone, Michael) (Modified on 8/10/2020 edited the text to add the title of the document filed)(evana, ). (Entered: 08/07/2020) |
| 08/17/2020 | 305 | | |

| | | | MOTION for Summary Judgment by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |
|---|---|---|---|
| 08/17/2020 | 306 | | DECLARATION of *Adrienne Scheffey* regarding MOTION for Summary Judgment 305 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit L, # 11 Exhibit M, # 12 Exhibit N, # 13 Exhibit O, # 14 Exhibit P, # 15 Exhibit Q)(Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 307 | | MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 308 | | DECLARATION of *Adrienne Scheffey* regarding MOTION to Dismiss *for Failure to Join Required Party* 307 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit F, # 4 Exhibit G, # 5 Exhibit H, # 6 Exhibit I)(Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 309 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/17/2020) |
| 08/17/2020 | 310 | | RESTRICTED DOCUMENT – Level 1: DECLARATION of Adrienne Scheffey by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit B, National Detainee Handbook # 2 Exhibit K Videotaped deposition of Stuart Grassian, M.D.)(Scheffey, Adrienne) (Modified on 8/18/2020 edited to add the titles of the documents)(evana, ). (Entered: 08/17/2020) |
| 08/17/2020 | 311 | | RESTRICTED DOCUMENT – Level 1: Declaration of Adrienne Scheffey by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit E)(Scheffey, Adrienne) Modified on 8/18/2020 (evana, ). (Entered: 08/17/2020) |
| 08/19/2020 | 312 | | MOTION for Order to *Decertify Class* by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/19/2020 | 313 | | DECLARATION of *Adrienne Scheffey* regarding MOTION for Order to *Decertify Class* 312 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit W, # 23 Exhibit X)(Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/19/2020 | 314 | | RESTRICTED DOCUMENT – Level 1: Declaration of Adrienne Scheffey in support of Defendant The Geo Group, Inc.'s Motion for Decertification of Class, by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit V)(Scheffey, Adrienne) (Modified on 8/20/2020 edited to add the title of the document)(evana, ). (Entered: 08/19/2020) |
| 08/19/2020 | 315 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/19/2020) |
| 08/21/2020 | 316 | | REPLY to Response to 284 Cross MOTION for Summary Judgment filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/21/2020) |

| 08/21/2020 | 317 | | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion 316 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K)(Scheffey, Adrienne) (Entered: 08/21/2020) |
|---|---|---|---|
| 08/21/2020 | 318 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/21/2020) |
| 08/21/2020 | 319 | | RESTRICTED DOCUMENT – Level 1: Declaration of Adrienne Scheffey in support of Defendant GEO Group, Inc's 316 Reply in Support of it's Cross Motion for Summary Judgment by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit C)(Scheffey, Adrienne) (Modified on 8/24/2020 edited to add the title of the document filed)(evana, ). (Entered: 08/21/2020) |
| 08/28/2020 | 320 | | ORDER Granting Defendant's Motions to Restrict (ECF No. 309 , 315 & 318 ). The Clerk is directed to place Exhibits B and K (ECF Nos. 310–1 and 310–2); Exhibits A, B and E (ECF Nos. 311–1, 311–2, 311–3); Exhibit V (ECF No. 314–1); and Exhibit C (ECF No. 319–1) under Restriction Level 1 pursuant to D.C.COLO.LCivR 7.2, limiting access thereto to the Parties and the Court, by Judge John L. Kane on 8/28/2020.(evana, ) (Entered: 08/28/2020) |
| 08/28/2020 | 321 | | MOTION for Extension of Time to File Response/Reply as to 312 MOTION for Order to *Decertify Class*, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Proposed Order (PDF Only))(Dempsey, Rachel) (Entered: 08/28/2020) |
| 08/28/2020 | 322 | | RESPONSE to 321 MOTION for Extension of Time to File Response/Reply as to 312 MOTION for Order to *Decertify Class*, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit 1 – Declaration of Adrienne Scheffey)(Scheffey, Adrienne) (Entered: 08/28/2020) |
| 08/28/2020 | 323 | | RESPONSE to 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* filed by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Scheffey, Adrienne) (Entered: 08/28/2020) |
| 08/28/2020 | 324 | | ORDER granting 321 Motion for Extension of Deadlines on Motion for Summary Judgement ECF No. 305 , Motion to Dismiss for Failure to Join Required Party ECF No. 307 , and Motion to Decertify Class ECF No. 312 . Responses to the Motions are due on or before October 25, 2020; Replies, if any, are due November 16, 2020. Ordered by Judge John L. Kane on 8/28/2020. Text Only Entry(jlksec) (Entered: 08/28/2020) |
| 09/11/2020 | 325 | | REPLY to Response to 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Turner, Andrew) (Entered: 09/11/2020) |

| 09/11/2020 | 326 | DECLARATION of *Andrew H Turner* regarding Reply to Response to Motion, 325 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit Ex A – Pl 2d Supl Resp to Def 6th Interrogatories, # 2 Exhibit Ex B – Dep Tscpt Grisel Xahuentitla, # 3 Exhibit Ex C – Dep Tscpt Jesus Yepez Gaytan, # 4 Exhibit Ex D – Dep Tscpt Demetrio Valerga, # 5 Exhibit Ex E – Dep Tscpt Alejandro Hernandez Torres, # 6 Exhibit Ex F – Decl of Martin M Rosenbluth)(Turner, Andrew) (Entered: 09/11/2020) |
| --- | --- | --- |
| 09/25/2020 | 327 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 25 September 2020. At the parties' request, the Court will hold a Discovery Conference in this case on Thursday, October 1, 2020 at 2:00 p.m. in Courtroom A501 on the fifth floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. In advance of the conference, the parties may each prepare a short statement identifying the nature of the dispute(s) and send the statements by email to hegarty_chambers@cod.uscourts.gov. These materials shall be submitted no later than noon on September 30, 2020. (cmadr, ) (Entered: 09/25/2020) |
| 10/01/2020 | 328 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Discovery Hearing held on 10/1/2020. FTR: A501. (cthom, ) (Entered: 10/01/2020) |
| 10/06/2020 | 329 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS held on 10/01/2020 before Magistrate Judge Hegarty. Pages: 1–51. Prepared by: AB Litigation Services.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 10/06/2020) |
| 10/13/2020 | 330 | Corrected TRANSCRIPT of DISCOVERY HEARING held on 10/01/2020 before Magistrate Judge Hegarty. Pages: 1–51. Prepared by: AB Litigation Services.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 10/13/2020) |

| 10/16/2020 | 331 | | NOTICE of Change of Address/Contact Information *for Towards Justice* by Juno E. Turner (Turner, Juno) (Entered: 10/16/2020) |
| 10/16/2020 | 332 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 331 Notice of Change of Address/Contact Information filed by attorney Juno Turner. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (evana, ) (Entered: 10/16/2020) |
| 10/16/2020 | 333 | | MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A – ICE Correspondence, # 2 Exhibit B – Docket, # 3 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 10/16/2020) |
| 10/19/2020 | 334 | | ORDER GRANTING Defendant The GEO Group, Inc.'s ("Defendant") Motion to Restrict (ECF No. 333 ) and being fully advised in the premises, hereby GRANTS the Motion. The Clerk is directed to impose Level 1 restriction on ECF Nos. 262−2, 262−3, 262−4, 262−5, 262−6, 261−9, 262−8, 262−9, 261−11, 261−12 and 288. The Court also GRANTS Level 1 restriction for ECF Nos. 296−1, 304, and 300−1 to the extent they have not already been restricted. The parties are reminded to review D.C. Colo.LCivR 72(e). Public Access to Documents and Proceedings. Filing Restricted Documents. A document subject to a motion to restrict shall be filed as a restricted document and shall be subject to restriction until the motion is determined by the court. If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain the restriction selected by the filer for 14 days. If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection, by Judge John L. Kane on 10/19/2020.(evana, ) (Entered: 10/19/2020) |
| 10/26/2020 | 335 | | NOTICE of Supplemental Authorities re: 297 Notice of Supplemental Authorities, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party*, 284 Cross MOTION for Summary Judgment , 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense*, 291 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 10/26/2020) |
| 10/26/2020 | 336 | | BRIEF in Opposition to 305 MOTION for Summary Judgment filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Declaration of Michael J. Scimone, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 27)(Scimone, Michael) (Entered: 10/26/2020) |
| 10/26/2020 | 337 | | RESTRICTED DOCUMENT – Level 1: Exhibits to the Declaration of Michael Scimone In Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (ECF No. 336 ) by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, |

| | | |
|---|---|---|
| | | Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 16, # 2 Exhibit 24, # 3 Exhibit 25, # 4 Exhibit 26)(Scimone, Michael)(Modified on 10/27/2020 edited the text to add the title of the document filed)(evana, ). (Entered: 10/26/2020) |
| 10/26/2020 | 338 | BRIEF in Opposition to 307 MOTION to Dismiss *for Failure to Join Required Party* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Declaration of Michael J. Scimone, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12)(Scimone, Michael) (Entered: 10/26/2020) |
| 10/26/2020 | 339 | BRIEF in Opposition to 312 MOTION for Order to *Decertify Class* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Declaration of Michael J. Scimone, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 13, # 13 Exhibit 15, # 14 Exhibit 16, # 15 Exhibit 17, # 16 Exhibit 18, # 17 Exhibit 19, # 18 Exhibit 20, # 19 Exhibit 21, # 20 Exhibit 22, # 21 Exhibit 23)(Scimone, Michael) (Entered: 10/26/2020) |
| 10/26/2020 | 340 | RESTRICTED DOCUMENT – Level 1: Exhibit to the Declaration of Michael J. Scimone in Support of Plaintiffs' Opposition to Defendant's Motion for Decertification (ECF No. 339 ) by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla.. (Attachments: # 1 Exhibit 11, # 2 Exhibit 12, # 3 Exhibit 14, # 4 Exhibit 24)(Scimone, Michael) (Modified on 10/27/2020 edited to add the title of the document filed)(evana, ). (Entered: 10/26/2020) |
| 10/28/2020 | 341 | MOTION for Leave to Restrict Exhibit documents filed at 337–2 by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A, # 2 Proposed Order (PDF Only))(Scimone, Michael) (Modified on 11/3/2020 edited to add link)(evana, ). (Entered: 10/28/2020) |
| 11/06/2020 | 342 | Unopposed MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 11/06/2020) |
| 11/09/2020 | 343 | ORDER The Court, having reviewed Defendant The GEO Group, Inc.'s Unopposed Motion to Restrict Exhibits to Plaintiffs' Opposition to GEO's Motion for Summary Judgment and Opposition to GEO's Motion for Decertification and having considered all arguments raised therein, hereby GRANTS the Motion. This Court shall impose Level 1 restriction on ECF Nos. 337–1 through 337–4 and 340–1 through 340–4, by Judge John L. Kane on 11/9/2020.(evana, ) (Entered: 11/09/2020) |
| 11/09/2020 | 344 | ORDER finding as moot 341 Motion for Leave to Restrict. Order 343 granted restriction to 337–2, by Judge John L. Kane on 11/09/20. Text Only |

| | | | Entry(jlksec) (Entered: 11/09/2020) |
|---|---|---|---|
| 11/10/2020 | 345 | | RESPONSE to 335 Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 11/10/2020) |
| 11/11/2020 | 346 | | Unopposed MOTION for Extension of Time to *File Replies*, Unopposed MOTION for Extension of Time to File Response/Reply as to 312 MOTION for Order to *Decertify Class*, 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 11/11/2020) |
| 11/12/2020 | 347 | | ORDER granting 346 Defendant The GEO Group, Inc.'s Unopposed Motion for Extension of Deadline to File Replies. GEO shall have through and including November 18, 2020, to file replies supporting its Motion for Summary Judgment 305 , Motion to Dismiss for Failure to Join Required Party 307 , and Motion for Decertification of Class 312 . Ordered by Judge John L. Kane on 11/12/20. Text Only Entry(jlksec) (Entered: 11/12/2020) |
| 11/18/2020 | 348 | | REPLY to Response to 307 MOTION to Dismiss *for Failure to Join Required Party* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 349 | | RESTRICTED DOCUMENT – Level 1: EXHIBIT J to 348 Motion to Dismiss for Failure to Join by Defendant GEO Group, Inc., The.. (Attachments: # 1 Exhibit J – Audit Correspondence)(Scheffey, Adrienne) (Modified on 11/19/2020 edited the title to add the name of the document filed)(evana, ). (Entered: 11/18/2020) |
| 11/18/2020 | 350 | | REPLY to Response to 305 MOTION for Summary Judgment filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 351 | | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion 350 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit R – Excerpts of Deposition of Hugo Hernandez Ceren, # 2 Exhibit S – Plaintiffs' Responses to GEO's First Set of Written Discovery Requests, # 3 Exhibit T – Exhibit 12 to Deposition of Hugo Hernandez Ceren)(Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 352 | | REPLY to Response to 312 MOTION for Order to *Decertify Class* filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/18/2020 | 353 | | DECLARATION of *Adrienne Scheffey* regarding Reply to Response to Motion 352 by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit Y – Excerpts of Deposition of Demetrio Valerga, # 2 Exhibit Z – Excerpts of Deposition of Dagoberto Vizguerra, # 3 Exhibit AA – Excerpts of Deposition of Grisel Xahuentitla, # 4 Exhibit BB – Excerpts of Deposition of Jesus Gayten)(Scheffey, Adrienne) (Entered: 11/18/2020) |
| 11/25/2020 | 354 | | NOTICE re 348 Reply to Response to Motion *to Dismiss for Failure to Join a Required Party* by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scheffey, Adrienne) (Entered: 11/25/2020) |

| 12/02/2020 | 355 | | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Barnacle, Colin) (Entered: 12/02/2020) |
| 12/02/2020 | 356 | | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Eby, Christopher) (Entered: 12/02/2020) |
| 12/02/2020 | 357 | | Unopposed MOTION for Leave to Restrict by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Scheffey, Adrienne) (Entered: 12/02/2020) |
| 12/03/2020 | 358 | | ORDER Granting 355 Motion to Withdraw as Attorney. Attorney Colin Louis Barnacle terminated as counsel of record and exclude Mr. Barnacle from further service in this case, by Judge John L. Kane on 12/3/2020.(evana, ) (Entered: 12/03/2020) |
| 12/03/2020 | 359 | | ORDER Granting 356 Motion to Withdraw as Attorney. Attorney Christopher John Eby terminated as counsel of record and exclude Mr. Eby from further service in this case, by Judge John L. Kane on 12/3/2020.(evana, ) (Entered: 12/03/2020) |
| 12/08/2020 | 360 | | ORDER Granting 357 The GEO Group, Inc.'s Unopposed Motion to Restrict and being fully advised in the premises, hereby GRANTS the Motion. The Clerk of Court is directed to maintain a Level 1 restriction on ECF Nos. 349 and 349–1, by Judge John L. Kane on 12/8/2020.(evana, ) (Entered: 12/08/2020) |
| 03/24/2021 | 361 | | NOTICE of Supplemental Authorities re: 305 MOTION for Summary Judgment , 307 MOTION to Dismiss *for Failure to Join Required Party* by Defendant GEO Group, Inc., The (Attachments: # 1 Exhibit A – Ndambi v. CoreCivic)(Scheffey, Adrienne) (Entered: 03/24/2021) |
| 03/26/2021 | 362 | | RESPONSE to 361 Notice of Supplemental Authorities, by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 03/26/2021) |
| 05/05/2021 | 363 | | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), Hans Christopher Meyer was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/05/2021) |
| 05/06/2021 | 364 | | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), Ossai Miazad was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon |

| | | | |
|---|---|---|---|
| | | | reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/06/2021) |
| 05/12/2021 | 365 | | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), P. David Lopez was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/12/2021) |
| 05/17/2021 | 366 | | Notice of Entry of Appearance by Hans Meyer by Plaintiff Alejandro Menocal. (Meyer, Hans) (Modified on 5/17/2021 edited to reflect that this is an Entry of Appearance and not a Motion)(evana, ). (Entered: 05/17/2021) |
| 06/28/2021 | 367 | | NOTICE of Supplemental Authorities re: 284 Cross MOTION for Summary Judgment , 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 06/28/2021) |
| 07/02/2021 | 368 | | MOTION to Strike 367 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Attachments: # 1 Exhibit A – Email)(Scheffey, Adrienne) (Entered: 07/02/2021) |
| 07/23/2021 | 369 | | RESPONSE to 368 MOTION to Strike 367 Notice of Supplemental Authorities, filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Scimone, Michael) (Entered: 07/23/2021) |
| 08/02/2021 | 370 | | REPLY to Response to 368 MOTION to Strike 367 Notice of Supplemental Authorities, filed by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 08/02/2021) |
| 08/31/2021 | 371 | | NOTICE of Change of Address/Contact Information by Adrienne Scheffey (Scheffey, Adrienne) (Entered: 08/31/2021) |
| 11/01/2021 | 372 | | NOTICE of Change of Address/Contact Information *and Change of Firm* by Rachel Williams Dempsey (Dempsey, Rachel) (Entered: 11/01/2021) |
| 11/01/2021 | 373 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 372 Notice of Change of Address/Contact Information filed by attorney Rachel Williams Dempsey. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the **Manage my Account** tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (evana, ) (Entered: 11/01/2021) |
| 11/01/2021 | 374 | | NOTICE of Supplemental Authorities re: 336 Brief in Opposition to Motion,,, 286 Reply to Response to Motion, 260 MOTION for Summary Judgment *as to* |

| | | | |
|---|---|---|---|
| | | | *Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Scimone, Michael) (Entered: 11/01/2021) |
| 11/10/2021 | 375 | | RESPONSE to 374 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Eismeier, Dana) (Entered: 11/10/2021) |
| 02/01/2022 | 376 | | MOTION to Withdraw as Attorney by Defendant GEO Group, Inc., The. (Attachments: # 1 Proposed Order (PDF Only))(Cizmorris, Melissa) (Entered: 02/01/2022) |
| 02/02/2022 | 377 | | ORDER Granting 376 Motion for Withdrawal of Attorney Melissa I. Cizmorris, by Judge John L. Kane on 2/2/2022.(angar, ) (Entered: 02/02/2022) |
| 02/09/2022 | 378 | | NOTICE of Supplemental Authorities re: 336 Brief in Opposition to Motion,,, 286 Reply to Response to Motion, 298 Response to Motion, 260 MOTION for Summary Judgment *as to Defendant's Affirmative Defense* by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla (Attachments: # 1 Exhibit A)(Scimone, Michael) (Entered: 02/09/2022) |
| 02/11/2022 | 379 | | RESPONSE to 378 Notice of Supplemental Authorities, by Defendant GEO Group, Inc., The. (Scheffey, Adrienne) (Entered: 02/11/2022) |
| 10/18/2022 | 380 | | Order on the Parties' Cross Motions for Summary Judgment (ECF Nos. 260 , 284 , & 305 ) and Defendant's Motions to Dismiss (ECF No. 307 ) and for Decertification of Class (ECF No. 312 ). Plaintiffs' Motion for Summary Judgment on GEO's Affirmative Defense (ECF No. 260 ) is GRANTED. GEO's Cross Motion for Summary Judgment (ECF Nos. 284 ), Motion to Dismiss (ECF No. 307 ), and Motion for Decertification of Class (ECF No. 312 ) are DENIED. GEO's Motion for Summary Judgment (ECF No. 305 ) is GRANTED IN PART in that the TVPA class is narrowed to beginning on December 23, 2004, and the Motion is otherwise DENIED. GEOs Motion to Strike (ECF No. 368 ) is DENIED at moot. ORDERED by Judge John L. Kane on 10/18/2022.(angar, ) (Entered: 10/18/2022) |
| 10/19/2022 | 381 | | MINUTE ORDER. Based on the rulings in 380 , this case is ready to be set for trial. The Parties are DIRECTED to confer and, on October 25, 26, or 27, 2022, to call each other and then JOINTLY call chambers at (303) 844–6118 to set dates and times for the pretrial conference, final trial preparation conference, and trial, by Judge John L. Kane on 10/19/2022. Text Only Entry (angar, ) (Entered: 10/19/2022) |
| 10/20/2022 | 382 | | MINUTE ORDER as to 301 Motion for Jury View. The Parties are DIRECTED to meaningfully confer regarding the status of the Motion for Jury View, including whether any circumstances have changed since the motion was filed. The Parties' conferral shall include, but is not limited to, a discussion regarding: (1) whether a videorecording of the Aurora Detention Facility is now available. If a videorecording is available, the Parties shall confer regarding whether the videorecording is sufficient in lieu of a jury view; and (2) if a jury view is permitted, whether U.S. Marshals may accompany the Jurors and, if so, whether the Parties propose any limitations on the U.S. Marshals accompanying the Jury to a jury view. After conferral, |

| | | | |
|---|---|---|---|
| | | | Plaintiffs shall file a supplemental brief of no more than five pages, on or before November 4, 2022. Defendant shall file a response of no more than five pages, on or before November 18, 2022. No reply brief will be allowed absent further order of the Court. ORDERED by Judge John L. Kane on 10/20/2022. Text Only Entry (angar, ) (Entered: 10/20/2022) |
| 10/27/2022 | 383 | | ORDER SETTING PRETRIAL CONFERENCE, FINAL TRIAL PREPARATION CONFERENCE AND THREE–WEEK JURY TRIAL. This case is set for a three–week Jury Trial beginning Monday, April 24, 2023, at 9:00 a.m., before Judge John L. Kane in Courtroom A802 on the 8th Floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. The parties are directed to file a Proposed Pretrial Order on or before January 6, 2023. The Proposed Order shall be submitted via CM/ECF and in an editable format to kane_chambers@cod.uscourts.gov. A Pretrial Conference is set for January 12, 2023, at 10:30 a.m. in the same location as the Jury Trial. Motions in Limine, including motions objecting to expert witness testimony, shall be filed on or before February 10, 2023. Responses to those motions shall be filed on or before March 3, 2023, and any replies shall be filed on or before March 17, 2023. The Proposed Unified Set of Jury Instructions and Verdict Forms are due March 31, 2023, submitted in editable format to kane_chambers@cod.uscourts.gov as well as filed in CM/ECF. Final Witness and Exhibit Lists are due April 12, 2023. A Final Trial Preparation Conference is set Wednesday, April 19, 2023, at 10:30 a.m. in the same location as the Jury Trial. The parties are advised to read Judge Kane's Pretrial and Trial Procedures Memo and use the forms available on the court's website.Ordered by Judge John L. Kane on 10/27/2022. Text Only Entry (jlksec) (Entered: 10/27/2022) |
| 10/27/2022 | 384 | | NOTICE of Entry of Appearance by Wayne Howard Calabrese on behalf of GEO Group, Inc., TheAttorney Wayne Howard Calabrese added to party GEO Group, Inc., The(pty:dft) (Calabrese, Wayne) (Entered: 10/27/2022) |
| 10/27/2022 | 385 | | NOTICE of Entry of Appearance by Joseph Negron, Jr on behalf of GEO Group, Inc., TheAttorney Joseph Negron, Jr added to party GEO Group, Inc., The(pty:dft) (Negron, Joseph) (Entered: 10/27/2022) |
| 11/04/2022 | 386 | | BRIEF in Support of 301 MOTION for Order to *Authorize the Jury to View the Aurora ICE Processing Center Supplemental Brief in Support of Plaintiffs' Motion for Jury View* filed by Plaintiffs Olga Alexaklina, Lourdes Argueta, Marcos Brambila, Jesus Gaytan, Hugo Hernandez, Alejandro Menocal, Demetrio Valerga, Dagoberto Vizguerra, Grisel Xahuentitla. (Attachments: # 1 Exhibit 1)(Scimone, Michael) (Entered: 11/04/2022) |
| 11/16/2022 | 387 | | NOTICE OF APPEAL as to 380 Order on Motion to Strike,,,, Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Dismiss,,,, Order on Motion for Order,,, by Defendant GEO Group, Inc., The (Filing fee $ 505, Receipt Number ACODC–8784020) (Beer, Naomi) (Entered: 11/16/2022) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALEGRA,
on their own behalf and on behalf of all others similarly situated,

       Plaintiffs,

v.

THE GEO GROUP, INC.,

       Defendant.

---

## ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 260, 284, & 305) AND DEFENDANT'S MOTIONS TO DISMISS (ECF NO. 307) AND FOR DECERTIFICATION OF CLASS (ECF NO. 312)

Kane, J.

Plaintiffs in this case are former immigration detainees at the Aurora Detention Facility

in Aurora, Colorado, a private immigration detention center owned by Defendant The GEO

Group, Inc. ("GEO") and operated pursuant to a contract with U.S. Immigration and Customs

Enforcement ("ICE"). The parties have filed a handful of motions related to the sufficiency and

type of the evidence supporting Plaintiffs' claims, GEO's status as a government contractor, and

ICE's role in the challenged conduct. After wading through the parties' exhaustive arguments, I

determine GEO's motions are without merit and find neither derivative sovereign immunity nor

the government contractor defense protect it from liability.

1

## I. Background

Plaintiffs originally brought three claims against GEO for: (1) noncompliance with the Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101, *et seq*.; (2) violations of the forced labor provision of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1595; and (3) unjust enrichment. GEO filed a motion to dismiss, and I granted its motion as to the Colorado minimum wage claim. *Menocal v. GEO Grp., Inc.*, 113 F.Supp.3d 1125, 1135 (D. Colo. 2015) ("*Menocal I*"). Plaintiffs remaining claims challenge two separate policies implemented by GEO at the Aurora Detention Facility (the "Facility"). First, Plaintiffs assert that, by forcing detainees at the Facility to clean up the common areas and after other detainees under the threat of segregation, GEO has violated the TVPA. Second, Plaintiffs claim that GEO has been unjustly enriched by paying detainees only $1.00 per day for their participation in the Facility's Voluntary Work Program (the "VWP").

Plaintiffs sought to proceed with their TVPA and unjust enrichment claims on behalf of two classes of similarly situated individuals. I granted Plaintiffs' request, finding both proposed classes fulfilled the requirements set out in Federal Rule of Civil Procedure 23. *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 270 (D. Colo. 2017) ("*Menocal II*"). For Plaintiffs' claim brought under the TVPA, the certified class includes: all persons detained in the Facility in the ten years preceding the filing of this action, i.e., from October 22, 2004, to October 22, 2014. *Id.* at 262. For Plaintiffs' unjust enrichment claim, the certified class includes: all people who performed work at the Facility under GEO's VWP in the three years preceding the filing of this action, i.e., from October 22, 2011, to October 22, 2014. *Id.* Convinced certification of the two classes was in error, GEO filed an interlocutory appeal of the Certification Order, which the Tenth Circuit affirmed, *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 927 (10th Cir. 2018) ("*Menocal III*").

## A. Specific Motions at Issue

This Order addresses four motions filed by GEO and a single motion filed by Plaintiffs:

- The parties' cross motions for summary judgment on GEO's assertion of derivative sovereign immunity and its government contractor defense (ECF Nos. 260 & 284);

- GEO's Motion to Dismiss (ECF No. 307) based on Plaintiffs' purported failure to join ICE, which GEO contends is a necessary and indispensable party;

- GEO's Motion for Summary Judgment (ECF No. 305), in which it argues that judgment as a matter of law on Plaintiffs' TVPA and unjust enrichment claims is appropriate because Plaintiffs cannot establish the requisite elements of their claims; and

- GEO's Motion for Decertification of Class (ECF No. 312), asserting that the TVPA class should be decertified because the evidence in the record demonstrates that class members' individual circumstances predominate.

## B. GEO's Operation of the Aurora Detention Facility

### 1. The Relevant Contracts

During the period covering the certified classes, the Facility was operated by GEO pursuant to a series of three contracts with ICE: the first in effect from March 27, 2003 (the "2003 Contract"), the second from September 29, 2006 (the "2006 Contract"), and the third from September 15, 2011 (the "2011 Contract"). *See* 2003 Contract, ECF No. 262-5; 2006 Contract, ECF No. 262-4; 2011 Contract, ECF No. 262-2.[1] ICE is an agency within the Department of

---

[1] The docket in this case became so cluttered with declarations and exhibits that I directed the parties to follow a specific procedure for future filings. *See* Order re: Mots. to Restrict at 2, ECF No. 320. Still, some of the parties' later filings reflected old habits and continued to make review of the submitted evidence an unnecessarily tedious task. *See, e.g.*, ECF Nos. 326, 351, 353.

Homeland Security that is primarily tasked with enforcing the nation's immigration laws. One aspect of ICE's responsibility is arranging for the detention of individuals who are awaiting the results of their immigration proceedings or removal. ICE frequently contracts with private entities to house these individuals in privately owned facilities, like the Aurora Detention Facility.

The relevant ICE-GEO contracts provide that GEO is to receive payment for a certain number of beds, regardless of actual occupancy, and an additional rate for each bed that is occupied above that minimum number. 2003 Contract, ECF No. 262-5 at 6; 2006 Contract, ECF No. 262-4 at 3-4; 2011 Contract, ECF No. 262-2 at 3-4. GEO's profits are the difference between what it spends and the payments it receives from ICE under their contracts. Krumpelmann Dep. 23:23-24:4, ECF No. 261-6.

GEO produced Dan Ragsdale, Executive Vice President for Contract Compliance, as its corporate designee under Federal Rule of Civil Procedure 30(b)(6) to testify about its contracts with ICE as they relate to GEO's policies at issue in this case. Mr. Ragsdale explained that detention facilities develop policies and ICE "review[s] and clear[s]" those policies. Ragsdale Dep. 39:3-6, ECF No. 271-11. ICE does so through its on-site Contracting Officer's Technical Representative ("COTR").[2] Nelson Dep. 150:18-151:2, ECF No. 261-16. The ICE-GEO contracts specify that, "[t]o be valid, technical direction by the COTR [m]ust be consistent with the general scope of work set forth . . . in th[e] contract" and it "[m]ay not . . . change the

---

[2] Apparently, this title was used interchangeably with "Contracting Officer's Representative" for the individual who held the position for the Facility during the relevant contract periods. GEO Second Notice of Suppl. Auth. at 2, ECF No. 297. The letter appointing that Contracting Officer's Representative states that the Representative shall not "[c]hange or modify any of the terms and conditions . . . of a contract" and shall not "direct the contractor . . . to operate in conflict with the contract terms and conditions." COR Appointment Letter at 3-4, ECF No. 297-2.

4

expressed terms, conditions or specifications of th[e] contract." 2011 Contract, ECF No. 288-1 at 41. ICE also has annual reviews of the Facility conducted to determine whether it meets specific standards imposed by the contracts. *See* Annual Review Mems., ECF No. 273-6. Over the periods covered by the certified classes, ICE rated the Facility as acceptable or as meeting the assessed standards. *See id.*

The ICE-GEO contracts reference and incorporate many external policies and standards. As relevant here, Federal Acquisition Regulation 52.222-50, relating to the U.S. Government's "policy prohibiting trafficking in persons," is incorporated into the 2006 and 2011 Contracts. 2006 Contract, ECF No. 262-4 at 21; 2011 Contract, ECF No. 262-2 at 51. The Regulation states: "Contractors, contractor employees, and their agents shall not . . . [u]se forced labor in the performance of the contract." 48 C.F.R. § 52.222-50(b). Additionally, the contracts reference the American Correctional Association ("ACA") standards. 2003 Contract, ECF No. 262-5 at 12; 2006 Contract, ECF No. 262-4 at 11; 2011 Contract, ECF No. 262-2 at 38. ACA Standard 4-ALDF-5C-08 provides that: "Pretrial and unsentenced inmates are not required to work except to do personal housekeeping and to clean their housing area." ACA Performance-Based Standards, ECF No. 261-15 at 10.

Most significantly, the contracts require compliance with the ICE Performance Based National Detention Standards ("PBNDS")[3] and clarify that ICE policies and standards prevail if ever other standards conflict with them. 2003 Contract, ECF No. 262-5 at 12, 15, 17; 2006 Contract, ECF No. 262-4 at 11; 2011 Contract, ECF No. 262-2 at 38-39. Three versions of the PBNDS are relevant in this case: those promulgated in 2000, 2008, and 2011.

---

[3] Before 2008, these were known as just the National Detention Standards. *See* 2003 Contract, ECF No. 262-5 at 15. For simplicity, I refer to them all as the PBNDS.

The parties dispute when GEO was required to comply with the 2011 PBNDS, which were published on February 27, 2012, ICE Report on 2011 PBNDS, ECF No. 287-8 at 8. The 2011 ICE-GEO Contract cites to the 2008 PBNDS, stating "[a] copy of the current version is obtainable on the Internet website: http://www.ice.gov/detention-standards/2008/." 2011 Contract, ECF No. 262-2 at 38. But the Contract explains that the listed "constraints may change over time" and "the Contractor shall be knowledgeable of any changes to the constraints and perform in accordance with the most current version of the constraints." 2011 Contract, ECF 262-2 at 37. After the 2011 PBNDS were published, GEO and ICE executed a contract modification, specifically incorporating into their contract the 2011 PBNDS, among other policies. 2013 Contract Modification, ECF No. 262-3 at 2. The modification provides that "[w]ithin 30 days of [its] execution . . . the facility shall be compliant with all PBNDS 2011 Standards stated herein." 2013 Contract Modification, ECF No. 262-3 at 3.[4]

### 2. The Voluntary Work Program

Under the ICE-GEO contracts and the PBNDS, GEO is required to administer a Voluntary Work Program for detainees. *See* 2000 PBNDS, ECF No. 261-10 at 2-3; 2008 PBNDS, ECF No. 261-9 at 60; 2011 PBNDS, ECF No. 261-8 at 50. The 2011 Contract, which covers the period of the unjust enrichment class, provides a stipend for the Program, under which GEO is to be reimbursed at "actual cost" of $1.00 per day of detainee labor provided under the Program and is not to seek reimbursement for more than the specified total amount. 2011

---

[4] GEO contends it was not required to comply with the 2011 PBNDS until the 2011 contract was modified in 2013. Plaintiffs say immediate compliance was required based on the language in the Contract requiring the Contractor to "perform in accordance with the most current version of the constraints." 2011 Contract, ECF 262-2 at 37. Plaintiffs also point to an email sent April 4, 2012, mentioning the new language regarding reimbursement for VWP work. Amber Martin Dep. 44:10-46:6, ECF No. 287-9. My rulings below obviate the need to resolve this dispute.

Contract, ECF No. 262-2 at 5. For at least the first part of the 2011 Contract's term, the 2008

PBNDS applied and directed that, for detainees who perform work in accordance with a

facility's standard policy, "the compensation is $1.00 per day." 2008 PBNDS, ECF 261-9 at 63.

As mentioned, the parties dispute when GEO was required to comply with the 2011 PBNDS

under its contract. At some point, though, the 2011 PBNDS required that detainees who

participated in the VWP receive compensation of "at least $1.00 (USD) per day." 2011 PBNDS,

ECF No. 261-8 at 53.

The PBNDS lists a handful of "expected outcomes" or "objectives" of the VWP. *See*

2000 PBNDS, ECF No. 261-10 at 3; 2008 PBNDS, ECF No. 261-9 at 60; 2011 PBNDS, ECF

No. 261-8 at 50. The applicable versions of the PBNDS describe the following as ICE's expected

outcomes of the VWP, among others: (1) "[d]etainees may have opportunities to work and earn

money while confined"; (2) "[e]ssential operations and services will be enhanced through

productivity from detainees"; (3) "[t]he negative impact of confinement will be reduced through

less idleness, improved morale and fewer disciplinary incidents"; and (4) "[d]etainee working

conditions will comply with all applicable federal, state, and local work safety laws and

regulations." 2008 PBNDS, ECF No. 261-9 at 60; *see also* 2011 PBNDS, ECF No. 261-8 at 50.

Over the relevant period, GEO paid participants in the VWP at the Facility $1.00 per day.

Participants in the VWP signed a document that indicated they would be compensated this

amount. *See* Detainee VWP Agreement, ECF No. 306-2 at 3. Dawn Ceja, the Assistant Warden

at the Facility and GEO's corporate designee, stated that this document was not an employment

contract and did not create any rights for the detainee who signed it. Ceja Dep. 149:25-150:11,

ECF No. 336-9. In addition to the $1.00-per-day compensation, some VWP participants received

extra rewards, like candy or ice cream. *Id.* 162:14-163:25, ECF No. 306-3.

7

GEO has paid detainees more than $1.00 per day at some of its other facilities, but the record does not establish that those other facilities are subject to identical contract terms. At the LaSalle Processing Center—an ICE detention facility operated by GEO where the same PBNDS provisions have applied—GEO has paid as much as $4.00 per day to VWP participants, even though GEO is only reimbursed $1.00 per day by ICE. Amber Martin Dep. 109:1-110:6, ECF No. 261-2. When asked how GEO could pay detainees more than $1.00 per day under the VWP, Amber Martin, GEO's Executive Vice President of Contract Administration, stated: "I guess we could do it on our own dime." *Id.* 107:22, ECF No. 261-2.

Mr. Ragsdale testified that there was no financial incentive for GEO to use detainees through the VWP to do anything because their work is cost neutral at a dollar a day but becomes a cost to GEO when detainees have to be incentivized beyond that. Ragsdale Dep. 168:12-17, ECF No. 306-14. He explained that GEO would make more money if it could charge ICE an additional margin for employees on its staffing plan. *Id.* 168:4-10, ECF No. 306-14. But there is other testimony in the record that, even if there is no competition, GEO might not be awarded a contract if its price was set too high. Venturella Dep. 165:25-166:4, ECF No. 336-17.

### 3. Policies Relevant to Plaintiffs' TVPA Claim

Several policies written and/or implemented by GEO are relevant to Plaintiffs' TVPA claim. First, the PBNDS incorporated into the controlling ICE-GEO contracts listed circumstances in which detainees were expected to clean and provided a disciplinary framework. The PBNDS explained:

> [A]ll detainees are responsible for personal housekeeping. . . . [D]etainees are required to maintain their immediate living areas in a neat and orderly manner by:
>
> 1. making their bunk beds daily;

8

    2. stacking loose papers;

    3. keeping the floor free of debris and dividers free of clutter; and

    4. refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture.

2000 PBNDS, ECF No. 261-10 at 3; 2008 PBNDS, ECF No. 261-9 at 61-62; 2011 PBNDS, ECF No. 261-8 at 51.[5] The Declaration of Jay Brooks, an ICE supervisory detention and deportation officer, asserts that the tasks set out above were "not intended by ICE to be an exhaustive list of facility scenarios in which a detainee may be expected to participate in housekeeping." Brooks Decl. ¶ 14, ECF No. 335-2.[6] ICE did not, however, specify any other housekeeping tasks detainees were expected to perform.

    The ICE National Detainee Handbook, which is provided to detainees at the Facility, includes the following question and response: "Will I get paid for keeping my living area clean? No. You must keep areas that you use clean, including your living area and any general use areas that you use. If you do not keep your areas clean, you may be disciplined." 2013 ICE Handbook, ECF No. 310-1 at 18.

    Additionally, GEO was obligated to adopt ICE's disciplinary severity scale found in the PBNDS and to provide notice of that scale to detainees through the local detainee handbook.

---

[5] Although the three PBNDS versions contain slightly different wording, the language quoted throughout this Order is materially the same in each of the PBNDS, unless it is otherwise noted.
[6] Ms. Brooks' Declaration was submitted in response to an information request in another case—*Novoa v. GEO Grp., Inc.*, No. 17-cv-2514 (C.D. Cal.). GEO filed Ms. Brooks' Declaration with its October 26, 2020 Notice of Supplemental Authority (ECF No. 335). Plaintiffs object to Ms. Brooks' interpretation of this section of the PBNDS because she only participated in drafting the 2011 PBNDS and the language she describes was present in the prior versions as well. Resp. to Notice of Supp. Auth. at 5, ECF No. 345. Plaintiffs request that, to the extent I find Ms. Brooks' Declaration probative, I grant them "leave to depose Ms. Brooks, at GEO's expense, to eliminate any prejudice caused by GEO's disclosure of her declaration after the close of discovery." *Id.* at 9 n.4. While Ms. Brooks' Declaration provides useful background information, I agree with Plaintiffs that it does not conclusively provide support for any of GEO's Motions, and thus I deny without prejudice Plaintiffs' request to depose Ms. Brooks.

2000 PBNDS, ECF No. 261-10 at 9-10, 17; 2008 PBNDS, ECF No. 261-9 at 44-45; 2011

PBNDS, ECF No. 261-8 at 38-39. Under the PBNDS disciplinary scale, "[r]efusal to clean

assigned living area" and "[r]efusing to obey a staff member/officer's order" were both

considered "high moderate" offenses subject to the following sanctions:

      A. Initiate criminal proceedings

      B. Disciplinary transfer (recommend)

      C. Disciplinary segregation (up to 72 hours)

      D. Make monetary restitution, if funds are available

      E. Loss of privileges (e.g. commissary, vending machines, movies, recreation, etc.)

      F. Change housing

      G. Remove from program and/or group activity

      H. Loss of job

      I. Impound and store detainee's personal property

      J. Confiscate contraband

      K. Restrict to housing unit

      L. Reprimand

      M. Warning

2000 PBNDS, ECF No. 261-10 at 24; 2008 PBNDS, ECF No. 261-9 at 56-57; 2011 PBNDS,

ECF No. 261-8 at 47-48. Disciplinary segregation involves segregating detainees from the

general population for punitive reasons and may only be imposed after a disciplinary hearing

panel has found a detainee is guilty of a prohibited act or violation for which disciplinary

segregation is an authorized punishment. 2000 PBNDS, ECF No. 261-10 at 70; 2008 PBNDS,

ECF No. 261-9 at 28; 2011 PBNDS, ECF No. 261-8 at 27. Disciplinary segregation differs from

administrative segregation, which may be used for protective custody or when a detainee is an immediate safety threat. *See, e.g.*, 2011 PBNDS, ECF No. 261-8 at 22. The PBNDS disciplinary scale also included the offenses of "[f]ailure to follow safety or sanitation regulations" and "[b]eing unsanitary or untidy, failing to keep self and living area in accordance with posted standards," which were classified as "low moderate" offenses for which segregation was not a potential sanction. 2000 PBNDS, ECF No. 261-10 at 27-28; 2008 PBNDS, ECF No. 261-9 at 58-59; 2011 PBNDS, ECF No. 261-8 at 49.

Pursuant to the PBNDS, Officers who witnessed a prohibited act were to complete an incident report. 2000 PBNDS, ECF No. 261-10 at 11; 2008 PBNDS, ECF No. 261-9 at 45; 2011 PBNDS, ECF No. 261-8 at 39. Minor transgressions were to be settled informally whenever possible, unless the involved officer believed informal resolution was inappropriate or unachievable. 2000 PBNDS, ECF No. 261-10 at 11; 2008 PBNDS, ECF No. 261-9 at 46; 2011 PBNDS, ECF No. 261-8 at 39. After an incident report was investigated, the Unit Disciplinary Committee ("UDC") conducted hearings and, for low moderate and high moderate offenses, again attempted to accomplish an informal resolution. 2000 PBNDS, ECF No. 261-10 at 12; 2008 PBNDS, ECF No. 261-9 at 47; 2011 PBNDS, ECF No. 261-8 at 40-41. The UDC could not impose disciplinary segregation. 2000 PBNDS, ECF No. 261-10 at 13; 2008 PBNDS, ECF No. 261-9 at 47; 2011 PBNDS, ECF No. 261-8 at 41. If a matter was not resolved by the UDC or involved serious charges, it was forwarded to the Institutional Disciplinary Panel ("IDP"), which held a more formal hearing. 2000 PBNDS, ECF No. 261-10 at 12, 15-16; 2008 PBNDS, ECF No. 261-9 at 47-51; 2011 PBNDS, ECF No. 261-8 at 41-43. Only the IDP could place a detainee in disciplinary segregation. 2000 PBNDS, ECF No. 261-10 at 15; 2008 PBNDS, ECF No. 261-9 at 50; 2011 PBNDS, ECF No. 261-8 at 43.

ICE's annual reviews of the Facility assessed the PBNDS requirements listed on the review forms. *See* Annual Review Mems., ECF No. 273-6. The forms included whether the facility had a "written disciplinary system using progressive levels of reviews and appeals," *id.*, ECF No. 273-6 at 6, 14, 28, 40, 58, 75, but they did not cover "the requirement that [detainees] clean the common areas," Ragsdale Dep. 38:7-8, ECF No. 287-12.

The Facility's Detainee Handbook (the "Handbook") provides the foundation for Plaintiffs' TVPA claim. The Handbook communicated the rules and policies of the Facility, including ICE's disciplinary severity scale as well as GEO's own cleaning requirements, and it was issued to all detainees at the Facility. Ceja Dep. 29:21-23, ECF No. 336-9; *see* 2005 Handbook, ECF No. 273-1 at 24; 2007 Handbook, ECF No. 273-2 at 64; 2008 Handbook, ECF No. 273-3 at 25-26; 2010 Handbook, ECF No. 273-4 at 21-22; 2011 Handbook, ECF No. 273-5 at 22; Oct. 2013 Handbook, ECF No. 261-17 at 26. GEO expected that detainees would review the Handbook for the rules and regulations they were required to follow. Ceja Dep. 100:8-11, ECF No. 339-3. The Handbook put detainees "on notice" that if they did not clean as directed, they could be taken to segregation. Ceja Dep. 79:19-25, 80:20-25, ECF No. 339-2.

Specifically, the Handbook required detainees "to keep [their] personal living area clean and sanitary," which included their "bunk and immediate floor area around and under [their] bunk, locker, and any personal items." 2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 48; 2008 Handbook, ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 16; 2011 Handbook, ECF No. 273-5 at 17; Oct. 2013 Handbook, ECF 261-17 at 19.[7] The Handbook's cleaning requirements did not stop there, though. The Handbook also stated: "[a]ll

---

[7] As with the PBNDS, the wording in the Facility's Detainee Handbooks differs slightly, but the language quoted throughout this Order is materially the same in each Handbook, unless it is otherwise noted.

detainees in a housing unit are required to keep clean and sanitary all commonly accessible areas

of the housing unit, including walls, floors, windows, window ledges, showers, sinks, toilets,

tables, and chairs." 2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at

50; 2008 Handbook, ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011

Handbook, ECF No. 273-5 at 17; Oct. 2013 Handbook, ECF 261-17 at 20. The Handbook went

on to explain:

> The day room area will be kept clean at all times. Should an officer notice that the
> area is not clean, the officer will make available necessary cleaning supplies. If the
> detainees in the housing unit do not clean the area after being instructed to do so,
> the televisions will be turned off, and the detainees will not be permitted to
> participate in any activities/programs until the housing unit is cleaned. Continued
> refusal to clean the area will result in further disciplinary action.

2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 50; 2008 Handbook,

ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at

17; Oct. 2013 Handbook, ECF 261-17 at 20.

> Then, under the heading "Housing Unit Sanitation,"[8] the Handbook instructed:

> Each and every detainee must participate in the facility's sanitation program. A list
> of detainees is developed each day by staff and is posted daily for viewing. During
> a general cleanup all detainees must participate. The assigned Housing Unit Officer
> will be responsible for assuring this general cleanup is done on a regular basis.

2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 49; 2008 Handbook,

ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at

17; Oct. 2013 Handbook, ECF 261-17 at 20. The Declaration of Shannon Ely, an ICE

contracting officer, states that the "Housing Unit Sanitation Policy . . . is a GEO policy, created

by GEO" and "is not created by ICE nor is it a requirement of the contract." Ely Decl. ¶¶ 2, 22,

---

[8] The title in the 2007 and 2008 Handbooks is "Dormitory Sanitation."

13

ECF No. 261-7.[9] In contrast, Ms. Brooks' Declaration explains that, at other facilities, "ICE

[wa]s not the initial drafter of the GEO [Housing Unit Sanitation Policy]," but "ICE may have

had some input and may have reviewed [the Housing Unit Sanitation Policy]." Brooks Decl.

¶ 10.

Ms. Ceja described the "general cleanup," in which detainees were obligated to

participate, as occurring after meal service and involving "clean[ing] up the tables, wip[ing]

down the tables, and sweep[ing] and mop[ping] the floors" in the day room area. Ceja Dep.

36:24-37:4, ECF No. 261-12. But, again, the Handbook mandated that detainees "keep clean and

sanitary all commonly accessible areas of the housing unit, including walls, floors, windows,

window ledges, showers, sinks, toilets, tables, and chairs." 2005 Handbook, ECF No. 273-1 at

18; 2007 Handbook, ECF No. 273-2 at 50; 2008 Handbook, ECF No. 273-3 at 19; 2010

Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at 17; Oct. 2013 Handbook,

ECF 261-17 at 20. In line with these specifications, Plaintiff Hugo Hernandez testified that

detainees were expected to "clean the rec yard, wipe the []phones, clean the microwave, change

the garbage bag, clean the showers, disinfect the showers, pick up all the trash, like the

toothpaste, []the shampoo bottles." Hugo Hernandez Dep. 162:24-163:7, ECF No. 336-4; *see

also* Vizguerra Dep. 106:19-22 (reporting that he "[c]leaned the whole pod and the restrooms"),

ECF No. 339-6. Similarly, Mr. Ragsdale confirmed that the detainees "share sort of a common

---

[9] Plaintiffs are correct that Ms. Ely's Declaration falls under the hearsay exception in Federal
Rule of Evidence 803(8)(A)(i), as it sets out ICE's activities. GEO argues that Ms. Ely's
Declaration is untrustworthy because the COTR "signed off on the GEO housekeeping policy"
each year. GEO Notice of Suppl. Auth. at 2, ECF No. 291; 4/13/17 ICE Email at 2, ECF No.
291-1; GEO Second Notice of Suppl. Auth. at 2-3, ECF No. 297. The COTR's review does not
establish that Ms. Ely's Declaration is untrustworthy since ICE could have known about the
policy and still not created it or required it as part of the ICE-GEO contracts. Likewise, Ms.
Brooks' declaration is insufficiently definite to establish that Ms. Ely's Declaration is
untrustworthy. *See* Brooks Decl. ¶ 10.

obligation to clean . . . where the microwave is, where the . . . game boards are, video games, to keep things in place in a reasonable cleanliness; the bathroom, you know, . . . the communal areas." Ragsdale Dep. 16:14-18, ECF No. 336-19.[10]

In addition to providing copies of the Detainee Handbook, GEO communicated many of its policies to detainees by showing them a video or a slideshow upon their arrival at the Facility. The video stated: "[w]hile you are here, you are not required to work, **except** in the dormitories where you will be assigned clean-up duties by staff in rotation with other detainees." Orientation Video 1 Tr., ECF No. 337-3 at 3; Orientation Video 2 Tr. ECF No. 337-4 at 3. The video cautioned that failure to respect the property of other detainees and that of the Facility "may result in disciplinary action being taken against you and that could have a negative effect on your case before the government—so the best rule is to stay out of trouble during your stay here." *Id.*; Orientation Video 1 Tr., ECF No. 337-3 at 3. Similarly, the slideshow advised: "Each and every detainee must participate in the sanitation program. A list of detainee's [sic] is developed each day and is posted for viewing. During a general clean-up all detainees must participate." Orientation Slideshow, ECF No. 340-4 at 35. The slideshow also informed detainees that refusing to obey a staff member was a high moderate offense, and "[t]o avoid placement into disciplinary housing segregation, [they should] read the local supplement detainee handbook section regarding 'Disciplinary Process.'" *Id.*, ECF No. 340-4 at 62, 68.

Separate from the PBNDS and the Handbook but also relevant is the Sanitation Section of the Facility's Policy and Procedure Manual. *See* 2004 Sanitation Policy, ECF No. 262-8 at 2; 2004-05 Sanitation Policy, ECF No. 262-8 at 14; 2005-06 Sanitation Policy, ECF No. 262-8 at 26; 2006-07 Sanitation Policy, ECF No. 262-8 at 37; 2007-08 Sanitation Policy, ECF No. 262-8

---

[10] GEO disputes that the tasks—beyond just wiping down tables and cleaning the floors—were performed by unpaid detainees.

at 41; 2008-09 Sanitation Policy, ECF No. 262-8 at 52; 2009-10 Sanitation Policy, ECF 262-8 at

60; 2010 Sanitation Policy, ECF No. 262-8 at 63; 2010-11 Sanitation Policy, ECF No. 262-8 at

66; 2011-12 Sanitation Policy, ECF No. 262-8 at 70; 2012-13 Sanitation Policy, ECF No. 262-8

at 74; 2013-14 Sanitation Policy, ECF No. 262-8 at 78. The Policy applied to detainees at the

Facility but was not provided to them. Ceja Dep. 29:13-18, ECF No. 50-1. It was purportedly

developed to identify the materials to be used for cleaning. Kevin Martin Dep. 208:6-11, ECF

No. 271-5. Nevertheless, it commanded: "Each detainee will be responsible for the cleanliness of

his or her cell or living area, including walls, floors, sink, toilet, windows, and other property

within the cell, room, or living area." 2004 Sanitation Policy, ECF No. 262-8 at 3. And, pursuant

to the Sanitation Section, daily inspections were to take place, and staff were to issue an incident

report "in cases of continued noncompliance." *Id.*, ECF No. 262-8 at 4.


### 4. The Imposition of Segregation for Detainees' Failure to Clean

During the TVPA class period, detainees at the Facility were threatened with being sent

to segregation when they refused to clean as directed. *See, e.g.*, Xahuentitla Dep. 73:19-74:9;

83:14-19, ECF No. 287-10; Hugo Hernandez Dep. 70:7-18; 73:21-74:21, ECF No. 287-11. And

some were placed in segregation for refusing to clean. *See* Incident Reports at 3-10, 12-14, ECF

No. 262-12; Ceja Decl. ¶¶ 4-8, ECF 313-16.

It was expected that the disciplinary scale and associated rules set forth in the Facility's

Detainee Handbook would be enforced. Ceja Dep. 139:2-12, ECF No. 336-15. However, Amber

Martin testified that it has always been an informal policy for GEO not to use segregation as a

consequence for detainees' refusal to clean up their living area. Amber Martin Dep. 134:11-

135:8, ECF No. 271-6. The Declarations of GEO Officers Sergio Gallegos, Luis Pagan, and

Joyce Quezada support this claim. Officer Declarations, ECF No. 306-12 at 3, 5, 8.[11] According

to Ms. Martin, GEO formalized the policy a few years ago. Amber Martin Dep. 134:20-21, ECF

No. 271-6.

     In August 2014, there was an incident in which multiple detainees refused to clean. Ms.

Ceja reported that she reviewed the files of the detainees involved and only one was sent to

segregation. Ceja Decl. ¶¶ 4-8, ECF 313-16. Ms. Ceja also described how some detainees elected

to be placed in protective custody or administrative segregation where they could receive "peace

and quiet." Ceja Dep. 55:7-19, ECF No. 306-3. As clarified above, administrative segregation is

distinct from disciplinary segregation, but detainees subject to either are placed in the same

housing unit at the Facility. Ceja Dep.111:15-22, ECF No. 339-3.

     A handful of GEO's Officers provided deposition testimony regarding their experiences.

Officer Martha Vasquez testified that, on the one occasion she encountered a detainee who did

not want to clean, she just skipped to the next person. Vasquez Dep. 76:20-77:11, ECF No. 313-

12. Officer Quezada testified that, in her 19 years of working at the Facility, she never told a

detainee they would go to segregation if they did not clean. Quezada Dep. 149:1-3, ECF No.

313-11. She claimed that instead she would tell detainees who did not want to clean, "[d]on't

worry about it, I can do it." *Id.* 78:20-79:1, ECF No. 313-11. There were not, however, any other

rules in the Handbook that she remembered being told not to enforce. *Id.* 96:23-97:3, ECF No.

339-12. And Ms. Quezada acknowledged that detainees were afraid of segregation and that it

was an effective way to get detainees to follow the Facility's rules. *Id.* 141:17-142:8, ECF No.

336-16.

---

[11] Plaintiffs assert that these declarations should be excluded under the sham affidavit rule. Pls.'
Resp. to Mot. for Summ. J., ECF No. 336 at 56 n.7 (citing *Lantec, Inc. v. Novell, Inc.*, 306 F.3d
1003, 1016 (10th Cir. 2002)). I consider the declarations and afford them the appropriate weight
given the context.

Other officers also recognized that segregation could be used to encourage compliance. Officer Pagan testified that he may have explained to detainees that they were required to clean and could be sent to segregation because it was in the Facility's Detainee Handbook. Pagan Dep. 174:19-175:6, ECF No. 336-11. Officer Gallegos testified that, when someone did not want to clean, he would just move on to the next detainee or even do it himself. Gallegos Dep. 165:12-25, ECF No. 339-11. Yet, he accepted that he wrote up a few detainees for "failure to obey [his] orders for cleaning details" resulting in the detainees being placed in segregation. *Id.* 170:13-205:25, ECF No. 336-5.

### 5. The Potential Effects of Segregation

To describe the potential effects of segregation, Plaintiffs submitted the expert opinions of Dr. Stuart Grassian, and GEO submitted those of Dr. Jeffrey Kropf. *See* Grassian Report, ECF No. 336-21; Kropf Report, ECF No. 339-20. According to Dr. Grassian's Report, solitary confinement "imposes a devastating triad of emotional and neuropsychiatric deprivations: social isolation, a barren perceptual environment, and deprivation of meaningful mental activity." Grassian Report, ECF No. 336-21 at 11. His Report explains that, even in the first days of solitary confinement, suicide is much more common than in the general population and people often develop "severe panic attacks, marked by intense fear, dread of impending death, and with somatic manifestations that include tachycardia (racing pulse), diaphoresis (intense sweating), shortness of breath, and tremulousness." *Id.* at 11-12. Dr. Grassian specifically testified that the imposition of 72 hours in segregation can cause psychological damage. *See, e.g.*, Grassian Dep. 216:2-5, ECF No. 336-3 ("[T]here are individuals who become quite ill quite quickly, and other individuals who can tolerate three days of solitary confinement with less[] damage being done.").

In contrast, Dr. Kropf's report states: "There is no empirical evidence indicating or even implying that placement in a segregated housing unit with or without solitary confinement for a period of 72 hours or less causes serious psychological harm." Kropf Report, ECF No. 339-20 at 4.

## C. Detainee Experiences at the Facility

During the period covered by the classes, detainees at the Facility were housed in windowless cells or in large open rooms with bunk beds. Facility Photos, ECF No. 337-2 at 6, 8. Detainees were generally strangers and had no privacy, even when using the restroom. Gaytan Dep. at 29:1-2, ECF No. 336-10; Hugo Hernandez Dep. 143:5- 17, ECF No. 336-4. Unless detainees received authorization for other items, detainees were only allowed to keep legal documents, 5x7 or smaller family photos, a pair of prescription glasses, dentures, a personal address book, a wedding band, a small religious item, and softbound reading material. 2005 Handbook, ECF No. 273-1 at 6; 2007 Handbook, ECF No. 273-2 at 14-15; 2008 Handbook, ECF No. 273-3 at 5; 2010 Handbook, ECF No. 273-4 at 6; 2011 Handbook, ECF No. 273-5 at 6; Oct. 2013 Handbook, ECF 261-17 at 8. Without approval for additional visitation time, detainees were permitted one visit per day for 30 minutes or an hour. 2005 Handbook, ECF No. 273-1 at 11; 2007 Handbook, ECF No. 273-2 at 31; 2008 Handbook, ECF No. 273-3 at 11; 2010 Handbook, ECF No. 273-4 at 10; 2011 Handbook, ECF No. 273-5 at 10-11; Oct. 2013 Handbook, ECF 261-17 at 12-13. Detainees were otherwise permitted to use the phone for calls lasting less than 20 minutes. 2005 Handbook, ECF No. 273-1 at 12; 2007 Handbook, ECF No. 273-2 at 33; 2008 Handbook, ECF No. 273-3 at 12; 2010 Handbook, ECF No. 273-4 at 11; 2011 Handbook, ECF No. 273-5 at 12; Oct. 2013 Handbook, ECF 261-17 at 14.

Plaintiff Alejandro Menocal described his typical day at the Facility:

> I wake up, get dressed, do my bed, wait for breakfast, eat breakfast, clean up, maybe
> exercise, walk around, read a book, draw. It depends. Again, wait for lunch to eat,
> clean up, maybe shower, maybe do some sports, maybe talk on the phone with
> someone, maybe write a letter, walk around, exercise, wait for dinner. Same thing,
> eat dinner, relax a while, maybe watch TV, read a book, draw, and, you know, wait
> for bedtime.

Menocal Dep. 121:5-13, ECF No. 306-4. While detained, Mr. Menocal summarized his

experience in the Facility to a friend, stating:

> [T]hey've got pretty good grub, considering it's, you know, a detention center. And
> we got three televisions, a bunch of tables, a bunch of people, and we all get along.
> Pretty nice. I mean, it's—for being incarcerated, it's not bad at all, not compared
> to—not compared to Denver County or the other one where I was at. This is like
> Camp Snoopy. It's pretty easy.

*Id.* 54:5-12, ECF No. 306-4. But Mr. Menocal explained that he only told his friends and family

that it was nice there so that they would not worry about him. *Id.* 48:20-24, 67:12-23, ECF No.

336-2. In fact, he testified that "[t]he food was very awful" and "[p]eople got sick in groups lots

of times." *Id.* 67:24-25, ECF No. 336-2. He remembered that four or five of the maybe 20

officers he interacted with at the Facility had bad attitudes, were rude, or were on a power trip.

*Id.* 64:11-65:2, ECF No. 313-3.

When he first arrived at the Facility, Mr. Menocal was informed about the detainee

schedule for how the day area would be cleaned and was told by officers and other detainees that

if he did not clean as ordered he would be put in isolation. *Id.* 95:16-97:3, ECF No. 336-2. Mr.

Menocal knew if he did not clean he would be punished and "would go to the hole," which "is

not a pretty place." *Id.* 104:25-105:7, ECF No. 336-2. On one occasion, he witnessed other

detainees being taken away by officers and put in isolation and was told it was because the

detainees did not do their daily cleanup. *Id.* 100:20-106:23, ECF No. 336-2. However, Mr.

Menocal "does not recall receiving direct threats from any GEO employee regarding

administrative or disciplinary segregation for failing to clean." Menocal Responses to Second

Disc. Requests, ECF No. 287-14 at 5. Mr. Menocal generally cleans up after himself as a matter

of habit because he likes "to live and hang out in a clean environment." Menocal Dep. 81:6-10,

ECF No. 306-4. He testified that he spent between a half hour and an hour[12] each day cleaning

up his cell or sleeping area, specifically if he was drawing or had made a mess. *Id.* 115:10-15,

116:24-25, ECF No. 313-3. He also began cleaning the recreation area because he spent a lot of

time there and wanted to hang out in a clean space. *Id.* 86:24-87:5, ECF No. 336-2. This cleaning

led to him being offered a job in the VWP. *Id.* 87:6-14, ECF No. 336-2.

> Plaintiff Hugo Hernandez described his typical day at the Facility, stating:
>
> I would wake up for breakfast at 5:00 in the morning. I will walk out, store my food, bring it back to the cell, and go to sleep only if it was not my time to clean. But if I was assigned to clean, I have to stay outside and clean. I couldn't go back to sleep.
>
> So I will store my food. I will wake up when I wake up, and brush my teeth, do my coffee, and make sure that all my cellies get the coffee because that's my one main thing.
>
> Then we will all sit at the table. I will do my legal work, go through my documents, and see what else I need to put in or something, watch a little bit of TV.
>
> I can go to the phone a little bit. If—if I will get someone to answer, I will go to the phone. Wait for count time, wait for lunch.
>
> After lunch, I will do a cleanup again, which is cleanup time, and wait to see who's assigned for the cleanup, and if I'm not assigned, then I just go to my cell or I go against the wall just like everybody else.
>
> And once everything gets reopened, go back into the table again and do some workout while waiting—doing my workout. I wait for chow again and wait for the cleanup, and, of course, shower. Yeah, after the workout, shower, get back.

---

[12] GEO misstates this testimony, asserting that Mr. Menocal "spent between an hour and an hour and a half each day cleaning up his cell." Mot. for Decertification, ECF No. 312 at 17 (citing Menocal Dep. 115:11-15). Likewise, GEO claims Mr. Menocal stated that "[o]n occasion, he would make his cellmates['] beds," *id.* (citing Menocal Dep. 116:17-18), when the testimony is that he would occasionally make a single cellmate's bed, Menocal Dep. 116:14-18, ECF No. 313-3.

Wait for chow, clean up, and then eventually wait for the GEO guard, Officer Blacknick, to come and pick me up so we can go to the law library and collect all detainees who wanted to go to the library.

We'll go to the law library, get a pat-down, go inside the law library. And in there, I will help detainees with their documents, printouts, making sure they understood what the immigration judge was asking them to bring back, translations, looking for any specific application they were looking for.

And then once we were done, like an hour later or an hour and a half later, I get another pat-down, get taken back to the cell, and wait for count time.

And after count time, the last count time, you have to be inside your cell and the doors got to be locked in already. And then it's another day.

Hugo Hernandez Dep. 107:2-108:22, ECF No. 306-5.

Hugo Hernandez testified that he knew cleaning the common area was mandatory "[b]ecause the GEO guard would tell you that it's in the handbook, and if you refuse, you were going to be sent to the hole." *Id.* 159:8-12, ECF No. 336-4. He avoided going to the hole because he was afraid it would destroy his immigration case. *Id.* 166:4-15, 167:19-168:1, 170:10-13, ECF No. 336-4. Nevertheless, he stated that he did not consider the language in the Facility's Detainee Handbook under the heading "Housing Unit Sanitation" to be threatening. *Id.* 58:12-24, ECF No. 306-5. Hugo Hernandez recalled one detainee telling the officers that he was not going to clean because he was not a janitor and that they needed to hire someone to do that. *Id.* 74:23-75:2, ECF No. 336-4. A GEO officer then took out a trash bag and said, "Just pack your stuff because you're going to go to the hole. . . . Just here's your bag and go to the hole." *Id.* 75:3-11, ECF No. 336-4. But the detainee was not sent to segregation because he "started cleaning right away." *Id.* 77:4-7, ECF No. 336-4. Hugo Hernandez testified that he witnessed the garbage bag routine "multiple times with different guards." *Id.* 161:15-19, ECF No. 336-4. He recounted another incident in which one detainee refused to clean and other detainees, including himself

and Plaintiffs Alejandro Menocal, Marcos Brambila, and Demetrio Valerga, then refused as well. *Id.* 78:15-18, 80:9-20, ECF No. 336-4. In response, a GEO sergeant was called, and the sergeant advised that if they refused to clean, they would be sent to the hole, which he said was not a place they wanted to be because it was cold and they would lose their privileges and be lonely. *Id.* 78:19-79:5, ECF No. 336-4. The sergeant also told the detainees that GEO would make sure the judge received documents showing they were "coming from the hole." *Id.* 79:6-18, ECF No. 336-4. Hugo Hernandez also remembered that other detainees would sometimes jump in to help clean in order for everyone to have access to the TVs and phones. Hugo Hernandez Dep. 78:2-9, ECF No. 336-4.

Plaintiff Jesus Gaytan testified that it was scary and intimidating to be in the Facility with a bunch of people he did not know and who were older than him. Gaytan Dep. 28:11-29:2, 48:20-50:2, ECF No. 336-10. He was also afraid of getting in trouble there because he thought it would hurt his immigration case. *Id.* 12:1-13, ECF No. 336-10. Mr. Gaytan explained that new detainees at the Facility often refused to clean and the officers would tell them if they did not clean the pod they would have to go to solitary confinement. *Id.* 113:5-17, 142:23-144:1, ECF No. 336-10. As incentives to clean, Mr. Gaytan received Xboxes, ice cream, and other treats. *Id.* 124:3-16, ECF No. 306-10.

When Plaintiff Valerga first arrived at the Facility, his cellmate informed him that he could be put in solitary confinement if he did not clean. Valerga Dep. 168:20-169:6, ECF No. 339-16. A GEO officer later told Mr. Valerga the same. *Id.* 135:15-20, 137:12-14, ECF No. 271-7. Mr. Valerga nevertheless refused to clean. *Id.* 137:8-9, ECF No. 271-7. Yet, he was not taken to segregation. *Id.* 138:2-5, ECF No. 271-7. Instead, ICE officers woke him up, pulled him out of the unit, and advised him that GEO could put him in segregation if he did not clean. *Id.* at 138:9-

23, ECF No. 271-7. Despite these warnings, Mr. Valerga was never sent to segregation for refusing to clean. *Id.* 140:8-13, ECF No. 271-7.

Plaintiff Dagoberto Vizguerra does not remember receiving the Facility's Detainee Handbook or viewing the orientation video. Vizguerra Dep. 90:24-91:22, 92:1-5, ECF No. 313-8. But the second or third day he was at the Facility he saw a detainee being placed in administrative segregation for refusing to clean. *Id.* 48:9-19, ECF No. 336-8. He also described how officers sometimes screamed at detainees about not cleaning and being sent to segregation. *Id.* 98:2-10, ECF No. 336-8.

Plaintiff Grisel Xahuentitla similarly testified:

> When you are inside, you—you have—you feel this pressure, you feel this emotionally depressed, besides me suffering from depression. Besides that, you feel very depressed for the situation where you're in at the moment. And—And they tell you, "This is what you have to do." And they're not—they're, of course, not— They're not whispering you to your ear. They're loud, and so they—so you feel a little intimidated. Of course, it is their job, and so you feel like you don't have rights in there. You—Like I said, you feel intimidated. And if they tell you "clean, because you're going to the hole," first, I'm going to clean. I don't want to go to the hole.

Xahuentitla Dep. 137:4-19, ECF No. 336-14. Additionally, Ms. Xahuentitla recalled how a woman in her dorm was assigned to clean but was sick, and so she offered to clean for the woman. *Id.* 73:19-25, ECF No. 336-14. But a GEO officer told them that the woman had to clean and, if she did not, she would be sent to segregation, which "wasn't going to be . . . pleasant." *Id.* 74:4-9, ECF No. 336-14. In the end, the woman was not placed in segregation, and Ms. Xahuentitla did not experience anyone else being sent there. *Id.* 120:23-121:15, ECF No. 313-9.

When class member Alejandro Hernandez was detained at the Facility, he asked a GEO officer, "[W]hy should I clean all of the tables if I []did not use all of the table[s]?" Alejandro

Hernandez Dep. 60:8-12, ECF No. 336-13.[13] He then stated he would only clean the area where

he ate. *Id.* As a result, he was handcuffed and taken to segregation. *Id.* 60:12-14, 81:22-82:3,

141:15-19, ECF No. 336-13.

I am guided by this careful review of the record as I analyze the pending motions, which

again are: (1) the parties' Cross Motions for Summary Judgment on GEO's assertion of

derivative sovereign immunity and its government contractor defense; (2) GEO's Motion to

Dismiss for Plaintiffs' failure to join ICE as a party; (3) GEO's Motion for Summary Judgment

on the merits of Plaintiffs' claims; and (4) GEO's Motion for Decertification of the TVPA class.

### II. Cross Motions for Summary Judgment on GEO's Assertion of Derivative Sovereign Immunity and Government Contractor Defense (ECF Nos. 260 & 284)[14]

GEO generally argues that its policies at issue in this case were required by its contract

with ICE and, as a result, that it should be covered by the government's sovereign immunity. The

---

[13] In a footnote, GEO argues "Plaintiffs should be estopped from introducing individual experiences of class members who are not named Plaintiffs to avoid trial devolving into a number of smaller mini-trials and to avoid undue prejudice to GEO." Mot. for Decertification ECF No. 312 at 16 n.8. Plaintiffs respond that they "never represented that they did not intend to introduce *any* testimony from detainees; to the contrary, they argued that testimony from class representatives (as well as from three detainees who provided declarations in support of class certification) would be sufficient." Resp. to Mot. for Decertification, ECF No. 339 at 10 n.11 (citing Pls.' Discovery Order Br., ECF No. 144 at 12-13). At this time, I will not rule that Plaintiffs are estopped from presenting the testimony of class members who are not named Plaintiffs, as Plaintiffs did not definitively state that no such testimony would be relied on at trial. However, this issue may be more appropriate for a motion *in limine*.

[14] GEO's Response to Plaintiffs' Motion for Summary Judgment is ECF No. 270, and Plaintiffs' Reply in Support of their Motion is ECF No. 286. As Plaintiffs note, GEO's Opposition Brief should be stricken since its response to Plaintiffs' statement of the undisputed material facts fails to follow my practice standards. *See* Pls.' Reply in Supp. of Mot. for Summ. J. at 7 n.1, ECF No. 286. However, Plaintiffs' Reply sufficiently corrects for GEO's error and clearly sets out the parties' disputes. Plaintiffs' Response to GEO's Cross Motion is ECF No. 298, and GEO's Reply in Support of its Cross Motion is ECF No. 316. GEO has filed two related Notices of Supplemental Authority (ECF Nos. 291 & 335), and Plaintiffs have responded to those Notices (ECF Nos. 294 & 345). GEO also filed a "Second Notice of Supplemental Authority" (ECF No. 297) to clarify its earlier Notice (ECF No. 294). Plaintiffs, for their part, have filed three

parties' related cross motions for summary judgment dispute whether both of Plaintiffs' claims are barred by derivative sovereign immunity[15] and whether Plaintiffs' unjust enrichment claim is barred by GEO's government contractor defense. I find that GEO cannot avail itself of the protection of either legal theory because they each require government direction for the allegedly unlawful activity, not simply acquiescence.

## A. Legal Standards

The United States and its agencies enjoy unqualified sovereign immunity from civil actions absent an express waiver. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Those who contract with the United States are not encompassed within the definition of a federal agency, 28 U.S.C. § 2671, and federal contractors therefore do not share the government's absolute immunity from liability, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016). However, "government contractors obtain [some] immunity in connection with work which they do pursuant to their contractual undertaking with the United States." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943). This immunity, known as "derivative sovereign immunity," protects

---

pertinent Notices of Supplemental Authority (ECF Nos. 367, 374, & 378). GEO has responded to Plaintiffs' most recent Notices (ECF Nos. 375 & 379) but filed a Motion to Strike the first of Plaintiffs' Notices (ECF No. 368). None of my reasoning in this order relies on the disputed authority attached to Plaintiffs' first Notice (ECF No. 367-1), and so I deny GEO's Motion as moot.

[15] Plaintiffs argue in passing that by failing to specifically plead the affirmative defense of derivative sovereign immunity, GEO has waived it. Pls.' Mot. for Summ. J., ECF No. 260 at 29 n.5. I disagree. First, I question whether derivative sovereign immunity is an affirmative defense. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (holding derivative qualified immunity operates "as a jurisdictional bar to suit and not as a merits defense to liability"). Second, GEO included derivative sovereign immunity in the Scheduling Order issued in October 2018, *see* Am. Stipulated Scheduling & Disc. Order at 5, 19, ECF No. 149, and Plaintiffs did not seek to strike that aspect of the Order. Plaintiffs have since conducted discovery related to derivative sovereign immunity and filed an associated Motion for Summary Judgment. Thus, a finding that GEO waived its ability to raise derivative sovereign immunity is not appropriate.

government contractors, as agents of the government, from liability for actions that were directed or required by the federal government, so long as the government's authority to carry out the contracted-for services was validly conferred by Congress. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-22 (1940). In other words, a contractor cannot be held liable for executing the government's will. *Id*. at 21. But, when a contractor's actions were neither directed nor required by the government, the contractor will not be shielded by derivative sovereign immunity and can be held liable under state or federal law for conduct causing injury. *Campbell-Ewald*, 577 U.S. at 166-67.

Similarly, but distinctly, the government contractor defense is grounded in principals of federalism. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). Just as government actors are protected from liability when federal common law preempts state law to protect in areas of "uniquely federal interests," *id.* (citation omitted), contractors are protected by the government contractor defense for violations of state law "[w]here the government has directed a contractor to do the very thing that is the subject of the claim," *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001). As justification for the defense, the Supreme Court has explained that "an independent contractor performing its obligation under a . . . contract, rather than an official performing his duty as a federal employee, . . . obviously implicate[s] the same interest in getting the Government's work done." *Boyle*, 487 U.S. at 505. The defense is only proper when the operation of state law results in either (1) a "significant conflict" with "an identifiable federal policy or interest," *id.* at 507 (quotation marks omitted) (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)), or (2) the frustration of "specific objectives of federal legislation," *id.* (quotation marks omitted) (quoting *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)).

A party asserting the defense must first show that a contract concerns an area of "uniquely federal interests." *Id.* at 504 (citation omitted). Next, it must establish a clash between a state law and a federal policy or objective. *Id.* at 507. Finally, the party seeking its protection must satisfy "the three limiting criteria for contractor immunity." *Id.* at 510. To do so, the contractor must prove that "(1) the government approved reasonably precise specifications; (2) the contractor's performance conformed to those specifications; and (3) the contractor alerted the government to dangers known to the contractor but not to the United States." *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 255 (4th Cir. 2021) (quotation marks, brackets, and citation omitted).

## B. Analysis

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of the present analysis, the parties have filed cross motions for summary judgment, so I am "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). Because I find ICE neither directed nor required GEO to improperly compel detainees' labor or to compensate VWP participants only $1.00 per day, an extension of the government's immunity through either derivative sovereign immunity or the government contractor defense is inappropriate as a matter of law.

### 1.   Derivative Sovereign Immunity

The derivative sovereign immunity analysis articulated in *Yearsley v. W.A. Ross
Construction Co.*, 309 U.S. at 20-22, can be reduced to the following two inquiries: First, was the
authority exercised by ICE in contracting with GEO validly conferred on ICE by Congress?
Second, were GEO's challenged actions required by its contractual obligations?

*TVPA Claim*

For Plaintiffs' TVPA claim, the first of the two inquiries for derivative sovereign
immunity can be answered in the affirmative. *See* 8 U.S.C. §§ 1103, 1226, 1231. On the second
inquiry, however, I come to the opposite conclusion.

GEO claims it is protected by derivative sovereign immunity because its disciplinary
practices and purported threats were required by ICE's PBNDS. But GEO's cleaning policies,
which it independently developed and implemented, far exceeded its contractual obligations with
ICE. Under GEO's policies, all detainees were required to regularly clean "all commonly
accessible areas" in their housing units. *See, e.g.*, 2005 Handbook, ECF No. 273-1 at 18. Those
areas included "walls, floors, windows, window ledges, showers, sinks, toilets, tables, and
chairs." *Id.* The day room area was to be "kept clean at all times." *Id.* If detainees refused to
participate in this effort, they faced disciplinary segregation. *See, e.g.*, *id.*

In comparison, the relevant ICE-GEO contracts, through their incorporation of the
PBNDS, only required detainees to tend to their "personal housekeeping." *See, e.g.*, 2000
PBNDS, ECF No. 261-10 at 3. By that, it meant keeping any "immediate living areas . . . neat
and orderly" through simple tasks such as making beds, stacking papers, and removing clutter

from the floor. *Id.*[16] ICE's National Detainee Handbook similarly limited the scope of a

detainee's cleaning duties to only those areas that a detainee used himself, informing detainees:

"[Y]ou must keep areas that *you* use clean, including *your* living area and any general-use areas

that *you* use." 2013 ICE Handbook, ECF No. 310-1 at 18 (emphasis added). And by

distinguishing between a detainee's living area and "any general-use areas," the ICE Handbook

confirms the phrase "living area" does not encompass the entire pod. *Id.* The enforcement

mechanism for these provisions is found in the PBNDS' disciplinary scale, which references

"[r]efusal to clean assigned living area" as a "high moderate" offense for which disciplinary

segregation is a potential sanction. 2000 PBNDS, ECF No. 261-10 at 24; 2008 PBNDS, ECF No.

261-9 at 56-57; 2011 PBNDS, ECF No. 261-8 at 47-48.

GEO attempts to stretch the meaning of "living area" so that its policies fit within the

PBNDS. Specifically, GEO contends, "[w]hile the phrase 'living area' is not defined in the

PBNDS or the contract, it has a commonly accepted plain meaning in the detention context: a

detainee's housing unit in which he or she occupies each day." Resp. to Pls.' Mot. for Summ. J.

at 27-28 n.16, ECF No. 270; *see also id.* at 26 ("There is no question that the entirety of where a

detainee lives and sleeps is his or her 'living area.'"). In support of this expansive definition,

GEO cites several cases in which courts describe prisoner and pretrial detainee living areas to

include common areas. *See id.* at 27-28 (citing *VanPatten v. Allen Cty. Jail*, No. 1:11-CV-73-

---

[16] The parties dispute the extent of personal housekeeping requirement found within the PBNDS.
Plaintiffs seek to limit such housekeeping to the four tasks specifically mentioned, while
Defendants argue the four tasks constitute a non-exclusive list. The scope of the government-
directed personal housekeeping requirement is significant because GEO may be entitled to
derivative sovereign immunity for its enforcement of that requirement. This dispute need not be
resolved, however, because Plaintiffs do not make the claim that detainees' personal
housekeeping tasks constitute forced labor in violation of the TVPA. Resp. to Mot. for
Decertification, ECF No. 339 at 59. Thus, the fact of any derivative sovereign immunity against
such a claim is irrelevant.

PPS, 2013 WL 2149447, at *2 (N.D. Ind. May 16, 2013); *Treadway v. Rushing*, No. 4:10 CV

2749, 2011 WL 13568, at *1 (N.D. Ohio Jan. 4, 2011); *Jones v. Wittenburg*, 509 F. Supp. 653,

702 (N.D. Ohio 1980); *Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993)). But none of the

cited cases concern the PBNDS or a privately run ICE detention facility, so they have little

relevance to an interpretation of the ICE-GEO contract.

GEO also points to a provision of the PBNDS that states: "The same information shall be

posted in the living areas (or 'pods') of the facilities." 2011 PBNDS, ECF No. 271-10 at 3. But

this use of "living areas" is not proceeded by the word "your," "assigned," or "immediate" as

when it is used in the disciplinary scale and in discussing the cleaning requirements. If anything,

the PBNDS's requirement that information be posted in the "pods" for widespread

communication draws further distinction between the housekeeping of the detainees' personal

living areas and general housekeeping in the common areas. *See, e.g.*, 2000 PBNDS, ECF No.

261-10 at 3 ("Work assignments are voluntary. However, all detainees are responsible for

personal housekeeping.").

The PBNDS did not mandate that detainees clean the common areas or clean up after

others. Yet, GEO's policies clearly did, and GEO extended the PBNDS disciplinary scale to

cover its expanded cleaning mandates. As Plaintiffs state: "The fact that ICE authorized solitary

confinement for certain defined [high moderate] offenses is not *carte blanche*—much less a

specific directive—to use the same punishment to enforce GEO policies that deviate from the

PBNDS." Pls.' Reply in Supp. of Mot. for Summ. J., ECF No. 286 at 102. One can imagine a

situation in which solitary confinement may be an appropriate sanction for a detainee who

obstinately refuses to tend to his personal space and, by doing so, places Facility staff and other

detainees at risk. Such a situation falls far afield of the Facility's desire to have detainees clean

up after others, and its corresponding threats of punishment for detainees who refuse to assist in efforts to clean common areas. GEO likewise cannot claim it is protected simply because ICE officials "reviewed and cleared" its policies. *See* Ragsdale Dep. 39:3-6, ECF No. 271-11. The audit forms used by ICE are not specific enough to show that it directed or required GEO's cleaning policies and their implementation. And the COTR did not have the authority to approve changes to the ICE-GEO contracts.

To derive sovereign immunity from the federal government, GEO must prove it was "simply perform[ing] as the Government directed." *Campbell-Ewald Co.*, 577 U.S. at 167; *see also Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720, 732 (9th Cir. 2015) (holding derivative sovereign immunity "is limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications'" (citation omitted)). GEO's arguments and citations to case law do not carry it far enough to place it within the penumbra of ICE's sovereign immunity for purposes of this suit.

*Unjust Enrichment Claim*

GEO asserts ICE's sovereign immunity bars Plaintiffs' unjust enrichment claim because ICE required it to pay "exactly $1.00 per day" from October 22, 2011, to June 22, 2013, while the 2008 PBNDS was in force, and then established $1.00 per day as a minimum from June 22, 2013, through the end of the class period. GEO's Cross Mot. for Summ. J. at 22-23, ECF No. 284. In essence, GEO claims it simply did as it was told or complied with the "minimum standards . . . directed by the federal government." *Id.* at 23 (emphasis omitted).

To begin, GEO's statement of the law on derivative sovereign immunity is incorrect. It states that "the law requires a contractor [to] actually *violate* its contract with the federal

government" for the contractor to lose its derivative immunity. *Id.* (citing *Cunningham*, 888 F.3d at 643). At no point does the Fourth Circuit in *Cunningham*—much less the Supreme Court— suggest an injured party must prove a contractual violation as a prerequisite to overcoming a government contractor's derivative sovereign immunity. Instead, the *Cunningham* Court describes a violation of "both federal law and the Government's explicit instructions" as a sufficient, but not necessary, condition for finding that a contractor is not entitled to derivative sovereign immunity. *Cunningham*, 888 F.3d at 647 (quoting *Campbell-Ewald*, 577 U.S. at 166). So, even if I were to conclude GEO did not violate its contract with ICE, as GEO insists, my inquiry would not be over.

To enjoy the vast protection of derivative sovereign immunity, GEO must show (1) ICE was authorized by Congress to dictate compensation for VWP participants (2) GEO's challenged actions were required by its contractual obligations. Plaintiffs dispute whether ICE's authority was validly conferred. I find GEO has not satisfied the second showing, and so decline to address Plaintiffs' arguments related to the first.

GEO must establish that it acted as ICE's agent in paying VWP class members $1.00 per day during the class period. *Yearsley*, 309 U.S. at 20-21 ("The action of the agent is the act of the government." (quotation marks and citation omitted)). Put differently, if GEO's agency did not require it to pay VWP class members only $1.00 per day, then GEO can be held liable for any consequential injury to the class. *See Campbell-Ewald*, 577 U.S. at 167.

The 2011 contract did not direct or require GEO to compensate VWP workers $1.00 per every eight hours worked under the program. Rather, it set the outer boundaries of the program and permitted GEO to implement the program through its discretionary decision-making within those boundaries. Among the boundaries enumerated by ICE were the requirements that GEO

was to: (1) permit detainees to work no longer than "8 hours daily, 40 hours weekly," 2008

PBNDS, ECF No. 261-9 at 63; (2) provide compensation for which it would be reimbursed at

$1.00 per day per detainee, 2011 Contract, ECF No. 262-2 at 5; and (3) comply with

"[a]pplicable federal, state and local labor laws and codes," 2011 Contract, ECF No. 262-2 at 38.

While this distinction is nuanced and perhaps difficult to parse at first blush, it is nevertheless

significant: it is the distinction between the government expressing its will in the form of a

contractual directive and the government permitting GEO to determine what is appropriate as an

exercise of discretion. In other words, it is the distinction between an agent and an independent

contractor. "[U]nder the agency principles underlying *Yearsley* immunity, courts have looked to

see if the contractor is hired as an 'independent contractor,' expected to use its expertise and

discretion to decide how best to get the job done, or as something more akin to an agent of the

United States, just following orders." Kate Sablosky Elengold & Jonathan D. Glater, *The

Sovereign Shield*, 73 Stan. L. Rev. 969, 1001 (2021). Here, GEO was not just following orders.

GEO disagrees, claiming its hand was forced by the terms of its contract with ICE, but

there is no evidence that ICE prohibited GEO from compensating its workers more than $1.00

per day. Instead, the evidence suggests the participants' compensation was left to GEO's

discretion.

By listing the "actual cost" of $1.00 per day for reimbursement purposes, ICE was setting

out one of the defining features of the VWP: its willingness to reimburse GEO $1.00 per day for

detainees' participation. The 2008 PBNDS stated an amount of $1.00 per day, and later the 2011

PBNDS provided "at least $1.00 (USD) per day," as an appropriate minimum to bring about

ICE's desired outcomes: the enhancement of essential operations and services and the reduction

of "[t]he negative impact of confinement . . . through less idleness, improved morale and fewer

disciplinary incidents." 2008 PBNDS, ECF No. 261-9 at 60; *see also* 2011 PBNDS, ECF No. 261-8 at 50. But GEO provides no reason for its suggestion that ICE directed it to pay *no more than* $1.00 per day. ICE's decision to permit GEO to establish specific VWP compensation terms is logical. The government has no interest in directing a private entity to maximize its profits, and the amount paid to VWP workers directly affected GEO's profits.[17] Krumpelmann Dep. 23:23-24:4, ECF No. 261-6; Amber Martin Dep. 107:22, ECF No. 261-2.

As before, GEO cannot assert derivative immunity simply because ICE officials "reviewed and cleared" its policies. *See* Ragsdale Dep. 39:3-6, ECF No. 271-11. The audit forms do not mention the rate of pay, the hours, works, or whether the compensation terms applied with state and local laws and regulations. And again, the COTR did not have the authority to approve changes to the ICE-GEO contract.

I conclude ICE left the payment amount to GEO's discretion, and "nothing in *Yearsley* extended immunity to [government] contractors exercising a discretionary governmental function," *Cabalce*, 797 F.3d at 732 (brackets and citation omitted). The Supreme Court has described the critical aspect of *Yearsley's* derivate qualified immunity as a "contractor's performance in compliance with all federal directions." *Campbell-Ewald*, 577 U.S. at 167 n.7. Because GEO was not complying with any federal direction or contractual requirement to

---

[17] Mr. Ragsdale, GEO's Executive Vice President for Contract Compliance, testified the detainees' work through the VWP is cost neutral at $1.00 per day—that its profits would go down if it paid VWP workers more and that they would go up if it added additional cleaning staff. Ragsdale Dep. 167:24-168:17, ECF No. 306-14. But the 2008 and 2011 PBNDS do not envision VWP participants serving as a substitute for cleaning staff. Instead, they are meant to "enhance[]" the "[e]ssential operations and services" provided by GEO. 2008 PBNDS, ECF No. 261-9 at 60; 2011 PBNDS, ECF No. 261-8 at 50. Mr. Ragsdale's testimony further supports my determination that ICE's interest in requiring the VWP is separate and apart from GEO's profitability concerns.

compensate VWP participants $1.00 per day and no more, but was instead exercising its discretion, GEO cannot escape liability on the grounds that it is immune from suit.


### 2.  Government Contractor Defense

Having found that derivative sovereign immunity does not bar either of Plaintiffs' claims, I turn to GEO's government contractor defense. GEO initially raised the defense in a Motion to Dismiss. At that time, I found that for the period in which the 2011 PBNDS were applicable to the ICE-GEO contract, "there is no 'significant conflict' between a federal interest and state law as required for the assertion of the government contractor defense." *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1135 (D. Colo. 2015). I now consider GEO's arguments regarding the 2008 PBNDS and extend my previous holding to the time covered by the earlier PBNDS.

Before applying *Boyle's* three-part test, I must first decide whether the contract between GEO and ICE involves "uniquely federal interests." *Boyle*, 487 U.S. at 504. If it does, then I must determine whether GEO has established a significant clash between state law and a federal policy objective. A conflict between state law and federal policy is significant "when state law [is] contrary to a contract term actually selected by [a] federal agency." *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1098 (10th Cir. 2015). The detention of immigrants in removal proceedings is undoubtedly a uniquely federal interest as a necessary part of the government's efforts to enforce immigration laws and regulations. However, GEO cannot properly avail itself of the government contractor defense because it cannot prove that the operation of state law results in a "significant conflict" with federal policy or that it frustrates some specific federal objective. *Boyle*, 487 U.S. at 507.

In arguing that Plaintiffs' unjust enrichment claim poses a conflict between Colorado law and the federal government's interest in detaining immigrants in removal proceedings, GEO primarily relies on the Tenth Circuit's opinion in *Helfrich v. Blue Cross & Blue Shield Association*. GEO's Cross Mot. for Summ. J. at 24-26, ECF No. 284. In that case, the plaintiff was a federal employee who received benefits through her federal health insurance plan for treatment related to injuries sustained in a car accident. *Helfrich*, 804 F.3d at 1094. After settling with the other driver, her insurer sought reimbursement for benefits it had paid in accordance with a subrogation provision in the contract governing her health care plan. *Id.* The plaintiff filed suit on the grounds that Kansas law prohibited subrogation and reimbursement clauses in insurance contracts. *Id.* The Tenth Circuit held that federal common law preempted the Kansas antisubrogation regulation because the regulation conflicted with uniquely federal interests. *Id.* at 1098-99. The court emphasized two particularly adverse outcomes if it were to allow Kansas state law to override the health care plan's subrogation provision: (1) the plan premiums, which were "paid largely by the government," were likely to increase, and (2) it "would create unfairness within the ranks of government employees." *Id.* at 1099. The *Helfrich* Court noted that the force of the interests was "especially strong" because the insurer "act[ed] as only a service agent between the federal government and its own employees." *Id.* at 1100.

In stark contrast to the significant conflict between state law and federal policy in *Helfrich*, the application of Colorado unjust enrichment law to GEO's VWP (1) will not have a direct impact on government expenditures; (2) will have no significant impact on the government's contractual obligations and rights; and (3) will not affect the government's interest in detaining certain immigrants during the pendency of their immigration court proceedings.

First, the only pecuniary interests directly implicated in the decision to pay more than $1.00 per day are GEO's profit margins. *See* Krumpelmann Dep. 23:23-24:4, ECF No. 261-6; Amber Martin Dep. 107:22, ECF No. 261-2. GEO may argue that the increased costs will be passed on to the government, but GEO has managed to pay its workers as much as $4.00 per day at another detention facility—while being reimbursed only $1.00 per day. Amber Martin Dep. 109:15-110:13, ECF No. 261-2. And if GEO tried to pass a significant increase in cost on to the government, the ICE-GEO contract might not be renewed. *See* Venturella Dep. 165:25-166:4, ECF No. 336-17.

Second, there is no basis to conclude Plaintiffs' unjust enrichment claim will impact ICE because the VWP does not concern federal employees and additional compensation under the VWP does not affect federal contractual rights or obligations. GEO states that it would "violate its contract with ICE" if it "pa[id] detainees more than $1.00 per day," but GEO does not explain how that violation would impact ICE's contractual rights. In any case, GEO contradicts itself by admitting—in response to Plaintiffs' assertion that "ICE does not prohibit its contractors from paying more than $1.00 per day for work performed in the VWP"—that is not aware of a *categorical* prohibition on paying more than $1.00 per day to detainee VWP participants." GEO's Reply in Supp. of Mot. for Summ. J., ECF No. 350 at 58.

Third, the federal interests expressed in the form of ICE's stated objectives can all be accomplished with payments greater than $1.00 per day, and likely to a greater extent. *See* 2008 PBNDS, ECF No. 261-9 at 60; 2011 PBNDS, ECF No. 261-8 at 50. In short, GEO's potential compliance with state law would not have generated a conflict with federal policy or the frustration of federal objectives because ICE did not mandate a pay rate for VWP participants.

GEO also mentions the interest in "the uniformity of the federal government's treatment of ICE detainees." GEO's Cross Mot. for Summ. J. at 26. However, the language of the ICE-GEO contract does not indicate that uniformity in participant compensation was an important federal objective. Instead, independent contractors such as GEO have varying obligations in their administration of the VWP, depending on the states and localities in which they operate. In making the VWP a contractual requirement, ICE listed objectives such as enhancing essential operations and improving morale that are inherently context-specific and bound to differ based on the needs of a particular facility. If, in its discretion, ICE considered uniformity in VWP worker conditions to be important, it could have provided more granular guidance for the terms of the program. Moreover, ICE explicitly instructed that the program was required to comply with the varying obligations of state and local labor laws. The inclusion of that condition in both the contract and the PBNDS is evidence that ICE envisioned the "inconsistent patchwork of state laws and regulations" that GEO urges this court to protect against. *Id.* The evidence shows the government merely determined the minimum compensation adequate for contracting purposes but did not go so far as to confirm that compensation complied with all applicable laws or to mandate uniformity across all federal detention facilities. It is no surprise, then, that VWP rates do vary from facility to facility. *See* Amber Martin Dep. 109:1-110:6, ECF No. 261-2.

Even if I were to conclude Plaintiffs' unjust enrichment claims clashed with the relevant ICE-GEO contract provisions, application of *Boyle's* three-part test would lead me to the same conclusion. I have already found GEO's contract with ICE granted it discretion regarding the amount and terms of payment under the VWP. It follows that the government did not approve "reasonably precise specifications" as to those aspects of the VWP. *Express Scripts*, 996 F.3d at 255 (citation omitted).

Although the ICE-GEO contract required some compensation and prescribed that GEO would be reimbursed $1.00 per day, it did not require any specific work schedule or payment. In other words, the details of the VWP compensation scheme were not contract terms "actually selected by [ICE]." *Helfrich*, 804 F.3d at 1098. "[S]tripped to its essentials," the argument that *Boyle's* three-part test does not limit a contractor's immunity "is fundamentally a claim that '[t]he Government made me do it.'" *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (quoting *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990)); *see also Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1482 (5th Cir. 1989) ("[T]he purpose of the [*Boyle*] test is to deny the defense to a government contractor that is itself ultimately responsible for the []defect.") (quotation marks and citation omitted)). GEO cannot show that the government made it pay VWP workers $1.00 per day and no more.

Consequently, I find that while federal interests are clearly implicated by the ICE-GEO contract, there is no obvious clash between federal policies or objectives and the state law underlying Plaintiffs' unjust enrichment claim. Nor was GEO required by ICE to pay only $1.00 per day. The government contractor defense is therefore inapplicable and cannot shield GEO from liability.

## C. Ruling on Cross Motions for Summary Judgment

The record shows that GEO has not simply performed as ICE directed. GEO went beyond its contract with ICE in requiring detainees to clean up all common areas and after other detainees under the threat of segregation. And GEO's contract with ICE gave GEO discretion to decide how much to pay VWP participants at the Facility. Thus, GEO is not entitled to derivative

sovereign immunity, and its government contractor defense fails. As a result, Plaintiffs' Motion

for Summary Judgment is granted, and GEO's Cross Motion is denied.


### III. GEO's Motion to Dismiss for Failure to Join a Required Party (ECF No. 307)[18]

GEO's Motion to Dismiss for Failure to Join a Required Party argues that, even if GEO is

not entitled to derivative sovereign immunity or protection as a government contractor,

Plaintiffs' claims should be dismissed because ICE was not joined as a party. I find ICE is not a

necessary party under Federal Rule of Civil Procedure 19(a), and therefore deny the Motion.


### A. Legal Standard

Federal Rule of Civil Procedure 19 governs when a party must be joined. The Rule

provides that joinder is necessary if:

(A)     in that person's absence, the court cannot accord complete relief among
        existing parties; or
(B)     that person claims an interest relating to the subject of the action and is so
        situated that disposing of the action in the person's absence may:
  (i)       as a practical matter impair or impede the person's ability to protect
            the interest; or
  (ii)      leave an existing party subject to a substantial risk of incurring double,
            multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a required party cannot be joined, the court then determines "whether, in

equity and good conscience, the action should proceed among the existing parties or should be

dismissed." Fed. R. Civ. P. 19(b). In effect, the analysis involves two questions: First, is the party

necessary to the suit? And if so, is the party indispensable? *Rishell v. Jane Phillips Episcopal*

*Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). If the absent party is both necessary and

---

[18] Plaintiffs' Response to GEO's Motion to Dismiss is ECF No. 338, and GEO's Reply in
Support of its Motion is ECF No. 348. GEO has filed a related Notice of Supplemental Authority
(ECF No. 361), and Plaintiffs have responded to that Notice (ECF No. 362).

indispensable but cannot be joined, "the suit must be dismissed." *Id.* "The moving party has the burden of persuasion in arguing for dismissal." *Id.* (citation omitted). I find ICE is not a necessary party and therefore need only conduct the initial inquiry to determine that dismissal is not proper in this case.

### B. Analysis

To determine whether ICE is a necessary party under Rule 19(a), I must assess three factors: "(1) whether complete relief would be available to the parties already in the suit, (2) whether [ICE] has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations." *Rishell*, 94 F.3d at 1411. GEO argues all three of these factors render ICE a necessary party. But for the same reasons GEO is not protected by derivative sovereign immunity or the government contractor defense, GEO's arguments for dismissal miss the mark.

#### 1. Complete Relief is Available to the Parties

GEO characterizes the ICE-GEO contracts as being "at the heart of Plaintiffs' claims" because GEO's allegedly unlawful actions were made in the course of its performance under the contracts. Mot. to Dismiss, ECF No. 307 at 21. Without ICE's joinder, GEO contends, there will be no accountability for ICE's involvement in any violations of the TVPA.

But as I explained in my analysis of GEO's claims to derivative sovereign immunity and the government contractor defense, the ICE-GEO contracts did not direct or require GEO's challenged actions. Consequently, the cases cited by GEO in which the contract is central to the

dispute are inapposite. *See Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518 (D.

Conn. 1991) (finding contracting party indispensable in breach of contract action); *Rivera Rojas*

*v. Loewen Group Int'l, Inc.*, 178 F.R.D. 356 (D.P.R. 1998) (subsidiary was a necessary party

where plaintiffs alleged parent corporation used subsidiary to breach contract); *Ente Nazionale*

*Idrocarburi v. Prudential Sec. Grp., Inc.*, 744 F. Supp. 450 (S.D.N.Y. 1990) (holding contracting

party indispensable in tortious interference claim due to possibility of inconsistent adjudications

in suits pending elsewhere and because absent party had "real interests that [were] clearly at

stake").

Plaintiffs do not seek to set aside or recover under the ICE-GEO contracts. Instead, they

challenge GEO's interpretation of and performance outside the contract. They allege GEO

unlawfully employed ICE's disciplinary scale to implement a cleaning policy that GEO devised

without ICE's involvement (i.e. the TVPA claim), and they allege GEO was unjustly enriched by

its failure to appropriately compensate participants of its VWP (i.e. the unjust enrichment claim).

Plaintiffs do not challenge any actions taken by ICE or assert that the contract itself is the source

of their harm.

GEO accurately points out that Plaintiffs seek a legal determination that it is obligated to

pay more than $1.00 per day to detainees participating in the VWP, but GEO is wrong that such

a determination would "invalidat[e] a portion of ICE's contract with GEO that sets the payment

of $1.00 as a permissible floor." Mot. to Dismiss, ECF No. 307 at 23. While the contractual

provision mentions $1.00 as a minimum compensation amount, it is not the only applicable

provision. Instead, it is one aspect of the program's required framework within which GEO was

expected to exercise its discretion. Other provisions of the relevant contract required compliance

with federal and state labor laws. *See* 2011 Contract, ECF No. 262-2 at 38. Likewise, I have no

occasion to "invalidate a portion of ICE's disciplinary severity scale as violating the TVPA, despite the fact that GEO is contractually obligated to comply with the scale." Mot. to Dismiss, ECF No. 307 at 23. Plaintiffs do not claim the personal housekeeping tasks constitute forced labor, and ICE's disciplinary severity scale only applies to those tasks. *See* Resp. to Mot. for Decertification, ECF No. 339 at 59. While the terms of the ICE-GEO contracts are relevant, they are nevertheless peripheral to Plaintiffs' claims. Thus, complete relief is available to Plaintiffs despite ICE's absence.

### 2.  ICE Has No Legally Protected Interest in the Suit

GEO primarily relies on three interests that could be impaired if ICE is not a party to the suit: (1) ICE's interest in defending against allegations that its policies violate federal law; (2) ICE's contracts with other private parties; and (3) ICE's reputational interests. But Plaintiffs' claims do not depend on a finding that ICE's policies violated federal law. Instead, they allege GEO's interpretation and expansion of the policies violate federal law. Similarly, ICE's contracts with other parties are not impacted by a judicial determination that GEO's actions—which were neither required nor directed by ICE—violated state or federal law. Finally, GEO has identified no specific legal protections to any reputational interests ICE may have. *Cf. Burger King Corp. v. Am. Nat. Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 677 (N.D. Ill. 1988) (finding subtenant's "ability to protect his interests obviously could be severely impaired by this lawsuit"); *see also Ward v. Apple Inc.*, 791 F.2d 1041, 1053 (9th Cir. 2015). GEO has failed to identify any legally protected interest ICE has that relates to the subject matter of the present action.

On the other hand, ICE is a governmental entity that does have a clear interest in the enforcement of federal laws. That interest, however, is protected without ICE joining the suit as a party.[19] Moreover, even if ICE's legally protected interests were somehow implicated, ICE is aware of the claims in this case and has not affirmatively asserted any interest. Instead, it has only participated in discovery proceedings and to intervene in opposition to a motion for writ of habeas corpus filed by one of the named Plaintiffs. *See, e.g.*, ICE Mot. for Reconsideration, ECF No. 281.

GEO articulates a sweeping rule that "[w]here a contract between a sovereign entity and a defendant is implicated in a lawsuit, the sovereign entity is a necessary party under Rule 19(a)." Mot. to Dismiss, ECF No. 307 at 21 (citing *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996)). There is no such rule. In *U.S. ex. Rel. Hall v. Tribal Dev. Corp.*, the plaintiffs alleged that a contract for goods and services between the Menominee Tribe and a private corporation violated several federal statutes, but the Tribe was unwilling to join the suit. 100 F.3d at 478. The Seventh Circuit affirmed the district court's dismissal of the action under Rule 19 based on the reasoning that "a judgment in favor of the plaintiffs undoubtedly would be prejudicial to the [sovereign entity] while the plaintiffs' interest in the subject matter of the action was tenuous and indirect." *Id.* (quotation marks and citation omitted). Here, the opposite is true. A judgment in Plaintiffs' favor would have no bearing on ICE's rights or obligations. Also, Plaintiffs in this case have an interest that is anything but tenuous and indirect: they allege they have been the victims of forced labor in violation of federal law while held in federal

---

[19] There is merit to GEO's contention that a judicial determination that ICE acted without Congressional authority would directly implicate ICE's legal interests, but thus far I have had no need to make any findings regarding ICE's authorization from Congress for any aspect of the VWP.

immigration custody and that a large private corporation was unjustly enriched by labor performed on a voluntary basis.

GEO insists I must determine "whether the PBNDS . . . violate state and federal laws," reinforcing its argument by pointing to Plaintiffs' assertion that GEO's challenged cleaning policies violate its contract with ICE. Mot. to Dismiss, ECF No. 307 at 22 (citing Pls.' Mot. for Summ. J., ECF No. 260 at 33-35). However, GEO's cleaning policy was "not created by ICE." Ely Decl. ¶ 22, ECF No. 261-7.[20] GEO unilaterally extended the PBNDS disciplinary scale to cover cleaning mandates that were not required by ICE, and it made the discretionary decision to reimburse VWP workers only $1.00 per day.

In a similar argument, GEO maintains that the practices Plaintiffs challenge under the TVPA "are required by GEO's contract with ICE and the PBNDS." Mot. to Dismiss, ECF No. 307 at 25. GEO relies heavily on *Boles v. Greenville Housing Authority*, 468 F.2d 476 (6th Cir. 1972). In *Boles*, the Sixth Circuit determined that it could not grant the relief sought without a concomitant holding that the Department of Housing and Urban Development "misinterpret[ed] its own guidelines . . . [and] misconceived its function and prerogatives under the Urban Renewal Act." 468 F.2d at 479. Because GEO's challenged policies were not required by ICE, *Boles* provides no legal support to GEO's contention that ICE has any legally protected interest in this suit.

As Plaintiffs have made clear, their claims in this case "do not challenge ICE's rules or decisions, but rather GEO's policies that skirt those rules." Resp. to Mot. to Dismiss, ECF No. 338 at 20. Moreover, the determination that ICE did not require or direct GEO's cleaning

---

[20] GEO contends Ms. Ely's "use of the term 'HUSP' is not consistent with the term as defined by Plaintiffs in this litigation." GEO Reply in Supp. of Mot. for Summ. J., ECF No. 350 at 40. However, no evidence in the record contradicts Ms. Ely's assertion that ICE did not draft the policies relevant to Plaintiffs' claims, other than as set out in this Order.

policies or the associated use of the disciplinary scale fortifies ICE's rights. ICE's interests are not directly implicated by Plaintiffs' claims, and any interests ICE does have in the outcome of the suit are not impaired by its absence.

### 3. GEO Would Not Be Subjected to a Risk of Multiple or Inconsistent Obligations

GEO contends a judgment in Plaintiffs favor may subject it to inconsistent obligations because (1) GEO may be found guilty of violating the TVPA while "simultaneously contractually required by ICE to continue implementing the very policies that resulted in the TVPA violation," and (2) a determination that ICE has acted *ultra vires* in carrying out the VWP would obligate GEO to comply with a program that lacks Congressional authorization. Mot. to Dismiss, ECF No. 307 at 31-33. I dispensed with both contentions above. First, the ICE-GEO contracts do not require GEO to implement the disciplinary policies in the manner alleged. On the contrary, GEO's contract with ICE requires it to comply with the law. *See, e.g.*, 2011 Contract, ECF No. 262-2 at 38. Any doubt on this point is resolved by GEO's decision to formalize an internal policy against placing detainees in solitary confinement for refusing to clean. *See* Amber Martin Dep. 134:13-21, ECF No. 271-6. Second, Plaintiffs' claims do not necessitate a finding regarding ICE's Congressional authorization. As such, there is no risk that GEO will be subjected to inconsistent obligations based on the outcome of the present lawsuit.

### C. Ruling on GEO's Motion to Dismiss

GEO has failed to demonstrate that ICE is a necessary party to this litigation, and thus, its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 19 is denied.

## IV. GEO's Motions for Summary Judgment[21] and for Decertification of Class[22]
### (ECF Nos. 305 & 312)

I turn now to GEO's motions relating to the merits of Plaintiffs' claims: its Motions for Summary Judgment and for Decertification. GEO's Motion for Summary Judgment argues that judgment as a matter of law is appropriate on both Plaintiffs' unjust enrichment claim and TVPA claim. GEO asserts Plaintiffs' unjust enrichment claim must fail because a valid contract existed between GEO and VWP participants and GEO actually lost profits due to the mandated VWP. Regarding Plaintiffs' TVPA claim, GEO insists Plaintiffs cannot show: (1) they were subjected to serious harm under the Act; (2) that GEO possessed the requisite mental state; and (3) that GEO's purported threats caused the detainees to clean. Additionally, GEO contends Plaintiffs' TVPA claim is partially barred by the applicable statute of limitations.[23]

GEO's Motion for Decertification maintains—just as its opposition to Plaintiffs' Motion for Certification did—that Plaintiffs TVPA claim cannot be prosecuted on behalf of the certified class because individual issues predominate. Specifically, GEO argues class members were not subjected to a uniform forced-labor policy, had various motivations for cleaning other than any threats GEO made, and performed various types of cleaning tasks, some permissible under the TVPA and some impermissible. GEO's Decertification Motion also repeats two of the points raised in GEO's Motion for Summary Judgment, namely that Plaintiffs cannot establish they

---

[21] Plaintiffs' Response to GEO's Motion for Summary Judgment is ECF No. 336, and GEO's Reply in Support of its Motion is ECF No. 350. The Notice of Supplemental Authorities GEO filed in ECF No. 335 pertains to its Motion for Summary Judgment as well. GEO later filed another Notice of Supplemental Authorities (ECF No. 361), and Plaintiffs responded to that Notice (ECF No. 362).

[22] Plaintiffs' Response to GEO's Motion for Decertification is ECF No. 339, and GEO's Reply in Support of its Motion is ECF No. 352.

[23] Another argument GEO raises is that Plaintiffs cannot seek injunctive relief under the TVPA. In their Response to GEO's Motion, Plaintiffs confirm that their TVPA claim does not seek injunctive relief.

were subjected to serious harm or that GEO acted knowingly. Lastly, the Motion seeks exclusion of female detainees from the class, claiming that no female segregation unit existed at the Facility.

GEO's TVPA-related arguments in its Summary Judgment and Decertification Motions substantially overlap, and so I consider them first. I conclude Plaintiffs have put forward sufficient evidence to establish the disputed elements of their TVPA claim and common issues continue to predominate such that decertification is not warranted. I then evaluate GEO's contentions regarding Plaintiffs' unjust enrichment claim. I determine that whether GEO benefited from the VWP involves genuine disputes of material fact and that the VWP agreement does not prohibit Plaintiffs' claim.

**A. TVPA Claim and Class**

GEO's overall premise is that Plaintiffs cannot prove specific elements of their TVPA claim without relying on evidence that is unique to individual Plaintiffs, undermining the basis for certification. The majority of GEO's objections to certification are ones it raised previously that were rejected both in my Certification Order and in the Tenth Circuit's opinion affirming that Order. The few new developments it highlights are exaggerated and insufficient to warrant decertification. After a thorough review of the transcripts, declarations, and documents submitted by the parties, I find Plaintiffs can sustain their TVPA claim with common and representative evidence.

### 1. The TVPA

The forced labor provision of the TVPA makes it unlawful for anyone to:

knowingly provide[] or obtain[] the labor or services of a person. . .

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). Plaintiffs' TVPA claim asserts that GEO obtained detainees' labor by physical restraint or threatening physical restraint, by causing them serious harm or threatening serious harm, and via a scheme, plan, or pattern intended to cause them to believe that they would suffer serious harm or physical restraint if they did not labor. Compl. ¶¶ 76-78, ECF No. 1.

### 2. Summary Judgment Standard

As already stated, summary judgment is appropriate when a party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if a reasonable jury could return a verdict for Plaintiffs. *Id.* In determining whether such genuine disputes of material fact exist, I must view the facts recited above in the light most favorable to

Plaintiffs and resolve all disputed facts in their favor. *See McCoy v. Meyers*, 887 F.3d 1034, 1044

(10th Cir. 2018).

### 3. Decertification Standard

The order granting class certification in this case may be altered or amended at any time

before final judgment. Fed. R. Civ. P. 23(c)(1)(C). However, "decertification is a drastic step, not

to be taken lightly." 3 Newberg on Class Actions § 7:37 (6th ed.) (quotation marks omitted).

Proceeding with the class action is appropriate when the party seeking certification can

establish the four threshold requirements set forth in Federal Rule of Civil Procedure 23(a) and

fulfillment of at least one of the provisions in Rule 23(b). Under Rule 23(a), the party requesting

certification must first show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If successful, the party must then demonstrate, one of the Rule 23(b)

factors. Here, Plaintiffs relied on and I certified the classes under Rule 23(b)(3), which requires a

showing that common questions of law or fact predominate over any individual questions and

that a class action is the superior method for "fairly and efficiently adjudicating the controversy."

I found that some of the common questions in this case were: whether GEO employed policies

that constituted an improper means of coercion under the forced labor statute and whether GEO

knowingly obtained detainees' labor using those policies. *See Menocal II*, 320 F.R.D. at 264-65.

GEO contends discovery has revealed that common questions do not predominate over

individual concerns for the TVPA class and that the class consequently fails to meet the

requirements of Rule 23. I address GEO's enmeshed decertification and summary judgment arguments jointly, applying the relevant standard to each.

### 4. Existence of a Uniform Policy

The first question that must be answered based on the parties' framing of the issues is whether there was a uniform policy applicable to the detainees. GEO asserts the policy on which Plaintiffs' TVPA claim is founded is a "contrived policy, which disregards key language in the written policies" and "does not exist." Reply in Supp. of Mot. for Decertification, ECF No. 352 at 12. Considering GEO's policies as a whole, I find Plaintiffs have sufficiently shown the existence of a uniform policy, plan, or scheme. That this policy is made up of portions of various documents and materials is inconsequential because its message was conveyed to detainees and GEO officers.

GEO insists that, although the constituent policies were universally provided to officers and detainees as set out in the Background Section above, they should be disregarded based on the Facility's unwritten policies and practices. To establish that its challenged policies were not applied uniformly (if at all), GEO repeatedly cites its employees' testimony that, when detainees refused to clean, the officers simply asked other detainees to help and that segregation was never imposed for such refusals. *See, e.g.*, Mot. for Decertification, ECF No. 312 at 44 ("GEO officers did not use segregation, or a warning or threat of segregation, as a typical response to a detainee declining to clean."). But Plaintiffs' experiences paint a different picture, one in which the threat of segregation was made both via the written policies and verbally—and was always looming.

GEO is dismissive of Plaintiffs' accounts, stating: "Plaintiffs' experiences, which point to isolated experiences during their stay, fail to establish a classwide policy whereby every detainee

was regularly warned that segregation was a potential consequence for not participating in post-

meal clean-up." Reply in Supp. of Mot. for Decertification, ECF No. 352 at 28-29. GEO's

policies are not established by Plaintiffs' testimony, though; the policies are documented.

Plaintiffs' reports of their individual experiences are used to counter GEO's arguments, based on

the testimony of its employees and officers, that the policies are not applied. Moreover, regularly

warning every detainee of the consequences for not laboring is not a requirement of the TVPA.

Viewing the evidence in the light most favorable to Plaintiffs, GEO's policies threaten

detainees with 72 hours in segregation if they refuse to participate in the general cleanup or fail

to clean as directed by a GEO staff member or officer. GEO contends the threat of segregation is

not clear because the portion of the Facility's Detainee Handbook that discusses cleaning the day

room area states only that "the televisions will be turned off, and the detainees will not be

permitted to participate in any activities/programs" if the detainees do not clean as instructed.

2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 50; 2008 Handbook,

ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at

17; Oct. 2013 Handbook, ECF 261-17 at 20. GEO disregards key language in the written policy.

Immediately after warning that the televisions will be turned off, the Handbook states

"[c]ontinued refusal to clean the area will result in further disciplinary action." 2005 Handbook,

ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 50; 2008 Handbook, ECF No. 273-3 at

19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at 17; Oct. 2013

Handbook, ECF 261-17 at 20. Logically, "further disciplinary action" covers the disciplinary

scale included in the Handbook. As Plaintiffs assert, "[t]he [H]andbook and orientation materials

are not ambiguous about the fact that [cleaning common areas] is mandatory, specifically

emphasizing that there are consequences for noncompliance, ranging from eliminating

recreational activities up through solitary confinement." Resp. to Mot. for Decertification, ECF No. 339 at 40.

    Any defense GEO raises as to how its policies were implemented involves disputes of material facts that must be resolved by a jury. And Plaintiffs' reliance on individual testimony to counter GEO's defenses does not undermine the grounds for class certification.[24]

### 5. Serious Harm and Physical Restraint

    As set out above, the TVPA makes it unlawful for anyone to knowingly obtain the labor of a person by physically restraining or threatening to physically restrain the person, by causing the person serious harm or threatening serious harm, or via a scheme, plan, or pattern intended to cause the person to believe he would suffer serious harm or physical restraint if he did not perform the labor. 18 U.S.C. § 1589(a). The TVPA defines "serious harm" as:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

*Id.* § 1589(c)(2). The serious-harm standard "is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that [his or] her

---

[24] GEO asserts that "Plaintiffs seek a precedential decision that would put every detention facility, jail, mental health facility, and juvenile detention center at risk of being credibly accused of forced labor by simply providing their residents with a listing of the facility's rules and regulations." GEO's Mot. for Summ. J. at 7, ECF No. 305. Plaintiffs' goals beyond the relief requested in this case are irrelevant to my rulings. But if a facility's rules and regulations improperly compel individuals in its custody to provide labor, credible accusations of forced labor may follow.

acquiescence be objectively reasonable under the circumstances." *United States v. Rivera*, 799
F.3d 180, 186–87 (2d Cir. 2015). [25]


*Summary Judgment*

GEO insists Plaintiffs were merely warned of legitimate consequence sand therefore
cannot establish "serious harm," as it is defined in the TVPA. However, the statute makes clear
that a showing of serious harm is not required to prove a violation; physical restraint and threats
of physical restraint are sufficient. *See* 18 U.S.C. § 1589(a)(1), (a)(4). Increasing the level of
confinement for already detained individuals—as Plaintiffs allege GEO's policies threaten to
do—can constitute physical restraint. *See Bridges v. Poe*, 487 F. Supp. 3d 1250, 1261 (N.D. Ala.
2020). In *Bridges v. Poe*, a guard at the jail where the plaintiff was held threatened to revoke her
status as a trustee worker if she failed to perform sex acts with him. *Bridges*, 487 F. Supp. 3d at
1261. If her trustee status was revoked, she would have been confined to her cell for twenty-three
hours a day. *Id.* The court held that "[c]onfinement to a jail cell that restricts an inmate's freedom
of movement certainly meets the ordinary meaning of physical restraint." *Id.* (quotation marks
omitted). Attempting to distinguish *Bridges*, GEO contends Plaintiffs were already confined
within the Facility and so were already under physical restraint. GEO's Reply in Supp. of Mot.
for Summ. J., ECF No. 350 at 73. But the plaintiff in *Bridges* was as well. GEO then suggests

---

[25] In describing Plaintiffs' burden under this standard, GEO doctors a sentence from *Muchira v.
Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017). GEO quotes the court as stating: "[Plaintiffs] must
present sufficient evidence upon which a jury could reasonably conclude that [GEO] knowingly
or intentionally engaged in actions or made threats that were sufficiently serious to compel a
reasonable person in [each individual plaintiff's] position to remain in [GEO's] employ, against
[their] will and in order to avoid such threats of harm[.]" Mot. for Decertification, ECF No. 312
at 40 (alterations in original) (ostensibly quoting *Muchira*, 850 F.3d at 620). The actual text in
*Muchira* says nothing about "each individual plaintiff's" position or the necessity of an
individualized inquiry, and GEO's insertion of this language is deceptive.

that the threats of physical restraint must be "sufficiently serious" and argues that the threats in *Bridges* were more serious than those here. *Id.* I see no appreciable difference in the threats. The imposition of segregation is physical restraint. Plaintiffs' TVPA claim may therefore be proven based on physical restraint and threats of physical restraint without a showing of serious harm.

Still, Plaintiffs allege that threats of 72 hours in solitary confinement constitute threats of serious harm. To establish their claim based on this theory, Plaintiffs' must show that the harm incurred or threatened was "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). I cannot find as a matter of law that 72 hours in solitary confinement is not a serious harm.

Plaintiffs have presented evidence that the threat of 72 hours in segregation would compel a reasonable person in the detainees' position to perform labor. Specifically, Dr. Grassian testified that 72 hours in segregation can cause psychological damage. *See, e.g.*, Grassian Dep. 216:2-5.[26] And his Report explains how solitary confinement "imposes a devastating triad of emotional and neuropsychiatric deprivations: social isolation, a barren perceptual environment, and deprivation of meaningful mental activity." Grassian Report, ECF No. 336-21 at 11. The testimony in the record from Plaintiffs as well as GEO's officers supports the conclusion that detainees sought to avoid time in segregation. *See* Hugo Hernandez Dep. 166:4-15, 167:19-168:1, 170:4-13, ECF No. 336-4; Xahuentitla Dep. 137:4-19, ECF No. 336-14; Quezada Dep. 141:17-142:8, ECF No. 336-16. Plaintiffs also underscore the detainees' circumstances that

---

[26] GEO criticizes Dr. Grassian for not pointing to any Plaintiff who suffered psychological harm. Plaintiffs are correct, however, that "actually *suffering* serious harm is not a prerequisite for liability." Pls.' Resp. to Mot. for Summ. J., ECF No. 336 at 58.

could make them more vulnerable to threats of segregation: they were confined to the Facility, unable to leave, separated from their family and loved ones, and facing removal.

In reviewing GEO's arguments regarding serious harm, I must first comment that GEO's tone and arrogance are not well taken. GEO ignores the circumstances of its detainees and offers flippant comparisons. An example:

> Plaintiffs' daily routines were not defined by long periods of hard labor, a relative lack of freedom, or squalid living conditions, extreme isolation, threat of legal process, and violence. Rather detainees' routines included three meals a day, time for exercise, television, and reading books supplied by GEO, and the opportunity to speak to their families on the phone, as well as access to legal materials in a law library. Detainees were largely free to do what they wanted during the day and were not deprived of social opportunities. And, the fact that Plaintiffs claims here rest on an allegation that they allegedly cleaned the living areas routinely, Plaintiffs' own allegations belie any argument that [the Facility] could be fairly described as squalid. Thus, the conditions of confinement fall far short of the coercive conditions found to be a violation of the TVPA.

GEO's Mot. for Summ. J. at 27, ECF No. 305 (quotation marks and citations omitted). This view blinds GEO from honest argument.

GEO discounts the threatened harm in this case, stating: "While there is no ambiguity that people may fear physical harm to themselves or their loved ones when faced with a threat of physical violence, a gun, or a raised fist . . .; here, the purported threat is more nuanced." GEO's Reply in Supp. of Mot. for Summ. J., ECF No. 350 at 75. But that is exactly why the TVPA was enacted—to combat the more nuanced ways in which labor may be coerced today. *See United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (explaining that Congress "enacted § 1589 to address 'traffickers [who] use more subtle means'" (quoting H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.), as reprinted in 2000 U.S.C.C.A.N. 1380, 1393)).

Digging itself deeper, GEO insinuates that its policies resemble "ordinary parents requiring chores." GEO's Mot. for Summ. J. at 18 (quoting *United States v. Toviave*, 761 F.3d

623, 625-26 (6th Cir. 2014)). Certainly, though, it would be improper for any parent to place a

child in segregation for 72 hours or to even threaten to do so. Moreover, the Facility is not a

household, and GEO is not in a familial relationship with the detainees. In *United States v.*

*Toviave*, the Sixth Circuit stated: "[W]e should not—without a clear expression of Congressional

intent—transform a statute passed to implement the Thirteenth Amendment against slavery or

involuntary servitude into one that generally makes it a crime for a person *in loco parentis* to

require household chores, or makes child abuse a federal crime." 761 F.3d at 629. The court's

emphasis was not on the nature of the work performed, i.e., household chores, but on the

relationship between the party compelling the labor and the laborer. *Id.* at 625-626. In fact, in

*United States v. Callahan*, the Sixth Circuit later clarified: "In *Toviave*, we held that a parent or

guardian who requires children to perform household chores and also abuses the children does

not necessarily violate the forced labor statute; we did not hold that household chores do not

constitute labor or services." 801 F.3d 606, 620 (6th Cir. 2015).

GEO also looks for support in *Headley v. Church of Scientology International*, 687 F.3d

1173 (9th Cir. 2012). There, two ministers of the Church of Scientology claimed that the Church

forced them to provide labor in violation of the TVPA. *Id.* at 1174. In addition to experiencing

verbal and physical abuse, one plaintiff testified that she had two abortions because she was told,

if she did not, she would be required to perform manual labor and face other consequences. *Id.* at

1176. The Ninth Circuit, however, found that "the record contain[ed] little evidence that the

defendants obtained the [plaintiffs] labor 'by means of' serious harm, threats, or other improper

methods." *Id.* at 1179. Instead, the record supported the conclusion that plaintiffs' labor was

voluntarily given due to their belief that involvement in the church "was the right thing to do,"

and that the "discipline, lifestyle, and familial constraints" the plaintiffs' attacked were what

caused them to leave the organization and stop providing their labor. *Id.* at 1179-80. The court held that the potential consequences plaintiffs faced in leaving—being declared "suppressive persons" and losing contact with their friends and family—did not constitute serious harm or a related threat under the TVPA. *Id.* at 1180.

GEO argues that, "if the unquestionably more severe consequences in *Hedley* [sic] did not violate the TVPA, a warning that a detainee faced the *possible* consequence of a brief stay in segregation does not violate the TVPA." GEO's Mot. for Summ. J. at 30. Ignoring GEO's comment that 72 hours in segregation is a "brief stay," it still misconstrues the analysis in *Headley*. Other than the potential to be declared "suppressive persons," the Ninth Circuit did not consider whether the consequences plaintiffs faced were serious enough that they could have coerced the plaintiffs to labor. The court merely concluded that those consequences were not the cause of the plaintiffs' decision to labor. *Headley*, 687 F.3d at 1176. The focus of the court's analysis is the plaintiffs' freedom to leave. *Id.* at 1180 ("We emphasize that the [plaintiffs] had innumerable opportunities to leave the defendants.").[27] Detainees at the Facility had no such freedom.

In reaching its conclusion, the court in *Headley* explained that it must "distinguish between [i]mproper threats or coercion and permissible warnings of adverse but legitimate consequences." *Headley*, 687 F.3d at 1180 (citation omitted). GEO makes this principle the theme of its argument, reciting that the detainees at the Facility faced only legitimate consequences. But what makes consequences legitimate? That they are lawful, if nothing else.

---

[27] The plaintiff's ability to leave was similarly emphasized by the Fourth Circuit in *Muchira v. Al-Rawaf*. *See, e.g.*, 850 F.3d at 621 ("[The plaintiff] had innumerable opportunities to walk out of the Saudi home without triggering the alarm.").

GEO cannot avoid liability under the TVPA by declaring its consequences to be legitimate when Plaintiffs have presented evidence showing the opposite.

Because a jury could conclude that the threat of 72 hours in segregation would compel a reasonable person in the detainees' position to provide labor in order to avoid that harm, Plaintiffs have sufficiently demonstrated that detainees labored under the threat of serious harm.

*Decertification*

In its Decertification Motion, GEO argues that serious harm cannot be shown on a class-wide basis because (1) 72 hours of segregation is not likely to have the same impact on all individuals, (2) the class members' particular vulnerabilities must be considered, and (3) each had different interactions with GEO's officers. GEO is wrong on all accounts.

GEO claims that, per Dr. Grassian's opinion, the potential harm caused by 72 hours of segregation is dependent on an individual's unique circumstances. Although individuals are likely to have varying responses to segregation, the pertinent question for Plaintiffs' TVPA claim is not whether each individual would be sufficiently harmed by 72 hours in segregation. The standard is whether a reasonable person would be compelled to provide labor in order to avoid 72 hours in segregation. The analysis cannot be based on a prediction of the extent to which each class member would be harmed by actually suffering the consequence of segregation. It bears further comment that the gravamen, i.e., the material part, of the class members' grievance is the threat of isolation and not the perhaps idiosyncratic harms suffered as a consequence. All class members claim the same threat.

As explained above, in addition to the objective question, the serious-harm standard permits the jury to consider the particular vulnerabilities of a person in the victim's position.

*Rivera*, 799 F.3d at 186–87. GEO contends that Plaintiffs' sensitivities cannot be extrapolated to the entire class, as the class members differed significantly in that they speak different languages, were detained for various lengths of time, and came from distinct environments. First, consideration of the victims' particular circumstances for the purposes of the serious harm inquiry is permitted but not mandatory. *New York State Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 69 (N.D.N.Y. 2020) (referencing the Second Circuit's opinion in *Rivera*, 799 F.3d at 186-87). And second, the class members have many shared vulnerabilities that can be presented to a jury via class-wide evidence. For example, all of the class members were detained in the same institution subject to universal policies; they were fighting immigration cases; they were not free to leave; they lived in the company of mostly strangers; their ability to see and communicate with their family and loved ones was restricted; and they had little—if any— privacy. A jury could find that these class-wide characteristics made the class members more vulnerable to the threatened harm. As such, the subjective analysis of the serious-harm standard does not support decertification.

Each class member, of course, had different experiences with GEO's officers. GEO downplays the class members' experiences, insisting "a jury would need to assess whether the offhand comments by some officers were reasonably considered a threat in light of the conflicting behavior of other officers." Mot. for Decertification, ECF No. 312 at 51-52. Again, the question is whether a reasonable person would have been compelled to provide his labor under all the surrounding circumstances. Plaintiffs' allegations describe a systematic effort on the part of the officers to force compliance with their cleaning demands, not "offhand" comments. What is more, any comments made by GEO's officers were underwritten by its

universally distributed policies. GEO raised this same argument before the Tenth Circuit, and the court was unambiguous:

> The only factual differences among the class representatives' experiences pertain to their specific interactions with Aurora Facility guards and whether they witnessed firsthand other individual detainees being sanctioned or threatened with solitary confinement for refusal to clean. But these factual differences do not defeat typicality because the class members' legal theory—that GEO knowingly obtained their labor through the uniform Sanitation Policy—does not change based on their personal interactions with GEO staff or their knowledge of specific instances in which GEO threatened or carried out the threat of solitary confinement.

*Menocal III*, 882 F.3d at 917 n.5. It likewise does not matter that segregation was rarely imposed or that on occasion class members faced no consequences for refusing to clean, as GEO's policies ensured the threat was pervasive.

The serious harm element, therefore, presents a common question that can be answered with class-wide evidence.

### 6. Causation

Another element Plaintiffs must prove for their TVPA claim is causation, or that GEO obtained the detainees labor "by means of" its improper coercive conduct. *See* 18 U.S.C. § 1589(a). In my Order certifying the classes, I resolved that there is both an objective and subjective component to the forced labor statute's causation requirement. *Menocal II*, 320 F.R.D. at 266-67. I explained: "The subjective component is whether the victims actually labored because of the perpetrator's conduct, while the objective component is whether a reasonable person would respond in a similar way as the victims." *Id.* at 267. In reaching this conclusion, I considered the case law cited by the parties and relied heavily on the analysis in *David v. Signal International, LLC*, No. 08-1220, 2012 WL 10759668 (E.D. La. Jan. 4, 2012). Additionally, I determined the causation element can be satisfied by class-wide circumstantial evidence, noting

that, "[g]iven the climate in which [Plaintiffs and class members] were detained, it is possible

that an inference of causation would be appropriate even despite some class members' purported

willingness to work for reasons other than GEO's improper means of coercion." *Menocal II*, 320

F.R.D. at 267. On appeal, the Tenth Circuit declined to decide whether such a subjective

showing is necessary, but if it is required, the court found—as I did—that it can be demonstrated

through class-wide, circumstantial evidence. *Menocal III*, 882 F.3d at 918 ("But we need not

decide which of these standards applies to § 1589's causation requirement in resolving the class

certification question. Even assuming GEO's proposed standard applies, the causation element is

susceptible to class-wide proof and thus does not preclude the TVPA class from satisfying the

predominance requirement.").

      Plaintiffs now ask me to reconsider my determination that the causation element requires

a subjective showing. Misinterpreting Plaintiffs' request, GEO argues that the Fourth Circuit set

out the appropriate legal standard in *Muchira v. Al-Rawaf*. According to GEO, that standard

involves two inquiries:

> First, the TVPA includes an express scienter requirement, and therefore a party
> must present evidence from which the fact finder could conclude that the defendant
> *intended* the victim to believe harm would befall the victim if he or she did not
> work . . . . Second, the factfinder must determine that the harm or threat of harm
> relayed by the defendant was 'sufficiently serious' to compel the victim to continue
> to work, from the vantage point of a reasonable person in the place of the victim.

Reply in Supp. of Mot. for Decertification, ECF No. 352 at 6 (citing *Muchira*, 850 F.3d at 618).

GEO explains the second element is a "hybrid" test because it requires that the victim's decision

to provide his labor be objectively reasonable but also takes into account the particular

vulnerabilities of a person in the victim's position. *Id.*

      Contrary to GEO's rendering, Plaintiffs do not ask that I disregard this hybrid standard

for serious harm, the second part of which I have already applied. Their reconsideration request

instead relates to causation and whether they are required to establish why the class members

provided their labor. Admittedly, this distinction is tricky. The definition of serious harm

includes a causation component—the threatened harm must be sufficiently serious to compel a

reasonable person in the victim's circumstances to provide his labor. But the causation element I

described in the Certification Order derives from the "by means of" language in the statute and

covered not just serious harm but the other improper means of compelling labor under the TVPA

(i.e., physical restraint and abuse of law or legal process).

     I have reconsidered the analysis in *David* and studied the more recent cases cited by

Plaintiffs. While the reasoning in *David* remains valid, most of the cases Plaintiffs cite conflate

the serious harm and causation elements and consequently are of little value. *See, e.g.*,

*Paguirigan v. Prompt Nursing Emp. Agency LLC*, No. 17-cv-01302 (NG) (JO), 2018 WL

4347799, at *8 (E.D.N.Y. Sept. 12, 2018); *N.Y. State Nurses Ass'n*, 473 F. Supp. 3d at 69; *Owino

v. CoreCivic, Inc.*, No. 17-cv-01112 JLS (NLS), 2020 WL 1550218, at *27 (S.D. Cal. Apr. 1,

2020). Without any other basis for reconsideration, I stand by my previous statement of the law

on causation.[28] However, I remain convinced that the subjective component may be satisfied via

circumstantial evidence and that it can be proven on a class-wide basis in this case.

*Summary Judgment*

     GEO's arguments regarding causation implicate obvious disputes of material fact such

that summary judgment is inappropriate. According to GEO, "Plaintiffs have not demonstrated

that absent a fear of discipline, they would not have cleaned up after themselves for reasons other

---

[28] Despite this conclusion, I agree that perpetrators of forced labor should not benefit from
fortuitously choosing the "right" victim, one who, despite the perpetrator's coercive intent,
labors for unrelated reasons. Further, it cannot be expected or required that all victims of forced
labor be available to provide direct evidence of their subjective reasons for laboring.

than the disciplinary policy." GEO's Mot. for Summ. J. at 32. As I have explained throughout

this order, the labor at issue is not just Plaintiffs "clean[ing] up after themselves." The

consideration is whether detainees would have cleaned up the common areas and after other

detainees absent the ever-present threat of segregation. Plaintiffs have presented evidence that

they would not have done so. GEO's arguments and evidence in opposition are issues for the

jury.


*Decertification*

GEO maintains the causation element mandates individualized inquiries because some

class members were not compelled to work by the threat of segregation and some provided their

labor for other reasons personal to them. GEO contends that some detainees actually preferred

segregation for peace and quiet and some liked to clean to stay busy, to help others, or for the

incentives they received. The Tenth Circuit specifically considered Ms. Ceja's testimony that

detainees may clean because they prefer to stay busy and determined it was "conjectural" and

"d[id] not raise concerns about individual issues predominating because GEO could introduce

th[e] same testimony against all class members at trial." *Menocal III*, 882 F.3d at 921 n.12. That

reasoning applies to all similar evidence GEO has submitted in support of decertification.

Pointing to portions of Plaintiffs' testimony, GEO argues that all class members did not

know about the written policies or uniformly view the Facility's Detainee Handbook as

threatening and some may have cleaned before being warned of the possible sanction of

segregation. For Plaintiffs to succeed on their TVPA claim, they are not required to show that

each class member labored as a result of a direct threat, either from an officer or via the

Handbook or Orientation Videos. A reasonable jury could find the looming threat of segregation

created by GEO's policies is sufficient to infer causation. The inference is permitted even if a class member does not remember explicitly being warned of the possible threat of segregation before cleaning. Class members may have perceived the threat without remembering when or how it was made or they may have continued to clean after the threat was made known. Regardless, as I found in certifying the TVPA class initially, an inference of causation might still be appropriate even if some class members purportedly labored for reasons other than GEO's improper coercion. *See Menocal II*, 320 F.R.D. at 267.

GEO also claims that, because Plaintiffs performed much of the same work voluntarily under the VWP, they cannot say it was GEO's cleaning policies that compelled them to do the work. The Tenth Circuit addressed this exact argument and found there was no inconsistency in Plaintiffs' position. *Menocal III*, 882 F.3d at 921 n.12.

Twisting Plaintiffs' contentions once again, GEO criticizes Plaintiffs for focusing on the coercive nature of segregation when a lesser sanction would usually be imposed if a detainee refused to clean. GEO claims:

> Plaintiffs argue that because *one* of the *many* possible sanctions for the refusal to clean is 72 hours in segregation, that a reasonable construction of the post-meal cleanup procedure in the handbook is that any and all times that a detainee refuses to clean, segregation, and not the lesser sanctions such as a warning, reprimand, or loss of privileges would apply—creating an inherently coercive environment.

Mot. for Decertification, ECF No. 312 at 43 (citing Mot. for Class Certification, ECF No. 49 at 17). But GEO's citation for that claim states nothing of the sort. Instead, Plaintiffs assert that the inference could be made that class members labored because of "the possibility of solitary confinement" and that "[t]he choice between solitary confinement and work is no choice at all." Mot. for Class Certification, ECF No. 49 at 18. The TVPA does not require that the serious harm or physical restraint be likely; the threat of it need only be sufficient to compel a victim to

provide labor. To the extent GEO contends the possibility of segregation was so unlikely that it could not have compelled class members to clean, it can make that case to the jury.

GEO's last challenge asserts that Plaintiffs do not represent a diverse cross-section of the certified class, and so a class-wide inference of causation cannot be made based on their testimony. For support, GEO cites *Cruz v. Dollar Tree Stores, Inc.*, Nos. 07-2050 SC & 07-4012 SC, 2011 WL 2682967 (N.D. Cal. July 8, 2011). But *Cruz* is distinguishable because the plaintiffs in the case admitted that the evidence they intended to rely on as common proof was "wrought with problems and . . . provided an unreliable basis by which to establish eligibility for class membership." *Id.* at *7 (citation omitted). Besides, the inference of causation does not depend solely on Plaintiffs' testimony; the jury may consider evidence of GEO's universal policies and the class members' common circumstances.

### 7. Knowingly

The final disputed element of Plaintiffs' TVPA claim is whether GEO acted knowingly. *See* 18 U.S.C. § 1589(a). "The scienter element requires proof that the defendant knew (1) that the enumerated 'circumstance existed' and (2) that the defendant was obtaining the labor in question as a result." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022) (quoting *United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008)). As GEO explains, "Plaintiffs must show that [it] was aware that the policy would coerce labor from detainees." Reply in Supp. of Mot. for Decertification, ECF No. 352 at 45. GEO "may be charged with the combined knowledge of its employees and agents." 3 Fletcher Cyc. Corp. § 807. Whether this knowledge should be imputed to GEO depends on a "highly fact-intensive analysis." *Id.*

*Summary Judgment*

GEO insists Plaintiffs cannot show it acted knowingly since it only sought to fulfill its contractual obligations with ICE. I have already explained how GEO's actions went beyond its contracts with ICE; it did not just fulfill the obligations of its contracts. The testimony from GEO's representatives, including Dawn Ceja, Amber Martin, and Dan Ragsdale, substantiates that they had detailed knowledge of the ICE-GEO contracts and GEO's independent policies. GEO identified these individuals as its representatives who could testify regarding its contractual obligations and policies. Based on the contents of GEO's written policies and the testimony of its agents, a reasonable jury could find that it acted knowingly.

GEO claims that its informal policy of not imposing segregation for detainees' refusal to clean shows that it lacked the requisite scienter. GEO uses knowledge and intent interchangeably in referring to this state of mind. Under the text of the forced labor statute, knowledge is required for any violation, while a showing of intent is only necessary for violations of the scheme, plan, or pattern provision. 18 U.S.C. § 1589(a); *see also United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011). Nonetheless, I agree with Plaintiffs: "To the extent that GEO's argument relies on the position that [it] subjectively did not intend detainees to find the looming threat of solitary confinement threatening, that is not a summary judgment issue." Pls.' Resp. to Mot. for Summ. J., ECF No. 336 at 68.

*Decertification*

Once more, GEO's arguments on decertification point to the interactions between its officers and individual class members. GEO contends that an individualized, fact-intensive inquiry is necessary for any of the officer's actions to be imputed to it. As GEO would have it,

the jury would need to assess whether the actions of each officer were subject to supervisory review and whether each officer had contact with a substantial percentage of the class over the relevant 10-year period. Because evidence in the record shows GEO's agents drafted and had knowledge of the responsible policies, individualized review of each officers' specific actions is not required. The knowledge element of Plaintiffs' TVPA claim continues to involve a common question, making decertification inappropriate.

### 8. Specific Tasks Performed

GEO's arguments on serious harm, scienter, and causation under the TVPA give rise to another of its challenges to Plaintiffs' claim—GEO contends the statute does not distinguish between acceptable labor and unacceptable labor, and if a line can be drawn between the two, it would necessitate individual inquiries into what tasks each class member performed. According to GEO, the TVPA requires only that labor be obtained or provided through coercion, and therefore, liability under the statute does not turn on the specific type of labor performed. Plaintiffs describe their claim as pertaining to the labor "performed in commonly accessible areas of the housing unit, and requir[ing] detainees to sweep, mop, and clean tables." Resp. to Mot. for Decertification, ECF No. 339 at 59 (quotation marks and citations omitted). I question whether the personal housekeeping required by the PBNDS constitutes labor under the TVPA. But, because Plaintiffs' claim does not allege that the PBNDS' personal housekeeping tasks violate the TVPA, it is not necessary to determine whether those tasks, if coerced, would be permissible under the statute or if liability turns on the type of labor performed.[29] Still, Plaintiffs

---

[29] I note, however, that I am not persuaded by GEO's claim that "keeping the floor free of debris" is the same as "mopping or sweeping the floor." *See* Mot. for Decertification, ECF No. 312 at 58.

should more clearly articulate the limits of their claim before trial. The line need not be a physical boundary based on the dorm layout and the location of the detainees' beds, as GEO suggests. The claim might simply be confined to the labor detainees performed in cleaning up after others (as opposed to cleaning up after themselves).

However the labor in Plaintiffs' TVPA claim is defined, individual inquiries into whether each class member performed the challenged tasks will not be necessary because, as I have already explained, there was a uniform policy. All detainees were required to "keep clean and sanitary all commonly accessible areas of the housing unit, including walls, floors, windows, window ledges, showers, sinks, toilets, tables, and chairs." 2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 50; 2008 Handbook, ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at 17; Oct. 2013 Handbook, ECF 261-17 at 20. And "[e]ach and every detainee" was obligated to participate in the Facility's sanitation program and general cleanups. 2005 Handbook, ECF No. 273-1 at 18; 2007 Handbook, ECF No. 273-2 at 49; 2008 Handbook, ECF No. 273-3 at 19; 2010 Handbook, ECF No. 273-4 at 17; 2011 Handbook, ECF No. 273-5 at 17; Oct. 2013 Handbook, ECF 261-17 at 20. The fact that detainees may have performed labor not covered by Plaintiffs' claim does not justify decertification of the TVPA class.

### 9. Claim Time Barred

In both its Motion for Summary Judgment and Motion for Decertification, GEO argues that any part of Plaintiffs' TVPA claim accruing before December 23, 2008, is time barred for two reasons: First, GEO alleges the "scheme, plan, or pattern" theory of liability was not added to the statute until that time. Second, GEO contends that all claims accruing before December 23,

2008, would have been subject to a four-year limitations period, not the current 10-year period, and this case was not filed until 2014. The "scheme, plan, or pattern" language, however, was always included in the forced-labor statute. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 112, 114 Stat. 1464 (2000).[30] Thus, Plaintiffs' claims are not barred on that basis.

On December 23, 2008, Congress extended the statute of limitations for TVPA claims from four to ten years. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221, 122 Stat. 5044 (2008). As explained in *Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112, 1129 (D. Colo. 2019), the existing ten-year statute of limitations applies to Plaintiffs' TVPA claim, to the extent the claim was alive when Congress amended the limitations period. In other words, claims within the four-year statute of limitations on December 23, 2008, are still valid, and claims accruing before that time are barred. Consequently, summary judgment will enter on Plaintiffs' TVPA claims accruing before December 23, 2004, and the TVPA class will be limited to all persons detained in the Facility from December 23, 2004, to October 22, 2014.[31]

### 10. Exclusion of Female Detainees from Class

The final argument GEO makes regarding the substance of Plaintiffs' TVPA claim is that female detainees should be excluded from the TVPA class because there was no segregation unit for female detainees at the Facility. According to GEO, if there was no place to segregate female detainees, any related warnings could not have been perceived as a reasonable threat. Yet,

---

[30] GEO does not provide any reply to Plaintiffs' response on this matter. If and when a party discovers it is mistaken in its argument to the Court, withdrawal or concession of the point is obligatory and appreciated. *See, e.g.*, Fed. R. Civ. P. 1.

[31] Appropriately, Plaintiffs concede that this ruling is justified.

Officer Quezada testified that there is in fact a female segregation unit, just in a different area of the Facility. Quezada Dep. 112:16-113:24, ECF No. 339-12. And, regardless, GEO led female detainees to believe they could be sent to segregation, which is sufficient for them to remain part of the TVPA class.

After considering GEO's decertification and summary judgment arguments related to Plaintiffs' TVPA claim, I find the predominance requirement continues to be satisfied by common questions, such as whether GEO's policies amounted to improper coercion under the TVPA, whether threats of 72 hours in segregation constituted threats of serious harm, and whether GEO knowingly obtained labor under those policies. Plaintiffs have presented sufficient evidence for those questions to be answered affirmatively. Consequently, both Plaintiffs' TVPA claim and the associated class survive.

## B. Unjust Enrichment Claim

GEO seeks summary judgment on Plaintiffs' unjust enrichment claim as well. To succeed on their claim, Plaintiffs must prove: (1) GEO received a benefit (2) at their expense (3) "under circumstances that would make it unjust for [GEO] to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1266-67 (Colo. 2000)).

### 1. Benefit Received from Voluntary Work Program

GEO argues Plaintiffs cannot establish it received a benefit from the VWP because the program in fact caused it to lose profits. Under GEO's theory, if it did not have to operate the VWP, it would have hired additional employees and been able to realize a profit of up to 15% on

the increased labor costs. Plaintiffs poke holes in this theory by pointing out that GEO's contract with ICE requires GEO to implement the VWP and it is not certain that ICE would accept a contract with additional labor costs and baked-in profits. Plaintiffs present evidence that paying detainee participants more than $1.00 per day would result in additional costs to GEO. This conflicting evidence amounts to genuine disputes of material fact that prevent summary judgment.

Plaintiffs state that trial of their unjust enrichment claim is to the Court, while GEO requests a jury trial on all claims. *See* Am. Stipulated Scheduling & Disc. Order at 20. Unjust enrichment is an equitable claim and thus is generally decided by the Court. *See Lewis*, 189 P.3d at 1141. In this case, however, I find the assistance of a jury would be beneficial and so order that Plaintiffs' unjust enrichment claim will be heard by the jury on an advisory basis. *See* Fed. R. Civ. P. 39(c).

### 2. Existence of a Valid Contract

GEO also asserts Plaintiffs' unjust enrichment claim is not viable because participants' work in the VWP was covered by an express contract.[32] Unjust enrichment is not available as "a mere alternative legal theory when the subject is covered by an express contract." *West Ridge Group, LLC v. First Trust Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011) (unpublished); *see also Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo.

---

[32] Plaintiffs contend GEO waived this defense to their unjust enrichment claim because it is not asserted in GEO's Answer. However, GEO expressly included the defense in the Scheduling Order issued in October 2018. *See* Am. Stipulated Scheduling & Disc. Order at 5 ("[T]he existence of an express contract precludes Plaintiffs' unjust enrichment claim."); *id.* at 19 ("GEO may file a dispositive motion arguing that express contracts preclude Plaintiffs' unjust enrichment claim."). Plaintiffs have, therefore, had sufficient notice of the defense, and I find GEO has not waived it.

2016). Pointing to the document VWP participants must sign, GEO argues the detainees expressly agreed to be compensated only $1.00 per day and any remedy available to them would have to be under that agreement. *See* Detainee VWP Agreement, ECF No. 306-2 at 3. In response, Plaintiffs insist that the signed documents are unconscionable and not enforceable contracts.

Whether a contract is unconscionable is a question of law, decided based on state law. *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 849-50 (10th Cir. 1986). In *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986), the Colorado Supreme Court set out the applicable standard for unconscionability. *Davis* instructs:

> [T]o support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.

*Id.* Thus, for a contract to be unconscionable, it must be both procedurally and substantively so. The *Davis* court identified the following factors as relevant to the unconscionability determination:

> a standardized agreement executed by parties of unequal bargaining strength; lack of opportunity to read or become familiar with the document before signing it; use of fine print in the portion of the contract containing the provision; absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; the terms of the contract, including substantive unfairness; the relationship of the parties, including factors of assent, unfair surprise and notice; and all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

*Id.* (internal citations omitted)

Plaintiffs' examination of these factors is persuasive. The procedural unconscionability of the Detainee VWP Agreement (the "Agreement") is apparent from the VWP participants' unequal bargaining strength, their status as detainees, and the fact that they had a single method

of earning money in the Facility. It does not matter that participation in the VWP was not mandatory or that detainees wanted the opportunity to work. The only way they could participate was to sign GEO's standardized Agreement and earn $1.00 per day. GEO argues that the unconscionability of the Agreement depends on the particular financial circumstances of each detainee. Perhaps a financially well-off detainee would be less likely to participate in the VWP, but a detainee's additional resources do not give that detainee any more bargaining power in this context and there is no meaningful alternative.

Plaintiffs stress that the Agreement is also substantively unconscionable because paying VWP participants $1.00 per day is commercially unreasonable. GEO reasons that, since the federal government is entitled to require ICE detainees to perform housekeeping tasks without pay, paying $1.00 a day for work cannot be commercially unreasonable. GEO's Reply in Supp. of Mot. for Summ. J., ECF No. 350 at 79 n.8 (citing *Channer v. Hall*, 112 F.3d 214, 219 (5th Cir. 1997); ); 8 U.S.C. § 1555(d)). GEO's reasoning is incongruous. A communal contribution by a detainee is not a commercial transaction. Moreover, participants in the VWP perform more than just housekeeping tasks. I agree with Plaintiffs that, on its face, the $1.00 per day provision of the agreement, without any variation for the type, timing, duration, or other specifics of the work performed, is commercially unreasonable.

Consequently, I find the VWP Agreement does not bar Plaintiffs' unjust enrichment claim because it does not constitute an enforceable contract covering the subject matter of that claim.

**C. Rulings on GEO's Motions for Summary Judgment and for Decertification**

GEO has not shown that judgment as a matter of law is appropriate on Plaintiffs' TVPA claim. Despite GEO's many protests, common questions predominate such that certification of the TVPA class continues to be appropriate. Also, whether GEO lost profits due to the VWP involves genuine disputes of material fact that preclude summary judgment on Plaintiffs' unjust enrichment claim. And no enforceable contract dictated that Plaintiffs could only be paid $1.00 per day, so Plaintiffs are not limited to remedies under contract law. GEO's Motions for Summary Judgment and for Decertification of Class are, therefore, denied.

## VI. Conclusion

Accordingly, Plaintiffs' Motion for Summary Judgment on GEO's Affirmative Defense (ECF No. 260) is GRANTED. GEO's Cross Motion for Summary Judgment (ECF Nos. 284), Motion to Dismiss (ECF No. 307), and Motion for Decertification of Class (ECF No. 312) are DENIED. GEO's Motion for Summary Judgment (ECF No. 305) is GRANTED IN PART in that the TVPA class is narrowed to beginning on December 23, 2004, and the Motion is otherwise DENIED. GEO's Motion to Strike (ECF No. 368) is DENIED at moot.

DATED this 18th day of October, 2022.

_John L. Kane_
_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL, MARCOS BRAMBILA, GRISEL XAHUENTITLA, HUGO
HERNANDEZ, LOURDES ARGUETA, JESUS GAYTAN, OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and DEMETRIO VALEGRA, on their own behalf and on behalf
of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

---

## NOTICE OF APPEAL

---

Defendant, The Geo Group, Inc., ("GEO") appeals to the United States Court of Appeals

for the Tenth Circuit from this Court's Order on the Parties' Cross Motions for Summary Judgment

and for Defendant's Motion to Dismiss and for Decertification of Class (ECF No. 380) entered

Oct. 18, 2022.  In particular, Defendant appeals the grant of Plaintiffs' Motion for Summary

Judgment on GEO's Affirmative Defenses (ECF No. 260) and denial of GEO's Cross Motion for

Summary Judgment (ECF No. 284).

*ACTIVE 683329807v1*

Date: November 16, 2022

By: _____ /s/ Naomi Beer _____
     David G. Palmer
     Naomi Beer
     GREENBERG TRAURIG, LLP
     1144 15th Street, Suite 3300
     Denver, CO 80202
     (303) 572-6500
     palmerdg@gtlaw.com
     beern@gtlaw.com

     Scott Schipma
     Dominic Draye (Of Counsel)
     GREENBERG TRAURIG, LLP
     2101 L Street, NW, Suite 1000
     Washington, DC 20037
     (202) 331-3141
     schipmas@gtlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 16th day of November, 2022, I electronically filed the foregoing **<u>NOTICE OF APPEAL</u>** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following or deposited a copy of the filing in the United States mail, postage prepaid, addressed as follows:

Alexander N. Hood
David H. Seligman
Juno E. Turner
Andrew Schmidt
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, CO 80237-5680
(alex@towardsjustice.org, david@towardsjustice.org
juno@towardsjustice.org, andy@towardsjustice.org)

R. Andrew Free
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
(andrew@immigrantcivilrights.com)

Adam L. Koshkin
OUTTEN & GOLDEN, LLP
One California St., 12th Fl.
San Francisco, CA 94111 (akoshkin@outtengolden.com,
rdempsey@outtengolden.com)

Hans C. Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
(hans@themeyerlawoffice.com)

P. David Lopez
OUTTEN & GOLDEN, LLP
601 Massachusetts Ave. NW
2nd Floor  West Suite
Washington, DC 20001
(pdl@outtengolden.com)

Matthew  Fritz-Mauer
KELMAN BUESCHER FIRM
600  Grant St., Ste. 825
Denver, CO 80203
(aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com)

Brandt P. Milstein
MILSTEIN LAW OFFICE
1123 Spruce St.
Boulder, CO 80302
(brandt@milsteinlawoffice.com)

Michael J. Scimone
Ossai Miazad
OUTTEN & GOLDEN, LLP
685 Third St., 25th Fl.
New York, NY 10017
(mscimone@outtengolden.com
om@outtengolden.com)

By: */s/* Naomi Beer
       Naomi Beer