# United States Court of Appeals
## For the Tenth Circuit

————————

No. 22-01409

Alejandro Menocal, *et. al.*,
*Plaintiffs-Appellees,*

*v.*

The GEO Group, Inc.
*Defendant-Appellant.*

————————

**PLAINTIFFS-APPELLEES' MOTION TO DISMISS PURSUANT TO 10TH CIR. R. 27.3(A)(1)(a) FOR LACK OF APPELLATE JURISDICTION**

————————

## <u>INTRODUCTION</u>

Eight years after this case was filed and mere months before a scheduled trial date, Defendant The GEO Group, Inc. ("GEO") attempts to stall the litigation through a second interlocutory appeal. *See generally Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018). There is no appellate jurisdiction over this appeal, and this Court should dismiss it, allowing the parties to proceed promptly to

trial. GEO will have every opportunity to appeal the District Court's orders after final judgment.

GEO argues that the District Court's orders rejecting its so-called "derivative sovereign immunity" argument, rooted in *Yearsley v. W. A. Ross Construction Co*., 309 U.S. 18 (1940), trigger appellate jurisdiction under the collateral order doctrine. ECF No. 391 (Motion to Stay) at 7. But every appellate court to consider the issue directly has concluded that government contractors like GEO are not entitled to interlocutory review under the collateral order doctrine of trial court decisions rejecting *Yearsley* defenses. *See Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092 (9th Cir. 2022); *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc.*, 481 F.3d 265 (5th Cir. 2007). The United States government has adopted the same position, concluding that *Yearsley* provides a defense to liability, not an immunity from suit. *See Morales v. Cultural Care*, No. 21-1676 (1st Cir.), Br. for the U.S. as Amicus Curiae, November 23, 2022 ("U.S. Gov't Br."), attached here as Exhibit A.

Allowing this appeal would create an exception to the final-order rule not justified by the policy concerns underlying the narrow collateral order doctrine. The *Yearsley* defense, unlike for example qualified immunity, is not designed to protect the initiative and discretion of public officials in the face of unclear law. And, unlike Eleventh Amendment immunity protections for states, *Yearsley* does not protect a sovereign dignitary interest. Unlike the sovereign, GEO is a private contractor,

incentivized by the market to provide services for profit.

Finally, because *Yearsley* provides a defense to liability when federal contractors act according to the government's instructions, it is not "collateral" to the issues at stake in the litigation, meaning that an interlocutory appeal would force premature appellate review of the core issues in a case that can be appealed in the normal course after final judgment.

The Court should dismiss this appeal pursuant to 10th Cir. R. 27.3(A)(1)(a) for lack of appellate jurisdiction.

### GEO'S *YEARSLEY* DEFENSE

GEO owns and operates a civil immigration detention center in Aurora, Colorado under contract with U.S. Immigration and Customs Enforcement ("ICE"). Plaintiffs and the Class, who were detained at the Aurora facility, allege that GEO violated federal forced labor laws by requiring them to work using threats of solitary confinement, in violation of the Trafficking Victims Protection Act. 18 U.S.C. § 1589 ("TVPA"). Plaintiffs also allege that GEO was unjustly enriched by using detainee labor to run the facility while paying detainees only $1.00 per day as part of the so-called "Voluntary Work Program" ("VWP"). *See Menocal*, 882 F.3d 905.

With this appeal, GEO seeks to have this Court review the District Court's orders relating to GEO's *Yearsley* defense. The *Yearsley* defense recognizes that federal contractors may have a defense to liability for actions "authorized and

directed by the Government of the United States." *Yearsley*, 309 U.S. at 20. But federal contractors are liable for actions taken pursuant to a federal contract where they "exceed[] [their] authority" or where such authority was not "validly conferred." *Id.* at 21; *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) ("The *Yearsley* doctrine does not extend the federal government's 'unqualified immunity from liability and litigation' to federal contractors.").

In response to Plaintiffs' claims in this case, GEO has sought to invoke *Yearsley* by arguing that its contracts with ICE incorporate various standards, including federal regulations, American Correctional Association standards, and the ICE Performance-Based National Detention Standards, that in combination (GEO claims) allow GEO to require detainees to clean common areas of the detention center without pay, and to use solitary confinement to enforce that policy. And as to the unjust enrichment claim challenging the $1.00 per day VWP, GEO has argued that ICE specified detainees should be paid "at least" $1.00 per day, reimbursed GEO a maximum of $1.00 per day, and approved GEO's $1.00 per day work plan, and that this is adequate to support a *Yearsley* defense. On October 18, 2022, the District Court granted summary judgment to Plaintiffs and against GEO on this defense. The Court concluded that both claims were based on GEO's own policies, not ICE requirements, and that testimony by GEO's 30(b)(6) designee that those policies were reviewed and "clear[ed]" by ICE did not support the defense. The

4

District Court concluded that, "GEO cannot avail itself of the protection of [*Yearsley*] because [it] . . . requires[] government direction for the allegedly unlawful activity, not simply acquiescence." ECF No. 380 (District Court Order) at 26.

In this appeal, GEO suggests that the District Court's denial of its *Yearsley* defense is immediately appealable under the collateral order doctrine because *Yearsley*, as a categorical matter, provides an immunity from suit that cannot be protected through appeal after final judgment and because the defense turns on issues completely separate from the merits of the action. GEO is wrong on both counts, and this appeal should be dismissed.

## **ARGUMENT**

The collateral order doctrine presents a narrow exception to the principle of finality that constrains appellate jurisdiction in federal courts. As this Court has explained, "the collateral order doctrine only applies to a 'small class' of decisions" that meet the doctrine's requirements. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1033 (10th Cir. 2022) (quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546 (1949). The doctrine applies only when a district court's order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349– 50 (2006) (quotations and citations omitted).

Few orders will meet this standard. "In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this stringent test should be understood as small, modest, and narrow." *United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) (Gorsuch, *J.*) (internal quotations and citations omitted). The Supreme Court has explained that:

> The[se] conditions are stringent, and unless they are kept so, the underlying doctrine will overpower the substantial finality interests § 1291 is meant to further: judicial efficiency, for example, and the sensible policy of avoiding the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.

*Will*, 456 U.S. at 349-50.

Whether an order is appealable under the doctrine is a categorical question. *Mohawk*, 558 U.S. at 107; *see also Tucker*, 36 F.4th at 1035 ("We must, then, evaluate appealability under the collateral order doctrine without regard to a particular injustice that may be averted by an immediate appeal in a given case.") (internal quotations and citation omitted). In other words, for the Court to have appellate jurisdiction here, it would have to conclude that denials of the *Yearsley* defense are, as a categorical matter, appealable on an interlocutory basis. The collateral order doctrine is not designed for circumstances in which narrow, case-specific considerations counsel in favor of putting an entire matter on hold for

6

appellate review. In those cases, parties may have access to mandamus or seek appellate review under 28 U.S.C. § 1292(b). GEO has not sought to avail itself of either of those tools here.

I.     **Every Court to Have Addressed the Issue Directly and the Federal Government Have Concluded that Denials of the *Yearsley* Defense Do Not Trigger Collateral Order Doctrine Review.**

To accept this appeal, allowing GEO to postpone an imminent trial more than eight years after this case was initially filed, the Court would have to be the first appellate court in the country to conclude that denials of the *Yearsley* defense trigger the collateral order doctrine. The Fifth and the Ninth Circuits have expressly concluded that *Yearsley* does not trigger collateral order review. *See Childs*, 22 F.4th 1092; *Houston Cmty. Hosp.*, 481 F.3d 265. And the Fourth Circuit has suggested that it would adopt the same rule. *See Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 760 (4th Cir. 2019) ("[W]e have never held, and the United States government does not argue, that a denial of sovereign immunity or derivative sovereign immunity is immediately reviewable on interlocutory appeal.").

This is also the position of the United States, as expressed in an *amicus* brief recently filed in the First Circuit in *Morales v. Cultural Care*, No. 21-1676 (1st Cir.). *See* Ex. A (U.S. Gov't *Morales* Br.) The prior administration adopted the same position. *See* Ex. B (U.S. Gov't *Al Shimari* Br.) (filed in *Al Shimari v. CACI Premier Tech., Inc.,* No. 19-648 (U.S. Aug. 26, 2020).

GEO may point to other "derivative immunity" cases where courts have permitted interlocutory review under the collateral order doctrine. As explained below, none of those cases involve the *Yearsley* defense. Each involves different forms of immunity that implicate distinct policy interests that, unlike the *Yearsley* defense, support extension of the narrow collateral order doctrine. *See* Part IV.

## II.     Because At Least Two of the Three Criteria for Collateral Order Review Are Not Present Here, This Court Lacks Jurisdiction.

A straightforward application of the narrow requirements of the collateral order doctrine supports the unanimous position of the courts that have examined the issue directly: denials of *Yearsley* defenses do not trigger collateral order review because (1) *Yearsley* defenses are effectively reviewable after final judgment, and (2) *Yearsley* does not raise "important issues completely separate from the merits of the action." *Will*, 546 U.S. at 349-50.

### A. Denials of the *Yearsley* Defense Are Not Unreviewable after Final Judgment.

The collateral order doctrine applies only to orders that are "effectively unreviewable" after final judgment. *Will*, 456 U.S. at 349. In the context of the *Yearsley* defense, that question turns in large part on whether the defense is an immunity from suit or a defense to liability. U.S. Gov't Br. at 6. If the *Yearsley* defense is a defense to liability, then it is a right that can be protected after trial. For several reasons, *Yearsley* defenses are defenses to liability and not immunities from

suit.

First, it is axiomatic that a *Yearsley* defense cannot extend beyond the immunity enjoyed by the government itself. At most, *Yearsley* extends to federal contractors the same immunity that the federal government enjoys. *See Childs*, 22 F.4th at 1098. But, as the Fifth, Seventh, and Ninth Circuits have explained, even the federal government's sovereign immunity is a defense to liability, and not an immunity from suit entirely. *See Houston Cmty. Hosp.,* 481 F.3d at 279; *State of Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir. 1995); *Pullman Const. Indus., Inc. v. United States,* 23 F.3d 1166, 1169 (7th Cir. 1994). Those courts have reasoned that the United States has effectively waived its immunity from suit through statute. *See, e.g.*, 5 U.S.C. § 702. What remains is a cabined right to avoid damages. "Federal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it." *Pullman Const*., 23 F.3d at 1168.

Because the *Yearsley* defense can be no more protective than the immunity from which it arguably derives, if the federal government's sovereign immunity is itself merely a right to avoid damages, then the *Yearsley* defense is as well. *See, e.g.*, *Childs*, 22 F.4th at 1098. Thus, to conclude that jurisdiction is present here, this Court would have to split with the Fifth, Seventh, and Ninth Circuits on that preliminary question.

But, second, even if the Court were to disagree with its sister circuits on this point and conclude that the federal government's sovereign immunity is an immunity from suit as opposed to a defense to liability—or if the Court declined to reach that question at all—it should still conclude that *Yearsley* is a defense to liability. As the Supreme Court has reasoned, the *Yearsley* defense does not extend the federal government's "embracive immunity" to federal contractors. *Campbell-Ewald*, 577 U.S. at 166. Even if the federal government "cannot be sued for a tort, . . . its immunity does not extend to those that acted in its name." *Sloan Shipyards Corp. v. U.S. Shipping Bd. Emergency Fleet Corp.*, 258 U.S. 549, 568 (1922) (Holmes, *J.*); *see also Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943) ("Immunity from suit . . . cannot be . . . obtained" through "a contract between [the defendant] and the [government].").

Relying on this reasoning, without taking a position on the status of the federal government's *sovereign* immunity, the United States has concluded that *Yearsley* is a defense to liability. In its *amicus* brief in *Morales v. Cultural Care*, No. 21-1676 (1st Cir.), the United States explained that "derivative sovereign immunity" is a "misnomer." U.S. Gov't Br. at 6. It is "not a derivative form of the federal government's own immunity." Rather, "the *Yearsley* doctrine affords private entities the opportunity to show that they cannot be held liable because they lawfully exercised lawfully delegated authority." *Id.* at 7. Under *Yearsley*, private contractors

10

acting within the federal government's lawfully delegated authority and pursuant to the government's directives can demonstrate that they did not violate the law. *Id.* (citing *Campbell-Ewald*, 577 U.S. at 166). That is a defense to liability that may be effectively protected through appeal after final judgment. There is no reason to permit GEO to put this entire case on hold now so that it may seek to protect that interest here.

Moreover, there is no compelling policy reason to conclude that denials of the *Yearsley* defense threaten a right to avoid suit that cannot be protected after final judgment. To decide whether the interests at stake here can be protected through review after final judgment, "[t]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). *Yearsley* protects no such interest.

GEO cannot rely on the argument that, even after years of defending itself in this action, the prospect of standing trial would distract it from its purported public-serving functions. That is because the distraction of discovery and trial on even public officials has been deemed insufficiently compelling to justify collateral order doctrine review. *See Will*, 546 U.S. at 353; *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 499 (1989) ("[T]he costs associated with unnecessary litigation" are not enough to justify interlocutory review of a pre-trial order); *Tucker*, 36 F.4th at 1038

("[C]ourts have jealously protected the narrow scope of the collateral order doctrine and for good reason: . . . 'The mere burden of submitting to trial proceedings that will be wasted if the appellant's position is correct does not support collateral order appeal.'") (quoting Wright & Miller, 15A Federal Practice & Procedure § 3911.4). Those interests should weigh even less heavily in this case, which involves a private defendant.

GEO also cannot argue that subjecting it to trial in the face of a valid *Yearsley* defense would impinge on its discretion and initiative in the face of unclear law, as is the case in appeals involving the *qualified* immunity of government officials. *Will*, 546 U.S. at 352 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). The *Yearsley* defense was not designed to protect the initiative and discretion of contractors. Quite the opposite; even under GEO's reading of the doctrine, *Yearsley* applies where a contractor does *not* act according to its initiative and discretion but rather where the contractor acts according to the federal government's specifications. ECF No. 380 (District Court Order) at 34 ("[U]nder the agency principles underlying *Yearsley* immunity, courts have looked to see if the contractor is hired as an 'independent contractor,' expected to use its expertise and discretion to decide how best to get the job done, or as something more akin to an agent of the United States, just following orders." (quoting Kate Sablosky Elengold & Jonathan D. Glater, *The Sovereign Shield*, 73 Stan. L. Rev. 969, 1001 (2021)) (internal quotation marks omitted)); *see*

*also* Ex. A, U.S. Gov't *Morales* Br. at 7-8.

Finally, unlike in a suit against the government, there is no special sovereign dignitary interest that protects a private corporation from trial. U.S. Gov't Br. at 14.

Therefore, none of the compelling interests that would justify collateral order review apply here. *See Will*, 546 U.S. at 352-53 (collateral order review is appropriate in cases where "some particular value of a high order [is] marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual"). If the District Court erred in dismissing GEO's *Yearsley* defense, GEO will have ample opportunity to raise that issue with this Court after trial.

## B. The *Yearsley* Defense is Typically Intertwined with the Merits of the Underlying Action.

For this Court to be the first court to conclude that the *Yearsley* defense, as a categorical matter, is subject to collateral order review, it would also have to conclude that the *Yearsley* defense is "completely separate from the merits of the action." *Will*, 546 U.S. at 349-50. It is not. *See* Ex. A, U.S. Gov't *Morales* Br. at 14-15.

As the Supreme Court has explained, when a contractor acts pursuant to the government's "explicit instructions," it has a defense to liability for damages arising from its conduct. *Campbell-Ewald*, 577 U.S. at 166. In most cases, the question of

whether the contractor acted according to the government's explicit instructions will substantially overlap with the question of whether it violated the law. *Id.* ("When a contractor violates both federal law and the Government's explicit instructions, as here alleged, no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation."). This is because, as the United States government has explained, the *Yearsley* "defense applies . . . only where the defendant acted lawfully—not, as with true immunities, even where the defendant is alleged to have acted unlawfully." U.S. Gov't *Morales* Br. at 14.

This case is no different. The core of GEO's *Yearsley* defense is that ICE's Performance Based National Detention Standards, which are incorporated into GEO's contract with the government, compel it to maintain policies that require detainees in GEO's custody to work under threat of solitary confinement and require GEO to pay those detainees only $1.00 per day for their work in the Voluntary Work Program (VWP). ECF No. 380 (District Court Order) at 29, 32.

Both of those defenses substantially overlap with the question of whether GEO violated the law. On the TVPA claim, GEO has expressly contrasted the prohibitions of the TVPA with the conduct purportedly permitted by its ICE contract and incorporated standards. *See, e.g*., ECF No. 305 at 23 (GEO's motion for summary judgment) (claiming that the Aurora facility is "a lawfully run contract facility carrying out ICE-appointed duties, not a trafficking scheme") and 31

14

(claiming that GEO enforced the disciplinary severity scale not "with an intent to coerce detainees" but rather "to follow the terms of its contract"); ECF No. 350 (GEO's reply in support of its motion for summary judgment) at 57-66 (arguing that the work Plaintiffs challenge in their TVPA claim is permitted by ICE detention standards).

And on Plaintiffs' unjust enrichment claims, Plaintiffs will seek to establish that GEO could have paid VWP participants more than $1 per day for their work, consistent with the terms of its contract, and was therefore unjustly enriched. This merits question, too, overlaps with GEO's purported *Yearsley* defense.

Of course, the Court need not conclude that GEO's *Yearsley* defense overlaps with the merits of Plaintiffs' claims to conclude that it does not have jurisdiction here. But the facts of this case help illustrate why, as a categorical matter, *Yearsley* defenses will tend to substantially overlap with underlying issues bearing on liability. GEO's position would allow government contractors, under cover of a *Yearsley* defense, to obtain review of questions that should be adjudicated at trial. That would be inconsistent with the role of federal appellate courts. *See Wampler*, 624 F.3d at 1334-35 ("[I]t is the district judge, not the appellate judge, who in our system of justice has primary responsibility to police the prejudgment tactics of the litigants, and the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings." (internal

quotation marks and alterations omitted)). This is yet another reason why denials of such defenses do not meet the collateral order doctrine test.

### III.    GEO Cannot Point to Any Appellate Cases that Support Collateral Order Review of a *Yearsley* Defense.

GEO may suggest that some court of appeals' analyses support its position. But all the cases it can point to involve different kinds of immunities that, while "derivative" of some other governmental immunity, are distinct from the *Yearsley* defense. Importantly, each of these immunities raise distinct and compelling public interests that, unlike the *Yearsley* defense, justify application of the collateral order doctrine.

In *McMahon v. Presidential Airways*, Inc., 502 F.3d 1331 (11th Cir. 2007), the Eleventh Circuit considered whether the collateral order doctrine applies to *Feres* immunity, which bars servicemembers from "recover[ing] for their service-related injuries in tort suits against the government." *See* 502 F.3d at 1341. *McMahon* points to interests specific to the *Feres* doctrine that do not apply in derivative sovereign immunity contexts—"the need to avoid judicial interference with military discipline and sensitive military judgments"—to conclude that the *Feres* immunity, unlike the *Yearsley* defense, is an immunity from suit. *Id.* at 1340; *see also Newton v. Lee*, 677 F.3d 1017, 1022-23 (10th Cir. 2012); *Dibble v. Fenimore*, 339 F.3d 120, 122-25 (2d Cir. 2003); *Regan v. Starcraft Marine, LLC*, 524 F.3d 627, 630-33 (5th Cir. 2008); *Jackson v. Brigle*, 17 F.3d 280, 281-82 (9th Cir. 1994); *Lutz v. Sec'y of Air Force*,

944 F.2d 1477, 1479 (9th Cir. 1991).

*In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008) is also distinguishable. There, the Second Circuit addressed whether the collateral order doctrine applies to a derivative assertion of Stafford Act immunity—immunity for the "exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government" providing disaster relief. *See* 42 U.S.C. § 5148; *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 187. Stafford Act immunity is a form of "discretionary function immunity" protecting activities that "involve an element of judgment or choice" that are "grounded in considerations of public policy." *See id.* at 195.

Policy interests underpinning "discretionary function immunity," according to the Second Circuit, suggest it is an immunity from suit entirely. As the Second Circuit explained:

> The discretionary function immunity in the Stafford Act … is obviously animated by separation of powers concerns. Section 305 of the Stafford Act protects a right—the right of federal agencies to make discretionary decisions when engaged in disaster relief efforts without fear of judicial second-guessing—that is a "particular value of a high order." Denying immediate review of the denial of such an immunity could well result in "a trial that would imperil a substantial public interest."

*Id.* at 192 (quoting *Will*, 546 U.S. at 352-53). As noted above, *Yearsley* is just the opposite—it applies to situations where the contractor did not exercise independent

discretion, but rather followed government specifications.

The recent Sixth Circuit case, *ACT, Inc. v. Worldwide Interactive Network*, *Inc.*, 46 F.4th 489 (6th Cir. 2022), also does not resolve the issue of collateral order review of denials of *Yearsley* defenses. That case involved an intellectual property dispute in which the defendant asserted immunity from suit because it created the allegedly infringing materials to bid on state contracts. *Id.* at 496. The foundation for the purported immunity was the states' special Eleventh Amendment immunity from suit, which applies even to suits for copyright infringement. *See Allen v. Cooper*, 140 S. Ct. 994, 1001-02 (2020). The same constitutional interests do not apply here, notwithstanding GEO's contracts with the federal government.

## IV.    The Court Should Dispose of the Appeal at the Motion Stage.

This appeal illustrates the importance of the bedrock final judgment rule. After eight years of litigation involving class claims that stretch all the way back to 2004, with witnesses spread out across the globe, the parties have finally reached the eve of trial. Now, GEO attempts to exploit an incorrect and unsupported assertion of appellate jurisdiction to delay things further.

Furthermore, GEO has not suggested that this Court has jurisdiction over any part of the case below other than the District Court's denial of GEO's *Yearsley* defense. So, if GEO's interlocutory appeal is allowed to proceed, and if the District Court's order is affirmed, then, at some substantially later date,

the case will be remanded for trial and, very likely, lead to a *third* appeal to address the merits of the case, class certification, and potentially other matters. Many years could pass in the interim.

Concluding that collateral order review exists over denials of the *Yearsley* defense would allow GEO to stretch this 8-year case out further through a "succession of separate appeals," *Will*, 546 U.S. at 350, and further delay the Class's day in court. The final-judgment rule is designed to avoid protracted, piecemeal litigation of precisely this sort, and for all the reasons discussed here, the narrow collateral order doctrine does not provide an exception to that rule in this case.

The discrete appellate jurisdiction issue before the Court should be decided on Plaintiffs' motion, and the case should be sent back to the District Court to proceed to final judgment. *See, e.g.*, *Trout Unlimited v. U.S. Dep't of Agric.*, 441 F.3d 1214, 1220 (10th Cir. 2006).

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellees respectfully request that that the District Court order be summarily affirmed and that the appeal be summarily dismissed for lack of appellate jurisdiction pursuant to 10th Cir. R. 27.3(A)(1)(a).

Respectfully submitted,

s/ Alexander N. Hood
Alexander N. Hood
David H. Seligman
Juno Turner
Towards Justice
P.O. Box 371680
Pmb 44465
Denver, CO 80237-5680
720-239-2606
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org

Attorneys for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION

This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4437 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font

Date: November 30, 2022                       s/ Alexander N. Hood
                                              Attorney for the Plaintiffs-Appellees


## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document:

a)  all required privacy redactions have been made per 10th Cir. R. 25.5;

b)  if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

c)  the electronic version of this brief was scanned for viruses with www.virustotal.com and is free of viruses.

Date:  November 30, 2022                       s/ Alexander N. Hood
                                              Attorney for the Plaintiffs-Appellees

**CERTIFICATE OF OPPONENT'S POSITION PURSUANT
TO 10TH CIRCUIT RULE 27.1**

I hereby certify that counsel for Plaintiffs-Appellees have conferred with counsel for Defendant-Appellant. Defendant-Appellant oppose this motion.

Date: November 30, 2022                    s/ Alexander N. Hood
                                           Attorney for the Plaintiffs-Appellees


**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2022 I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to all Defendant-Appellant that have appeared.


Date: November 30, 2022                    s/ Alexander N. Hood
                                           Attorney for the Plaintiffs-Appellees