# EXHIBIT A

No. 21-1676

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

KAREN MORALES POSADA; AMANDA SARMENTO FERREIRA
GUIMARAES; WILLIANA ROCHA; SARA BARRIENTOS, individually and on
behalf of all others similarly situated,

Plaintiffs-Appellees,

v.

CULTURAL CARE, INC., a Massachusetts Corporation,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

———————————

*Of Counsel:*

RICHARD C. VISEK
*Acting Legal Adviser*
*U.S. Department of State*
*Washington, DC 20520*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

RACHAEL S. ROLLINS
*United States Attorney*

MICHAEL S. RAAB
GERARD SINZDAK
*Attorneys, Appellate Staff*
*Civil Division, Room 7242*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-0718*

# TABLE OF CONTENTS

**Page**

STATEMENT ......................................................................................................1

    A.    Statutory And Regulatory Background ...........................................1

    B.    Prior Proceedings ..........................................................................3

ARGUMENT .....................................................................................................5

I.    "Derivative Sovereign Immunity" Is A Defense To Liability,
Not An Immunity From Suit .......................................................................6

II.    This Court Lacks Jurisdiction Over This Appeal ...................................10

CONCLUSION ................................................................................................16

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**        **Page(s)**

*Abney v. United States,*
431 U.S. 651 (1977) .......................................................................... 12

*Acevedo-Garcia v. Vera-Monroig,*
204 F.3d 1 (1st Cir. 2000) ............................................................... 13

*Ayers, Ex parte,*
123 U.S. 443 (1887).......................................................................... 14

*Brady v. Roosevelt S.S. Co.,*
317 U.S. 575 (1943) ........................................................................... 6

*Campbell-Ewald Co. v. Gomez,*
577 U.S. 153 (2016) ................................................................... 6, 7, 8

*Camreta v. Greene,*
563 U.S. 692 (2011) ........................................................................... 8

*Capron v. Office of the Attorney Gen. of Mass.,*
944 F.3d 9 (1st Cir. 2019) ................................................................. 4

*Catlin v. United States,*
324 U.S. 229 (1945) ......................................................................... 10

*Cobbledick v. United States,*
309 U.S. 323 (1940) ......................................................................... 10

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949) ......................................................................... 11

*Digital Equip. Corp. v. Desktop Direct, Inc.,*
511 U.S. 863 (1994) .................................................................... 11, 12

*Espinal-Dominguez v. Puerto Rico,*
352 F.3d 490 (1st Cir. 2003) ........................................................... 13

*Filarsky v. Delia,*
566 U.S. 377 (2012) ........................................................................... 8

*Hafer v. Melo,*
502 U.S. 21 (1991)............................................................................. 9

*Imbler v. Pachtman,*
424 U.S. 409 (1976)....................................................................................... 8

*Larson v. Domestic & Foreign Commerce Corp.,*
337 U.S. 682 (1949)....................................................................................... 9

*Lauro Lines s.r.l. v. Chasser,*
490 U.S. 495 (1989) ..................................................................................... 14

*Lee-Barnes v. Puerto Ven Quarry Corp.,*
513 F.3d 20 (1st Cir. 2008) .......................................................................... 12

*Lewis v. Clarke,*
137 S. Ct. 1285 (2017) ................................................................................... 9

*Lovell v. One Bancorp,*
878 F.2d 10 (1st Cir. 1989) .......................................................................... 11

*Mitchell v. Forsyth,*
472 U.S. 511 (1985) ...................................................................................... 12

*Mohawk Indus., Inc. v. Carpenter,*
558 U.S. 100 (2009) ........................................................................... 11, 12, 13

*Morales Posada v. Cultural Care, Inc.,*
554 F. Supp. 3d 309 (D. Mass. 2021) ........................................................ 3, 4

*Nixon v. Fitzgerald,*
457 U.S. 731 (1982) ...................................................................................... 12

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139 (1993).............................................................................12, 13, 14

*Richardson v. McKnight,*
521 U.S. 399 (1997) ........................................................................................ 8

*Richardson-Merrell Inc. v. Koller,*
472 U.S. 424 (1985)....................................................................................... 11

*Sloan Shipyards Corp. v. U.S. Shipping Bd. Emergency Fleet Corp.,*
258 U.S. 549 (1922) ........................................................................................ 6

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.,*
859 F.3d 720 (9th Cir. 2017) ........................................................................ 11

*Swint v. Chambers Cty. Comm'n,*
    514 U.S. 35 (1995) ........................................................... 14

*United States v. Shaw,*
    309 U.S. 495 (1940) ......................................................... 8

*U.S. Fid. & Guar. Co. v. Arch Ins. Co.,*
    578 F.3d 45 (1st Cir. 2009) ............................................. 12

*Van Cauwenberghe v. Biard,*
    486 U.S. 517 (1988) .................................................... 11, 12

*Will v. Hallock,*
    546 U.S. 345 (2006) ................................................ 12, 13, 14

*Yearsley v. W. A. Ross Construction Co.,*
    309 U.S. 18 (1940) ......................................................... 6, 7

**Statutes:**

Judiciary Act, ch. 20, §§ 21-22, 25,
    1 Stat. 73, 83-87 (1789) ................................................ 10

Mutual Educational and Cultural Exchange Act of 1961,
    Pub. L. No. 87-256, 75 Stat. 527 .................................... 1

8 U.S.C. § 1101(a)(15)(J) ................................................... 2

22 U.S.C. § 2451 ............................................................ 2

22 U.S.C. § 2452(a) ......................................................... 1

28 U.S.C. § 1291 ........................................................... 10

28 U.S.C. § 1292(b) ....................................................... 16

**Regulations:**

22 C.F.R. § 62.1(b) ......................................................... 2

22 C.F.R. § 62.3 ............................................................ 2

22 C.F.R. § 62.9(d)(5) ................................................... 3, 5

22 C.F.R. § 62.31 ........................................................................................... 2

22 C.F.R. § 62.31(j) ........................................................................................ 3

**Other Authority:**

Restatement (Second) of Agency (1958):
§ 217 cmt. a ............................................................................................. 7
§ 217 cmt. b ............................................................................................. 7
§ 343 cmt. c ............................................................................................. 7

We respectfully submit this brief in response to the Court's order inviting the Solicitor General to express the views of the United States on whether "derivative sovereign immunity" is an immunity from suit or a defense to liability and whether organizations that participate as sponsors in the State Department's au pair program are entitled to "derivative sovereign immunity." *See* Aug. 29 Letter.

## STATEMENT

### A.    Statutory And Regulatory Background

The Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, 75 Stat. 527 (Fulbright-Hays Act or Act), authorized the Director of the United States Information Agency (USIA), "when he considers that it would strengthen international cooperative relations," to provide for "educational exchanges[] . . . between the United States and other countries of students, trainees, teachers, instructors, and professors." *See* 22 U.S.C. § 2452(a).[1]  The resulting Exchange Visitor Program (EVP) furthers the Act's purposes of "increas[ing] mutual understanding between the people of the United States and the people of other countries," "strengthen[ing] the ties which unite us with other nations," "promot[ing] international cooperation for educational and cultural advancement," and "assist[ing]

---

[1] The Fulbright-Hays Act provided this authority to the President. Pursuant to subsequent Executive Order and reorganizations, the authority came to rest with the USIA Director.

in the development of friendly, sympathetic, and peaceful relations between the United States and the other countries of the world." *Id.* § 2451. Participants in the EVP enter and remain in the United States on a J visa, a type of nonimmigrant visa that was created for, and is specific to, the EVP. *See* 8 U.S.C. § 1101(a)(15)(J).

The State Department has administered the EVP since 1999, when the USIA and the State Department merged. The State Department's regulations establish different categories of exchange programs within the EVP—each of which uses the J visa—that delineate the different roles that exchange visitors may fill.

One such program category allows foreign nationals to enter the United States as au pairs. *See* 22 C.F.R. § 62.31. The au pair program is a cultural- and educational-exchange program available only to foreigners between the ages of 18 and 26. Young people who qualify for this opportunity spend a year in the United States living with an American host family, providing childcare services within that family, and attending classes at an accredited college or university.

Although the State Department oversees the EVP, the exchange programs are conducted by entities known as "sponsors" that the State Department designates for that purpose. *See* 22 C.F.R. §§ 62.1(b), 62.3. The sponsors screen foreign nationals for eligibility, place them with host organizations or families, and monitor their participation in the EVP. In some categories of the EVP—including the au pair category—the sponsors are private-sector organizations, and they earn income from fees they charge to host organizations or families and exchange visitors. State

Department regulations state that a sponsor "must[] . . . [n]ot represent that its exchange visitor program is endorsed, sponsored, or supported by the Department of State or the U.S. Government." 22 C.F.R. § 62.9(d)(5).

State Department regulations impose various requirements on sponsors. Among other things, sponsors in the au pair program "shall require that au pair participants . . . [a]re compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor." 22 C.F.R. § 62.31(j). Sponsors must also ensure that au pairs work no more than 10 hours per day and 45 hours per week, receive at least one-and-a-half days off per week, and are provided two-weeks paid vacation. *Id.*

### B.    Prior Proceedings

Plaintiffs in this putative class action are foreign nationals who participated as au pairs in the au pair program. *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309 (D. Mass. 2021). Defendant is Cultural Care, Inc., one of the au pair program sponsors. Plaintiffs' complaint alleges that Cultural Care violated the Fair Labor Standards Act (FLSA) and various state wage-and-hour laws in failing to ensure that plaintiffs received minimum wages and overtime pay in accordance with those laws. *Id.* at 312-13. Plaintiffs also allege that Cultural Care violated state wage-statement laws and engaged in deceptive trade practices, also in violation of state law. *Id.*

3

Cultural Care moved to dismiss plaintiffs' complaint. The company argued that it is a sponsor operating an au pair program on behalf of the United States and, as such, is entitled to "derivative sovereign immunity" and that plaintiffs' suit was therefore barred. *Morales Posada*, 554 F. Supp. 3d at 318. Cultural Care additionally argued that plaintiffs' state law claims were preempted by the State Department's au pair regulations, *id.* at 319-22, and that plaintiffs' FLSA claims failed as a matter of law because the company is not an "employer" under the FLSA, *id.* at 322.

The district court denied Cultural Care's motion to dismiss. *See Morales Posada*, 554 F. Supp. 3d at 309-24. The court held that Cultural Care was not entitled to derivative sovereign immunity because it was not a government contractor or agent. *See id.* at 318-19. Citing this Court's decision in *Capron v. Office of the Attorney General of Massachusetts*, 944 F.3d 9 (1st Cir. 2019), the court also rejected Cultural Care's argument that the State Department's regulations preempted state wage-and-hour laws. *Morales Posada*, 554 F. Supp. 3d at 319-22. Finally, the court rejected Cultural Care's contention that plaintiffs had not alleged facts sufficient to show that the company was the au pairs' employer for purposes of the FLSA. *Id.* at 322-23.

Cultural Care appealed the district court's denial of its motion to dismiss. In its briefs, the company argues that this Court has jurisdiction over the appeal under the collateral order doctrine because "derivative sovereign immunity" provides an immunity from suit, the denial of which is immediately appealable. *See* Appellants' Opening Br. (AOB) 4. It asks this Court to exercise pendent appellate jurisdiction

over the district court's rulings on preemption and on whether plaintiffs adequately

allege that Cultural Care is an employer under the FLSA. *Id.*

On August 29, 2022, this Court invited the Solicitor General to file an amicus

brief supplying the United States' views on two questions. *See* August 29 Letter. The

first question asks the government to address whether a private entity can "enjoy a

derivative form of the immunity of the sovereign" and whether "derivative sovereign

immunity" is an immunity from suit or a defense to liability. *Id.* at 2. The second

question asks whether a sponsor in the au pair program can assert "derivative

sovereign immunity" even though State Department regulations prohibit sponsors

from representing that their exchange program is "endorsed, sponsored, or supported

by the Department of State or the U.S. Government," 22 C.F.R. § 62.9(d)(5). *Id.*

## ARGUMENT

Cultural Care's interlocutory appeal should be dismissed for lack of appellate

jurisdiction. Cultural Care argues that the district court's denial of the company's

assertion of "derivative sovereign immunity" is immediately appealable under the

collateral order doctrine. That is incorrect. For the reasons explained below, the so-

called "derivative sovereign immunity" doctrine is not an immunity at all; it is merely a

defense to liability. Moreover, a district court order rejecting the "derivative sovereign

immunity" defense can be reviewed effectively following a final judgment and

typically involves the resolution of issues that are intertwined with the merits of the

plaintiffs' suit. Accordingly, such an order does not satisfy the requirements of the

collateral order doctrine.  This Court thus lacks jurisdiction over this interlocutory

appeal, and the appeal should be dismissed.

## I.    "Derivative Sovereign Immunity" Is A Defense To Liability, Not An Immunity From Suit

Federal contractors and other private parties operating under the federal

government's direction and authorization do not "share the Government's unqualified

immunity from liability and litigation." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166

(2016).  As Justice Holmes put it nearly a century ago, while the federal government

generally "cannot be sued for a tort, … its immunity does not extend to those that

acted in its name." *Sloan Shipyards Corp. v. U.S. Shipping Bd. Emergency Fleet Corp.*, 258

U.S. 549, 568 (1922); *see Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943)

("Immunity from suit … cannot be … obtained" through "a contract between [the

defendant] and the [government].").

"Derivative sovereign immunity" is therefore a misnomer.  The defense known

by that name is not a derivative form of the federal government's own immunity;

rather, it reflects the distinct principle articulated in *Yearsley v. W. A. Ross Construction

Co.*, 309 U.S. 18 (1940):  A private entity cannot be held liable for carrying out a

"validly conferred" delegation of authority at the direction of the government.  *Id.* at

20-21.  A private company may be held liable for the exercise of delegated authority,

by contrast, where it "exceeded [the] authority" conferred by the government or

where the authority "was not validly conferred." *Id.* at 21; *see Campbell-Ewald*, 577 U.S.

6

at 166 ("When a contractor violates both federal law and the Government's explicit
instructions, … no 'derivative immunity' shields the contractor from suit by persons
adversely affected by the violation."). Thus, the *Yearsley* doctrine affords private
entities the opportunity to show that they cannot be held liable because they lawfully
exercised lawfully delegated authority.

The *Yearsley* doctrine thus resembles the common-law rule that a principal may
delegate to agents its "privilege" to take certain actions that would be unlawful if
committed by others. *See, e.g.*, Restatement (Second) of Agency § 217 cmt. a, at 469
(1958) (noting that "[a] privilege may result from the consent of another" or "may be
created by the law irrespective of consent" and that "[m]ost of these privileges are
delegable"); *see also id.* § 217 cmt. b, at 470 ("Immunities, unlike privileges, are not
delegable . . . ."). For example, a sheriff has "the privilege … to arrest" and
interrogate criminal suspects, even though that conduct generally would be unlawful if
undertaken by a private party, and "the sheriff can procure assistance in" exercising
that privilege. *Id.* § 217 cmt. a, at 469. Those who assist the sheriff likewise act
lawfully when they carry out their delegated responsibilities. *Id.* But if the agent
exceeds the scope of the privilege delegated by the principal—or if the principal never
had the asserted privilege or could not validly delegate it—then the agent's conduct
may give rise to liability. *See id.* § 343 cmt. c, at 105.

This understanding of what Cultural Care calls "derivative sovereign immunity"
sharply distinguishes it from actual immunities, including sovereign immunity. The

critical feature of "an immunity" is that it "frees one who enjoys it from a lawsuit whether or not he acted wrongly." *Richardson v. McKnight*, 521 U.S. 399, 403 (1997). Where the government has not waived it, for example, sovereign immunity serves as "an impregnable legal citadel where government … may operate undisturbed by the demands of litigants." *United States v. Shaw*, 309 U.S. 495, 501 (1940). And under the doctrine of qualified immunity, even where "the plaintiff's claim … in fact has merit," a government official is entitled to have the suit dismissed unless the official's unlawful conduct violated a "clearly established" right. *Camreta v. Greene*, 563 U.S. 692, 705 (2011). By contrast, when a government contractor lawfully exercises lawfully delegated authority, the contractor is not immune from suit for unlawful conduct. Rather, the contractor is protected from liability only to the extent—and only *because*—it is acting lawfully. *See Campbell-Ewald*, 577 U.S. at 166.[2]

The defense of so-called "derivative sovereign immunity" thus turns on (1) whether the government authorized a private entity to take actions that would be unlawful if committed by others; (2) whether the authorization was valid; and (3) whether the private entity's actions exceeded the scope of that authorization. Cultural Care is correct (Cultural Care Br. 25-30) that the federal government can grant the

---

[2] Cultural Care does not argue that it is entitled to qualified immunity or that it would meet the distinct requirements of such immunity. *See Filarsky v. Delia*, 566 U.S. 377, 383-84 (2012) (a private party may be entitled to qualified immunity where, among other things, its actions qualify as state action and extending immunity to those actions is "well grounded in history and reason" (quoting *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976))).

relevant authorization through a statute or regulation, as well as through contract.  In this case, for example, if the State Department's regulations authorized Cultural Care to operate its exchange program exempt from state wage-and-hour laws, then Cultural Care would not have acted unlawfully in failing to comply with those laws.  But that authorization would not mean, as Cultural Care contends (Cultural Care Br. 31-33), that the State Department had conferred the federal government's sovereign immunity on a private entity.  It would simply mean that the State Department had authorized the conduct at issue and that Cultural Care had therefore acted lawfully in operating its exchange program.

The Supreme Court's decision in *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), further supports the conclusion that the "derivative sovereign immunity" defense is not a form of the federal government's absolute sovereign immunity, as Cultural Care contends.  In *Lewis*, the Supreme Court emphasized that sovereign immunity will bar a suit against an individual or entity only where "the sovereign is the real party in interest."  *Id.* at 1290 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  In making that assessment, courts ask "whether the remedy sought is truly against the sovereign."  *Id.*; *see also id.* at 1291 (the sovereign is not the real party in interest where the relief sought "will not require action by the sovereign or disturb the sovereign's property" (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949))).  As noted above, the "derivative sovereign immunity" defense turns on whether the federal government authorized a private entity to take a certain action that would be unlawful

9

if taken by others.  It applies where the plaintiff seeks to hold a private defendant liable and where the judgment would operate against the private entity, not the United States.  In other words, it provides a defense to liability for a private entity where the private entity is the real party in interest and would otherwise face liability.

## II.     This Court Lacks Jurisdiction Over This Appeal

Cultural Care asserts that this Court has jurisdiction over this appeal because the district court's decision denying its "derivative sovereign immunity" defense is immediately appealable under the collateral order doctrine.  That is incorrect.  A district order denying a "derivative sovereign immunity" defense is not a final order subject to immediate appeal.

"Finality as a condition of review is an historic characteristic of federal appellate procedure," dating to the first Judiciary Act, ch. 20, §§ 21-22, 25, 1 Stat. 73, 83-87 (1789).  *Cobbledick v. United States*, 309 U.S. 323, 324 (1940).  The finality requirement is now codified in 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over appeals from "final decisions of the district courts."  In general, final decisions are those that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  The finality requirement serves important purposes:  "If non-final decisions were generally appealable, cases could be interrupted and trials postponed indefinitely … [,] [c]osts would be inflated by such a multiplication of proceedings, and district courts would be inhibited in their ability to manage litigation efficiently[.]"  *SolarCity*

*Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 723 (9th Cir.

2017) (citations omitted); *see also Lovell v. One Bancorp*, 878 F.2d 10, 12 (1st Cir. 1989)

(Immediate review of non-final orders "would impose unreasonable disruption, delay,

and expense" and "would also undermine the ability of district judges to supervise

litigation."(quoting *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 430 (1985)).

The collateral order doctrine affords a "narrow exception" to this general

finality requirement. *Lovell*, 878 F.2d at 12 (quoting *Richardson-Merrell*, 472 U.S. at

430). The doctrine reflects the Supreme Court's holding that § 1291 authorizes

appeals "from a narrow class of decisions that do not terminate the litigation, but

must, in the interest of 'achieving a healthy legal system,' nonetheless be treated as

'final.'" *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citation

omitted). That "small class" encompasses decisions that "finally determine claims of

right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial

Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). A three-part test determines whether a

"'category'" of orders falls within the doctrine. *Mohawk Indus., Inc. v. Carpenter*, 558

U.S. 100, 107 (2009); *see Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) ("In

fashioning a rule of appealability under § 1291, … we look to categories of cases, not

to particular injustices."). To be appealable, an order that does not terminate the

litigation must "[1] conclusively determine the disputed question, [2] resolve an

important issue completely separate from the merits of the action, and [3] be

effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S.

345, 349 (2006) (alterations in original) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

The collateral order doctrine is "applied narrowly and interpreted strictly." *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 55 (1st Cir. 2009) (quoting *Lee-Barnes v. Puerto Ven Quarry Corp.*, 513 F.3d 20, 26 (1st Cir. 2008)).  The Supreme Court has stressed that the collateral order doctrine "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'"  *Mohawk Indus.*, 558 U.S. at 106 (quoting *Digital Equip.*, 511 U.S. at 868).  Accordingly, the Supreme Court has recognized only a small number of types of orders as immediately appealable under the collateral order doctrine.  They include, for example, orders denying absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982); denying Eleventh Amendment immunity, *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 144-47; and denying qualified immunity on legal grounds, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); as well as, among others, orders rejecting a double-jeopardy defense to retrial, *Abney v. United States*, 431 U.S. 651, 656-62 (1977).  In each such case, the Supreme Court has emphasized, "'the essence' of the claimed right" has been more than a defense against liability; it has been "a right not to stand trial" in the first place.  *Van Cauwenberghe*, 486 U.S. at 524 (quoting *Mitchell*, 472 U.S. at 525).  This Court has accordingly held that a municipality's defenses to a § 1983 lawsuit are not appealable under the collateral order doctrine because they do not implicate "a right to immunity from trial" but are

12

instead "defense[s] to liability." *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 14 (1st Cir. 2000); *see also Espinal-Dominguez v. Puerto Rico*, 352 F.3d 490, 497-98 (1st Cir. 2003) ("[W]hen a State has filed a pretrial motion invoking the Eleventh Amendment not to establish an immunity from suit but merely to afford itself a defense to a particular strain of damages, there is no reason to enswathe a denial of its motion within the collateral order doctrine.").

Because the *Yearsley* doctrine likewise affords only a defense to liability on the ground that the defendant acted lawfully, rather than an immunity from suit, orders rejecting assertions of the doctrine fail to satisfy at least two requirements of the collateral order doctrine: They are not "effectively unreviewable on appeal from a final judgment" and do not typically "resolve an important issue completely separate from the merits of the action," *Will*, 546 U.S. at 349 (quoting *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 144).

1.     *Effective unreviewability*. In assessing whether a threshold ruling would be effectively unreviewable without an interlocutory appeal, "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352-53). For example, the "ultimate justification" for "application of the collateral order doctrine" to orders rejecting Eleventh Amendment immunity is the need to avoid wrongfully "'subjecting a State to the coercive process of judicial tribunals at the instance of private parties'"—a "dignitary interest[]" that

13

cannot "be fully vindicated" on appeal if the trial has already occurred. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146 (quoting *Ex parte Ayers*, 123 U.S. 443, 505 (1887)).

Orders rejecting assertions of a claim to "derivative sovereign immunity" in U.S. courts do not, as a category, implicate that sort of significant and effectively irreparable harm. Even if an erroneous denial leads to an unwarranted award of damages, that award—like any other "erroneous ruling on liability"—"may be reviewed effectively on appeal from final judgment." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995). To be sure, requiring contractors and others to wait until final judgment to appeal may force them to incur "unnecessary trouble and expense" litigating a case that should have been dismissed. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 499 (1989). But that will be true of many defenses, and the Supreme Court has "declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order." *Id.*

2. *Separateness.* Orders rejecting a *Yearsley* defense also generally do not "resolve an important issue completely separate from the merits of the action," *Will*, 546 U.S. at 349 (quotation marks omitted). Rather, the question whether a defendant can establish a *Yearsley* defense is often coterminous with the merits of the action. That is because the defense applies, as discussed, only where the defendant acted lawfully—not, as with true immunities, even where the defendant is alleged to have acted unlawfully. *See supra* pp. 6-8. In this case, for example, the question whether

14

federal law authorized Cultural Care to operate in a manner exempt from state wage-and-hour laws—*i.e.*, whether the company's actions were lawful notwithstanding its alleged failure to comply with those state laws—is coterminous with Cultural Care's claim that the State Department's regulations preempt state law.  Indeed, Cultural Care acknowledges that its "derivative sovereign immunity" and preemption defenses "turn on the same facts and legal analysis."  AOB 34.  But, as Cultural Care recognizes in asking this Court to exercise pendent appellate jurisdiction over its preemption claim (*id.*), preemption is a defense on the merits that is not immediately appealable.  In other words, Cultural Care's "derivative sovereign immunity" claim is not separate from its argument on the merits that its actions were lawful because they complied with federal law.[3]

Although orders rejecting a *Yearsley* defense do not satisfy the requirements of the collateral order doctrine, litigation against government contractors and other private entities can raise serious concerns that warrant early appellate review through the certification of interlocutory appeals under 28 U.S.C. § 1292(b).  In extraordinary cases, mandamus is also available to correct egregious errors in application of the

---

[3] Because this Court lacks jurisdiction over Cultural Care's appeal, it lacks authority at this time to decide whether au program sponsors like Cultural Care are entitled as a general matter to assert a "derivative sovereign immunity" defense. Moreover, because Cultural Care's claim to "derivative sovereign immunity" coincides with its claim that federal regulations preempt state wage-and-hour laws, this Court will not need to decide whether Cultural Care is entitled to "derivative sovereign immunity"; it can simply resolve Cultural Care's preemption defense in an appeal from an appropriate order of the district court.

*Yearsley* doctrine. Here, however, Cultural Care has neither sought certification under § 1292(b) nor sought the extraordinary remedy of mandamus. Because this Court lacks jurisdiction over Cultural Care's appeal under the collateral order doctrine, the appeal should be dismissed.

## CONCLUSION

For the foregoing reasons, Cultural Care's appeal should be dismissed for lack of jurisdiction.

Respectfully submitted,

*Of Counsel:*

RICHARD C. VISEK
*Acting Legal Adviser*
*U.S. Department of State*
*Washington, DC 20520*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

RACHAEL S. ROLLINS
*United States Attorney*

MICHAEL S. RAAB

*s/ Gerard Sinzdak*

GERARD SINZDAK
*Attorneys, Appellate Staff*
*Civil Division, Room 7242*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-0718*
*gerard.j.sinzdak@usdoj.gov*

November 2022

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of this Court's August 29, 2022, letter because it contains fewer than thirty double-spaced pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Gerard Sinzdak*
Gerard Sinzdak