# EXHIBIT B

No. 19-648

# In the Supreme Court of the United States

————

CACI PREMIER TECHNOLOGY, INC., PETITIONER

*v.*

SUHAIL NAJIM ABDULLA AL SHIMARI, ET AL.

————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT*

————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

————

JEFFREY B. WALL
  *Acting Solicitor General
  Counsel of Record*
HASHIM M. MOOPPAN
  *Counselor to the Solicitor
  General*
SOPAN JOSHI
  *Senior Counsel to the
  Assistant Attorney General*
BENJAMIN W. SNYDER
  *Assistant to the Solicitor
  General*
H. THOMAS BYRON III
DANIEL WINIK
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

**QUESTION PRESENTED**

Whether the collateral-order doctrine permits immediate appeal from the denial of a motion to dismiss on the basis of the so-called "derivative sovereign immunity" defense.

(I)

**TABLE OF CONTENTS**

Page

Statement .................................................................................... 1
Discussion .................................................................................. 5
    A.  The court of appeals correctly determined that it lacked jurisdiction over petitioner's interlocutory appeal ......................................................................... 6
    B.  The question presented warrants this Court's review .................................................................... 16
    C.  This case would be a suitable vehicle in which to address the question presented if the case is not effectively mooted by *Nestlé* and *Cargill* ................... 20
Conclusion .................................................................................. 23

**TABLE OF AUTHORITIES**

Cases:

    *Abney* v. *United States*, 431 U.S. 651 (1977) ........................ 8
    *Ackerson* v. *Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009)............................................................... 20
    *Adkisson* v. *Jacobs Eng'g Grp., Inc.*, 790 F.3d 641 (6th Cir. 2015), cert. denied, 136 S. Ct. 980 (2016) .... 19, 20
    *Ayers*, *In re*, 123 U.S. 443 (1887)................................... 12, 13
    *Brady* v. *Roosevelt S.S. Co.*, 317 U.S. 575 (1943)................. 9
    *Butters* v. *Vance Int'l, Inc.*, 225 F.3d 462 (2000) ............... 19
    *Campbell-Ewald Co.* v. *Gomez*, 136 S. Ct. 663 (2016)............................................................... 9, 10, 11, 14
    *Camreta* v. *Greene*, 563 U.S. 692 (2011) ............................ 11
    *Catlin* v. *United States*, 324 U.S. 229 (1945)........................ 6
    *Cobbledick* v. *United States*, 309 U.S. 323 (1940) ................ 6
    *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).......................................................... 6, 7

(III)

IV

Cases—Continued:                                                Page

*Cunningham* v. *General Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir.), cert. denied, 139 S. Ct. 417
(2018) ................................................................................. 3

*Digital Equip. Corp.* v. *Desktop Direct, Inc.*,
511 U.S. 863 (1994) .............................................................. 7

*Feres* v. *United States*, 340 U.S. 135 (1950) ................. 17, 18

*Filarsky* v. *Delia*, 566 U.S. 377 (2012) ............................... 10

*Houston Cmty. Hosp.* v. *Blue Cross & Blue Shield of
Tex., Inc.*, 481 F.3d 265 (5th Cir. 2007) ............................. 17

*KBR, Inc., In re*, 744 F.3d 326 (4th Cir. 2014),
cert. denied, 135 S. Ct. 1153 (2015) ................................... 19

*Lauro Lines s.r.l.* v. *Chasser*, 490 U.S. 495 (1989) ....... 12, 13

*Martin* v. *Halliburton*, 618 F.3d 476 (5th Cir. 2010) ... 16, 17

*McMahon* v. *Presidential Airways, Inc.*,
502 F.3d 1331 (11th Cir. 2007) ..................................... 17, 18

*Mitchell* v. *Forsyth*, 472 U.S. 511 (1985) .................. 8, 11, 15

*Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100
(2009) ............................................................................... 7, 12

*Nixon* v. *Fitzgerald*, 457 U.S. 731 (1982) ............................ 7

*Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf &
Eddy, Inc.*, 506 U.S. 139 (1993) .............................. 8, 12, 13

*Richardson* v. *McKnight*, 521 U.S. 399 (1997) ............. 11, 13

*Sloan Shipyards Corp.* v. *U.S. Shipping Bd.
Emergency Fleet Corp.*, 258 U.S. 549 (1922) .................... 9

*Swint* v. *Chambers Cnty. Comm'n*, 514 U.S. 35 (1995) ..... 12

*United States* v. *Mitchell*, 445 U.S. 535 (1980) ................. 15

*United States* v. *Shaw*, 309 U.S. 495 (1940) ....................... 11

*Van Cauwenberghe* v. *Biard*, 486 U.S. 517 (1988) ..... 7, 8, 12

*Will* v. *Hallock*, 546 U.S. 345 (2006) .................... 7, 12, 14, 15

*World Trade Ctr. Disaster Site Litigation, In re*,
521 F.3d 169 (2d Cir. 2008) ................................................ 18

V

Cases—Continued:                                              Page

*Yearsley* v. *W. A. Ross Construction Co.*,
309 U.S. 18 (1940) ............................................................ 9, 10

Constitution and statutes:

U.S. Const. Amend XI ...................................................... 8, 12
Alien Tort Statute, 28 U.S.C. 1350 ........................................ 2
Judiciary Act of 1789, ch. 20, §§ 21-22, 25, 1 Stat.
83-87 ......................................................................... 6
Robert T. Stafford Disaster Relief and Emergency
Assistance Act, Pub. L. No. 93-288, 88 Stat. 143............. 18
28 U.S.C. 1291 ............................................................. 6, 7
28 U.S.C. 1292(b) ............................................................ 16

Miscellaneous:

Lt. Gen. Anthony R. Jones, *Army Reg. 15-6 Investi-
gation of the Abu Ghraib Prison and 205th Mili-
tary Intelligence Brigade* (2004)........................................ 2
Restatement (Second) of Agency (1958):

§ 217 cmt. a................................................................. 10
§ 217 cmt. b ................................................................ 10
§ 343 cmt. c ................................................................ 10

# In the Supreme Court of the United States

----------

No. 19-648

CACI PREMIER TECHNOLOGY, INC., PETITIONER

*v.*

SUHAIL NAJIM ABDULLA AL SHIMARI, ET AL.

----------

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT*

----------

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

----------

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be held pending the Court's disposition of *Nestlé USA, Inc.* v. *Doe*, cert. granted, No. 19-416 (July 2, 2020), and *Cargill, Inc.* v. *Doe*, cert. granted, No. 19-453 (July 2, 2020). If the Court's decisions in *Nestlé* and *Cargill* do not effectively eliminate respondents' substantive claims in this case, the Court should then grant the petition for a writ of certiorari.

## STATEMENT

1. Following the 2003 invasion of Iraq, the United States military used the Abu Ghraib prison outside Baghdad to detain criminals and others held for interrogation. Pet. App. 13a-14a. Petitioner CACI Premier Technology, Inc. contracted with the United States to

(1)

2

provide civilian interrogators who worked alongside U.S. military personnel at the prison.

A later military investigation concluded that "shameful events occurred at the detention facility of Abu Ghraib" and "identified forty-four incidents of detainee abuse." Lt. Gen. Anthony R. Jones, *Army Reg. 15-6 Investigation of the Abu Ghraib Prison and 205th Military Intelligence Brigade* 15 (2004). Investigators identified instances of abuses involving both military personnel and CACI interrogators. Pet. App. 40a.

2. Respondents are Iraqi nationals who allege they were abused while detained at Abu Ghraib prison. Pet. App. 12a. They brought this suit against CACI under the Alien Tort Statute, 28 U.S.C. 1350, and various common-law theories. Pet. App. 12a. Respondents' only remaining claims purportedly arise under the Alien Tort Statute and allege that CACI's employees conspired with, or aided and abetted, military personnel who abused respondents. Pet. 4-5.

After numerous dispositive motions and several appeals—the details of which are not relevant to the present petition—CACI filed a third-party complaint against the United States, in which CACI asserted that the United States would be liable for any damages CACI might ultimately be ordered to pay to respondents. Pet. App. 277a-279a. The government moved to dismiss CACI's third-party claims as barred by sovereign immunity, and also sought summary judgment on the ground that CACI's third-party claims were barred by a settlement agreement CACI had entered with the government. *Id.* at 279a-280a.

CACI, in turn, moved to dismiss respondents' claims under a doctrine sometimes referred to as "derivative sovereign immunity." Pet. App. 339a-340a. The Fourth

3

Circuit has articulated that doctrine as establishing that "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Cunningham* v. *General Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (citation omitted), cert. denied, 139 S. Ct. 417 (2018); see Pet. App. 340a.

3. The district court denied the government's motion to dismiss CACI's tort-based claims, holding that "the United States does not retain sovereign immunity for violations of *jus cogens* norms of international law." Pet. App. 335a. To reach that result, it first rejected the government's argument that a waiver of sovereign immunity must be express, holding that "no such categorical rule exists" and that "the government may also waive its immunity impliedly through its conduct." *Id.* at 301a n.6. It then held that the United States had impliedly waived its immunity to claims alleging violations of *jus cogens* norms in a variety of ways, including "by joining the community of nations and accepting the law of nations"; "ratifying the Convention Against Torture and assuring the Committee Against Torture that an adequate civil remedy exists for [victims of torture]"; and "participating in the Nuremberg trials and the parallel development of peremptory norms of international law." *Id.* at 317a-318a, 321a, 328a.

Having denied the government's motion to dismiss on sovereign-immunity grounds, the district court also denied CACI's assertion of "derivative sovereign immunity." The court reasoned that "derivative sovereign immunity" is only available if "the United States would be immune from suit" on the same claims, and that it accordingly was not available here, where the court had

4

already ruled "that sovereign immunity does not protect the United States from claims for violations of *jus cogens* norms." Pet. App. 340a. The court went on to observe that, "[e]ven if * * * sovereign immunity protected the United States from suit, it is not at all clear that CACI would be extended the same immunity." *Ibid.* That is true, the court explained, because "derivative immunity * * * is not awarded to government contractors who violate the law or the contract." *Id.* at 340a-341a. Thus, CACI would not be entitled to derivative immunity if it "conspired with and aided and abetted military personnel in committing acts of torture, [cruel, inhuman, or degrading treatment], and war crimes"—conduct that would have violated "the U.S. Code and international regulations." *Id.* at 341a. "Regardless" of whether there was sufficient evidence of such actions, though, the court held that "CACI's Motion to Dismiss fails because the United States does not enjoy sovereign immunity for these kinds of claims." *Id.* at 342a.

Although the court denied the government's motion to dismiss CACI's tort-based claims, it granted summary judgment in favor of the government on the ground that CACI's third-party tort claims were barred by the settlement agreement between CACI and the government. Pet. App. 347a-348a. Accordingly, the government is no longer a party to this litigation.

4. CACI filed an interlocutory appeal from the district court's denial of its motion to dismiss. The court of appeals dismissed the appeal for lack of jurisdiction. Pet. App. 4a-5a.

The panel majority explained that, in a prior en banc decision in this case, the Fourth Circuit had observed

5

"that 'fully developed rulings' denying 'sovereign immunity (or derivative claims thereof) may not' be immediately appealable." Pet. App. 4a (quoting 679 F.3d 205, 211 n.3). And the majority reasoned that, "even if a denial of derivative sovereign immunity may be immediately appealable," CACI cannot obtain interlocutory review "because there remain continuing disputes of material fact with respect to [its] derivative sovereign immunity defenses"—namely disputes as to "whether CACI violated the law or its contract." *Id.* at 4a-5a. The majority therefore concluded that CACI's appeal did not "turn on an abstract question of law" and accordingly was "not properly before" the court. *Id.* at 5a.

Judge Quattlebaum concurred in the judgment. Pet. App. 6a-7a.

## DISCUSSION

The court of appeals correctly determined that it lacked jurisdiction to hear CACI's interlocutory appeal in this case, though its reasoning was incorrect. Because the district court's decision rested solely on a pure, and erroneous, conclusion of law (that the United States has waived its sovereign immunity from suits alleging violations of *jus cogens* norms), no disputed issue of fact prevented the court of appeals from exercising jurisdiction. Nevertheless, the court of appeals did lack jurisdiction, because the so-called "derivative sovereign immunity" doctrine CACI is asserting does not afford a genuine immunity from suit, as distinct from a defense to liability on the merits. Pre-trial orders rejecting an assertion of the doctrine thus are not immediately appealable under the collateral-order doctrine.

Although the decision below reached the correct result, the question presented warrants this Court's review. There is tension in the lower courts' approaches

to applying the collateral-order doctrine in the context of orders denying federal contractor defenses like the one at issue here, and the courts of appeals also are divided about the nature of the "derivative sovereign immunity" doctrine. Rather than granting the petition for a writ of certiorari immediately, however, the Court should hold the petition pending its decisions in *Nestlé USA, Inc.* v. *Doe*, cert. granted, No. 19-416 (July 2, 2020), and *Cargill, Inc.* v. *Doe*, cert. granted, No. 19-453 (July 2, 2020). Those decisions may effectively foreclose respondents' underlying substantive claims. If they do not, the Court should grant the petition for a writ of certiorari and affirm.

### A. The Court Of Appeals Correctly Determined That It Lacked Jurisdiction Over Petitioner's Interlocutory Appeal

1. "Finality as a condition of review is an historic characteristic of federal appellate procedure," dating to the first Judiciary Act, ch. 20, §§ 21-22, 25, 1 Stat. 83-87 (1789). *Cobbledick* v. *United States*, 309 U.S. 323, 324 (1940). The finality requirement is now codified in 28 U.S.C. 1291, which provides that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States, * * * except where a direct review may be had in the Supreme Court." *Ibid.* "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin* v. *United States*, 324 U.S. 229, 233 (1945).

This Court has "long given" Section 1291 a "practical rather than a technical construction." *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). It has held that "the statute entitles a party to appeal * * * from a narrow class of decisions that do not terminate

7

the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as 'final.'" *Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citations and some internal quotation marks omitted). That "small class" encompasses decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546.

The Court has applied a three-part test to determine whether a "category" of orders is immediately appealable under the collateral-order doctrine. *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 107 (2009) (citation omitted); see *Van Cauwenberghe* v. *Biard*, 486 U.S. 517, 529 (1988) ("In fashioning a rule of appealability under § 1291, * * * we look to categories of cases, not to particular injustices."). To be immediately appealable, an order that does not terminate the litigation must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will* v. *Hallock*, 546 U.S. 345, 349 (2006) (citations omitted; brackets in original).

The Court has stressed that the collateral-order doctrine "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'" *Mohawk Indus.*, 558 U.S. at 106 (quoting *Digital Equip.*, 511 U.S. at 868). Accordingly, the Court has recognized only a small number of types of orders as immediately appealable under the collateral-order doctrine. They include, for example, orders denying absolute immunity, *Nixon* v. *Fitzgerald*, 457 U.S. 731, 742 (1982); deny-

8

ing Eleventh Amendment immunity, *Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-147 (1993); and denying qualified immunity on legal grounds, *Mitchell* v. *Forsyth*, 472 U.S. 511, 530 (1985); as well as, among others, orders rejecting a double-jeopardy defense to retrial, *Abney* v. *United States*, 431 U.S. 651, 656-662 (1977). In each such case, the Court has emphasized, "'the essence' of the claimed right" has been more than a defense against liability; it has been "a right not to stand trial" in the first place. *Van Cauwenberghe*, 486 U.S. at 524 (quoting *Mitchell*, 472 U.S. at 525).

2. Under the foregoing principles, the court of appeals lacked jurisdiction to hear CACI's interlocutory appeal.

CACI claims that the court of appeals' decision conflicts with this Court's holdings "that orders denying absolute immunity, qualified immunity, and Eleventh Amendment immunity are all immediately appealable." Pet. 1-2. It asserts that, like those doctrines, the so-called "derivative sovereign immunity" doctrine supplies an "immunity from suit." *Id.* at 11-12.

Despite often being referred to as derivative sovereign "immunity," however, the doctrine that CACI invokes is not genuinely an immunity at all; it is merely a defense to liability. Orders rejecting a "derivative sovereign immunity" defense, even on purely legal grounds, therefore do not satisfy the effective-unreviewability requirement of the collateral-order doctrine. And because the "derivative sovereign immunity" defense requires that the government contractor have complied with all relevant federal requirements, decisions ad-

9

dressing the defense at preliminary stages of a case often also will not satisfy the separateness and conclusiveness requirements of the collateral-order doctrine.

a. Federal contractors do not "share the Government's unqualified immunity from liability and litigation." *Campbell-Ewald Co.* v. *Gomez*, 136 S. Ct. 663, 672 (2016). As Justice Holmes put it nearly a century ago, while the federal government generally "cannot be sued for a tort, * * * its immunity does not extend to those that acted in its name." *Sloan Shipyards Corp.* v. *U.S. Shipping Bd. Emergency Fleet Corp.*, 258 U.S. 549, 568 (1922); see *Brady* v. *Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943) ("Immunity from suit * * * cannot be * * * obtained" through "a contract between [the defendant] and the [government].").

"Derivative sovereign immunity" is therefore a misnomer. The defense known by that name is not a derivative form of the government's own immunity, because this Court has stated unambiguously that contractors cannot assert a right to that immunity in U.S. courts.[1] Rather, the doctrine known as "derivative sovereign immunity" reflects the principle this Court articulated in *Yearsley* v. *W. A. Ross Construction Co.*, 309 U.S. 18 (1940): A contractor cannot be held liable for exercising authority "validly conferred" by the government. *Id.* at 20-21. A contractor may be held liable, by contrast, where it "exceeded [the] authority" conferred by the government or where the authority "was not validly conferred." *Id.* at 21; see *Campbell-Ewald*, 136 S. Ct. at 672 ("When a contractor violates both federal law and

---

[1] The question of whether the government can argue that a contractor should be sheltered by its sovereign immunity in an adjudication in a foreign or international court or tribunal pursuant to applicable foreign or international law is not presented in this case.

10

the Government's explicit instructions, * * * no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation.").[2]

The doctrine discussed in *Campbell-Ewald* and *Yearsley* accordingly resembles the common-law rule that a principal may delegate to agents its "privilege" to take certain actions that would be unlawful if committed by others. See, *e.g.*, Restatement (Second) of Agency § 217 cmt. a, at 469 (1958) ("A privilege may result from the consent of another" or "may be created by the law irrespective of consent," and "[m]ost of these privileges are delegable."); see also *id.* § 217 cmt. b, at 470 ("Immunities, unlike privileges, are not delegable and are available as a defense only to persons who have them."). Thus, for example, a sheriff has "the privilege * * * to arrest" and interrogate people whom he or she has probable cause to believe have committed crimes, even though such arrests and interrogations generally would be unlawful if undertaken by a private party. *Id.* § 217 cmt. a, at 469. And "the sheriff can procure assistance in" exercising that privilege from others, who then likewise act lawfully when they help to detain or interrogate a criminal suspect. *Ibid.* But if the agent exceeds the scope of the privilege delegated by the principal—or if the principal never had the asserted privilege to begin with—then the agent's conduct may give rise to liability. See *id.* § 343 cmt. c, at 105.

---

[2] Some persons who perform services for the government may also be entitled to qualified immunity for wrongs they commit while performing those services, in circumstances where they are not alleged to have violated clearly established law. *E.g.*, *Filarsky* v. *Delia*, 566 U.S. 377, 393-394 (2012). The petition for a writ of certiorari in this case, however, does not contend that petitioner is entitled to qualified immunity.

11

This understanding of "derivative sovereign immunity" sharply distinguishes it from actual immunities, including the federal government's sovereign immunity. The critical feature of "an immunity" is that it "frees one who enjoys it from a lawsuit whether or not he acted wrongly." *Richardson* v. *McKnight*, 521 U.S. 399, 403 (1997). Where the government has not waived it, for example, sovereign immunity serves as "an impregnable legal citadel where government * * * may operate undisturbed by the demands of litigants." *United States* v. *Shaw*, 309 U.S. 495, 501 (1940). Similarly, "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 472 U.S. at 525. And under the doctrine of qualified immunity, even where "the plaintiff's claim * * * in fact has merit," a government official is entitled to have the suit dismissed unless the official's unlawful conduct violated a "'clearly established'" right. *Camreta* v. *Greene*, 563 U.S. 692, 705 (2011) (citation omitted). By contrast, when a government contractor acting as an agent of the government exercises a validly delegated privilege, the contractor is not immune from suit for unlawful conduct; rather, the contractor is protected from liability only to the extent—and only *because*—it is acting lawfully. See *Campbell-Ewald*, 136 S. Ct. at 672 (holding that "[w]hen a contractor violates both federal law and the Government's explicit instructions * * * , no 'derivative immunity' shields the contractor from suit").

b. Because "derivative sovereign immunity" is properly understood as a defense to liability on the ground that the defendant acted lawfully, rather than as a broader immunity from suit, pre-trial orders rejecting claims of so-called derivative sovereign immunity

are not "effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (citation omitted).

In assessing whether a threshold ruling would be effectively unreviewable without an interlocutory appeal, this Court has explained that "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus.*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352-353). For example, the "ultimate justification" for "application of the collateral order doctrine" to orders rejecting Eleventh Amendment immunity is the need to avoid wrongfully "'subjecting a State to the coercive process of judicial tribunals at the instance of private parties'"—a "dignitary interest[]" that cannot "be fully vindicated" on appeal if the trial has already occurred. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146 (quoting *In re Ayers*, 123 U.S. 443, 505 (1887)).

Orders denying government contractors' assertions of "derivative sovereign immunity" in U.S. courts do not, as a category, implicate that sort of substantial, effectively irreparable interest. See *Van Cauwenberghe*, 486 U.S. at 529 (observing that the collateral-order doctrine "look[s] to categories of cases, not to particular injustices"). Even if an erroneous denial leads to an unwarranted award of damages against a government contractor, that award—like any "erroneous ruling on liability"—"may be reviewed effectively on appeal from final judgment." *Swint* v. *Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995). To be sure, requiring government contractors to wait until final judgment to appeal may force those contractors to incur "unnecessary trouble and expense" litigating a case that should have been dismissed. *Lauro Lines s.r.l.* v. *Chasser*, 490 U.S. 495, 499

13

(1989). This Court, however, has "declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order." *Ibid.*

CACI argues that the interests "that justify immediate appeals of denials of absolute and qualified immunity—'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service'—are of equally high value in the context of government contractors." Reply Br. 10 (citation omitted). Any concerns about government contractors being unwilling to do business with the government, however, are mitigated by the potential ability of government contractors to price litigation risks into their contracts. Cf. *Richardson*, 521 U.S. at 409 ("[T]he most important special government immunity-producing concern—unwarranted timidity—is less likely present, or at least is not special, when a private company subject to competitive market pressures operates a prison."). Nor do suits in U.S. courts against government contractors implicate the "dignitary interests" that arise when a sovereign government is "'subject[ed] * * * to the coercive process of judicial tribunals at the instance of private parties.'" *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146 (quoting *In re Ayers*, 123 U.S. at 505). Accordingly, suits against government contractors do not, as a class, present the same level or type of concern that this Court has previously identified as sufficient to warrant immediate appeal under the collateral-order doctrine.[3]

---

[3] Because government contractors lack sovereign dignitary interests, and because the government's own immunity from suit in U.S. courts is not delegated to government contractors, see pp. 9-11, *su-*

14

c. Orders rejecting a *Yearsley*-based defense also generally do not "resolve an important issue completely separate from the merits of the action," *Will*, 546 U.S. at 349 (citation omitted). To the contrary, the question whether a defendant is entitled to "derivative sovereign immunity" is often coterminous with the merits of the action. That is because such a defense applies only where and to the extent that the defendant acted lawfully—not, as with the sorts of true immunities discussed above, even where the defendant acted unlawfully. See pp. 9-11, *supra*.

CACI's assertion of the defense here illustrates the point. CACI could not demonstrate entitlement to the defense without proving that it acted within the scope of a lawful delegation from the government. *Campbell-Ewald*, 136 S. Ct. at 672. But respondents' claims themselves rest on the premise that CACI "violate[d] both federal law and the Government's explicit instructions." *Ibid.*; see, *e.g.*, D. Ct. Doc. 254, at 41 (Apr. 4, 2013) (alleging that CACI "directly contradicted" domestic law as well as the "express terms" of its contract with the United States). Thus, if respondents were to prove the merits of their liability claims, then CACI would not be entitled to "derivative sovereign immunity"—and if CACI were to show its defense was valid, then respondents would necessarily fail to prove the merits.

d. Finally, in some cases, orders rejecting pre-trial assertions of the defense will not "conclusively determine the disputed question." *Will*, 546 U.S. at 349 (citation omitted). In particular, where such an order is

---

*pra*, this case would not be an appropriate vehicle in which to address whether the federal government has a right to immediately appeal orders denying motions to dismiss on the ground of federal sovereign immunity. See Pet. 15-17.

15

based on the existence of factual disputes that are material to the "derivative sovereign immunity" defense, the order will generally just defer final resolution of the defense until trial.

To be sure, the order here did not come within the category of orders that defer resolution of a "derivative sovereign immunity" defense until disputed facts have been determined at trial. Instead, the district court rested its denial of that defense on its purely legal determination that the United States had impliedly waived its sovereign immunity to suit for alleged violations of *jus cogens* norms. See pp. 3-4, *supra*; Pet. App. 340a. That determination was clearly wrong, but there is no reason to think it was—for the district court's purposes—anything other than "conclusive[]." *Will*, 546 U.S. at 349. There were no disputed facts that were materially relevant to the court's sovereign-immunity decision and that could be informed by an eventual trial; instead, the decision reflected the court's incorrect view that the United States can "impliedly waive[]" its sovereign immunity through conduct such as "joining the community of nations." Pet. App. 317a; but see, *e.g.*, *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) ("A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'") (citation omitted). Accordingly, if orders denying the pre-trial assertion of a "derivative sovereign immunity" defense satisfied the other two requirements of the collateral-order doctrine, the order here likely would have been immediately appealable. But because such orders, viewed as a category, are not effectively unreviewable on appeal after final judgment and do not address an issue completely separate from the merits, see pp. 11-14, *supra*, the court of appeals correctly determined

16

that CACI could not appeal under the collateral-order doctrine.

3. Although orders denying "derivative sovereign immunity" do not satisfy the requirements of the collateral-order doctrine, litigation against government contractors, especially in the military context, often raises serious concerns that warrant early appellate review by other mechanisms. This suit, for example, produced significant discovery burdens for the government, including the need for the Secretary of Defense to invoke the state-secrets privilege (with the personal approval of the Attorney General) on multiple occasions. See D. Ct. Docs. 775-1 (Apr. 27, 2018), 876-1 (July 20, 2018), and 992-1 (Nov. 16, 2018). Any trial in the case would raise additional concerns, including that of preserving the anonymity of many potential witnesses (whose identities are classified state secrets). As the Fifth Circuit has observed in a related context, such concerns make it important for district courts to "freely certify[] orders denying" dispositive motions for interlocutory appeal under 28 U.S.C. 1292(b) "where the law is unsettled but, after refinement on appeal, might warrant dismissing plaintiffs' claims." *Martin* v. *Halliburton*, 618 F.3d 476, 488 (2010).

### B. The Question Presented Warrants This Court's Review

Although the court of appeals reached the correct result, this Court's review is warranted to address tension in the lower courts' precedent regarding the appealability of orders denying certain defenses raised by government contractors and disagreement about the nature of the "derivative sovereign immunity" defense in particular.

17

1. As petitioner argues (Pet. 13-15), this case implicates tension in the courts of appeals over the appealability of orders denying motions by government contractors that seek to assert government defenses or immunities derivatively.

a. The Fifth Circuit has twice held that defendants have no right to an immediate collateral-order appeal from the denial of a motion to dismiss based on a "derivative sovereign immunity" defense. See *Martin*, 618 F.3d at 484-485; *Houston Cmty. Hosp.* v. *Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 276-281 (2007). And the decision below reiterated the Fourth Circuit's prior suggestion that collateral-order appeals may be categorically unavailable in this context. See Pet. App. 4a (highlighting the "reasoning of a prior en banc decision in which we dismissed CACI's interlocutory appeal from the district court's denial of similar defenses," which was "that 'fully developed rulings' denying 'sovereign immunity (or derivative claims thereof) may not' be immediately appealable") (citation omitted).

b. In contrast, the Second and Eleventh Circuits have held that orders denying similar "derivative sovereign immunity" defenses are immediately appealable under the collateral-order doctrine.

In *McMahon* v. *Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), a government contractor argued that under *Yearsley*, it was entitled to share in the government's immunity from suit by service members "for injuries that 'arise out of or are in the course of activity incident to [military] service.'" *Id.* at 1341 (quoting *Feres* v. *United States*, 340 U.S. 135, 146 (1950)) (brackets in original); see *id.* at 1343 ("[Defendant] claims that it is entitled to claim the whole of the government's

18

*Feres* immunity under the theory of derivative sovereign immunity," which "had its origin in *Yearsley*."). The Eleventh Circuit held that the district court's denial of the contractor's motion to dismiss was immediately appealable under the collateral-order doctrine because it implicated a "substantial claim to immunity from suit." *Id.* at 1339.

In *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008), the Second Circuit considered government contractors' attempt to invoke "derivatively" the government's discretionary function immunity under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), Pub. L. No. 93-288, 88 Stat. 143, for claims related to disaster relief. 521 F.3d at 192. The Second Circuit held that the denial of the defendants' motion to dismiss was appealable under the collateral-order doctrine. See *id.* at 187-193.

c. As respondents note (Br. in Opp. 26-27), the immunities at issue in *McMahon* and *In re World Trade Center Disaster Site Litigation* implicated the *Feres* doctrine and the Stafford Act, neither of which is at issue here. The cases therefore do not present a perfectly square split, and it is possible that courts might conclude that orders denying some forms of "derivative sovereign immunity" are immediately appealable while other are not. At the very least, however, the cases display substantial tension in the lower courts' approach to the appealability of orders denying attempts to invoke derivatively, in one form or another, the government's own immunity. That tension is significant enough to merit this Court's review, at least in conjunction with the related disagreement among the courts of appeals,

19

discussed below, about the nature of the "derivative sovereign immunity" doctrine.

2. The courts of appeals are divided over whether "derivative sovereign immunity" is properly understood as "derivatively extending sovereign *immunity* to a private contractor," or instead as a more limited defense "on the merits." *Adkisson* v. *Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 646-647 (6th Cir. 2015) (emphasis added), cert. denied, 136 S. Ct. 980 (2016); see *ibid.* (describing split).

a. The Fourth Circuit has held that "contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity," which renders them "immune from suit." *Butters* v. *Vance Int'l, Inc.*, 225 F.3d 462, 466 (2000); see *In re KBR, Inc.*, 744 F.3d 326, 344 (4th Cir. 2014) (holding that *Yearsley* "render[s] government contractors immune from suit when they act within the scope of their validly conferred authority"), cert. denied, 135 S. Ct. 1153 (2015). Indeed, the court of appeals relied on that understanding of the doctrine at an earlier stage of this case, see Pet. App. 122a (referring to "the right not to stand trial"), and denied a collateral-order appeal here solely on the ground that there are disputed factual questions concerning whether CACI complied with the law and contracts, pp. 4-5, *supra*.

b. The Fifth and Sixth Circuits have "explicitly reached the opposite conclusion." *Adkisson*, 790 F.3d at 646. In *Ackerson* v. *Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009), the Fifth Circuit held that a defense under *Yearsley* does not implicate "the court's power to hear the case" or "deny the court of subject-matter jurisdiction." *Id.* at 207-208. And in *Adkisson*, the Sixth Circuit "agree[d] with the Fifth Circuit's conclusion

20

that *Yearsley* is not jurisdictional in nature," instead presenting "an issue to be reviewed on the merits." 790 F.3d at 647.[4]

c. That division of authority is implicated here. As explained above, the primary reason that pre-trial orders denying "derivative sovereign immunity" defenses are not immediately appealable is that the defense goes only to liability; it does not create a broader right against suit. See pp. 9-11, *supra*. While the court of appeals' most recent decision did not analyze the question in those terms, a decision by this Court addressing the immediate appealability issue would likely resolve the lower courts' disagreement over whether "derivative sovereign immunity" is truly akin to sovereign immunity—and thus can be effectively safeguarded only through a pre-trial appeal—or instead a more limited defense to liability.

### C. This Case Would Be A Suitable Vehicle In Which To Address The Question Presented If The Case Is Not Effectively Mooted By *Nestlé* And *Cargill*

This case would be a suitable vehicle in which to address the question presented. In the view of the United States, however, it would be advisable to hold the petition for a writ of certiorari pending the Court's disposition of *Nestlé USA, Inc.* v. *Doe*, cert. granted, No. 19-416 (July 2, 2020), and *Cargill, Inc.* v. *Doe*, cert.

---

[4] The Sixth Circuit in *Adkisson* suggested that derivative sovereign immunity under *Yearsley* is "closer in nature to qualified immunity for *private* individuals" than to a genuine sovereign immunity. 790 F.3d at 647 (emphasis added). It did not suggest, however, that orders denying a contractor's "derivative sovereign immunity" defense would be immediately appealable in the same way as an order denying qualified immunity to a public official.

21

granted, No. 19-453 (July 2, 2020), which could effectively moot this case.

1. The petition for a writ of certiorari presents a suitable vehicle for addressing the appealability of orders denying pre-trial motions to dismiss on the basis of "derivative sovereign immunity." Respondents offer several arguments to the contrary, but those arguments lack merit.

a. Respondents argue that regardless of whether the collateral-order doctrine generally allows appeals from orders rejecting assertions of "derivative sovereign immunity," the order here was not appealable because the district court relied on the existence of disputed questions of fact as an "alternative basis for denial of CACI's entitlement to derivative sovereign immunity." Br. in Opp. 19. But that is not an accurate description of the district court's decision. Rather, having observed that it was not "clear" whether disputed facts would preclude assertion of the defense, the court concluded that it did not need to resolve that issue because, "[r]egardless, CACI's Motion to Dismiss fails because the United States does not enjoy sovereign immunity for these kinds of claims." Pet. App. 340a, 341a-342a. The order thus rested on a purely legal determination, and this Court could resolve the appealability of such orders without needing to address whether orders that rest on the existence of material disputes of fact might require a different rule.

b. Respondents also argue CACI "'invited' the error it now asks this Court to review," Br. in Opp. 29 (citation omitted), because filing a third-party complaint against the United States suggested that the United States had waived sovereign immunity. In the particular context of this case, however, that charge is misplaced. While

22

CACI's decision to implead the United States as a third-party defendant did put the government's sovereign immunity at issue, CACI never specifically asked the district court to hold that the United States had waived its sovereign immunity to claims based on alleged *jus cogens* violations. Instead, CACI's impleader sought to ensure that *if* the district court were to hold that CACI's own assertion of "derivative sovereign immunity" was foreclosed by a government waiver of immunity, CACI could then recoup any resulting damages from the government. See D. Ct. Doc. 713, at 14 (Mar. 28, 2018) ("[T]he immunity of CACI PT and the United States is coextensive with respect to the claims at issue in this case."). While the government disputed the merits of CACI's third-party claims (and was successful in having them dismissed), CACI's conduct with respect to the government provides no basis for prohibiting it from contesting the district court's denial of CACI's defense.

2. While the Court could grant the petition for a writ of certiorari immediately, the better course would be to hold the petition pending this Court's resolution of *Nestlé* and *Cargill*. Those cases present, among others, the question whether domestic corporations are properly subject to claims under the Alien Tort Statute. The government has argued that they are not. See, *e.g.*, Gov't Br. at 8-12, *Cargill, Inc.* v. *Doe*, No. 19-453 (May 26, 2020). If this Court adopts that view in *Nestlé* or *Cargill*, its decision would decisively foreclose respondents' underlying claims here—all of which seek to impose corporate liability under the Alien Tort Statute. See Pet. 4-5. Any decision here would at that point have no real-world significance in this case.

23

In order to avoid that scenario, the Court should hold the petition for a writ of certiorari until it has decided *Nestlé* and *Cargill*. If the Court's resolution of those cases forecloses respondents' underlying claims, the Court could at that point deny the petition. If respondents' claims remain viable, however, the Court should grant the petition.

**CONCLUSION**

The petition for a writ of certiorari should be held pending the Court's disposition of *Nestlé* and *Cargill*, and granted if those cases do not effectively foreclose respondents' underlying claims.

Respectfully submitted.

JEFFREY B. WALL
   *Acting Solicitor General*
   *Counsel of Record*
HASHIM M. MOOPPAN
   *Counselor to the Solicitor*
   *General*
SOPAN JOSHI
   *Senior Counsel to the*
     *Assistant Attorney General*
BENJAMIN W. SNYDER
   *Assistant to the Solicitor*
   *General*
H. THOMAS BYRON III
DANIEL WINIK
   *Attorneys*

AUGUST 2020