No. 22-01409

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Alejandro Menocal, *et al.*,

*Plaintiffs-Appellees,*

v.

The GEO Group, Inc.,

*Defendant-Appellant.*

On appeal from the United States District Court
for the District of Colorado, No. 1:14-cv-02887 (Hon. John L. Kane)

**APPELLANT'S RESPONSE TO PLAINTIFFS-APPELLEES' MOTION TO FILE A PROVISIONALLY SEALED VOLUME OF THE SUPPLEMENTAL APPENDIX**

Appellant The Geo Group, Inc. ("GEO") files this response in support of Plaintiffs-Appellee's motion to file a provisionally sealed volume of the supplement appendix, and to reaffirm the need for confidential treatment and sealing of certain records.

**I.     Introduction**

In response to a joint motion by the Parties and input from the federal government, the district court entered the relevant Amended Stipulated Protective

1

Order Concerning Confidential Information. (ECF No. 157.) Plaintiffs have apparently had a change of heart. But GEO and the government have not, and it is their confidential information that Plaintiffs now suggest should be publicized, presumably as another salvo in their effort to dissuade businesses from working with the Department of Homeland Security. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016) ("[I]mmunity reduces the risk that contractors will shy away from government work"). Like everything in this case, Plaintiffs' disdain for government policy does not justify the relief they seek.

The documents at issue consist of four contracts between Immigration and Customs Enforcement ("ICE") and GEO and two detainee work plans.[1] These documents are comprised of sensitive information regarding law enforcement procedures, DHS accounting and employee information, GEO employee information, as well as confidential business information disclosing GEO's revenue, expenses, and obligations unrelated to the housekeeping policies and Voluntary Work Program ("VWP") at issue in this litigation. Importantly, the four contracts would <u>not</u> be discoverable through the Freedom of Information Act. Indeed, law enforcement information and company-specific business data are traditional categories of protected information, which is why the Parties jointly—including

---

[1] The one other document, which GEO has no objection to unsealing, is ICE's National Detainee Handbook (ECF 310-1), which is available online.

2

Plaintiffs—moved for a stipulated protective order shielding these items from disclosure. And why the government supported that order below and supports preserving confidentiality on appeal, stating that "ICE has no objection to treating the documents as they had been in the district court and maintaining them as sealed in the Tenth Circuit filings." *See* USDOJ Letter to Counsel, dated April 4, 2023, attached hereto as Exhibit A (describing the numerous redactions that would otherwise be necessary, as well as noting GEO's confidential proprietary information contained in the documents).

The district court was correct to seal the documents at issue, and this Court should reject Plaintiffs' half-hearted attempt to impair GEO's work for ICE.

## II. The Stipulated Protective Order

In the district court, the Parties initially proposed a protective order governing only attorney-client communications. (ECF No. 154.) Upon consultation with the Department of Justice ("DOJ"), the Parties jointly proposed an amendment recognizing that many of the documents at issue in this litigation implicate the government's administration of detention facilities. (ECF No. 157.) Pursuant to this order, each of the documents that Plaintiffs submitted under seal as part of their supplemental appendix was already sealed in the court below.

The district court's protective order deserves special consideration in this interlocutory appeal. GEO has appealed only the denial of derivative sovereign

immunity ("DSI"). GEO's entitlement to DSI is a free-standing issue ancillary to the merits of whether it violated the Trafficking Victims Protection Act or was unjustly enriched. *See* Opp'n to Mot. To Dismiss; *see also, e.g.*, *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 497 (6th Cir. 2022). The remainder of the case remains in the district court, where the documents' confidentiality is maintained to this day.

In accordance with the district court's order and pursuant to Tenth Circuit Rule 11.3(B), the district court clerk delivered the documents in question to this Court under seal. That alone disposes of the matter of confidential treatment of the documents on appeal, *see, e.g.*, *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 805 n.4 (7th Cir. 2011) (holding that documents placed under seal in the district court remain sealed during the appeal), and in fact no motion is even required before this Court to maintain the confidential treatment of the documents in question. *See* 10th Cir. R. 25.6 ("<u>Except as provided in Rule 11.3(B)</u> or 11.3(C) any document . . . submitted under seal must be accompanied by a motion for leave to file the document under seal." (emphasis added)).

If Plaintiffs desire to move to *unseal* the relevant portions of the record, they are free to do so pursuant to the terms of the district court's order. (*See* ECF No. 157 § 15 (providing the procedure for a party to object to the designation of a document as Confidential, including by "fil[in]g an appropriate motion seeking a

ruling from the [District] Court whether the disputed information should be deemed Confidential").) But that is not the posture of the current motion, and it is improper for Plaintiffs to attempt to circumvent the district court's order here rather than file an appropriate motion with the district court familiar with the underlying proceeding. Indeed, to suggest so now would be an attempt to collaterally attack (and in fact collaterally appeal) the district court's order, where this Court will (even on a proper appeal) reverse a district court's *only if* the Court has "a definite and firm conviction that [the court] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances"—which did not occur here. *See Riker v. Federal Bureau of Prisons*, 315 F. App'x 752, 754-55 (10th Cir. 2009) (stating that "where the documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low" and concluding "the district court did not abuse its discretion in concluding there was a compelling reason to continue to seal the two documents").

### III.  Law Enforcement Information

The Parties moved for a protective order based on "the Government's concerns pertaining to the production of information protected by the Privacy Act of 1974, 5 U.S.C. § 552(a), and information that is 'law enforcement sensitive.'" (ECF No. 155 at 2.) The government also expressed concern with "the production of documents containing information covered by 8 C.F.R. § 208.6 and 8 U.S.C.

5

§§ 1255a(c)(5), 1367(a)(2)." *Id.* The district court responded by sealing "[n]on-public law enforcement information regarding Government policies, methods, techniques, procedures, guidelines, and intelligence." (ECF No. 157 at 1.) The materials in Volume III of Plaintiffs' supplemental appendix qualify as "law enforcement sensitive" and should remain confidential.

The Tenth Circuit (and its district courts) recognize that issues of prison security, government policies, methods, techniques, procedures and law enforcement investigations should be kept confidential. *See Simpson v. Kansas*, 593 F. App'x 790 (10th Cir. 2014) ("The reference to 'law enforcement policies and procedures that are not known and should not be known to the general public,' however, justifies sealing of the written documents in Volume II."). In *Hale v. Aschroft*, for example, the defendants (United States Attorney General, the Federal Bureau of Investigation, and U.S. Penitentiary—Max Federal Bureau of Prisons) sought the entry of a protective order relating to "documents protected by the Privacy Act of 1974, exempted from production by the Freedom of Information Act, and which involve issues of prison security and law enforcement investigations" to prevent the "Plaintiff from disclosing these documents, or material he generates therefrom, to the public." No. 06-cv-00541-PAB-KLM, 2009 WL 522719, at *1 (D. Colo. Feb. 26, 2009) (arguing that the entry of the protective order would in fact benefit the Court and "allow Defendants to produce a significant number of

responsive documents without seeking further intervention" over discovery disputes). The district court granted defendants' motion for entry of a protective order, citing "the valid security and privacy concerns." *Id.* (citing *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (holding that where public's interest in the documents is outweighed by interest which support nondisclosure, documents should be protected)).

Plaintiffs do not explain why they think the material in this volume is appropriate to disclose, declaring simply that they "do not believe" these documents should remain confidential. Mot. at 2. They appear to rest on the fact that the party seeking confidentiality bears the burden of showing that "the public's right of access is outweighed by competing interests." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). But where the safety and security of detention facilities is at issue, this Court has already concluded that the competing interest is sufficient. And Congress has reached the same conclusion by creating several exemptions to FOIA, of which Exemption 2 protects "internal personnel rules and practices" and Exemption 7 protects "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(2), (7).

Here, the two types of sealed documents are (1) contracts that direct GEO's operation of a detention facility, including ICE security procedures, controls, and systems and (2) plans detailing detainees' work obligations, which similarly consists

7

of work assignments and times, detainee responsibilities, training and safety protocols, and verification documents. 3 Supp. App. 138-142. Both sets of documents also contain GEO and ICE employee information, as well as financial and accounting information. *See Sheet Metal Workers Local No. 9 v. U.S.A.F.*, 63 F.3d 994 (10th Cir. 1995) (noting circuit agreement that private contractors performing federal projects have a substantial privacy interest that outweighs any recognized public interest in the disclosure of such information). This information should be filed under seal to preserve confidentiality, just as it was with the district court.

**IV.   GEO's Confidential Business Information**

In addition to the shared reasons that GEO and the government have for preserving the district court's order, GEO also desires to protect its confidential business information. This Court routinely seals portions of the record involving information of this type. *See, e.g., Sorenson Communications, Inc. v. F.C.C.*, 659 F.3d 1035, 1041 & n.4 (10th Cir. 2011) (making "permanent" a provisional sealing of record documents "to protect confidential information relating to Sorenson's finances and business practices").

GEO's contracts with the federal government are the epitome of confidential business records. The contracts all follow the same general structure, laying out the precise rates that ICE will pay for GEO's work housing, feeding, and protecting

persons in its custody, including GEO's fixed and variable pricing for option periods. *E.g.*, 3 Supp. App. 1-11, 110-113. The contract then goes through GEO's specific obligations. *E.g.*, 3 Supp. App. 12-60. This information is not only protected as confidential law enforcement material as discussed above, but it is also an unfiltered look into GEO's business and its finances. *See* 5 U.S.C. § 552(b)(4) (FOIA Exemption 4, protecting from public disclosure confidential commercial and financial information); *see also Burlington Northern v. Omaha Pub. Power Dist.*, 888 F.2d 1228, 1232 (8th Cir. 1989) (affirming district court's determination that the parties' contract and its pricing formula was a trade secret); *Rickaby v. Hartford Life & Accident Ins. Co.*, No. 11-cv-00520-RM-BNB, 2016 WL 1597589, at *5 (D. Colo. Apr. 21, 2016) (granting motion to restrict where public disclosure of documents would reveal commercial and financial information of a party).

And whereas GEO's competitive business standing and the government and GEO's security protocols could be harmed by the disclosure of such information, the public's ability to understand the dispute—specifically the narrow issue on appeal here—does not depend on the disclosure of such information. *See, e.g., Snyder v. Beam Techs.*, No. 20-cv-03255-NYW, 2022 WL 17741903, at *4 (D. Colo. Dec. 6, 2022) ("The Court agrees that restriction of Exhibit 21 is appropriate here, as public disclosure of this agreement could reveal Beam's confidential financial information, and the risks of harm associated with public disclosure outweigh the

presumption of public access."); *E.E.O.C. v. Columbine Health Sys., Inc.*, No. 15-cv-01597-MSK-CBS, 2022 WL 17741903 (D. Colo. Sep. 19, 2017) (granting level 1 restriction to parties' agreements, and concluding the public interest in the documents was "minimal," where the documents did not play "any role in the Court's determination of [pending] motions" for summary judgment). Indeed, the government too acknowledged that "ICE is not aware that <u>any</u> of the above information is relevant for the proceedings in the Tenth Circuit." Exhibit A.

## V. Conclusion

For the foregoing reasons, GEO respectfully requests that the Court grant Plaintiffs' filing under seal.

April 6, 2023

Respectfully submitted,

*/s/ Dominic E. Draye*
Dominic E. Draye
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Attorneys for Defendant-Appellant*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 6, 2023, a copy of the foregoing response was filed on CM/ECF and service was thereby electronically delivered to all counsel of record.

| | |
|---|---|
| April 6, 2023 | */s/ Dominic E. Draye*<br>Dominic E. Draye |

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this document contains 2,015 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in 14-point.

April 6, 2023                                       */s/ Dominic E. Draye*
                                                    Dominic E. Draye